IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **FIONA TORRES,** | |
| **Plaintiff,** | Civil Action No.  1:25-cv-2360 |
| v. | |
| **SOCIETY FOR HUMAN RESOURCE MANAGEMENT,** | **Jury Trial Demanded** |
| **Defendant.** | |

## COMPLAINT

1. Plaintiff Fiona Torres ("Plaintiff" or "Torres") brings this action against Defendant Society for Human Resource Management ("SHRM") for violation of Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Virginia Human Rights Act, Va. Code §§ 2.2-3900, *et seq.,* as amended by the Virginia Values Act of 2021 ("VHRA").

### Introduction

2. Torres is a qualified individual with a disability who applied for employment with SHRM.

3. SHRM is an organization in the business of human resources management and advises its membership on the requirements of the ADA. Despite that, it brazenly disregarded its statutory obligations and rescinded its offer of employment to Torres after she requested a reasonable accommodation to bring her trained service dog with her to work.

1

4. Torres requires her service dog at work to ensure her safety and health and to perform safely the essential functions of her job by alerting her before her blood glucose level rises or falls to a dangerous degree due to her Type 1 diabetes.

5. Torres' service dog of eight years has been successful in helping Torres manage her disability, allowing her to fully participate in society, including in the workplace.

6. Without explanation, SHRM told Torres that it would not grant her requested accommodation to bring her service dog to work and rescinded its job offer.

7. SHRM violated the ADA and the VHRA when it discriminated against Torres based on her disability and denied her a reasonable accommodation.

**Parties**

8. Plaintiff is a resident of Fairfax County, Virginia, and applied for and received an offer of employment with SHRM on June 3, 2024, to work as a Senior Specialist in the Product Management Department at SHRM, located in Alexandria, Virginia.

9. SHRM rescinded its offer of employment on July 15, 2024.

10. SHRM is a non-profit association and describes itself as the world's largest human resources membership organization devoted to human resources management. It further holds itself out as the nation's leading non-profit source of information and guidance for personnel managers. It has approximately 340,000 members in 180 countries.

11. SHRM is an employer as defined by the ADA, 42 U.S.C. § 12111(5)(A), and the VHRA, Va. Code §§ 2.2-3905(A).

12. Defendant SHRM's principal place of business is 1800 Duke Street, Alexandria, Virginia 22314, and is the location where Torres was offered employment that was later rescinded.

## Jurisdiction and Venue

13. This Court has jurisdiction of the federal claims in this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

14. This Court has supplemental jurisdiction of the state law claims in this action pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district and because SHRM is deemed to reside in this district.

## Facts

### *Plaintiff's Administrative Exhaustion*

16. Torres timely filed a charge of disability discrimination against SHRM with the Virginia Office of the Attorney General, Office for Civil Rights ("VOCR"), on October 31, 2024. That office thereafter transferred the complaint to the U.S. Equal Employment Opportunity Commission ("EEOC") for investigation. At the EEOC's request, Torres filed a formal charge of discrimination with the EEOC Washington Field Office on January 19, 2025, regarding her disability and SHRM's failure to accommodate.

17. Torres received a Notice of Right to Sue from the EEOC on September 19, 2025. This Complaint is filed within 90 days of that date.

18. Plaintiff has met all jurisdictional prerequisites for filing this action.

### *Torres is Disabled, but Manages Her Disability with the Help of Her Service Dog*

19. Ms. Torres has Type 1 diabetes, a lifelong chronic condition that afflicts over one million Americans.

3

20. Type 1 diabetes can cause hypoglycemia, which can result in the following symptoms, often arising suddenly: loss of consciousness; seizures; confusion, unusual behavior or both, such as sudden inability to complete routine tasks; loss of physical coordination or muscle control; slurred speech; blurred or tunnel vision; and dizziness or fainting.  See, e.g., Jessica Lucier and Priyanka M. Mathias, "Type 1 Diabetes," National Institutes of Health, National Library of Medicine, StatPearls (book summary, Oct. 5, 2024, www.ncbi.nlm.nih.gov/books/NBK507713/ ) (last visited November 26, 2025).

21. Due to her diabetes, Torres has suffered hypoglycemia so severe that she has experienced life-threatening blackout episodes, i.e., instances of sudden loss of consciousness, since childhood. These episodes were uniformly caused by sudden blood glucose level changes that mechanical monitors could not detect in time.

22. Since May 2017, Torres has been paired with a trained service dog, who can detect and alert her when her blood sugar is dangerously out of range well before any form of technology can.

23. Before she had the assistance of her service dog, Ms. Torres blacked out approximately ten times a year. Since acquiring the service dog's assistance eight years ago, she has had only one such incident.

24. Torres has performed successfully, in other jobs, with the assistance of her service dog.

### Torres' SHRM Employment Offer and Subsequent Rescission

25. Torres applied for a position with SHRM and was offered a position as a Senior Specialist in SHRM's Product Management Department.

26. Torres was qualified for the position that she was offered.

27. Torres accepted the offer on June 3, 2024, and was told that her start date would be either June 17, 2024, or July 1, 2024.

28. At the time of accepting the offer, Torres informed SHRM of her disability and requested an accommodation to bring her service dog with her to work.

29. On June 4, 2024, Torres was asked by SHRM's HR recruiter, Debbie Zoerkler, to speak with Nicole Belyna, SHRM's Director of Talent Acquisition & Inclusion, so that Belyna could gather details regarding Torres' service dog.

30. Torres spoke to Belyna and asked whether her position with SHRM was in jeopardy because of her need for a service dog. Belyna responded that her position was not in danger.

31. That same day, on June 4, 2024, Torres sent all the requested documentation, including a doctor's note confirming her need for the service dog for life-saving reasons and the doctor's recommendation that Torres have her dog with her *at all times*.

32. Having heard nothing from SHRM regarding her accommodation request, Torres emailed Zoerkler on June 11 for an update, but she heard nothing in return.

33. On June 14, still having heard nothing from SHRM, Torres called Zoerkler and left a voicemail. At the end of the day, Zoerkler returned Torres' call informing her that her start date of June 17 was put on hold in order to evaluate Torres' request for the service dog accommodation. Zoerkler advised Torres to reach out to Belyna, which she did.

34. On Sunday, June 17, 2024, Belyna informed Torres that her accommodation request for her service dog was denied on the ground that Torres was able to perform the essential duties of the job without the presence of her service dog. At that time, Belyna invited Torres to provide additional information for SHRM's consideration

5

***Torres Continued to Engage in the Interactive Process,
But SHRM Failed to Participate in Good Faith***

35. That same day, on June 17, 2024, Torres provided additional information explaining why her service dog was necessary to ensure her safety and health.

36. Torres explained that before she was paired with her service dog, she had ten severe episodes at her prior employment between 2014-2017, which included losing consciousness at work requiring assistance from coworkers and paramedics, and her loss of consciousness while commuting to work resulting in a severe car accident.

37. She further explained that her service dog is trained to detect abnormal changes in blood sugar levels much more quickly than any electronic technology can, including the high-quality continuous glucose monitors she also uses.

38. In this same email on June 17, 2024, Torres described how glucose monitors, including the one she wears, have long delays and are unable to accurately capture fast-moving trends that can lead to severe episodes, and that in the eight years she has had her medical alert dog, she has had only one episode requiring assistance from medics.

39. Later that afternoon, on June 17, 2014, SHRM asked Torres whether she relies on her service dog in both her personal and professional daily activities. It further requested an updated physician's note and asked whether there were any exceptions to the requirement that she use the service dog at all times.

40. SHRM further stated that it was working to determine a reasonable accommodation that would meet Torres' needs.

41. On June 19, 2024, Torres confirmed that it is always a medical risk for her to be without her dog because a sudden, life-threatening hypoglycemic event may occur at any time.

She further stated that any time spent away from her service dog increases her chances of facing a life-threatening hypoglycemic event.

42. On June 19, 2024, Torres also submitted an updated letter from her treating doctor of four years, who again confirmed the medical necessity for Torres to have her service dog with her at all times for her safety and health.

43. On July 3, 2024, without any further questions or explanation, SHRM stated in an email to Torres, "At this time, we are declining your preferred accommodation request to have your service dog on site."

44. At no time did SHRM express any concerns about whether Torres was able to maintain control over her service dog.

45. At no time did SHRM ask any questions of Torres or state that it had concerns about having a dog in the office or how it might affect any other workers.

46. At no time did SHRM express that it would suffer hardship, or specify any hardship it would suffer, if Torres was granted her requested accommodation to have her service dog with her at the office.

47. Rather, SHRM merely offered to allow Torres to continue to use her glucose monitoring system and allow her to have food and drink and her insulin pump at her work station. Finally, SHRM stated that it would allow her to take breaks to check her blood sugar level and take leave to manage her condition.

48. Allowing Torres to eat and drink at her work station, or to wear a medical device on her body, cannot be considered an accommodation unless the employer generally denies its employees such basic rights.

49. The breaks and leave that SHRM offered did not address the safety and health risks identified by Torres, specifically that her blood sugar level could change suddenly and dangerously at any time with potentially severe, even life-threatening consequences.

50. On July 6, 2024, Torres further explained in detail why the CGM that she wore was not sufficient to provide for her safety and health. She explained in detail that there are many times when the CGM does not function for a variety of reasons. For example, she explained that:

   a. Every 10 days, the CGM displays no readings for 2 full hours because the CGM has a warm-up period with each new cartridge;

   b. There are days where she does not have the CGM due to insurance delays or delay in shipment;

   c. Sometimes her CGM falls off accidentally, causing a two-hour delay in readings once she reattaches it, or she will need to drive to a pharmacy to obtain another CGM if, through no fault of her own, she does not have a backup. This requires her to drive without the benefit of any mechanical monitoring, which is extremely dangerous.

   d. There are many occasions where the CGM readings are inaccurate even with the high-quality equipment she uses.

51. On July 15, 2024, after receiving this additional information from Torres regarding the reasons why her service dog is the only reasonable accommodation to protect her from life-threatening events, SHRM, without any further engagement, abruptly ended the interactive process and withdrew its offer of employment.

52. SHRM stated, "[I]t does not appear there are any reasonable accommodations that would allow you to perform the essential functions of the role. We are unable to grant your

request to have a service dog in the workplace. . . At this stage, and based on the foregoing, we will need to rescind the offer."

53. This letter gave no reason why Torres's service dog was unacceptable; asserted no hardship to SHRM or its workers from the service dog's presence; and gave no explanation to counter Torres' detailed explanation of all the ways in which mechanical glucose monitoring was insufficient to keep her safe.

54. As a result of the adverse actions alleged in this complaint, Torres suffered severe emotional distress as well as the loss of SHRM salary and benefits which she has been unable to replace despite her diligent effort.

## ADA VIOLATIONS

### COUNT I
*Disability Discrimination in Violation of the ADA*

55. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-54 above.

56. The ADA prohibits an employer from discriminating against an applicant for employment because of her disability.

57. Torres has Type 1 diabetes and has a disability as defined under the ADA. She experiences life-threatening episodes of hypoglycemia related to her Type 1 diabetes. These life-threatening episodes can occur at any time, and substantially limit at least one of Plaintiff's major life activities.

58. Torres was qualified for employment with SHRM when she applied for and was offered that employment and when that offer was rescinded.

59. SHRM had knowledge of Torres' disability when it revoked its offer of employment to her.

60. SHRM took an adverse employment action against Torres when it rescinded its offer of employment because of her disability.

61. SHRM had no legitimate nondiscriminatory reason for rescinding Torres' employment offer, and none were raised at the time SHRM rescinded its offer.

62. Any purported reasons SHRM asserts for the rescission of its offer of employment are pretextual.

63. Based on the above, SHRM violated the ADA.

64. As a result of Defendant's conduct as set forth above, Plaintiff has suffered damages, including economic and non-economic harm. Such harm includes, but is not limited to, the loss of past and future income, compensation, and benefits as well as compensatory damages from severe emotional distress.

65. The violations described herein were willful and deliberate, and SHRM committed them with malice and reckless indifference to Torres' protected rights, thus warranting the imposition of punitive damages under the ADA, 42 U.S.C. § 12117 (a).

## COUNT II
*Failure to Accommodate in Violation of the ADA*

66. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-65 above.

67. Torres has Type 1 diabetes and has a disability as defined under the ADA. She experiences life-threatening episodes of hypoglycemia related to her Type 1 diabetes. These life-

threatening episodes can occur at any time, and substantially limit at least one of Plaintiff's major life activities.

68. Torres was qualified for employment with SHRM when she applied for and was offered that employment and when that offer was rescinded.

69. SHRM had knowledge of Torres' disability when it rescinded its offer of employment to her.

70. Torres' trained service dog ensures her safety and health by alerting her before her glucose levels change to a dangerous degree due to her Type 1 diabetes.

71. Torres requested a reasonable accommodation from SHRM to bring her trained service dog with her to the office, which would have meant she would also have her service dog with her for the otherwise dangerous commute to and from the office.

72. With her trained service dog, Torres was able to perform the essential functions of the position originally offered to her by SHRM.

73. SHRM had a good-faith duty to engage with Torres in the interactive process to identify and approve a reasonable accommodation.

74. Despite Torres' ability to perform the essential functions of the position, SHRM rescinded the offer after refusing Torres' request for a reasonable accommodation.

75. Torres' request to bring her service dog with her to the office was reasonable because it would have ensured she did not have to commute or work under conditions that would put her safety and health at risk, and thus would have enabled her to enjoy the same benefits and privileges of employment as other similarly situated individuals.

76. SHRM failed to participate in good faith in the interactive process by denying Torres's request for a reasonable accommodation.

77. SHRM failed to participate in good faith in the interactive process by insisting on accommodations that did not address the safety and health issues that Torres would face without her trained service dog, rendering its participation in the interactive process unlawfully deficient.

78. By refusing Torres's request for a reasonable accommodation, by failing to engage meaningfully in the interactive process, by abruptly ending it, and by rescinding its offer of employment, SHRM violated the ADA, 42 U.S.C. § 12112 (a) and (b).

79. As a result of Defendant's conduct as set forth above, Plaintiff has suffered damages, including economic and non-economic harm. Such harm includes, but is not limited to, the loss of past and future income, compensation, and benefits as well as compensatory damages from severe emotional distress.

80. The violations described herein were willful and deliberate, and SHRM committed them with malice and reckless indifference to Torres' protected rights, thus warranting the imposition of punitive damages under the ADA, 42 U.S.C. § 12117 (a).

## VHRA VIOLATIONS

### COUNT III
*Disability Discrimination in Violation of the VHRA*

81. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-54 above.

82. The VHRA prohibits an employer from discriminating against an applicant for employment because of her disability. Va. Code §§ 2.2-3905(B).

83. Torres has Type 1 diabetes and has a disability as defined under the VHRA. She experiences life-threatening episodes of hypoglycemia related to her Type 1 diabetes. These life-

threatening episodes can occur at any time, and substantially limit at least one of Plaintiff's major life activities.

84. Torres was qualified for employment with SHRM when she applied for and was offered employment and when that offer was rescinded.

85. SHRM had knowledge of Torres' disability when it revoked its offer of employment to her.

86. SHRM took an adverse employment action against Torres when it rescinded its offer of employment because of her disability.

87. SHRM had no legitimate nondiscriminatory reason for rescinding Torres' employment offer, and none were raised at the time SHRM rescinded its offer.

88. Any purported reasons SHRM asserts for the rescission of its offer of employment are pretextual.

89. Based on the above, SHRM violated the VHRA.

90. As a result of Defendant's conduct as set forth above, Plaintiff has suffered damages, including economic and non-economic harm. Such harm includes, but is not limited to, the loss of past and future income, compensation, and benefits as well as compensatory damages from severe emotional distress.

91. The violations described herein were willful and deliberate, and SHRM committed them with malice and reckless indifference to Torres' protected rights, thus warranting the imposition of punitive damages under the VHRA, Va. Code §§ 2.2-3908.

## COUNT IV
### *Failure to Accommodate in Violation of the VHRA*

92. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-54; 81-91 above.

93. Torres has Type 1 diabetes and has a disability as defined under the VHRA. She experiences life-threatening episodes of hypoglycemia related to her Type 1 diabetes. These life-threatening episodes can occur at any time, and substantially limit at least one of Plaintiff's major life activities.

94. Torres was qualified for employment with SHRM when she applied for and was offered that employment and when that offer was rescinded.

95. SHRM had knowledge of Torres' disability when it rescinded its offer of employment to her.

96. Torres' trained service dog ensures her safety and health by alerting her before her glucose levels reach a dangerous degree from her Type 1 diabetes.

97. Torres requested a reasonable accommodation from SHRM to bring her trained service dog with her to the office, which would have meant she would have her service dog with her for the commute to and from the office.

98. With her trained service dog, Torres was able to perform the essential functions of the position originally offered to her by SHRM.

99. SHRM had a good-faith duty to engage with Torres in the interactive process to identify and approve a reasonable accommodation.

100. Despite Torres' ability to perform the essential functions of the position, SHRM rescinded the offer after refusing Torres' request for a reasonable accommodation.

101. Torres' request to bring her service dog with her to the office was reasonable because it would have ensured she did not have to commute or work under conditions that would put her safety and health at risk, and thus would have enabled her to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated individuals.

102. SHRM failed to participate in good faith in the interactive process by denying Torres's request for a reasonable accommodation.

103. SHRM failed to participate in good faith in the interactive process by insisting on accommodations that did not address the safety and health issues that Torres would face without her trained service dog, rendering its participation in the interactive process deficient.

104. By refusing Torres's request for a reasonable accommodation, by failing to engage meaningfully in the interactive process, by abruptly ending it, and rescinding its offer of employment, SHRM violated the VHRA, Va. Code §§ 2.2-3905.1.

105. As a result of Defendant's conduct as set forth above, Plaintiff has suffered damages, including economic and non-economic harm. Such harm includes, but is not limited to, the loss of past and future income, compensation, and benefits as well as compensatory damages from severe emotional distress.

106. The violations described herein were willful and deliberate, and SHRM committed them with malice and reckless indifference to Torres' protected rights, thus warranting the imposition of punitive damages under the VHRA, Va. Code §§ 2.2-3908.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendant discriminated against Plaintiff in violation of the ADA and VHRA;

B. Enjoin Defendant from future acts of discrimination;

C. Order Defendant to take such measures as are reasonable and necessary to ensure that discriminatory employment practices such as those described herein are eliminated and do not recur;

D. Order defendant to develop effective policies and trainings for employees and managers to ensure they do not discriminate based on disability or deny reasonable accommodations;

E. Award Plaintiff monetary and equitable relief to make Plaintiff whole, including, but not limited to back pay, front pay, compensation for loss of employment benefits, such as health insurance and retirement, and any associated interest on such relief;

F. Award compensatory damages to fully compensate Plaintiff for her injuries, pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other nonpecuniary losses caused by SHRM's discriminatory conduct in an amount appropriate to the proof at trial;

G. Award punitive damages against SHRM as authorized under the ADA and VHRA as a penalty for the malice and reckless indifference of the federally protected rights of Plaintiff and the deliberate and willful nature of the wrongs they committed against Plaintiff;

H. Award Plaintiff reasonable attorneys' fees and costs; and

I. Award such other and further relief this Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

                         Respectfully submitted,

                         _____
                         Stephen B. Pershing
                         Virginia Bar No. 31012
                         Lori B. Kisch
                         D.C. Bar No. 491282
                         (Admission *pro hac vice* pending)
                         Kalijarvi, Chuzi, Newman & Fitch, P.C.
                         818 Connecticut Ave. N.W., Suite 1000
                         Washington, DC 20006
                         (202) 331-9260
                         spershing@kcnlaw.com
                         lkisch@kcnlaw.com

                         *Attorneys for Plaintiff*

Date: December 16, 2025