**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| FIONA TORRES,                                     ) | |
|                                                   ) | |
|     Plaintiff,                ) | |
|                                                   ) | |
|     v.                         )   1:25-cv-2360 (PTG/WBP) | |
|                                                   ) | |
| SOCIETY FOR HUMAN RESOURCE        ) | |
| MANAGEMENT,                                  ) | |
|                                                   ) | |
|     Agency.                   ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
SOCIETY FOR HUMAN RESOURCE MANAGEMENT TO COMPLY WITH ITS
DISCOVERY OBLIGATIONS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Local Rules 7(F)(1) and 37, and the Rule 16(B) Scheduling Order, dated February 20, 2026 (ECF 15), Plaintiff Fiona Torres ("Plaintiff" or "Torres"), through undersigned counsel, hereby respectfully submits this memorandum of law in support of her Motion to Compel in the above-captioned action.

**I.    INTRODUCTION AND RELEVANT BACKGROUND**

This is a disability discrimination and failure-to-accommodate case. Plaintiff alleges that Defendant Society for Human Resource Management ("Defendant" or "SHRM") violated the Americans with Disabilities Act (ADA) and the Virginia Human Rights Act (VHRA) by refusing Torres's reasonable accommodation request and rescinding an offer of employment after she requested to bring her service dog to work as a reasonable accommodation for her Type 1 diabetes. Discovery is ongoing, with a close of discovery deadline of June 12, 2026.

Plaintiff served discovery requests on SHRM on February 11 and February 20, 2026. *See* Exs. B, C. SHRM has responded to Plaintiff's two sets of discovery requests, *see* Exs. D-G, but its deficiencies and lack of cooperation are extensive and significantly affect Plaintiff's access to

1

relevant evidence. Primarily, SHRM is hindering discovery by unreasonably refusing to conduct responsive searched for electronically stored information ("ESI") and imposing on any search unreasonable limitations. Secondly, in two respects, it is interfering with Plaintiff's right to obtain evidence through depositions. It is attempting, for witness(es) who may testify in their individual capacity and also be designated under Rule 30(b)(6) as a corporate designee, to cap the duration of the deposition at a single day of seven hours of testimony. In addition, it is refusing to inform Plaintiff whether it represents specific individuals Plaintiff has indicated it intends to depose, while simultaneously warning that any effort by Plaintiff to contact the individuals would be taken as an improper contact with a represented party. As discussed below, Plaintiff moves this Court to compel Defendant SHRM to conduct fully responsive ESI searches and to facilitate depositions in accordance with the Federal and Local Rules.

II.      **The Federal Rules of Civil Procedure Authorize the Discovery Sought by Plaintiffs and Authorize this Court to Enter and Order Compelling Responses**

### A.  Rule 37(a) Authorizes Orders Compelling Discovery

Federal Rule of Civil Procedure 37(a)(3)(B) authorizes a party to move for an order compelling discovery when "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The motion must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Rule 37(a)(3)(B)(i) permits a motion to compel when "a deponent fails to answer a question asked under Rule 30 or 31."

Under the Federal Rules, discovery is "broad and liberal." *Hickman v. Taylor*, 329 U.S. 495,507 (1947); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th

Cir. 2003) ("broad in scope and freely permitted"). Parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The burden is on the party resisting discovery to show why a discovery request should not be honored. *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).

### B.  Duty to Conduct Reasonable and Proportionate Searches

Rule 26(g)(1) requires that an attorney's signature on a discovery response constitutes a certification that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: . . . (B) with respect to a discovery request, response, or objection, it is . . . neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(g)(1)(B). With respect to ESI, Rule 26(b)(2)(B) requires particularized support for burden objections, and the Advisory Committee Notes make clear that "the [2015 amendment] does not place on the party seeking discovery the burden of addressing all proportionality considerations."

### C.  Artificial Limits on Temporal Scope

An objection that discovery requests are "overbroad and unduly burdensome" because they are not limited in temporal scope will not suffice as an objection. *Spendlove v. RapidCourt, LLC*, No. 3:18-cv-856, 2019 WL 7143664, at *4 (E.D. VA. December 23, 2019). Courts regularly permit in civil rights cases multi-year scope  for discovery so as to allow plaintiff access to policies, compliance records and related documents. *See Siskonen v. Stanadyne, Inc.*, 124 F.R.D. 610, 613 (W.D. Mich. 1989) (allowing a 5-year scope for production of affirmative action plans and EEO-1 reports in discrimination case); *Mawulawde v. Bd. of Regents of Univ.*

3

*Sys. of Georgia*, No. CV 105-099 2007 WL 2460774 *9 (S.D. Ga. Aug. 24, 2007) (finding

Magistrate Judge's limit on temporal scope of discovery of 5 years to reasonable); and *Gaul v.*

*Zep Mfg. Co. et. al.*;  No. Civ.A. 03-2439, 2004 WL 231298, at *2 (E.D. Pa. Feb. 5, 2004)

(finding request for documents dating back 5 years to be more than reasonable).

### III.    ARGUMENT

#### A.  SHRM Should be Ordered to Conduct an Adequate Search of ESI and Produce the Results

Beginning with the Fed. R. Civ. Proc. 26(f) conference on February 3, 2026, Plaintiff

requested Defendant to engage in a good faith collaboration on its ESI search obligations and to

perform a reasonable search. Defendant has refused to do both and SHRM's actions have

prejudiced Plaintiff. To date, SHRM has produced no internal memos, emails, texts, or any other

ESI related to SHRM's internal discussions about Plaintiff's request for an accommodation, its

denial of the same, and SHRM's recission of its offer of employment, the most essential issues in

this case.

SHRM's efforts to limit discovery in this case is not inadvertent. Until just two hours

before the filing on this Motion, SHRM refused to even conduct a search to ensure that

documents referencing the Plaintiff are found. Although Plaintiff hopes that by the time of this

Court's consideration of the Motion, final resolution on this issue will be reached, this issue is

not completely resolved and is significant. If an email references the Plaintiff as Ms. Torres or

alternatively as Fiona, SHRM's search as conducted thus far, excluded discovery of such

documents in this case. SHRM also refuses to search for almost *any* documents *at all* unless they

include the Plaintiff's name. The impact of this refusal cannot be understated. If an individual

responsible for denying Plaintiff's accommodation request to bring her service dog to the office,

sent an email to another employee at SHRM, and stated that Plaintiff's accommodation request

was reasonable, but did not mention Plaintiff's name, that document would not be found in

SHRM's ESI search and would not be produced. Likewise, if SHRM advised one of its members

that the ADA requires an accommodation for a service dog when an individual provides medical

documentation demonstrating medical necessity, another issue directly relevant to this case,

SHRM's restricted ESI search would not capture this document, and it would be excluded from

discovery. SHRM is attempting to use its ESI search protocol to shield the production of critical

evidence in this case. There is no other reasonable explanation for its actions.

SHRM also limited its search to an unreasonable short period of time, although it insisted

in its own discovery requests that Plaintiff produce documents for a much larger temporal scope.

SHRM refuses to have certain key employees, including the identified decision-makers in the

case, review their own ESI to search for relevant and responsive information requested for just a

limited period of time. And SHRM refused to discuss and consider Plaintiff's reasonable

proposals about its ESI search protocol.

### 1. Plaintiff's Efforts to Engage with SHRM on its ESI Protocol have been Continually Rejected.

In the Parties' Rule 26(f) conference, SHRM initially agreed to engage in ESI discussions

and invited Plaintiff to share a proposal on ESI. On March 6, 2026, Plaintiff's Counsel did just

that. Plaintiff requested that for the short period of June 4, 2024-July 15, 2025, anyone involved

in considering, recommending, or making decisions regarding Plaintiff's accommodation or

recission of her offer of employment, search their ESI and produce all documents responsive to

Plaintiff's requests, without limiting such searches by search terms. Ex. J, pgs. 5-6. Plaintiff also

requested that SHRM share a proposed list of custodians (and their roles) and proposed search

terms so that the parties could come to agreement on the ESI search that would be conducted by

5

search terms. *Id.*[1] Plaintiff requested that, once an initial set of search terms were identified, SHRM conduct a search and inform Plaintiff of the number of hits for the searches so the Parties could confer to see if the terms were either too broad or narrow, a practice that is typical for ESI searches. *Id.*

After making her proposal, SHRM reversed course and refused to cooperate and share information related to its ESI search. SHRM accused Plaintiff of providing "unreasonable" search terms even though Plaintiff had provided none, and SHRM instructed that it would only discuss ESI *after* its production and after Plaintiff identified deficiencies. *Id.* at pgs. 4-5.  On March 10, 2026, Plaintiff notified SHRM of its duty to inform Plaintiff about the following:  (1) the proposed terms; (2) the proposed custodians whose ESI is being searched, their role in the organization and their connection to the allegations in the case; (3) the date ranges being searched; and (4) the sources being searched. *Id.* at pgs. 3-4. Plaintiff also referred SHRM to *Daedalus Blue, LLC, MicroStrategy, Inc.*, No. 20-cv-551, 2021 WL 11709428, *7 (E.D. Va. May 3, 2021), where the court required not only a description of the search terms, custodians, sources, and date ranges, but it required such information relating to each specific request. *Id.*

The Parties disagreement over ESI continued over the next couple of weeks. *See* Exs. J and K. On March 19, 2026, Plaintiff notified SHRM that there appeared to be limited ESI produced in its first document production as there were limited emails and calendar entries, with none related to internal SHRM discussions about Plaintiff's accommodation request and

---

[1] Based on the discovery produced in the case thus far and SHRM's representations, Plaintiff understands the group of individuals who have knowledge and were involved in Plaintiff's hire, accommodation request, and rescission of the offer of employment include the following individuals: Nicole Belyna, Deborah Zoerkler, Jim Link, Kristen Howe, Katharine Panessidi, Alison Sancinito, Melissa Turk, Walter Hanton, George Rivera, and Hanton Walters. SHRM agrees to search ESI for only the first seven individuals.

SHRM's rescission of her offer of employment. Ex. K, pgs. 3-4. No texts were or have been produced from any current or former SHRM employee. Ex. A. ¶ 19.  Plaintiff notified SHRM that its delays in producing responsive ESI discovery was prejudicing Plaintiff. After several more emails and attempts to engage Defendant on ESI, SHRM finally, on March 24, 2026, for the first time, provided *some* information about its ESI search. Ex. L, pg. 5. The ESI search omissions were glaring. On March 26, 2026, Plaintiff provided SHRM with a detailed letter regarding SHRM's ESI deficiencies along with a specific proposal for its correction. Ex. H.

The Parties held a meet and confer on April 1, 2026. During the meet and confer, SHRM confirmed that other than a new search for documents that referenced Plaintiff's name, SHRM would not agree to any other part of Plaintiff's ESI proposal provided in its letter of March 26, 2026. Ex. H., Ex. A at ¶¶ 5-18. With reference to Plaintiff's name, SHRM agreed to reconsider its ESI search to include a search for Plaintiff's name without restricting the search to include another term as it had previously done. *Id.* The Parties agreed that SHRM would notify Plaintiff no later than April 6, 2024, regarding the search terms it would propose to use, to search for Plaintiff's name. Ex. A at ¶14. No such notification came. On April 16, 2026, during another meet and confer, SHRM notified Plaintiff that it restricted this search for ESI to only those documents that referenced both Plaintiff's first and last name, within three words of one another. Ex. O. Within minutes of receiving this notice, Plaintiff notified SHRM that such a restriction was too narrow. *Id.* For example, it would not identify documents which only referred to either her first or last name.

### 2.  SHRM Unnecessarily Restricted Its Search to an Unreasonably Narrow Temporal Scope.

In its discovery requests, Plaintiff specified that its requests "relate to the period of time from January 1, 2019, through the present." *See* Exs. B and C. During the April 1, 2026 meet and

confer, SHRM confirmed it limited its searched for ESI to March 1, 2024 to August 30, 2024, and refused to expand the date range. Ex. A at ¶ 7. The limited date range restricts Plaintiff from discovery that could be directly related to her claims. For example, if key decision makers exchanged emails or texts after August 30, 2024, admitting that SHRM should have permitted Plaintiff to bring her service dog to the office, such emails would be directly responsive to Plaintiff's requests and important evidence in the case. Similarly, if an employee advised a member organization before January 1, 2019 or August 30, 2024 that service dogs are a reasonable accommodation and absent undue hardship, an organization would be at risk of violating the ADA if it denied this accommodation, such an email or document would be responsive to Plaintiff's document requests and important evidence for the case. Moreover, if SHRM has a best practices document that was created on January 1, 2024, instructing its employees to caution its members against denying medically necessary accommodations evidenced by a doctor's note, that too would be relevant and important information in this case. However, none of these documents or ESI would have been captured by Defendant's restricted ESI search due to its temporal limitations. Plaintiff requests that the Court order Defendant to expand its search of ESI to include the time period set forth in Plaintiff's discovery requests of January 1, 2019 through the present.

### 3. SHRM Refuses to Search ESI for Key Decisionmakers and Those Directly Involved with Plaintiff's Hiring, Accommodation Request, and Offer of Employment Rescission.

In an email of March 6, 2026, Plaintiff requested that for the short period of June 4, 2024 through July 15, 2024, anyone involved in considering, recommending, or making the decisions regarding Plaintiff's request for accommodation and SHRM's recission of her job offer, search their ESI and produce responsive documents without relying on search terms. Ex. J, pg. 6. On

8

March 9, 2026 SHRM rejected this proposal outright relying in part on arguments of burden. Ex. J, pg. 5. Plaintiff followed up asking for more information related to burden to which SHRM declined to ever provide. Courts have recognized that reliance on search terms may be insufficient and that in general, such searches can unnecessarily restrict the discovery of responsive documents. *See, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251 (D. Md. 2008).  Without any evidence of burden, SHRM's outright refusal for this limited request is unreasonable and counter to its discovery obligations.

4.  **SHRM Refused to Conduct a Search to Ensure All Documents Referencing Plaintiff are Located and Produced, May Now Agree, Although Unclear When, and Defense Counsel Still Refuses to Confirm it Will Confer with Plaintiff's Counsel Regarding the Search as it Progresses.**

Initially, SHRM ran only 28 searches, all structured as "(Fiona OR Torres) w/5 or w/10 [secondary term]." Ex. M, pgs. 6-13. This means every document referencing Plaintiff was excluded unless it appeared within 5 or 10 words of another specified term. SHRM never searched for "Fiona" or "Torres" alone. *Id.* Any document mentioning Plaintiff's name in a relevant context — but not adjacent to a listed secondary term — was excluded from production by design. SHRM's second search of Fiona w/3 Torres similarly unreasonably restricted the number of documents for discovery.

During the April 1, 2026 meet and confer, Plaintiff discussed the importance of conducting an ESI search with Plaintiff's first name only and also suggested a search with just her last name. Defendant was on notice from the April 1, 2026 discussion that Plaintiff did not agree that a search where both her first and last name were required, would be sufficient. SHRM raised that it would consider if Torres was too common a name to conduct a search with just Torres. There was some discussion during the meet and confer whether her last name alone

9

would bring up too many documents. SHRM has provided Plaintiff with no information that such a search would be unreasonable. In fact, in the unlikely event that a search of just Torres' last name for the time period in question for the seven custodians at issue, had SHRM engaged in a discussion as it had suggested it would, Plaintiff could have made alternative proposals to narrow the scope while still using Plaintiff's last name.

As of a couple of hours before submission of this Motion, SHRM has now agreed to conduct a search to include just Plaintiff's first name, and another with just her last name. Ex. O. It is not clear that this issue is resolved as SHRM has not confirmed it will engage in discussions with Plaintiff's counsel if a search does not yield what is expected. *Id.* Nor has SHRM confirmed that it will conduct the search by a date certain or produce any documents by a date certain. *Id.* Plaintiff therefore include this issue in this motion because to "wait and see" once again, will at this point prejudice Plaintiff as depositions are around the corner.

### 5.  <u>Critical Search Terms were Omitted Entirely.</u>

SHRM refuses to conduct an ESI search with relevant terms without also connecting those terms to Plaintiff's name.[2] This approach is not reasonable because there may be many documents critical to the claims and defenses of the case which do not include Plaintiff's name. Such documents could include internal SHRM discussions about the accommodation decision or any undue hardship it considered regarding Plaintiff's service dog; questions it may have had or considered asking about Plaintiff's service dog in relation to the office; discussion about the medical risk for Plaintiff without her service dog, such as her black-outs and car accidents from a sudden drop in her glucose level; discussion about the medical evidence and doctor's notes that

---

[2] SHRM represents that it did run two narrow searches for the title of the relevant position at issue in the case, "senior specialist" within ten words of either the term benefit or the term salary. Ex. M, pg. 13. No other searches without the Plaintiff's name were conducted.

she provided; or recommendations by SHRM to its members about the ADA, VHRA, interactive process, or accommodation decisions related to service dogs. All of these documents would have been relevant even if Plaintiff's name did not appear on the documents.

SHRM's 28-term search did not include the words "disabled," "ADA, "VHRA," "breaks," "leave," or other terms central to the claims and defenses, including the accommodations that SHRM offered instead of Plaintiff's service dog. Ex. M, pg. 13. SHRM also did not include the name of the Plaintiff's doctors, Dr. Armellini or Dr. Joshi, both who signed letters supporting the medical necessity for the requested accommodation for Plaintiff's service dog. There could be little argument that including Armellini or Joshi's names in a search would produce too many documents, given the uniqueness of their names and particularly because SHRM limited its search to only seven custodians.

In its March 26, 2026 letter, Plaintiff offered several proposed search terms, including the ones above, for different custodians and for different time periods. The search term requests made by Plaintiff were relevant, tailored, and are warranted. Ex H. Plaintiff had also offered to work with SHRM if its preliminary results based on these searches were unwieldy or otherwise problematic. SHRM was not interested.

### 6. **SHRM Must Search All Key Custodians.**

SHRM refuses to search the ESI of Hanton Walters (General Counsel), George Rivera, and Nick Schacht, and refused to do so even after Plaintiff's repeated requests. Ex. A at ¶ 10. Yet the broader production itself reveals their involvement: Walters appears on several emails with Belyna (whose email SHRM did search) in the critical June–July 2024 window; Schacht approved the job offer and Rivera was copied on that same approval in an email to Zoerkler (whose email SHRM did search). Critically, SHRM did not even identify Walters, Rivera, or

Schacht in its Answer to Interrogatory No. 1 as individuals with knowledge (and refused to do so in the April 1, 2026 meet and confer) — a glaring omission given their documented roles. *See* Exs. D, F, and G.; Ex. A at ¶ 23. These individuals clearly have information relating to the allegations in this case and should have been included in Defendant's ESI search.

### A. SHRM Should Not Be Allowed to Interfere with Plaintiff's Rights Under Rule 30 to Obtain Evidence through Depositions.

#### 1. SHRM Should Not be Allowed to Cap the Duration of Depositions of Witnesses who Testify in their Individual Capacity and also as a 30(b)(6) Designee at One Day/Seven Hours.

The Plaintiff is working to schedule depositions and has noticed a 30(b)(6) deposition. Ex. P. While negotiations on topics and designations of corporate witnesses are ongoing, SHRM has taken the position that if a person is both a 30(b)(1) fact witness and the 30(b)(6) corporate designee, the combined deposition time for that person should be capped at one day/seven hours total. Ex. A at ¶ 24.

"A deposition of a deponent in his individual capacity differs from that of a deponent as a corporate representative." *Martin v. Bimbo Foods Bakeries Distrib.*, LLC, 313 F.R.D. 1, 9 (E.D.N.C. 2016). "A Rule 30(b)(6) designee speaks as the corporation and testifies regarding the knowledge, perceptions, and opinions of the corporation. However, when the same deponent testifies in his individual capacity, he provides only his personal knowledge, perceptions, and opinions." *In re C.R. Bard, Inc. Pelvic Repair Sys. Litig.*, Civil Action No. 2:10-cv-01224, 2013 WL 1722998, at 1 (S.D.W.V. April 22, 2013) *(citing U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). Testimony provided by a witness in their individual capacity would not be cumulative or duplicative of 30(b)(6) testimony by the same witness because, in one instance, the witness is testifying on their own behalf and, in the other instance, as a corporate representative.

*See In Re: Motor Fuel Temperature Sales Prac. Litig.*, Case No. 07-MD-1840-KHV, 2011 WL 1377824, at * 3 (D. Kan. Aug. 5, 2011).

The Federal Rules of Civil Procedure do not support SHRM's position that the cap for deposition time of a person testifying as a 30(b)(1) fact witness and also as 30(b)(6) corporate designee is one day/seven hours. To the contrary, in stating that designees "must testify about information known or reasonably available to the organization," Rule 30(b)(6) is clear that "[t]his paragraph (6) does not preclude a deposition by any other procedure allowed by these rules. Further, the Committee notes on the 2000 amendments to Rule 30 state, "[f]or purposes of this durational limit [of seven hours], the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." For all these reasons, SHRM should not be allowed to cap the duration of a deposition at one day/seven hours for any person who testifies as both a 30(b)(1) fact witness and also as 30(b)(6) corporate designee.

### 2. <u>SHRM Stonewalling Access to Multiple Witnesses is Prejudicing Plaintiff.</u>

On several occasions, Plaintiff has asked Defendant whether Kristen Howe, Katharine Panessidi, Alison Sancinito, and Melissa Turk were SHRM representatives and whether they were represented by Defendant for purposes of deposition and litigation. *See, e.g.*, Ex. I; *see also* Ex. A at ¶ 21. As of the April 1, 2026 meet and confer, SHRM's counsel still had no answer, and as of the filing date, has still not provided one. *Id*. No legitimate basis for a more than month-long delay in answering a simple representation question exists.

Despite not answering this question, Defendant has taken a firm stance against Plaintiff contacting these witnesses, "unless and until we notify you that we do not represent them in this matter and any attempt to do so will be construed as an improper effort to speak with a represented or potentially represented individual without counsel present." Ex. Q, pg. 1. SHRM,

thus, is simultaneously refusing to confirm representation on timely basis *and* threatening Plaintiff with professional conduct sanctions if Plaintiff attempts to contact the witnesses directly.

No attorney, including those representing Plaintiff, wants to risk running afoul of rules pertaining to professional responsibility. SHRM's actions create an impasse that is entirely of SHRM's making and that directly prejudice Plaintiff's ability to conduct discovery. The prejudice is concrete and growing. With the June 12 discovery deadline approaching and depositions being scheduled for late April and May, Plaintiff cannot: (a) serve deposition notices directly on Howe, Sancinito, or Turk if they are unrepresented; (b) issue Rule 45 subpoenas without knowing whether they are represented; or (c) hold counsel's calendar for deposition dates that SHRM's counsel will not commit to. SHRM's refusal to answer has effectively frozen the scheduling of depositions for these individuals and forced Plaintiff to risk either improper *ex parte* contact or missing the window to depose key witnesses.

The question of whether SHRM represents Panessidi, Howe, Sancinito, and/or Turk is one SHRM should be able to answer. Its refusal to do to so, coupled with threats that direct contact by Plaintiff with these witnesses will be viewed as an improper attempt to contact represented parties "unless and until" SHRM notifies Plaintiff that it does not represent them is an improper tactic to use. SHRM is hindering Plaintiff from pursuing essential discovery and, if not remedied, will result in prejudice to the Plaintiff. The Court should order Defendant to state whether it represents these individuals.

### B. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order compelling Defendant to provide complete and responsive ESI by conducting an ESI search

consistent with Plaintiff's letter of March 26, 2026 regarding the proposed ESI protocol; provide complete discovery responses; and to comply with its Rule 30(b)(6) obligations by providing witness(es) on separate days, as necessary, from any Rule 30(b)(1) deposition, and for any such other relief as the Court deems appropriate.

Respectfully submitted,

  /s/ Mary E. Kuntz

Mary E. Kuntz
Virginia Bar No. 76947
Stephen B. Pershing
Virginia Bar No. 31012
Lori B. Kisch
D.C. Bar No. 491282
(Admitted *pro hac vice*)
Anna Kathryn B. Barry
D.C. Bar No. 1719493
(Admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
lkisch@kcnlaw.com
akbarry@kcnlaw.com

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of Plaintiff's Motion to Compel SHRM to Comply with Its Discovery Obligations was served by electronic mail on April 17, 2026, on counsel of record for SHRM as follows:

Lauren M. Bridenbaugh
Leslie P. Currie
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102

lbridenbaugh@littler.com
lcurrie@littler.com

Tanja L. Darrow (admitted *pro hac vice)*

  /s/ Mary E. Kuntz_____
    Mary E. Kuntz