**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| FIONA TORRES,<br><br>Plaintiff,<br><br>v.<br><br>SOCIETY FOR HUMAN RESOURCE MANAGEMENT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:25-cv-2360 (PTG/WBP)<br><br>Hon. Patricia Tolliver Giles, J.<br>Hon. William B. Porter, M.J. |

**PLAINTIFF'S DISCOVERY REQUESTS**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Rule 26 of the Eastern District of Virginia Local Civil Rules, and this Court's Order of January 21, 2026 [Dkt. No. 13], Plaintiff Fiona Torres ("Torres") requests that Defendant Society for Human Resource Management ("SHRM") produce the documents responsive to the Requests below and answer the Interrogatories described below. Plaintiff requests that SHRM produce copies of responsive documents and other tangible things to Torres' counsel. For purposes of these requests, the following instructions and definitions shall apply.

**INSTRUCTIONS**

1. These instructions and definitions should be construed to require responses based upon information available to Defendant, as well as Defendant's counsel, representatives, current and former employees, and other agents.

2. Pursuant to Fed. R. Civ. P. 34(b), all documents produced are to be organized and labeled in a manner that indicates the particular request to which the document is responsive.

3. Requests for documents shall be deemed to include requests for any and all transmittal sheets, cover letters, exhibits, enclosures, or any other annexes or attachments to the documents, in addition to the documents themselves. If the requested documents are maintained in a file, the file folder is included in the request for production.

4. Any "electronically-stored information" ("ESI") responsive to these requests shall be produced in its native format and consistent with any ESI agreement between the parties. Requests for emails and texts are requests for such emails, messages, and texts from all SHRM email, mobile devices, and other channels of communication as well as any personal accounts and devices which may contain responsive information to these requests. The undersigned counsel requests that counsel confer about finding accessible formats for any ESI produced.

5. If Defendant is unable to produce a document responsive to these requests, state in writing why it cannot produce the document, and if its inability to produce the document is because it is not in its possession or in the possession of a person from whom Defendant could obtain the document, provide a brief description of the responsive document and state the name, street address, telephone number, and email address of any person(s) believe to have the original or a copy of any such document.

6. In the event that any document or things has been destroyed, discarded, or otherwise disposed of, such document is to be described by date, location, number of pages, attachments, appendices, exhibits, author(s), addresses(s), recipient(s), title, and subject matter; such thing shall be described with the greatest particularity possible. In addition, state the reason for disposal or destruction of the document or thing, and identify each and every person who either authorized disposal or destruction of the document or thing or who disposed of or destroyed the document or thing.

7. If Defendant contends that any request is ambiguous, Defendant shall set forth the matter deemed ambiguous and the construction selected or used in responding to the request. If the Defendant contends that it would be unreasonably burdensome to produce all of the documents called for in response to any request, then as to that request Defendant shall: (a) produce all documents that are available without unreasonable burden; and (b) describe with particularity the burden that would be imposed by the production of all of the documents called for in response to the request.

8. If Defendant objects to a portion or an aspect of any request, state the grounds of the objection with specificity and respond to the remainder of the request.

9. When any claim of privilege is asserted in responding to any discovery asked for in these requests, within the earlier of (7) seven days of asserting the privilege or the date discovery closes, provide a privilege log to the other party. The privilege log shall identify the nature of the privilege which is being claimed and provide the following information for each item in a privilege log or similar format: (a) Bates Number(s) or Document ID (for native files); (b) type (e.g., document thing, or ESI); (c) the date of the document; (d) the author(s) of the privileged information; (e) the recipients (s) of the privileged information; (f) the subject matter of the privileged information; and (g) the basis of the claim of privilege.

10. Where a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged materials. If a privilege is asserted with regard to the material contained in a document, the party claiming must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the

person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

11. These discovery requests are continuing in nature, such that SHRM is required to file supplementary answers or responses if it obtains further or different information or additional documents after initially responding to the discovery requests. Such supplementation should be made in a timely fashion pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

12. Unless otherwise indicated, these requests relate to the period of time from January 1, 2019, through the present.

## **DEFINITIONS**

When used in these requests, unless a contrary meaning clearly applies in the context of a particular request, the following definitions shall apply:

1. The term "ADA" refers to Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.*

2. The term "VHRA" refers to the Virginia Human Rights Act, Va. Code §§ 2.2-3900, *et seq.*, as amended by the Virginia Values Act of 2021.

3. The terms "you," "your," "Defendant," and "SHRM" refer to the Society for Human Resource Management and its current and former officials, board members, employees, independent contractors, partners, officers, agents, attorneys, trustees, or representatives, as well as any other persons or entities acting on behalf of SHRM during the time frame relevant to these document requests.

4. The term “employee,” “supervisor,” or “manager” refer to current and former employees, supervisors, and managers.

5. The term “including” means including, but not limited to.

6. The terms “electronically-stored information” or “ESI” and “things” have the same meaning as those terms when used in Rule 34 of the Federal Rules of Civil Procedure.

7. The term "document" as used herein shall have the full meaning embodied in Rule 34 of the Federal Rules of Civil Procedure, including but not limited to ESI.

8. The term "document" includes, without limitation, all originals or copies, if the originals are not in the possession of SHRM, its attorneys, agents, or representatives, and all non-identical copies (whether by reason of alterations or of additional notations).

9. The term "document" includes writings, texts, drawings, graphs, charts, photographs, sound recordings, images, voice records, film, video tapes, and other data or data compilations—stored in any medium from which information can be obtained either directly, or, if necessary, after translation into a reasonably usable form. This includes materials stored on phones, computer memories or chips, hard disk, floppy disks, CD-ROM, or any other storage vehicle, regardless of whether it consists of an active or deleted file or file fragment.

10. The term "document" further includes, without limitation, correspondence, memoranda, electronic mail, texts, facsimile transmissions, reports, records, notes, diaries, chronologies, written statements, letters, summaries and other written records and recordings of any conferences, meetings, visits, interviews or telephone conversations, telegrams, studies, messages, analyses, invoices, bills, books, magazines, newspapers, booklets, tapes, logs, calendars, circulars, bulletins, notices, instructions, minutes, questionnaires, surveys, transcripts

of testimony, affidavits and declarations, printed matter (including published articles, speeches, presentations and newspaper clippings), press releases, and other communications.

11. The term "document" also includes all drafts of a document and all non-identical copies that differ in any respect from the original (e.g., notations or alterations). Drafts and non-identical copies are considered a separate document for purposes of these document requests.

12. The term “oral communication” means any conversation, telephone conversation (including electronic implementations, such as Zoom, Skype, Teams, etc.), statement, discussion, debate, interview, argument, disclosure, consultation, meeting, and any other manner of oral utterance.

13. The term “person” refers to the plural, as well as the singular, and includes any natural person, firm, association, partnership, joint venture, corporation or entity.

14. The term “relating to” means pertaining to, supporting, concerning, describing, referring to, evidencing, reflecting, showing, mentioning, discussing, constituting, contradicting, refuting, or in any way logically or factually connected to the matter discussed.

15. The words “or” and “and” shall be read in the conjunctive and not in the disjunctive wherever they appear and neither of these words shall be interpreted to limit the scope of the request.

16. The use of the verb in any tense shall be construed as the use of the verb in all tenses and the singular form shall be deemed to include the plural, and vice versa.

17. The terms “identify” or “identification,” when used with respect to a document, means the Bates number or where applicable, the ID number, of the document, the document’s full name, a general description of the document, the author(s) of the document, the date on

which it was created, and the name(s) of any and all recipients of the document, the custodian of the document, and current or last known location of the document.

18. The terms "identify" or identification," when used with respect to conversations and written or oral communications, means the date on which each conversation or communication occurred, the persons making such conversation or communication, the substance of the conversation and communication, the names and addresses of every person present when the conversation or communication occurred, and the place where the conversation took place.

19. The term "identify" or "identification," when used with respect to a person, means the individual's full name, current or last known home address, telephone number, and email address, and current or former job title. If the person is not an individual, state the full name of the entity involved, the type of entity (e.g., corporation, partnership, etc.), and the current or last known address and principal place of business of such entity.

20. The term "identify," when used in connection with an act, occurrence, or statement means to provide the following information: (a) the substance of the event or events constituting such act, occurrence or statement; (b) the name, title, division, and last-known address and telephone number of each individual present when such act, occurrence or statement occurred; and (c) whether any minutes, notes, transcript, memoranda or recordation of such act, occurrence or statement was made, and the identity of individuals having custody of such documents.

21. The term "communications," as used herein, means all conversations, facsimile transmissions, electronic mail, telephone calls, voice mail, video and/or other recorded transmissions, and any other written, oral or other forms of communications, including texts.

22. The term "correspondence" means any document sent or delivered by one or more persons to one or more persons by any method of transmission.

23. The term "personnel file" shall include, but is not limited to, any and all records maintained either in the normal course of business or for any special purpose with respect to the individual, whether retained in a single file or separately. Such documents shall include, but are not limited to documents related to hire; promotions; performance reviews or assessment; performance improvement plan; discipline; productivity reports; employment histories or summaries; records of contact information, including residential and email addresses and telephone numbers; complaints made about or by the employee and any subsequent investigations; documents reflecting, relating to, and/or leading up to offers of employment, conditional offers of employment, rescission of offers of employment or conditional offers of employment, termination notices; job assignment or classification records; compensation, benefits, and payroll records; and other similar records.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

1. Produce all documents related to SHRM's disability or medical accommodations policies and practices applying to its employees and applicants, including policies, handbooks, guidelines, and training.

2. Produce all documents including, manuals, policies, practices, procedures, directives, handbooks, training materials, and program statements, relating to SHRM's efforts to comply with the ADA and VHRA, and the process and steps SHRM takes when an employee or applicant requests an accommodation, including SHRM's engagement in the interactive process, deliberations, evaluation, and decision making regarding an accommodation request.

3. Produce all documents including, manuals, procedures, policies, practices, directives, handbooks, training materials, program statements, and presentations, relating to considerations and steps SHRM advises other organizations to take to comply with the ADA and VHRA, in response to an accommodation request from an employee or applicant, including advice for the organization's engagement in the interactive process, deliberations, evaluation, and decision making regarding an accommodation request.

4. To the extent not already provided, produce all information that SHRM has provided to any organization (at any time) related to the organization's obligations to comply with the ADA or VHRA, regarding an employee or applicant's accommodation request(s) to bring a service animal to the workplace.

5. To the extent not already provided, produce all information that SHRM has provided to any organization (at any time) related to the organization's obligations to comply with the ADA or VHRA, regarding an employee or applicant's accommodation request(s) related to their disclosure of Type 1 diabetes.

6. Produce all policies and documents related to SHRM's hiring process including any policies or practices related to conditional offers or the rescission of conditional offers.

7. Produce all documents including, manuals, procedures, policies, practices, directives, handbooks, training materials, program statements, and presentations, relating to considerations and steps SHRM advises other organizations to take regarding conditional offers or the rescission of conditional offers.

8. Produce the applicant file for Torres, including all documents related to her application, SHRM's consideration for her employment, SHRM's offer or conditional offer of employment, and rescission of its offer of employment.

9. Produce all documents describing the job duties and responsibilities and essential functions for the position for which Torres was offered employment, and which was later rescinded.

10. Produce the personnel file of the individual who filled the position for which Torres had been offered employment, as well as the personnel file(s) of any other individual(s) who have since held the position.

11. Produce all documents referencing or relating to the accommodation request made by Torres and any alternative offers of accommodation made by SHRM to accommodate Torres, including communications about and analysis of the request by Torres and SHRM's alternative offers.

12. Produce all documents referencing or relating to SHRM's decision to deny Torres her request for an accommodation to bring her service dog with her to the workplace, SHRM's alternative offers of accommodation, and SHRM's decision to withdraw its offer of employment to Torres, including all communications among SHRM employees or other individuals or consultants about those decisions.

13. Produce all documents relating to SHRM's requests for supplemental medical and other information from Torres related to her accommodation request, including all communications among SHRM employees or other individuals or consultants, related to such supplemental requests and related information provided by Torres.

14. To the extent not already produced, produce all documents relating to any analysis conducted by SHRM or any other individual or entity regarding Torres' request for an accommodation to bring her service dog with her to the workplace and any information provided by Torres related to her request.

15. Produce all documents, including calendar entries, meeting notes and scheduling communications, regarding meetings with or about Torres, related to her accommodation request, or her employment with SHRM, by any SHRM employee or consultant.

16. Produce all documents related to any burden or hardship, to SHRM or any of its employees, invitees, or functions, considered or assessed by SHRM in response to Torres' request for an accommodation, or intended by SHRM to be used in any defense to Torres' claims in this suit.

17. Produce all documents relating to the interactive process between SHRM and Torres with respect to her request for an accommodation to bring her service dog to the workplace, including SHRM's engagement in the process with Torres, and any analysis of the job duties and essential functions for the position Torres would fill.

18. Produce all documents relating to any finding by SHRM, or finding or advice by any consultant, individual or entity, retained by or relied upon by SHRM, that Torres was unable to perform the duties of the position for which she had been offered employment, including but not limited to the documents SHRM gathered and/or used to make its decision.

19. Produce all documents referencing or relating to any discussions or communications by SHRM or any of its employees or agents about Torres, her request for an accommodation, or her service dog.

20. Produce all documents referencing or relating to SHRM's disability or medical accommodation decisions for other employees or applicants who made such requests, as well as any related documents rescinding any job offers or terminating any employees rather than providing such requested accommodations.

21. Produce all documents related to complaints of disability discrimination and failure to accommodate claims made by employees or applicants against SHRM as well as documents related to the outcome of such complaints.

22. Produce all documents (not limited in time) referencing all training, including documentation to demonstrate completion of any training, provided to any individual involved in assessing, recommending, determining, or denying whether to grant Torres her requested accommodation to bring her service dog to the workplace, or in deciding to rescind Torres' offer of employment.

23. Produce all written statements by witnesses or potential witnesses, signed and/or unsigned, regarding the claims and defenses in the instant litigation.

24. Produce SHRM's document retention policies.

25. Produce organizational charts for SHRM.

26. Produce all documents identified in, or used in preparing your answers to, Torres' Interrogatories.

27. Produce all documents regarding or concerning any arguments or defenses SHRM will or may raise in connection with this matter.

28. For each individual SHRM intends to call as an expert witness, provide copies of their CV, publications, and previous expert testimony.

29. Produce all insurance policies in which SHRM is an insured for employment-related acts or omissions, including but not limited Employment Practices Liability Insurance.

30. Produce all documents related to notification to SHRM's insurer as well as documents provided to SHRM's insurer for consideration regarding complaints of disability discrimination and failure to accommodate based on a disability.

**PLAINITFF'S INTERROGATORIES**

1. Identify each person with any knowledge regarding the factual allegations set forth in the Complaint and factual responses provided in SHRM's Answer to the Complaint, with a description of the knowledge held by each person.

2. State the factual basis for each numbered defense and each affirmative defense raised in SHRM's Answer to the Complaint and identify each person with knowledge of the factual basis stated.

3. Identify each person who had any role in the consideration of, or decision to deny, Torres' request for an accommodation to bring her service dog to the workplace, or to withdraw her offer of employment, with a description of each such individual's role in, or contribution to, such consideration or decision.

4. Identify all individuals who supported or expressed support of Torres' request for an accommodation to bring her service dog to the workplace, describing the reason(s) for such support by each individual identified.

5. Identify all individuals who disagreed or expressed disagreement with Torres' request for an accommodation to bring her service dog to the workplace, describing the reason(s) for such disagreement by each individual identified.

6. Identify all individuals who disagreed or expressed disagreement with the decision to rescind SHRM's offer of employment to Torres, describing in detail the reason for such disagreement.

7. State in detail the reason(s) why Torres' request for her accommodation to bring her service dog to the workplace was not granted and why her offer of employment was rescinded.

8. Identify all individuals with knowledge regarding (a) the reason(s) why Torres' request for accommodation to bring her service dog to the workplace was denied, and (b) the reason(s) why Torres' offer of employment was rescinded, providing explanation of the knowledge held by each individual.

9. If any concerns were raised by any individual with regard to Torres' request to bring her service dog to the workplace, state in detail the concerns that were raised, who raised the concerns, and all individuals who had knowledge of the stated concerns.

10. Identify all offers of accommodation made by SHRM in response to Torres' request for an accommodation, the dates that such offers were made, and any other accommodations that were proposed or considered within SHRM but not offered.

11. Describe in detail all the essential functions of the Senior Specialist position in SHRM's Product Management Department for which Torres was offered the position later rescinded, and the specific essential functions which SHRM determined that Torres was not able to perform.

12. Identify each person who supplied information for or otherwise contributed to answering Torres' Interrogatories and Document Requests, and with respect to each person, state the subject matter of each person's information or other contribution.

Respectfully submitted,

*Lori Kisch*

______________________________

Stephen B. Pershing
Virginia Bar No. 31012
Lori B. Kisch
D.C. Bar No. 491282
(Admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
spershing@kcnlaw.com
lkisch@kcnlaw.com

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by electronic mail on February 11, 2026, on counsel of record for SHRM as follows:

Lauren M. Bridenbaugh
Leslie P. Currie
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lbridenbaugh@littler.com
lcurrie@littler.com

Tanja L. Darrow (admitted *pro hac vice)*
LITTLER MENDELSON, P.C.
633 West 5th Street, 63rd Floor
Los Angeles, CA 90071
tdarrow@littler.com

*Counsel for Defendant*

*Lori Kisch*

______________________________

Lori Kisch