KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.

ATTORNEYS AT LAW

Lori Kisch
LKisch@kcnlaw.com
Desk: 202-331-0581
Fax: 866-452-5789

March 26, 2026

**VIA EMAIL**

Lauren M. Bridenbaugh, Esq.
Leslie P. Currie, Esq.
Tanja L. Darrow, Esq.
Littler Mendelson, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102

Re: Torres v. Society for Human Resource Management, Case No. 1:25-cv-2360

Dear Counsel:

We are writing regarding SHRM's search for ESI. You notified us, for the first time, on March 24, 2026, regarding the search terms used by SHRM. We were quite surprised to see what a limited search was conducted. As an initial matter, you did not provide an explanation of any time restriction that may have been included in the search for each of the search terms provided. If there was any time restriction applied, we ask that you share that. Please confirm that all search terms were used for each of the following custodians, Nicole Belyna, Kristen Howe, Jim Link, Katharine Panessidi, Alison Sancinito, Melissa Turk, Deborah Zoerkler ("Identified Custodians").

## I. ESI and Other Deficiencies Discovered From Initial Document Review

We note that it appears that SHRM withheld information in its discovery responses, as it did not identify Hanton Walters, George Rivera, or Nick Schacht as individuals who were involved in and have information related to the Plaintiff's claims and allegations. Hanton Walters appears on several emails, but we do not know if all of his ESI has been searched. We discovered Nick Schacht in an email that he was an approving officer for Plaintiff's offer. We discovered George Rivera was also involved, as he was included on that same email. For such significant individuals to be withheld from SHRM's Answer to Interrogatory No. 1 in Plaintiff's First Discovery Request, is glaring. It does not appear we have any emails from George Rivera and only one from Schacht. We ask that SHRM rectify this immediately and include them in any searches for ESI and responsive documents more generally. We also request that SHRM amend its Answers to Interrogatories to explain the scope of the knowledge each holds.

Although this is not an exhaustive list and merely for illustration, additional examples of deficiencies which we noticed from production include the following:

(1) No emails or texts were produced notifying the hiring officials (Howe, Panessidi, Sancinito, and Turk) that Plaintiff's offer of employment was rescinded. It is hard to believe that there would be no documentation regarding the rescission to these individuals, who would have expected to work directly with and/or supervise the selectee. We renew our request that the ESI for the Identified Custodians be searched without search terms to ensure that all responsive documents have been produced. To limit burden, we will agree that their ESI may be searched without search terms for the limited period of June 1, 2024 to July 31, 2024.

(2) We have only one email from Jim Link, which is one giving his approval of Plaintiff's job offer. This is surprising given the description by SHRM in Answer to Plaintiff's Interrogatory No. 1. In its Answer, SHRM states the following with regard to Mr. Link's involvement:

> "Mr. Link is the Chief Human Resources Officer at SHRM and reviewed the information and documentation provided by Ms. Torres as regards to her request for accommodation, engaged in attorney-client privileged conversations with Ms. Belyna and legal counsel regarding Ms. Torres' request for accommodation, and decided that Ms. Torres did not require an accommodation in the form of her service dog and identified and decided the accommodations to offer Ms. Torres. After Ms. Torres rejected those accommodations and ceased engagement in the interactive process with SHRM, Mr. Link decided to rescind SHRM's conditional job offer to Ms. Torres. Mr. Link also has knowledge of SHRM's workplace policies including relating to requests for accommodation."

Given the wide range of Mr. Link's connection with the Plaintiff's requests for production, it is not credible that there are no other emails from Mr. Link -- even if SHRM intends to argue that some of his emails are privileged. We of course will review any designations of Mr. Link's email as privileged, once we receive SHRM's privilege log, and will respond with any objections we may have. We ask that SHRM produce, without delay, all non-privileged emails to, from, or in which Mr. Link is copied, that are responsive to Plaintiff's document requests.

(3) There are several emails between Ms. Belyna and Hanton Walters, but there are no emails where Mr. Link replies, even though Mr. Link is copied on all of the emails. Please confirm that there are no reply emails from Mr. Link to these emails. If they exist, we ask that you produce them without delay.

(4) While we have received calendar or meeting invites for Ms. Torres' interviews, SHRM's production contains no calendar or meeting invites between SHRM employees indicating meetings to discuss Ms. Torres' reasonable accommodation request and/or the decision to rescind the offer of

employment. Please produce them without delay or confirm that no such calendar or meeting invites exist.

(5) No meeting notes were produced regarding Plaintiff's accommodation request and the rescission of her offer of employment. Please produce all such notes without delay or confirm that none exist for any of the Identified Custodians, Hanton Walters, or anyone else who was involved in the consideration of Plaintiff's accommodation request or the rescission of her offer of employment.

**II. ESI Search Concerns and Questions**

Please confirm that all of the search terms provided in your email of March 24, 2026, were used for all ESI relating to each of the Identified Custodians and all locations where they may store such ESI, regardless of whether it was in their computer, phones, the cloud, or any other devices or location. If that is not the case, please identify the sources where SHRM searched. We are concerned that SHRM has not properly searched for ESI, even for the terms that it has identified, because having reviewed the documents that were produced on March 20, 2026, we see no meeting invites, texts, slack, signal or other such documents relating to Plaintiff's reasonable accommodation request or the rescission of her offer. Please confirm immediately whether such platforms were searched and identify any other platforms searched as well.

Although we do not have enough information to know the scope of all custodians who should have been included in SHRM's ESI search, the following additional individuals should have been included: Hanton Walters, George Rivera, and Nick Schacht. Please confirm that all of their ESI will be included in searches.

Additionally, you provided what appears to be 28 term searches. For each one there is a connector of w/5 or w/10 applied in each instance. Please advise whether that signifies within 5 or 10 characters, words, paragraph, or something else.

We raise several concerns regarding the searches. Based on the search terms provided, SHRM did not conduct an adequate search for all ESI responsive to Plaintiff's discovery requests and a broader search would likely have produced additional responsive documents.

(1) SHRM did not search for all documents with Plaintiff's name because the search limited the scope of documents referencing Plaintiff's name to only those documents which also included another term.

(2) SHRM further restricted the search for documents specifically mentioning Fiona Torres restricting the second term to w/5 or w/10 of Plaintiff's name.

(3) SHRM did not search for the words disabled, ADA, VHRA, breaks, leave, or other terms essential to the allegations and claims in this case.

(4) In addition to documents which may specifically reference Fiona Torres, Plaintiff's discovery requests go beyond those which may mention her specifically. For example, if there was internal discussion at SHRM regarding Ms. Torres' request for an accommodation, but it did not specifically reference her name, those documents would be responsive. If there were discussions of any hardship for SHRM to accommodate her service dog that did not specifically mention Ms. Torres' name, that would be responsive.

(5) Other than conducting two narrow searches without plaintiff's name, which sought documents related to the title "senior specialist," SHRM did not conduct any ESI search for any other documents unrelated to Plaintiff, but still related to the claims and defenses in the case, even though numerous document requests sought such information.

**III. Proposed ESI Searches**

(1) We request the following searches for the Identified Custodians from the date of Plaintiff's application to the present:
   a. Fiona or Torres, or accommodat~, or diabetes, or dog, or animal, or disabilit~, or discrimin~, or essential, or duties, or glucose, or hypoglycem~, or CGM, or monitor, or Joshi, or Armellini, or "continuous glucose monitor", or insulin, or food, or offer, or pump, or sugar, or hardship, or burden, or ADA, or VHRA, or rescind~, or rescind, or rescission, or seizures, or "slurred speech", or dizz~, or faint~, or blurred, or blackout, or "mechanical monitor", or doctor, or consciousness, or "car", or "accident", or commut~, or "life-threatening", or "medical device", or ADA, or VHRA, or disability, or disabled, or "interactive process".

(2) Other than for the individuals identified in the prior request, conduct a search with the following search terms for ESI for Hanton Walters, George Rivera, Nick Schacht, any HR employee, and any other employee who was involved in or considered whether to grant Plaintiff her requested accommodation, gave input into that decision, or was involved in any way in the consideration, decision, or provided input into rescinding Plaintiff's job offer:
   a. Fiona, or Joshi, or Armellini (with a date restriction from date of Plaintiff's application through the present)
   b. Torres and accommodat~, or diabetes, or dog, or animal, or disabilit~, or discrimin~, or essential, or duties, or glucose, or hypoglycem~, or CGM, or monitor, or Joshi, or Armellini, or doctor, or "continuous glucose monitor", or insulin, or food, or drink or offer, or pump, or sugar, or withdraw, or offer, or break~, or leave, or hardship, or burden, or ADA, or VHRA, or rescind~, or rescission, or seizures, or "slurred speech", or dizz~, or faint~, or blurred, or blackout, or "mechanical monitor", or doctor, or consciousness, or "car", or "accident", or commut~, or "life-

threatening", or "medical device", or ADA, or VHRA, or disability, or disabled, or "interactive process", or effective (with a date restriction from date of Plaintiff's application through the present)

c. Dog, or animal, or "service animal", or CGM, or "continuous glucose monitor", or insulin, or hypoglycem~, ADA, or VHRA, or disabled, or "interactive process", or Joshi, or Armellini. (with a date restriction from January 1, 2019 through the present).

We remain open to talking through the ESI searches for SHRM and taking under advisement any preliminary results from the terms we have set forth above, or any other considerations that you believe are important to share.

Very truly yours,

__/s/ Lori Kisch_______________
Lori B. Kisch
Mary Kuntz
Anna Kathryn B. Barry
Stephen B. Pershing
Kalijarvi, Chuzi, Newman & Fitch, P.C.