# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| **FIONA TORRES,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:25-CV-02360** |
| **SOCIETY FOR HUMAN RESOURCE MANAGEMENT,** | |
| **Defendant.** | |

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Plaintiff Fiona Torres ("Plaintiff" or "Ms. Torres") seeks to compel Defendant Society for Human Resource Management ("Defendant" or "SHRM") to conduct facially overly broad and burdensome discovery for electronically stored information ("ESI") despite not identifying a single deficiency in SHRM's discovery responses or document production to justify these searches; demands searches of SHRM's in-house legal counsel's ESI as well as irrelevant and disproportionate other individuals, including "any HR employee" regardless of their (lack of) involvement in the matters at issue herein; and misrepresents to the Court communications with SHRM's legal counsel in this matter as to the 30(b)(6) deposition. Plaintiff's ESI demands are particularly galling when Plaintiff is simultaneously refusing to expend the cost of having her cell phone imaged or otherwise produce approximately 49 responsive voice notes ranging in length from approximately 23 seconds to nearly 15 minutes; and determine if an imaging of her phone can recover metadata as to approximately 10 messages Plaintiff sent acquaintances that she admits to deleting. Plaintiff's Motion to Compel ("Motion") should be denied.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On February 11, 2026, Plaintiff served her First Set of Discovery Requests on SHRM. Dkt. No. 21-2. On February 20, Plaintiff served her Second Set of Discovery Requests on SHRM. Dkt. No. 21-3. Defendant timely served its Objections to Plaintiff's First Set of Discovery Requests on February 26. **Exhibit 1: Def's Discovery Objections Email**. On March 9, SHRM timely served its Objections to Plaintiff's Second Set of Discovery Requests. **Exhibit 2: Def.'s Second Discovery Objections Email**. Two hours before close of business on March 13, the same day SHRM's responses to Plaintiff's First Set of Discovery Requests were due, Ms. Kisch, sent a letter alleging deficiencies relating to SHRM's Objections to both sets of Plaintiff's discovery requests. **Exhibit 3: Email re Ltr re Def.'s Deficient Objections**. As SHRM's responses were due that day, SHRM could not address Plaintiff's concerns in the soon-to-be-served discovery responses at that time. Therefore, SHRM timely served its initial Answers and Responses to Plaintiff's First Set of Discovery Requests on March 13 and replied to Plaintiff's letter alleging deficiencies in SHRM's Objections on March 23. Dkt. No. 21-4; Ex. 3. That same day, March 23, it also served supplemental responses to Plaintiff's First Set of Discovery Requests and its initial responses to Plaintiff's Second Set of Discovery Requests. *See* Dkt. Nos. 21-6, 21-5. SHRM never received a response to its March 23 letter as to Plaintiff's concerns of deficiencies on SHRM's discovery objections and therefore reasonably presumed the issues were resolved or Plaintiff was otherwise not pursuing them further.[1] SHRM has continued to supplement its document production if and when additional responsive documents are identified, as is its obligation under the Federal Rules of Civil Procedure, producing documents on March 20, March 31, April 6, April 17, April 21, and

---

[1] Plaintiff's counsel incorrectly alleged by email on March 31 that SHRM had not responded to this letter. *See* Dkt. No. 21-13.

April 22.

SHRM timely served its Initial Disclosures on February 17, identifying, in relevant part, four individuals who had interviewed Ms. Torres in relation to her application for employment with SHRM and decided to extend her an offer of employment, facts which are not in dispute in this matter. *See* Dkt. No. 8 at ¶¶ 25-26. SHRM indicated for various current and former managerial employees that they could be contacted thorough counsel. After Ms. Kisch continued to demand irrelevant and duplicative depositions of these four individuals and noticed their depositions for self-selected dates on March 23, SHRM advised Plaintiff on April 6 that it represented Katharine Panessidi, a current SHRM employee (although SHRM assumed this was obvious as Ms. Panessidi is a managerial employee still working for SHRM), and Kristen Howe, a former SHRM employee, in this matter and provided the last known contact information for Alison Sancinito and Melissa Turk. SHRM provided Plaintiff's counsel with Ms. Panessidi's and Ms. Howe's respective availability for depositions two days later, on April 8. As Ms. Bridenbaugh was attempting to schedule the deposition of a plaintiff traveling to the area from Texas for a deposition in another matter pending before this Court on May 18 or 19, counsel for Defendant were hoping to hear from that plaintiff's attorney before committing to a deposition of Ms. Panessidi on one of those two dates. By April 15, that opposing counsel had not gotten back to Ms. Bridenbaugh and SHRM therefore agreed to Ms. Panessidi's deposition on May 18 and Ms. Howe's deposition on May 19. On April 22, Plaintiff's counsel represented they are in the process of trying to make contact with Ms. Sancinito and Ms. Turk.

On February 24, the Parties had a call as to ongoing discussions as to a draft Stipulated Protective Order.[2] As the call was ending and defense counsel was trying to leave for another call,

---

[2] After protracted negotiations primarily centered on Plaintiff's refusal to agree to only use

Ms. Kisch asked about an ESI protocol and indicated they were interested in the process SHRM intended to undertake to search ESI and how SHRM planned to produce documents. Ms. Bridenbaugh advised that if Plaintiff wanted documents in a particular format to let Defendant know. As Ms. Bridenbaugh needed to get to another call and wished to potentially consult with e-discovery counsel as Ms. Bridenbaugh understood Ms. Kisch was concerned with technical specifications around ESI, she asked Ms. Kisch to send a list of what she was looking for. More than a week later, on March 6, Ms. Kisch emailed requesting SHRM share the list of search terms it planned to use to search ESI "so that we can make sure that the searches are targeted and as effective as possible" and indicated Plaintiff's belief she was entitled to weigh in on which custodians would be searched; stated "[o]nce we have an agreed upon list of search terms and custodians, we ask that you run a test and share the results …." Ms. Kisch further demanded that all custodians manually search their ESI without search terms "[i]n case anything is missed …." Dkt. No. 21-10 at p. 6.

On March 9, Ms. Bridenbaugh replied noting that SHRM declined to allow Ms. Torres to dictate SHRM's ESI review nor to conduct a manual review of ESI as it was overly burdensome, among other reasons. *Id.* at p. 5. On March 10, Ms. Kisch replied contending a manual search of ESI was not burdensome, that Plaintiff was not proposing specific search terms or custodians (despite previously indicating she wanted to weigh in on both), and demanding specific information on SHRM's ESI searches. *Id.* at pp. 3-4. Ms. Bridenbaugh responded on March 13, noting the numerous issues with Plaintiff's demands, including that Plaintiff had not raised any

discovery materials for purposes of this litigation, Ms. Kisch agreed the Parties had reached an impasse on or about April 1. Ms. Bridenbaugh thereafter indicated she would initially draft a Joint Motion for the Parties to submit each's preferred Protective Order to the Court. However, due to issues arising in other matters, Ms. Bridenbaugh was not able to send Plaintiff's counsel a draft until April 21.

actual concerns or deficiencies with SHRM's document production despite attempting to dictate SHRM's ESI review. *Id.* at pp. 1-2. On March 19, Ms. Kisch emailed complaining, in part, that more ESI had not been provided in SHRM's initial document production and now claiming SHRM was requiring Plaintiff to write search terms for the ESI, which was not accurate. Dkt. No. 21-11 at pp. 3-4.

On March 23, Ms. Kisch again complained, in part, that Plaintiff was entitled to discovery on discovery as to SHRM's ESI search efforts despite not identifying any ongoing deficiencies. Dkt. No. 21-12 at p. 7. Although Defendant's counsel reserved the right to supplement its document production, and did so on March 20 (and has continued to do so), on March 26, Ms. Kisch sent Defendant's counsel a letter contending Plaintiff's counsel thought it was "hard to believe" or "not credible" that certain documents Plaintiff apparently expected to exist had not been produced. Dkt. No. 21-8 at p. 2. For example, Plaintiff complained that SHRM had not produced calendar or meeting invitations. *Id*. at pp. 2-3. However, she pointed to no allegation that such calendar or meeting invitations existed other than that *she* thought they should. Plaintiff also demanded detailed information on the custodians and "sources" that SHRM searched, demanded that SHRM also search in-house counsel Hanton Walters' ESI, demanded that SHRM search two additional SHRM employees' ESI despite neither having anything to do with a matter at issue in this case; demanded SHRM direct certain custodians to manually search their emails and that these custodians make legal judgments on whether any emails were or were not responsive to Plaintiff's discovery requests; and demanded SHRM conduct extremely broad and burdensome searches. *See generally id*. Plaintiff's demands did not point to any deficiencies in SHRM's document production other than Plaintiff's disbelief that certain documents did not exist.

Despite the lack of any identified deficiencies, SHRM provided Plaintiff with the searches

run on ESI for documents responsive to Ms. Torres' discovery requests and has run additional searches in an effort to put to rest this issue on multiple occasions. Specifically, at Plaintiff's request for SHRM to run a search of just Ms. Torres' name without other connectors, SHRM ran a search of "Fiona w/2 Torres." SHRM promptly reviewed and produced any responsive hits. However, when notified this search had been run and responsive documents were produced, Plaintiff's counsel was incensed that a search was not run of just "Fiona" and just "Torres." Indeed, by email dated April 17, when SHRM noted it was unaware of any alleged deficiencies in its discovery responses or document production, Ms. Kisch contended Plaintiff had identified deficiencies, refused to state what those were, contended SHRM should know what they were, and strangely also alleged Plaintiff could not be expected to identify omissions from SHRM's document production despite claiming there must be omissions and therefore Plaintiff's ESI demands were warranted. Dkt. 21-15 at pp. 4-5. The same day, SHRM reiterated that it was not aware of any deficiencies in its discovery responses and that it would be more efficient if Plaintiff's counsel articulated what alleged deficiencies there were rather than Ms. Kisch's escalating contentions that Ms. Bridenbaugh was being intentionally obtuse for simply asking to be directed to what the problem was. *Id.* at p. 3.

In any event, in an effort to further allay Plaintiff's increasingly personal attacks on SHRM and its counsel, SHRM also ran searches for "Fiona" and "Torres" and further, given Plaintiff's disbelief that the decisionmaker, Jim Link, SHRM's Chief Human Resources Officer ("CHRO"), had not sent or received more emails on the decisions at issue in this matter, SHRM ran searches across all other custodians for Mr. Link's email address and his name. As this not surprisingly resulted in more than 4,500 hits, not including families, SHRM then re-ran these searches with connectors of either "diabetes" or "dog." SHRM thereafter reviewed and produced any responsive

results.

In addition, despite the heavy time and financial burden of Plaintiff's searches which she demands the Court order SHRM to conduct by way of her Motion, SHRM had its ESI vendor run Plaintiff's proposed searches on the custodians identified by SHRM.[3] Doing so resulted in 13,609 hits including families. At a reasonable review rate of 50 documents per hour, attorney time to review these documents, not including review time for privilege, would be more than 272 hours. *See, e.g., Brown v. Barnes & Noble, Inc.,* 474 F.Supp.3d 637, 645 (S.D.N.Y. 2019) ("The review process itself is time-consuming. The average rate of review is about 40-60 documents per hour, though the rate of review can vary considerably based on the complexity of the documents and the experience of the reviewers. Assuming a case involves review of 100,000 documents, it would take 2000 hours for an attorney to review these documents for production if reviewing them at a rate of 50 documents per hour."). At SHRM's counsel's average rates in this matter, 272 hours of review time, not including review time for privilege, would cost approximately $170,000. These costs do not include the costs related to the e-discovery vendor's time, costs related to processing the search hits, and the like. If SHRM were ordered to run these searches on the additional pst files Plaintiff has demanded, it would undoubtedly result in thousands of additional hits given the breadth of the proposed searches and significant additional costs.

On March 4, 2026, Plaintiff's counsel transmitted, in relevant part, a Notice of Rule 30(b)(6) deposition. *See* Dkt. No. 21-9. SHRM thereafter sent Plaintiff's counsel a letter with SHRM's objections and concerns as to the proposed 30(b)(6) topics on March 13. **Exhibit 4: Def.'s Response re Pl.'s Proposed 30(b)(6) Topics**. On March 19, Ms. Kisch demanded SHRM

---

[3] This did not include SHRM's in-house legal counsel, two additional individuals, and every single "HR employee" at SHRM, as Plaintiff demands.

designate the 30(b)(6) witness(es) within five days despite Plaintiff not responding to SHRM's letter raising objections and concerns with the proposed topics. Dkt. No. 21-11 at p. 4. Plaintiff did not respond to SHRM's concerns as to the 30(b)(6) topics until March 25. **Exhibit 5: Pl.'s Reply re Proposed 30(b)(6) Topics**. While SHRM was ready and willing to discuss this issue during an April 1 meet and confer call, Ms. Kisch and Ms. Kuntz elected to defer that discussion to another call to allow sufficient time to discuss other matters. Plaintiff did not provide SHRM with revised 30(b)(6) topics in light of SHRM's concerns until April 14 and did not reach out again to schedule a call on the same until on or about April 15. Counsel poke on the 30(b)(6) topics on April 20 and on April 22.

## II. STANDARD OF REVIEW

"Discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "A litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or that causes undue burden or expense to the opposing party. 437 U.S. at 353 ("[D]iscovery should be denied when a party's aim is to . . . harass the person from whom he seeks discovery."). Moreover, the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery. *See Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 425 (E.D.N.C. 1991) ("[n]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case.") (internal citations omitted).

The decision to grant or to deny a motion to compel discovery rests within the broad discretion of the trial court. *See Lone Star Steakhouse Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (citing *Erdmann v. Preferred Research, Inc.*, 852 F.2d 788, 792 (4th Cir. 1988));

*LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court.")).

## III.    ARGUMENT

### A.  Plaintiff Has Not Fulfilled Her Meet and Confer Obligations

Under Local Rule 7(E), "it shall be incumbent upon the counsel desiring [a motions] hearing to meet and confer in person or by telephone with his or her opposing counsel in a good faith effort to narrow the area of disagreement." Similarly, Local Rule 37(E) requires that counsel "shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy."

In the instant case, Ms. Kisch's Affidavit is misleading as to the Parties' conferrals. At no time has SHRM refused to produce a 30(b)(6) witness separate from a fact witness deposition. Rather, during the April 1, 2026, meet and confer, Ms. Bridenbaugh and Ms. Darrow simply asked opposing counsel if there was a need to separately depose an individual as the 30(b)(6) witness if they were already being deposed in their fact witness capacity. In other words, both the fact witness deposition and the 30(b)(6) deposition could take place on the same day. Indeed, this is how, in SHRM's counsel's experience, nearly every other 30(b)(6) deposition has ever proceeded in single plaintiff employment litigation. Ms. Kisch refused to entertain the idea and stated she wished to do the depositions on separate dates. That was the end of the matter as far as SHRM understood until it received this Motion. Indeed, had Plaintiff's counsel actually raised this apparent concern or question of whether SHRM was refusing to produce the 30(b)(6) designee, Defendant's counsel would have readily confirmed it was willing to produce a 30(b)(6) designee on a separate date from any fact witness deposition for the same individual. Plaintiff did not make those inquiries

prior to the filing of this Motion.

**B. SHRM Has Conducted a Reasonable and Proportionate ESI Search and Plaintiff Is Not Entitled to "Discovery on Discovery."**

Courts often use the phrases "discovery on discovery" or "meta discovery" to describe oftentimes wasteful and improper efforts to expand a party's discovery burdens and invade the attorney-client privilege and attorney work product doctrine by attempting to discover a party's efforts to comply with their discovery obligations. *See, e.g., Hanan v. Corso*, No. 95-0292, 1998 WL 429841, at *7 (D.D.C. Apr. 24, 1998) ("[D]iscovery is only permitted of information which is either relevant or likely to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). Plaintiff never explains why discovery about discovery meets that standard, no matter how liberally it is construed, nor any legal authority for the proposition that the federal courts deem the discovery process itself a fit subject for additional discovery."); *Orillaneda v. French Culinary Inst.*, No. 07-CV-3206, 2011 WL 4375365, at *6-*8 (S.D.N.Y. Sept. 19, 2011); *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) (rejecting plaintiffs' efforts to "seek another round of discovery, a stage in the litigation that can only be described as 'meta-discovery,' *i.e.*, discovery about the discovery").

Discovery is self-executing, and the Federal Rules of Civil Procedure do not grant parties the right to take formal discovery to test the sufficiency of each other's preservation or production efforts, absent evidence of misconduct or deficiency. *See Scherer v. FCA US, LLC*, No. 20-cv-2009, 2021 WL 5494463, at *3 (S.D. Cal. Nov. 23, 2021) ("Plaintiffs do not have a right to conduct discovery into Defendant's discovery methods."); *Freedman v. Weatherford Int'l*, No. 12-Civ-2121, 2014 WL 4547039, at *2-3 (S.D.N.Y. Sept. 12, 2014) (plaintiff's request for "discovery on discovery" denied for failure to provide adequate factual basis for finding that defendant's original discovery production was deficient); *Larsen v. Coldwell Banker Real Estate Corp.*, No. 10-00401-AG, 2012 WL 359466, at *7-9 (C.D. Cal. Feb. 2, 2012) (denying request

for witness to answer questions under oath regarding its ESI preservation, collection, and processing because plaintiff had not shown any bad faith in defendant's production and the "isolated examples cited" of alleged inadequacies in production "fail[ed] to demonstrate that Defendants have not reasonably and in good faith produced the documents ..."); *Orillaneda*, 2011 WL 4375365, at *8 (plaintiff was not entitled to conduct "discovery that is solely relevant to the sufficiency of the adversary's document production"—including about the defendant's search procedures and/or whether defendant's search efforts were "adequate"—"without [Plaintiff] first identifying facts suggesting that the [defendant's discovery] production is deficient," and noting that "specific statements" are required to prove alleged discovery deficiency instead of "generalities"); *Hubbard*, 247 F.R.D. at 31 (denying request for discovery on discovery about defendant's "process of preserving, locating and producing documents" because plaintiff's claims that "the production made is so paltry that there must be more" and/or "speculation that there is more," that the court characterized as "chasing the theoretical possibility that additional documents exist," does not justify such "meta-discovery" and, if allowed, would create a situation where "discovery would never end").

   1. **The Court Should Reject Plaintiff's Attempts to Dictate SHRM's Custodians, Search Terms, and Methodology**

Plaintiff's Motion rests on the erroneous premise that a responding party must negotiate and obtain agreement on custodians, search terms, date ranges, and data sources as to how it conducts ESI searches. The Federal Rules impose no such obligation. Consistent with widely accepted discovery principles, a responding party retains discretion to determine how it identifies and searches its own responsive materials, subject to its obligation to conduct a reasonable and proportional inquiry. *See The Sedona Principles*, Third Edition, 19 Sedona Conf. J. 1, Principle 6, at 123 (2018) ("neither a requesting party nor the court should prescribe or detail the steps that a

responding party must take to meet its discovery obligations"). Just as SHRM does not dictate how Plaintiff conducts her own searches, Plaintiff may not unilaterally impose her preferred search methodology on SHRM. Indeed, Plaintiff's efforts to obtain discovery on discovery are unsupported and Ms. Torres' reliance on *Daedalus Blue, LLC v. MicroStrategy, Inc.*, is misplaced. *See* Motion at 6. Unlike in that case where there were identified deficiencies in the defendant's discovery responses and document production, Ms. Torres has failed to do so here beyond vague and isolated pronouncements. Action No. 2:20cv551, 2021 WL 11709428 (E.D. Va. May 3, 2021). *See also Hubbard*, 247 F.R.D. at 31 (holding claim that "the production made is so paltry that there must be more" is "chasing the theoretical possibility that additional documents exist" and, if allowed, would result in a situation where "discovery would never end"); *Larsen*, 2012 WL 359466, at *7-9 (holding "isolated examples" are insufficient to show a defendant did not "reasonably and in good faith produce[] the documents …").

Indeed, Plaintiff's own Motion is facially incorrect as to what SHRM has and has not produced. Specifically, Plaintiff claims "SHRM has produced no internal memos, emails, texts, or any other ESI related to SHRM's internal discussions about Plaintiff's request for an accommodation, its denial of the same, and SHRM's recission of its offer of employment …." Motion at 4. This is simply not accurate. SHRM has produced numerous emails responsive to Plaintiff's document requests including partially redacted for attorney-client privileged communications, as described on SHRM's privilege log, as to "internal discussions" about these topics. SHRM has further advised Plaintiff repeatedly that no relevant custodians have any text messages responsive to her discovery requests. Plaintiff's complaint therefore is not that these documents have not been produced but that some of her requests do not exist and otherwise that SHRM conferred with its in-house ***legal counsel***. Indeed, Plaintiff has repeatedly contended that

some or all of SHRM's communications with its own legal counsel are not privileged, despite presenting no basis for such a contention. Further, as SHRM has repeatedly advised Plaintiff, the SHRM official who made the decisions in controversy, and those who consulted with him, oftentimes engage in verbal conversations in the office and/or over the telephone and, barring trying to invade the attorney-client privilege, she was free to ask them about at the depositions of these individuals.

Plaintiff's proposed search terms – particularly in light of the HR services that SHRM provides and the individuals that work in HR and recruiting that are custodians in this matter – are designed to be onerous and harassing. For example, Plaintiff demands searches for terms such as "disabled," "ADA," "VHRA," "breaks," and "leave" which not only go to the core of SHRM's business, have resulted in over 13,000 search hits, not including the exponentially greater hits that would certainly result from searches of completely irrelevant custodians as well as SHRM's *legal counsel*, and wholly unrelated to Plaintiff's failure-to-hire or failure-to-accommodate claims. Indeed, the cost of reviewing these search hits would result in hundreds of hours of attorney review time, at a cost of at least $170,000. Such costs are disproportionate to the needs of this typical single plaintiff failure-to-hire and failure-to-accommodate case.[4]

Defendant also objects to Plaintiff's demand that SHRM search custodians whose ESI is not relevant to any party's claims or defenses, and whose inclusion would not be proportional to

---

[4] As of the time of this filing, Plaintiff has still not supplemented her discovery responses with any specificity as to the amount of monetary damages she is claiming in this matter or the bases of the same. Further, Plaintiff stated she would only agree to have her phone imaged if, in part, SHRM paid the $5,000 vendor estimate she claimed to receive, to produce undisputedly responsive voice messages and the meta data as to messages she deleted, all apparent on the face of her own document production. SHRM therefore presumes Plaintiff is unwilling to agree to cost-shifting to pay for the over $170,000 in attorney review time it would take to review these search hits. *See* **Exhibit 6: Excerpts from Pl.'s Production Showing Deleted or Audio Messages**; **Exhibit 7: April 10 Barry Email re Phone Imaging Cost**.

the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Absent agreement, a responding party may select custodians most likely to possess responsive information unless that choice is manifestly unreasonable or the resulting production is shown to be deficient. *See, e.g., Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017). Here, SHRM has searched the ESI of the four individuals involved in interviewing Ms. Torres for the position at issue (despite the fact that the job offer was made is not in dispute); an employee who conducted an initial screening interview with Ms. Torres, organized scheduling of additional job interviews, and communicated the conditional offer of employment to Ms. Torres; the HR employee who communicated with Ms. Torres regarding her request for accommodation and notified her of the decisions at issue in this matter; and the CHRO who made the actual decisions. Yet, Plaintiff demands more. Plaintiff's demand that SHRM search the ESI of Mr. Walters, SHRM's General Counsel, is particularly inappropriate, as it would require review of privileged and work-product materials, many of which would already be captured in the files of existing custodians. Protecting these privileges is essential to the proper functioning of the legal system. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (explaining that permitting access to attorney work product would undermine effective legal representation and the administration of justice); Fed. R. Civ. P. 26(b)(3). The two other specific custodians Plaintiff demands, George Rivera and Nick Schacht, were merely copied on a single email for the perfunctory approval of the job offer to Ms. Torres, which Mr. Schacht approved and Mr. Rivera did not even respond to. They had no further involvement in this matter and Plaintiff has provided no basis to believe they possess additional, unique information. Plaintiff's request, therefore, seeks cumulative and duplicative discovery and amounts to a classic fishing expedition. *See* Fed. R. Civ. P. 26(b)(2)(C); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012)

("discovery should not devolve into a fishing expedition"). Finally, Ms. Torres' demand that SHRM should search the ESI of every single "HR employee[,]" regardless of their (lack of) involvement in any matter at issue herein, is facially overly broad.

2. **Plaintiff's Demand for Unbounded, Custodian-Wide ESI Review is Facially Overbroad and Disproportionate**

Plaintiff further asks the Court to order SHRM to have unspecified "key decisionmakers" review *all* ESI for a 42-day period without applying search terms or other reasonable limitations. This request is facially overbroad, unduly burdensome, and disproportionate to the needs of a single plaintiff failure-to-hire and failure-to-accommodate case.

The Federal Rules require reasonable and defensible discovery, not a "boil-the-ocean" review untethered from relevance or proportionality. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff's proposal would require manual review of every email, message, and document, regardless of subject matter or relevance, and is improper and inconsistent with the Federal Rules. Equally problematic, Plaintiff's proposal improperly seeks to delegate counsel's Rule 26(g) obligation to conduct a reasonable inquiry to lay custodians and have lay custodians make legal judgments as to whether a document is or is not responsive. Courts have expressly cautioned against custodian self-collection and *ad hoc* manual searching due to the risks of inconsistency, inadvertent omission, and later dispute. See *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251 (D. Md. 2008). Nothing in the Rules requires custodians to personally search their own ESI and, further, SHRM did identify and compile documents outside the ESI search process already and have produced those documents.

As set forth above, SHRM's initial ESI collection included all relevant custodians, including those who had no role in any fact actually in dispute, SHRM ran searches it deemed reasonable and proportionate to what was being requested in Plaintiff's discovery requests and

what was actually in dispute in this matter over a timeframe that included the 42-day period Plaintiff demands, and more. Specifically, SHRM conducted ESI searches for March 1, 2024 through August 30, 2024, a period more than seven weeks before Ms. Torres applied for employment with SHRM and more than six weeks after SHRM withdrew the job offer after Ms. Torres disengaged with the interactive process. These searches resulted in a reasonable number of hits which were reviewed and promptly produced to Plaintiff. SHRM also separately collected responsive documents outside the ESI search process for documents such as Company policies, any applicant file SHRM had for Ms. Torres, and the like, and counsel conferred with its client to determine what other responsive documents may or may not exist. And, as set forth above, SHRM has conducted still more searches in an effort to resolve these issues, despite Plaintiff failing to identify any actual deficiencies in SHRM's document production.

Plaintiff's demand that this timeframe is insufficient on the basis that a five-year timeframe should be used for "access to policies, compliance records and related documents" (Motion at 3), is without merit as SHRM produced requested policies or similar documents and Plaintiff alleges no deficiency in any such response. *See generally* Motion. Ms. Torres nevertheless hypothesizes that **perhaps** "key decision makers exchanged emails or texts … admitting that SHRM should have permitted Plaintiff to bring her service dog to the office" or that SHRM **perhaps** "has a best practices document … instructing its employees to caution its members against denying medical necessary accommodations evidenced by a doctor's note …." *Id.* at 8. However, she provides nothing beyond conjecture that such documents exist, and is well-aware that SHRM stood on its objections as to Ms. Torres' discovery requests as regards to guidance SHRM provides members and her Motion does not seek to compel a response to those discovery requests.[5] *See generally id.*

---

[5] Plaintiff's counsel briefly mentioned an ongoing interest in guidance SHRM has provided to

Moreover, Plaintiff's reliance on a 37-year-old Michigan decision allowing the limited production of EEO-1 reports and affirmative action plans is without merit (Motion at 3), as that Court noted it was ordering these very specific productions because the burden on that defendant was "negligible, since those documents already exist" and noting the Court had previously refused the Plaintiff's request to "extend that discovery into areas such as age or race discrimination against other employees" primarily based on burden. *See Siskonen v. Stanadyne, Inc.*, 124 F.R.D. 610, 612-613 (W.D. Mich. 1989). Plaintiff's reliance on *Mawulawde v. Bd. of Regents of Univ. Sys. of Georgia* is similarly misplaced as that that court noted a voluntary agreement by that plaintiff to a five-year discovery period and that that plaintiff was alleging unlawful termination and the five-year period covered their period of employment. Case No. CV 105-099, 2007 WL 2460774, at *9 (S.D. Ga. Aug. 24, 2007). In contrast, Ms. Torres never even worked for SHRM and therefore documents relevant to any claim or defense in this matter for a period of five years before she even applied, and more than two years thereafter, is unreasonable. The same is true for *Gaul v. ZEP Mfg. Co.*, where that plaintiff also worked for the defendant and made claims, in part, as to events that allegedly occurred up to five years earlier. *See* No. Civ.A. 03-2439, 2004 WL 231298, at *1 (E.D. Pa. Feb. 5, 2004) (noting discrimination claims dating back to 1999).

SHRM conducted a reasonable and proportionate ESI process and Plaintiff's overly broad

---

other organizations specifically as it pertained to advice SHRM may have provided around service dogs or service animals during the April 1 meet and confer. Ms. Darrow stated SHRM would consider the request. Thereafter SHRM was not inclined to revisit its objections to these requests. Ms. Kisch raised the issue again on April 20, while discussing an inappropriate proposed 30(b)(6) topic around the rescission of conditional job offers to other applicants. At that time, Ms. Kisch and Ms. Kuntz contended they included this topic because SHRM had not produced responsive documents, rather than pursue those documents through written discovery. After further privileged discussions, SHRM is investigating what documents it may easily produce as to guidance provided to members, without running overly broad and unduly burdensome ESI searches over vague topics like the "ADA" and the "interactive process," in an effort to resolve this matter.

demands should be denied.

**C. SHRM Has Never "Cap[ped]" the Duration of Any Deposition**

Plaintiff misstates the Parties discussions as to the 30(b)(6) deposition. As noted above, during the April 1 meet and confer, counsel for SHRM asked Plaintiff's counsel if the 30(b)(6) deposition could be done on the same day as a fact witness deposition, assuming the fact witness was also the corporate representative. This inquiry was solely because that is an efficient way to complete depositions, a concern Plaintiff has raised repeatedly throughout the pendency of discovery in this matter. And, indeed, in Defendant's counsel's experience, this is typically how plaintiff's attorneys in single plaintiff employment litigation matters have approached the issue. This is particularly true in a failure-to-hire case. Nevertheless, Ms. Kisch rejected the idea of having the 30(b)(6) deposition on the same day as a fact witness deposition. While Ms. Darrow and Ms. Bridenbaugh did not see any basis to do so other than that Ms. Kisch did not want to, that was the end of the matter. Hence Defendant's counsel's surprise that this issue has been raised in Plaintiff's Motion as it has not arisen again in the more than two weeks between the April 1 call and Plaintiff's Motion. If Plaintiff truly believed SHRM was refusing to produce a 30(b)(6) corporate representative on a date separate from that individual's fact witness deposition, which seems strange given the passing nature of this conversation on April 1, Plaintiff's counsel simply had to ask for clarification and SHRM would have indicated, as it does here, that if Plaintiff insisted on separate dates, then separate dates it would be.

As Plaintiff failed to meet her obligation to confer with Defendant on this issue prior to the filing of this Motion, and indeed the issue is moot, Plaintiff's Motion should be denied.

**D. SHRM Has Not Refused "Access" to Witnesses**

Finally, Plaintiff's claim that SHRM has "stonewall[ed] access to multiple witnesses" is

incorrect. Plaintiff strangely contends that "[a]s of the April 1, 2026 meet and confer," SHRM had not stated whether it represents Ms. Howe, Ms. Panessidi, Ms. Sancinito, and Ms. Turk in this matter. Motion at 13. Indeed, SHRM advised Plaintiff that it represented Ms. Panessidi and Ms. Howe and provided the last known contact information for Ms. Turk and Ms. Sancinito on April 6, just three business days after the April 1 meet and confer, and more than ten days *before* Plaintiff filed this Motion. Moreover, *at no time* did SHRM "threaten[ ] Plaintiff with professional conduct sanctions[.]" Motion at 14. Rather, Ms. Kisch's insistence that she was entitled to contact current and former managers at SHRM, despite SHRM explicitly stating on its Initial Disclosures all four were to be contacted through counsel and repeatedly noting thereafter the same unless SHRM determined otherwise, suggested she had not connected that individuals represented by counsel could not and should not be contacted by an attorney on the other side. As such, Defendant's counsel simply wanted to make SHRM's position crystal clear as Ms. Kisch's increasingly mercurial communications on the issue suggested she intended to try and reach these individuals despite SHRM's unequivocal statements as to their representation in this matter. In any event, SHRM provided, weeks prior to this Motion, the information that Plaintiff is seeking and this issue too is moot. As such, Plaintiff's Motion should be denied.

## IV.   CONCLUSION

For the foregoing reasons, SHRM respectfully requests that the Court enter an Order denying Plaintiff's Motion to Compel and award SHRM such other relief as the Court deems just and proper.

Dated:  April 24, 2026

Respectfully submitted,

*/s/ Lauren M. Bridenbaugh*
Lauren M. Bridenbaugh, Bar No. 90586
Leslie P. Currie, Bar No. 101060

LITTLER MENDELSON, P.C.
1800 Tysons Boulevard
Suite 500
Tysons Corner, Virginia 22102
Telephone:     703.442.8425
Facsimile:     703.552.7679
lbridenbaugh@littler.com
lcurrie@littler.com

Tanja L. Darrow (admitted *pro hac vice)*
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, California 90071
Telephone:     213.443.4300
Facsimile:     800.715.1330
tdarrow@littler.com

*Counsel for Defendant Society for Human Resource Management*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 24th day of April 2026, I caused the foregoing **Opposition to Plaintiff's Motion to Compel** to be served through the Court's Electronic Case Filing (ECF) system on the following counsel of record:

Stephen B. Pershing (VSB No. 31012)
Mary E. Kuntz (VSB No. 76947)
Lori B. Kisch (admitted *pro hac vice*)
Anna Kathryn Barnes Barry (admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. NW, Suite 1000
Washington, DC 20006
Telephone:   202.331.9260
spershing@kcnlaw.com
mkuntz@kcnlaw.com
lkisch@kenlaw.com
akbarry@kcnlaw.com

*Counsel for Plaintiff*


*/s/ Lauren M. Bridenbaugh*
Lauren M. Bridenbaugh