**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **FIONA TORRES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOCIETY FOR HUMAN RESOURCE MANAGEMENT,**<br><br>**Defendant.** | **Case No. 1:25-CV-02360-PTG-WBP** |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PROTECTIVE ORDER**

Plaintiff Fiona Torres ("Ms. Torres" or "Plaintiff") and Defendant Society for Human Resource Management ("SHRM" or "Defendant") (collectively, "the Parties") submit this Joint Motion seeking the entry of a Protective Order and Clawback Agreement and Order to govern the handling of documents and other materials exchanged during the ongoing discovery period in this case. In support of this Joint Motion, the Parties state as follows:

1. As set forth in the Parties' Joint Discovery Plan, there will be certain information and documents containing sensitive personal, confidential, private, and/or proprietary or otherwise sensitive commercial information that the Parties will be required to produce, and for which a Protective Order and Clawback Agreement and Order ("Protective Order") will be needed. ECF No. 14 at ¶ 12. For example, the Parties agree that medical information will be shared by both Parties. The Parties have agreed that, where appropriate, sensitive personal, confidential, private, and/or proprietary or otherwise sensitive commercial information should be withheld from public disclosure.

2. The Parties have been engaged in good faith negotiations over the language of such a Protective Order. The Parties have also met and conferred over this language.

3. While the Parties were hopeful that they would be able to submit a Stipulated Protective Order, and have narrowed their areas of disagreement, they have been unable to reach agreement on all matters to be addressed. The Parties' respective positions on the above-referenced issues are set forth below:

(a) **<u>SHRM's Position</u>**

i. **Paragraph 1(d) – Highly Confidential – Attorneys' Eyes Only Designation**

SHRM's position as to the availability of a Highly Confidential – Attorneys' Eyes Only designation is primarily related to Plaintiff's discovery requests as to disability-related accommodation requests made by other employees or applicants of SHRM, the disclosure of which would result in the disclosure of third-parties' highly confidential medical information. "Protective orders limiting access to counsel are commonly granted as a means of 'protecting the privacy interests of certain nonparties while yet serving the needs of litigation.'" *Addi v. Corvias Management-Army, LLC*, 2020 U.S. Dist. LEXIS 243281, at *6 (D.Md. Dec. 28, 2020) (quoting *Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999) (other internal citations omitted). Unlike the parties in *Addi*, where the issue was the confidentiality designation of the *plaintiff* and potential class members, the privacy interests at issue here are those of third-parties having nothing to do with this litigation. SHRM wishes to ensure that this type of highly confidential medical information is not disseminated beyond those who need to know this information.

ii. **Paragraph 2 – Use of Discovery Materials Outside Litigation**

SHRM's position is that Discovery Materials, defined in Paragraph 1 of the Protective Order to include documents and electronically stored information ("ESI") produced during this litigation, shall be used solely for this litigation, unless otherwise stipulated by the Parties or ordered by the Court. The production or use of Discovery Materials in this litigation does not

categorically bar them from being produced and/or used in any other legal proceeding. Rather, whether such Discovery Materials are appropriately discoverable in another legal proceeding will turn on whether the Discovery Materials are relevant and proportional to the needs of the claims and defenses in any such legal proceeding (consistent with Rule 26(b)(1) of the Federal Rules of Civil Procedure). *See* **Exhibit A**: SHRM's Proposed Protective Order, at ¶ 2. SHRM's legal basis for its position is that in *Seattle Times Co. v. Rhinehart*, the U.S. Supreme Court unanimously rejected the notion that "a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery." 467 U.S. 20, 31 (1984). In particular, the *Rhinehart* Court recognized that there is no right to use pretrial discovery from one case for another purpose, and that protective orders may appropriately "prevent[] a party from disseminating [] that information obtained through use of the discovery process." *Id*. at 32-34; *see also, e.g., Wollam v. Wright Med. Grp., Inc.*, No. 10-CV-03104-DME-BNB, 2011 WL 1899774, at *1-2 (D. Colo. May 18, 2011) (denying plaintiff's motion to compel "cloned discovery" where defendant objected, based on *Rhinehart*, to producing confidential documents from other litigation); *King Cty. v. Merrill Lynch & Co, Inc.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("'[C]loned discovery', requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case.'") (*quoting Midwest Gas Servs., Inc. v. Indiana Gas Co.*, IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)); *accord Nguyen v. Raymond James & Assocs.*, Case No. 8:20-cv-195-T-36AAS, 2020 WL 6801874, at *2 (M.D. Fla. Nov. 19, 2020) (same). Put simply, "'just because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit[.]'" *In re Outpatient Med. Ctr. Employee Antitrust Litig.*, Master Docket No. 21 C

305, 2023 WL 4181198, at *6 (N.D. Ill. June 26, 2023) (quoting *Moore v. Morgan Stanley & Co., Inc.*, No. 07 C 5606, 2008 WL 4681942, at *2, 5 (N.D. Ill. May 30, 2008). Likewise, by the same logic, just because information may be produced in this lawsuit does not mean that it should be – or may be – produced in another lawsuit.

Plaintiff's position misstates and misconstrues SHRM's argument by claiming SHRM is seeking to refrain Plaintiff from using documents such as her own resume, medical records, and other documents already in her possession prior to this litigation after this matter concludes. *See infra*. This is incorrect. Ms. Torres is free to use her own records as she wishes. However, obtaining documents in discovery ***from SHRM*** does not give her license to use these documents in whatever manner she wishes outside of or after this litigation concludes. Moreover, Plaintiff further misstates and misconstrues SHRM's argument as to the intent of the "confidential" designation in this matter, as stated in the proposed protective order. Plaintiff suggests that such a designation would somehow mean such documents must be filed under seal. That is false. As clear from the standard and regularly adopted protective order language in SHRM's proposed order, the designation of "confidential" would not require any documents designated as such to be filed under seal. Rather, filing under seal would only be hypothetically required to the extent a document contains information that the Federal Rules of Civil Procedure and/or this Court's Local Rules require or permit to be filed under seal, and if a document was designated as "highly confidential – attorneys' eyes only" which SHRM has not used as of the date of this filing. Contrary to Plaintiff's claim, SHRM has utilized the "confidential" designation as is commonly used in employment litigation in this Court for SHRM's internal policies, communications, and documents that are otherwise only available to SHRM's members. *See, e.g.*, *Moore v. CVS Corp.*, No. 7:04-CV-054, 2005 WL 581357, at *1 (W.D. Va. Mar. 11, 2005) (ordering entry of a protective order

to facilitate production of personnel files and confidential business information); *Norman v. Town & Country Heating & Air Conditioning Co.*, No. 2:240cv002537-KHV-TJJ, 2025 WL 974261, at *5 (D. Kan. April 1, 2025) (ordering entry of a protective order that designated as confidential personnel files, internal employment policies and procedures, and proprietary, non-public business information produced by the defendant); *see also Sheets v. Caliber Home Loans, Inc.*, No. 3:15:CV-72, 2015 WL 7756156, at *6 (N.D.W. Va. Dec. 1, 2015) (finding good cause to issue a protective order in part because the designating party was "not seeking to protect its internal policies and procedures from disclosure but only from dissemination outside of this litigation"). Indeed, 1110 of the 2616 pages of documents produced in this matter by SHRM as of the date of this filing have been Plaintiff's own medical and third-party employment records obtained by SHRM in response to third-party subpoenas and which ***Plaintiff's counsel*** specifically requested SHRM treat and designate as "confidential." Moreover, 157 pages of the documents produced by SHRM were documents received from the Equal Employment Opportunity Commission ("EEOC") in response to a Freedom of Information Act ("FOIA") request related to Plaintiff's agency charge. To the degree Plaintiff has concerns of inconsistencies in SHRM's use of the "confidential" designation, she was and is free to bring these concerns to SHRM but did not and has not done so except as is primarily mistakenly or misleadingly alleged in her position *infra*. For example, SHRM did mark Teams messages produced in this matter as "confidential" where non-responsive parts of the Teams exchange included one employee discussing her children. Similarly, a copy of Ms. Torres' Charge of Discrimination which SHRM produced independently of the EEOC's FOIA response was marked as "confidential" given Ms. Torres' desire to keep the medical information that underpins her Charge confidential. Comparatively, the EEOC's Notice of Right to Sue letter was not as this is a form document with no personal information. However, the

EEOC's FOIA response, which was produced to SHRM in a single PDF file, was marked "confidential" because there is not a mechanism to mark some pages as "confidential" and not others, and aspects of the document included Ms. Torres' personal medical information. And, Plaintiff blatantly misstates below what SHRM did and did not mark as "confidential." For example, SHRM marked all copies of Ms. Torres' resume that it produced in this matter as "confidential" because Ms. Torres' resume includes her personal contact information as well as details of her work history, educational history, and other activities. Indeed, rather than utilize the "confidential" designation herself, Ms. Torres redacted information from documents in contravention of the Court's rules. In contrast, SHRM did not mark copies of Ms. Torres' cover letter submitted to SHRM because it did not contain any particular personal information.

The "confidential" designation does not bar either party from filing documents on the public record in this matter, using such documents as exhibits in trial, or otherwise using any document for purposes of this litigation. All it does is ensure documents produced by SHRM which have been designated as "confidential" are not utilized outside of this litigation. Indeed, Plaintiff's aggressive and direct, personal attacks on SHRM and its counsel set forth below, without any basis for doing so, demonstrate SHRM's point that the use of Discovery Materials should be limited to this litigation.

**(b) <u>Plaintiff's Position</u>**

Ms. Torres believes that SHRM is seeking overbroad protection from public disclosure of relevant, non-privileged, non-PII or PHI information and documents in the case. SHRM's positions recited above are taken here in reverse order.

*i. Paragraphs 1(A), (C), (E), (F), 2 and 3*

The stipulated definition of "discovery materials" in ¶ 1(A) creates a general category of all materials "produced, given or exchanged" between the parties, including material each party created or possessed before the litigation began. However, SHRM contends that all such materials should now be unusable outside this case merely because one party produces it to the other in discovery. SHRM would have Ms. Torres forever barred from using her resume, her own medical records, her applications for employment with SHRM and otherwise, and all her pre-suit correspondence with SHRM or about this case, merely because she chose to stand up for her rights in a public judicial proceeding and is complying with the discovery rules in turning over relevant and non-privileged materials in her possession.

Such a bar would be both absurd and impermissible. Plaintiffs in our system do not implicitly consent to wear a protective-order muzzle as a condition of filing a civil suit, nor do our courts bar defendants from making public their own positions when sued. Rather, the party seeking the shield is required to show that the material's release would "tangibly prejudice its substantial rights." *Jepson, Inc. v. Makita Elec. Works, Ltd*., 30 F.3d 854, 858 (7th Cir. 1994), citing *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir.1980) (standard for modification of existing protective order); Compare *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-35 (1984) (the First Amendment is not infringed by a protective order against disclosure of unfiled materials that a newspaper company obtained in discovery, so long as the order "does not restrict the dissemination of the information if gained from other sources"), with *International Products Corp. v. Koons*, 325 F.2d 403, 407-09 (2d Cir. 1963) (cited in *Rhinehart*) (courts cannot suppress, or give effect to an adverse party's desire to suppress, a litigant's voluntary disclosure of materials obtained outside the discovery process without a particularized showing of good cause); Robert T. Reagan, "Confidential Discovery: A Pocket Guide on Protective Orders" (Federal Judicial Center

2012), at 4, available at https://www.fjc.gov/sites/default/files/2012/ConfidentialDisc.pdf ("A discovery protective order may not forbid a party from disclosing information it has acquired from sources other than discovery, even if the information is also included in discovery."), citing *Koons*, 325 F.3d at 407-09. Ms. Torres' position regarding the proposed protective order is that she is entitled to make any use she wishes, within or outside this litigation, of materials that were in her possession before she filed suit.

From the parties' exchange of views on the scope of the proposed protective order, it appears that SHRM wishes to avoid embarrassment to itself from public disclosure of any facts of this case. True, SHRM should find its behavior in this case embarrassing; indeed, its desire to hide evidence of its actions against Ms. Torres undermines its defense of those actions. However, SHRM's vague concern for "embarrassment," *i.e.*, a desire to keep evidence of its misdeeds out of the public eye, is insufficient to warrant placing a gag order on Ms. Torres without a more specific showing, not just of ordinary "embarrassment," but of something "particularly serious." *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 567–68 (E.D. Va. 2010) (Ellis, J.) ("the annoyance or embarrassment must be particularly serious" to justify protective order); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("[B]ecause release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.").

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994), provides a particularly clear statement of the proper standard. "Good cause," the court held, means

> that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity . . . an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought

> of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.

*Id.* at 786-87, quoting *Publicker Industries v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).

Even a concern that Ms. Torres might use discovery materials to explain her case in the press, or to share with other plaintiffs in future disability rights cases against SHRM, is not enough reason to force SHRM's desired level of secrecy on these proceedings. In fact, the contrary presumption was recognized in *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir. 1978), *cert. denied*, 440 U.S. 971 (1979), as follows:

> As a general proposition, pretrial discovery must take place in . . . public unless compelling reasons exist for denying the public access to the proceedings. This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues.

*Id.* at 596. See also *Deljanin v. Mercedes-Benz USA, LLC*, No. X10-UWY-CV-22-6069955 S (Conn. Super. Ct. July 2, 2024) (Pierson, J.) (rejecting products liability defendant's proposed protective order barring outside sharing of its discovery production with other potential plaintiffs), *available at* www.bloomberglaw.com/public/desktop/document/DeljaninvMercedesBenzUSALLCNoX10UWYCV226069955S2024BL2321222024CT?doc_id=X1J5SK7OG000N.

In a similar vein, SHRM claims that disclosure of any discovery materials would cause it "reputational harm." Defendant's Proposed Protective Order ¶ 1(E) (seeking to add "reputational" harm to "competitive" harm in category of materials that should be "confidential" and forbidden to be disclosed outside this litigation). "Reputational harm" is essentially the same thing as "embarrassment" under Rule 26(c), and requires a particularized good-cause demonstration that SHRM's hazy *ipse dixit* does not offer. *Davis*, 753 F. Supp. 2d at 567–68; *cf. Ashcraft v. Conoco*,

*Inc.*, 218 F.3d 288 (4th Cir. 1999) (requiring document-specific determinations before permitting filing sealed documents with court) (adopted in U.S. Dist. Ct. (E.D. Va.) Loc. Civ. R. 5). Because SHRM cites no specific harms that justify its claim of "reputational harm" or "embarrassment," and because no conceivable such claim would come close to the serious exigencies this Court regularly confronts,[1] SHRM does not deserve a blanket exemption for these materials from the presumptively public nature of this proceeding.

There is another dimension to SHRM's overreach here. SHRM's actual production hugely expands the parties' agreed definition of "confidential" in ¶ 1(C) of the proposed order.[2] Out of the 2,427 pages of documents SHRM has produced as of this writing, 99%, or all except 25 pages, are marked "confidential." That, too, is absurd. It indicates a flouting of the disclosing party's duty to make individualized determinations of the need for confidentiality. See also *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991) ("[t]he request for a protective order must be based on a specific demonstration of facts rather than speculative statements about the need for a protective order and generalized claims of harm"), citing *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981). "This requirement furthers the goal that the court grant as narrow a protective order as is necessary under the facts." *Brittain*, 136 F.R.D. at 412; accord *Vallejo v. Alan Vester Auto Group, Inc.*, No. 5:07-CV-343-BO, 2008 WL 4610233, at *2 (E.D.N.C. Oct. 16, 2008). See

---

[1] *Cf., e.g., GRID Networks LLC v. Quantum Leap Research LLC, et al.*, No. 1:22-cv-805 (E.D. Va. July 18, 2022) (Nachmanoff, J.) (addressing difficult problems of discovery of state-secrets-privileged material); see also Anthony J. Trenga, "What Judges Say and Do in Deciding National Security Cases: The Example of the State Secrets Privilege," Harv. Nat. Sec. J. 1, 44-45 (2018) (Judge Trenga's paper for the Duke Law School LL.M. program for judges) (discussing alternatives to dismissal even where government asserts that a state-secrets evidentiary privilege precludes all discovery).

[2] "Confidential information" is that subset of discovery materials that the disclosing party "in good faith believes contains . . . proprietary, commercially sensitive, and/or personal information." The definition continues: "A party shall not routinely designate discovery materials as confidential . . . without reasonable inquiry to determine whether [the material] qualifies for such designation." Proposed Protective Order ¶ 1(C).

generally Andrea Kuperman, "Case Law on Entering Protective Orders, Entering Sealing Orders, and Modifying Protective Orders" (U.S. Courts Committee on Rules of Procedure 2010), at 30-36 (Fourth Circuit standards), *available at* www.uscourts.gov/file/document/caselaw-study-discovery-protective-orders-prepared-andrea-kuperman-law-clerk-judge-lee.

Here are a few examples of the inconsistency of SHRM's "confidential" designations:

- Teams messages between Panessidi and Sancinito, June 7, 2024, Bates Nos. 1748-1751: every page marked "confidential." Teams messages between Turk and Sancinito, May 8, 2024, Bates Nos. 1752-1758, no pages marked "confidential." Both sets of messages discuss Torres's hiring.

- Internal SHRM e-mail chains related to Torres's hiring and accommodation status: Volume 8 contains blocks at Bates Nos. 1764-1766 and 1768-1769 (e-mails among Zoerkler, Sancinito and Belyna, and between Zoerkler and Torres) with no "confidential" marking, while in Volumes 3 and 5, e-mail chains among the same senders and recipients, at Bates Nos. 1063 through 1146 on the hiring of Torres, and 255 through 864 on the mere scheduling of the Torres interview, are stamped "confidential."

- Ms. Torres's EEOC administrative charge form in Volume 1, at Bates Nos. 020-023, and the EEOC notice of right to sue at Bates Nos. 008-012, are (correctly) left unstamped, but in Volume 4, the identical EEOC administrative charge form and accompanying papers, at Bates Nos. 865 to 1021, are stamped "confidential."

- Zoom interview calendar invites sent to Ms. Torres: Those in Volume 3, at Bates Nos. 294-295, 349-350, 436-438, and 455-456, are all stamped "confidential," while those in Volume 5, at Bates Nos. 1044-1045, 1093-1095, and 1111-1113, are (correctly) left unstamped.

- Automated Zoom "joined your meeting" notifications in Volume 3 were (correctly) left unstamped, along with a similar notice in Volume 5, while in the same Volume 5, surrounding e-mail pages in the same group of documents, at Bates Nos. 1063 and 1065-66, are stamped "confidential."

- Google Calendar acceptance e-mails: Some in Volume 1 were marked "confidential" and some not, e.g. Bates Nos. 259-263, whereas a Google Calendar acceptance e-mail in Volume 5, at Bates Nos. 1034-1037, is (correctly) left unstamped.

- Ms. Torres's resume in Volume 1, at Bates No. 093, is stamped "confidential," while the identical document in Volume 3, at Bates Nos. 479 and 523, is (correctly) left unstamped.

Nothing screams over-designation quite like inconsistencies that are this obvious, or "confidential" markings on documents as plainly innocuous as the ones just cited. Having thus amply demonstrated its failure to give consistent thought to its designations, SHRM should not be heard to complain that all its "confidential" designations should be accepted.

*ii. Paragraph 1(D)*

With regard to ¶ 1(D) of the proposed order, SHRM contends that "disability-related accommodation requests made by other employees [of] or [job] applicants [to] SHRM" must be marked "highly confidential" and "attorneys' eyes only" ("AEO") to avoid "disclosure of third parties' . . . medical information." In other words, SHRM seeks to forbid Ms. Torres, and permit only her attorneys, to see comparator evidence that is central to the case. The request ignores the importance of that evidence to Ms. Torres, and effectively deprives her of the chance to assess its strength directly. Courts value the discovering party's need to see what her lawyers are seeing, and typically require more than a conclusory assertion of harm, even harm to important privacy interests. See, *e.g., Jose v. Mueller*, No. 21-12556, 2024 WL 4580394, at *2 (E.D. Mich. Feb. 13, 2024) ("[t]he party moving for a restrictive attorneys' eyes only designation must detail the alleged harm it is likely to suffer without the requested protection 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"), quoting *Nemir v. Mitsubishi Motors, Corp.*, 381 F.3d 540, 550 (6th Cir. 2004).

Moreover, SHRM does not make the slightest attempt to consider redactions of PII (e.g. employee or applicant names) from these documents, but simply refuses to allow Ms. Torres to see the documents produced, insisting that only her attorneys may view them. That, too, is absurd,

given the readily available, less restrictive alternative of redacting the names of the individuals accommodated, and the lack of any other justification for SHRM's insistence on walling Ms. Torres off from her counsel in this manner. See *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 1:12-cv-01851**,** 2015 WL 4920287 (N.D. Ill. Aug. 18, 2015) (denying AEO designations even in in a trade secrets case) ("broad allegations of unspecified harm . . . consistently have been found insufficient to justify the 'extreme measure' of preventing a party's attorneys from sharing the documents with their clients."); *Cook Group, Inc. v. C.R. Bard, Inc. (In re Wilson)*, 149 F.3d 249 (4th Cir. 1998) (recognizing in this Circuit the principle that "good cause" under Rule 26(c) requires a particularized inquiry).

WHEREFORE, the Parties jointly request that the Court enter either SHRM's Proposed Protective Order (attached to this Motion as **Exhibit A**) or, in the alternative, Plaintiff's Proposed Protective Order (attached to this Motion as **Exhibit B**).

Dated: May 28, 2026

Respectfully submitted:

*/s/ Stephen B. Pershing (with consent)*
Mary E. Kuntz, Va. Bar No. 76947
Stephen B. Pershing, Va. Bar No. 31012
Hector F. Ruiz, Jr., Va. Bar No. 102153
Anna Kathryn B. Barry, D.C. Bar No. 1719493
(admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20006
Telephone: 202.331.9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
hruiz@kcnlaw.com
akbarry@kcnlaw.com

*Counsel for Plaintiff*

*/s/ Lauren M. Bridenbaugh*
Lauren M. Bridenbaugh, Va. Bar No. 90586
Leslie P. Currie, Va. Bar No. 101060
Tiffany din Fagel Tse, Va. Bar No. 92958
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard
Suite 500
Tysons Corner, VA 22102
Telephone: 703.442.8425
Facsimile: 703.552.7679
lbridenbaugh@littler.com
lcurrie@littler.com
ttse@littler.com

Tanja L. Darrow (admitted *pro hac vice)*
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile: 310.553.5583
tdarrow@littler.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 28th day of May 2026, I caused the foregoing **Memorandum in Support of Joint Motion for Protective Order** to be served through the Court's Electronic Case Filing (ECF) system on the following counsel of record:

Mary E. Kuntz, Va. Bar No. 76947
Stephen B. Pershing, Va. Bar No. 31012
Hector F. Ruiz, Jr., Va. Bar No. 102153
Anna Kathryn Barnes Barry (admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.331.9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
hruiz@kcnlaw.com
akbarry@kcnlaw.com

*Counsel for Plaintiff*

*/s/ Lauren M. Bridenbaugh*
Lauren M. Bridenbaugh