**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| FIONA TORRES,<br><br>           Plaintiff,<br><br>     v.<br><br>SOCIETY FOR HUMAN RESOURCE<br>MANAGEMENT,<br><br>           Defendant. | Civil Action No.  1:25-cv-2360-PTG-WBP<br><br>Hon. Patricia Tolliver Giles, J.<br>Hon. William B. Porter, M.J. |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY OR EXCLUDE EVIDENCE**
**OF BASIS FOR NON-HIRE DECISION**

### I.       Introduction

This motion is made necessary by the sheer breadth of defendant SHRM's attorney-client privilege invocations concerning its basis for the decisions challenged in this case: the denial of plaintiff Fiona Torres' request to bring her service dog to work as an accommodation for her disability, and the rescission of its offer to hire her.

As explained below, SHRM has tried to shield so much of its decision-making behind attorney-client privilege that it has left itself virtually no admissible explanation for denying Ms. Torres' requested accommodation and rescinding Ms. Torres's job offer. Every instruction to a deponent not to answer, every non-responsive interrogatory response, and every privilege log entry points to the same conclusion: SHRM conducted its entire accommodation and rescission process in Ms. Torres's case "through counsel," yet did not directly assert as an affirmative

1

defense that it acted on the advice of counsel. *See* Answer to Complaint (ECF No. 8), at 18-20 (affirmative defenses).

In effect, SHRM is trying to have it both ways: it invokes attorney-client privilege to keep to itself almost every bit of information about its reason for acting,[1] but does not assert advice of counsel as an affirmative defense, an admission which would place the advice in issue and waive the privileged status of that advice.[2] Therefore, as the only route to fair adjudication under our rules of discovery and of evidence, this Court must either pierce SHRM's assertions of privilege, or preclude SHRM from introducing—at summary judgment or at trial—any withheld evidence of its basis for decision.[3]

This motion therefore seeks four forms of relief: (1) *in camera* review of all communications and attachments to such communications in SHRM's privilege log (attached

---

[1] *See* Link Dep. Tr. (Attachment 2 hereto) at 74 (testifying that he "did no independent work" and that "all of the work regarding this matter was done in collaboration and cooperation with internal and external counsel"); *id.* at 70, 170 (testifying that he never developed his own independent understanding of the reasons for denying Ms. Torres's accommodation request— even though he asserted he was the decision-maker); Belyna Dep. Tr. (Attachment 3 hereto) at 216-17 (replying, to a question about the rescission e-mail, "I crafted the e-mail under the advisement of counsel"); *id.* at 207-08, 244 (testifying that the alternative "accommodations" that SHRM chose to offer came "through counsel," that she had no telephone calls regarding those accommodations with anyone other than counsel, and that she did not know why the service dog accommodation was denied); Defendant's Response to Interrogatory No. 2 (Attachment 4 hereto) (seeking "factual basis" for decision) (stating that SHRM "stands on its privilege objections with respect to this Interrogatory"); SHRM Corp. Dep. (Link) Tr. (Attachment 5 hereto) at 14-16 (asserting privilege in refusing to answer similar questions).

[2] *See* discussion *infra* at part II.C.

[3] In our Circuit, a court may not draw or order an adverse inference merely from a party's invocation of attorney-client privilege. *Parker v. Prudential Ins. Co. of America*, 900 F.2d 772, 775 (4th Cir. 1990). Therefore, if the privilege cannot be pierced, no relief is available short of the exclusion requested here.

hereto as Attachment 1), and an order compelling production of those the Court finds are not privileged; (2) specific orders overruling particular privilege invocations at deposition where the questions called for non-privileged factual information; (3) an order directing SHRM to provide complete answers, unencumbered by privilege objections, to Interrogatory No. 2 (factual basis for defenses) and related interrogatories; and (4) in the alternative, if privilege cannot be pierced, an order precluding SHRM from introducing any withheld basis-for-decision evidence at trial or at summary judgment.

Each of these requests for relief is addressed more fully below.

## II.    **Discussion**

### A.   *The Court should test all assertions of the privilege and compel disclosure of non-privileged documents and testimony*

It is settled law that the party asserting privilege bears the burden of establishing the basis for that entitlement. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). That burden applies to all rationales for claiming the privilege: that the advice was legal rather than business, that a communication's primary purpose was to seek or give legal advice, or that such advice was actually sought or given. *See generally United States v. Cohn*, 303 F. Supp. 2d 672, 683–84 (D. Md. 2003). For communications from, to, or with SHRM's counsel, the privilege applies only when "the attorney is acting in a legal capacity, and not merely as a business advisor." *Jonathan Corp. v. Prime Computer, Inc.*, 114 F.R.D. 693, 696 (E.D. Va. 1987); *Brainware, Inc. v. Scan-Optics, Ltd.*, No. 3:11cv755, 2012 WL 2872812, at *3 (E.D. Va. July 12, 2012) (holding that the party claiming privilege must show the in-house lawyer's advice was "more likely 'legal' than 'business' in nature"); *id.* ("[w]hen the legal advice is merely incidental to business

advice, the privilege does not apply"), quoting *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993).

The primary-purpose test requires that a communication have been made "primarily for the purpose of soliciting legal, rather than business, advice." *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D.N.C. 1986). *See also Cohn*, 303 F. Supp. 2d at 683 ("[c]ommunications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made"); *Adair v. EQT Production Co.,*285 F.R.D. 376, 380 (W.D. Va. 2012) (holding that privilege should not apply to documents "routinely routed through corporate counsel for little, if any, legal purpose" and that "mere participation of an attorney" should not "seal off disclosure").

SHRM's privilege log, attached hereto as Attachment 1, contains 42 entries spanning June 4, 2024, through July 15, 2024 — the entire time period between Ms. Torres's job application and SHRM's revocation of its offer of employment. Every e-mail entry in the log contains the same boilerplate: "Communication with counsel (H. Walters) for purposes of obtaining legal advice regarding applicant request for accommodation and SHRM's response to the same." However, decisions to grant or deny a reasonable accommodation, to offer alternative accommodations, to draft correspondence to an applicant, or to rescind a job offer are business and human resources determinations; they become legal communications only if their primary purpose was legal advice rather than HR management. *F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998) ("[w]hile legal advice provided in the context of business negotiations is protected under the attorney client privilege, business information provided in the context of business negotiations does not acquire protection under the privilege merely because it has been provided by an attorney"), citing *SCM Corp. v. Xerox Corp.*, 70

F.R.D. 508, 517 (D. Conn. 1976); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 410 (D. Md. 2005) (focusing on whether an assertedly privileged communication would have occurred "but for" the need for legal advice). Under any of these principles, e-mails coordinating the routine HR process of asking Ms. Torres for a doctor's note, forwarding her medical records to Mr. Link, or drafting a denial letter are ordinary HR functions, would have taken place regardless of counsel's involvement, and are therefore not privileged.

*Exclusions based on "family relationship" with privileged documents*

Several categories of documents in SHRM's privilege log are likely not privileged. First, nine entries are described as "Privileged per family relationship": SHRM_Torres 0000684, 0000685, 0000859, 0000860, 0000861, 0000862, 0000863, 0000864, and 0001141. These are attachments described as "FW_Service Animal ADA information," "Animal Service Agreement.docx," "FW Service Dog Paperwork," and five photographs. SHRM is apparently claiming privilege here because the documents were attachments to communications that included lawyers, but we do not know whether those communications themselves were privileged under the standards just discussed. Moreover, some of these nine documents appear to be Ms. Torres's own service dog documentation, presented to SHRM at its request and then forwarded internally, but without seeing them no one can be sure. Certainly, a document belonging to a third party does not become privileged merely because it is attached to an e-mail containing legal advice.

*Third-party documents*

Next is a group of attachments said in the SHRM privilege log to have come from third-party sources. The "Position Overview" document appearing at SHRM_Torres 0000683 and

0000840 is described as a "notes summary to communicate to and with counsel to obtain legal advice." This document, identified in the log as "Sr. Specialist, Product Management Position Overview," was a candidate evaluation document created before Ms. Torres ever made her accommodation request. Yet Ms. Belyna was directed not to answer whether she had seen it or why it was created. Belyna Dep. Tr. (Attachment 3 hereto) at 335-37. A candidate evaluation document pre-dating counsel's involvement cannot be transformed into a privileged communication by forwarding it to Mr. Walters. Ordinary business records do not acquire privilege through transmission to counsel.

*Boilerplate descriptions*

Most of SHRM's privilege-logged documents are described in boilerplate that does not establish primary purpose. SHRM gave every e-mail entry on the log—including all 28 "RE: Offer status—Fiona Torres" chains and seven "RE: Doctors Note" chains—the same single-sentence description, with no further detail. Our cases require that "the proponent . . . specifically and factually support his claim of privilege." *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003). A description that is literally identical for 35 separate communications covering six weeks of otherwise highly relevant HR activity does not meet this burden.

The Court should therefore conduct *in camera* review of all 42 of SHRM's privilege log entries and determine, for each listed document, (a) whether it should be deemed non-privileged as part of an implied waiver since advice of counsel has been placed at issue; (b) even if not, whether its primary purpose was legal advice, as distinct from HR coordination; (c) again even without the at-issue implied waiver, whether the attorney on the communication was acting as a legal advisor or just as a business advisor; (d) for attachments, whether the attachment independently qualifies for protection regardless of the privileged status of its parent document.

6

Because Ms. Torres here makes a particularized showing that SHRM's privilege log descriptions are inadequate, and that many entries likely reflect business rather than legal functions, *in camera* review is warranted as the only fair way to proceed.

**B.  *SHRM's instructions to deponents not to answer must be reviewed for overbreadth, and non-privileged responses compelled***

At three depositions, SHRM's counsel, asserting attorney-client privilege, directed deponents not to answer questions that did not call for privileged information. These improper invocations are catalogued in a tabular Appendix to this motion (attached hereto as Attachment 7), grouped by legal defect with citations to deposition transcripts,[4] showing every instruction not to answer a deposition question, with the reason why that instruction was impermissible.

*Factual information withheld as "privileged"*

Fed. R. Civ. P. 30(c)(2) allows instructions not to answer on grounds of attorney-client privilege, but that protection "is properly limited to the substance of attorney-client communications, not the underlying facts." *Billings v. Stonewall Jackson Hosp.*, 635 F. Supp. 2d 442, 446 (W.D. Va. 2009). Decision-makers may be "question[ed] at length regarding their knowledge [of] and involvement [in] the facts of the case." *Id.* Privilege does not shield "what they observed, what they knew about the applicant's disability, what documentation they reviewed, and what non-legal reasons they articulated." *Id.*

An instruction that claims a privilege as to plainly factual testimony is improper under Rule 30(c)(2). Courts should and do curb privilege misuse "amounting to 'witness coaching,' particularly where witnesses were led to assert that 'all of my knowledge comes from counsel.'"

---

[4] Deposition transcript excerpts referred to in the Appendix, may be found in the transcript excerpts of the particular deposition.

*In re DBMP LLC*, 2026 WL 973870 (Bankr. W.D.N.C. 2026) (noting that "[t]he cumulative effect of this approach materially interfere[s] with the deposition process and impede[s] the development of a factual record, independent of whether the underlying information [is] ultimately privileged"). That is exactly what happened here; a review of the deposition transcripts should confirm that SHRM's counsel habitually made such objections.

Important among these impermissible invocations of privilege were instances where a deponent was instructed not to say who wrote or approved a communication from SHRM to Ms. Torres. *See, e.g.*, Belyna Dep. Tr. (Attachment 3 hereto) at 154-55 (declining to answer, after SHRM counsel invoked privilege, who wrote the written explanation of the denial of Ms. Torres's accommodation request); *id.* at 155 (after admitting she wrote the letter, she was directed on privilege grounds not to explain what it meant, why she wrote what she wrote, or what her independent understanding of the content was); Link Dep. Tr. (Attachment 2 hereto) at 216 (accepting counsel's instruction not to answer, on privilege grounds, whether he approved language in the July 15, 2024, rescission e-mail to Ms. Torres).

The authorship of a letter sent to a job applicant is not privileged information. Neither is its writer's understanding of its meaning. Likewise, whether a particular individual reviewed and approved the final text of a letter sent to Ms. Torres is a fact, not privileged as a communication to counsel. Instructions not to answer questions such as these are unacceptable abuses of the privilege, and of counsel's role in protecting it at deposition. SHRM must be compelled to disclose who wrote the July 3, 2024, accommodation-denial letter and the July 15, 2024, rescission email; who approved the final text of each; and what the deponent's independent understanding was of the meaning of the language used.

Another group of obstructive privilege objections sought to shield SHRM witnesses' own mental state, observations, beliefs, or understanding about the organization's so-called alternative accommodations. Belyna Dep. Tr. (Attachment 3 hereto) at 233 (accepting counsel's privilege-based instruction not to give her own understanding of what "accommodations" SHRM was offering Ms. Torres); *id.* at 218 (same response to question what she understood of why Ms. Torres's service dog was deemed unnecessary); *id.* at 267-68 (same response to question when she learned the reason for the rescission); Link Dep. Tr. (Attachment 2 hereto) at 73 (same response to question whether the alternative "accommodations" were his ideas); *id.* at 138-39 (same to question whether he independently decided whether SHRM could accommodate Ms. Torres's service dog request); *id.* at 70 (same to question how he determined that Ms. Torres did not require a service dog).

Even if the Court does not deem these repeated privilege invocations as creating an implied waiver of the attorney client privilege as to the advice of counsel at the core of this case, none of the above-described factual information is privileged even if counsel was also involved in the process. *Billings*, 635 F. Supp. 2d at 446. This is especially true when the inquiry is made of SHRM's chief human resources officer, who claimed he was the decision-maker, or asked of the recruitment manager in charge of filling this vacancy. Similarly, whose idea it was to offer as an "accommodation," if such it could be called, of "facilitating" Ms. Torres's use of a continuous glucose monitor ("CGM") is a business fact, the origin of a business proposal, and is not privileged as an attorney-client communication.

Similarly, whether a decision-maker took particular factual steps—consulted employees, reviewed facilities, contacted medical providers, or asked follow-up questions—is factual information not privileged from disclosure, even if the information was communicated to a

9

lawyer. *See* Link Dep. Tr. (Attachment 2 hereto) at 100 (declining to answer whether there was "any effort to contact those at SHRM responsible for different facilities that would be impacted by accommodating Ms. Torres's request"); *id.* at 102 (same to question whether he inquired "with any SHRM employee as to whether they would be impacted" by the service dog); *id.* at 189-90 (same to question whether "any medical professional [was] contacted about Ms. Torres' requested accommodation"); *id.* at 98-99 (same to question whether "any particular facility issues [were] raised that would have prevented SHRM from accommodating her request to bring her service dog to work"); Belyna Dep. Tr. (Attachment 3 hereto) at 216-17 (accepting counsel's instruction not to answer why she "ask[ed] [Ms.] Torres to confirm whether she relied on her service dog in both her personal and professional daily activities]").

Likewise, whether Mr. Link asked any SHRM employee whether the dog would cause them problems is a factual query that does not ask about communications with counsel. The same is true of the question whether any medical professional was contacted, or what use Ms. Torres made of the dog outside of work. Each of these is a factual question about actions taken, not a call to divulge privileged communications with counsel.

Accordingly, the Court should compel Mr. Link and Ms. Belyna to answer (a) what they personally understood to be the reason the service dog accommodation was denied; (b) what non-legal reasons, if any, were identified for the denial; (c) whether they independently concluded that the dog was not necessary for Ms. Torres to perform the essential functions of the role, and if so, why; and (d) whose idea each of the various offered "accommodations" was, and why they should be so called. The witnesses should also be compelled to answer follow-up questions based on their answers.

Further, each SHRM witness must be compelled to answer (a) whether any SHRM employees were consulted about facility or operational concerns regarding the service dog; (b) whether any medical professional was contacted about Torres's request; (c) whether any follow-up questions were considered after Torres's July 6 email and, if not, why not; and (d) whether any independent (non-attorney) research or assessment was conducted.  The witnesses should also be compelled to answer follow-up questions based on their answers.

*Deposition preparation and document searches*

Still another category of do-not-answer instruction related to the witnesses' deposition preparations, document searches, and participants in their discussions leading to the non-hire decision.

Even if a list of documents an attorney gave a represented witness is privileged, what documents were actually reviewed, and which if any of them refreshed the witness's recollection is non-privileged information. Yet SHRM counsel repeatedly blocked witness answers to such questions with privilege objections. *See* Link Dep. Tr. (Attachment 2 hereto) at 15-16 (accepting SHRM counsel's instruction not to answer what documents he reviewed to prepare for deposition); Belyna Dep. Tr. (Attachment 3 hereto) at 13–14 (accepting instruction not to answer on privilege grounds what documents she reviewed to prepare for her deposition, or what documents if any she found refreshed her recollection).

Even the question whether a witness searched for documents to comply with discovery requests was blocked on grounds of lawyer-client privilege as well as lawyer work product protection. *See* Zoerkler Dep. Tr. (Attachment 6 hereto) at 85, 87 (accepting counsel's instruction not to answer whether she had searched for any documents or given any to her lawyers); Belyna Dep. Tr. (Attachment 3 hereto) at 314-315 (same). *See Sporck v. Peil*, 759 F.2d

312 (3d Cir. 1985) (even if counsel's choice of documents for a witness's deposition preparation qualifies for attorney work product protection, the documents themselves are not attorney-client communications). The question whether document review refreshed a witness's recollection about underlying facts is directly relevant to the completeness and credibility of her testimony; it is not an inquiry into privileged communication. And whether a witness searched for documents responsive to litigation holds or discovery requests is not a question unanswerable outside the lawyer-client privilege; it is a factual matter going to the adequacy of production and potential spoliation.

*Non-privileged information about deliberations*

SHRM's counsel also objected on privilege grounds to deposition questions about how and by whom Ms. Belyna was informed of what accommodations SHRM was willing to propose, Belyna Dep. Tr. (Attachment 3 hereto) at 243, and about how many conversations she had with others on the subject, *id.* at 244. Although the witness answered some questions despite the objection, no answer was provided on the identity of the individual who told Ms. Belyna what accommodations to offer Ms. Torres. That information, and the extent of conversations inside SHRM on the subject, are central to determining who actually devised the accommodations or set SHRM's limits on them. SHRM's deponents must be compelled to identify the participants in each meeting or call during which the accommodation decision was discussed; the number and timing of those conversations; and whether any meetings or calls occurred with persons other than counsel.

**C.** *Discovery has shown that the challenged decisions were effectively those of counsel, thus creating an implied waiver of privilege*

The foregoing discussion of SHRM's invocations of attorney-client privilege establishes more than just overuse of the shield. It shows that the decisions challenged in this suit were not just advised, but effectively made, by counsel. That in turn gives rise to an admittedly and properly rare implied waiver of the privilege as to the advice given.

Our courts have grappled with this at-issue waiver problem before. *Hanson v. U.S. Agency for Int'l Dev.,* 372 F.3d 286, 294 (4th Cir. 2004) ("A client can waive an attorney-client privilege expressly or through his own conduct."). The court in *Botkin v. Donegal Mutual Ins. Co.,* No. 5:10-cv-00077, 2011 WL 2447939 (W.D. Va. June 15, 2011) (Urbanski, J.), noted the difficulty in the context of advice by coverage counsel in insurance coverage denial decisions. The court opined that "it is often difficult to determine whether a party has placed an attorney-client communication at issue.: *Id.,* citing *Balt. Scrap Corp. v. David J. Joseph Co.,* No. L–96–827, 1996 WL 720785, at *25 (D. Md. Nov.20, 1996).

Judge Urbanski cited with approval the multi-pronged inquiry set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), for "determining whether the party asserting a privilege has impliedly waived it through his own affirmative conduct": "whether a) the assertion of privilege was the result of some affirmative act, such as filing suit, by the asserting party; b) through this act, the asserting party put the protected information at issue by making it relevant to the case; and c) application of the privilege would have denied the opposing party access to information vital to his defense." *Id.*, citing *Hearn*, 68 F.R.D. at 581. *See also Metric Constructors, Inc. v. The Bank of Tokyo–Mitsubishi, Ltd.*, No. 5:97–CV–369BR1, 1998 WL 1742589, at *6 n. 6

13

(E.D.N.C. Sept. 28, 1998); *City of Myrtle Beach v. United Nat'l Ins. Co.*, No. 4:08–1183–TLW–SVH, 2010 WL 3420044 (D.S.C. Aug. 27, 2010).

In the present case, even though SHRM studiously avoids calling advice of counsel an affirmative defense, *see* Answer to Complaint (ECF No. 8), at 18-20, the discovery described in this memorandum has shown that the non-lawyers at SHRM who claimed the challenged decision were theirs also said—at every turn where they did not simply invoke attorney-client privilege and refuse to say who made the decision or on what basis—that the decisions were never made "independent[ly]" but were all made "in collaboration and cooperation with . . . counsel." *See, e.g.,* Link Dep. Tr. (Attachment 2 hereto) at 74.

SHRM's behavior as described here, both at the time of the challenged decisions and during the present litigation, should be sufficient to deem the advice of counsel, if not nominally an affirmative defense, "an essential element of its defense" in the sense of *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156, 1162 (9th Cir.1992) (party's claim that its tax position was reasonable because it was based on advice of counsel puts advice in issue and waives privilege). *See also Balt. Scrap Corp. v. David J. Joseph Co*., No. L–96–827, 1996 WL 720785, at *24 (D. Md. Nov. 20, 1996) ("In the majority of cases where courts have found this form of waiver, the party asserting the privilege has taken affirmative steps to place the privileged communication into issue for his or her own benefit.").

**D.  *If the privilege cannot be pierced, then the withheld basis-for-decision evidence should be excluded at summary judgment and at trial.***

A party in federal civil litigation may not use attorney-client privilege "as both a shield and a sword." *Galaxy Computer Services, Inc. v. Baker*, 325 B.R. 544 (E.D. Va. 2005), citing *In re Edmond*, 934 F.2d 1304 (4th Cir. 1991) (holding that the privilege "cannot be invoked as a

14

shield to oppose depositions" and then "discarded for the limited purpose of making statements" at a later proceeding). In *Galaxy Computer*, defense counsel made 63 privilege-based objections at deposition and instructed a witness not to answer any questions about attorney communications. The court held that "to permit [the witness] to testify to issues which she refused to testify to during her deposition based on privilege would allow the Defendants to use the attorney-client privilege as both a shield and a sword." The remedy was that the witness "may only testify at trial within the scope of her deposition." *Id.* at 559, citing *Edmond,* 934 F.2d at 1308.  In *Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-CV-44-FL, 2020 WL 6708236 (E.D.N.C. Nov. 13, 2020), the court made the same ruling: "Where [the witness] refused to answer this question during his deposition, he may not answer this question at trial, or otherwise allow [the party] to use the attorney-client privilege impermissibly as a sword and shield." *See also United States v. Duke Energy Corp.*, 208 F.R.D. 553 (M.D.N.C. 2002) ("[a] party may not use a privilege (or work product) as a shield during discovery and then hammer it into a sword for use at the trial . . . Failure to reveal decisions, information, or documents pretrial shall preclude defendant from using such decisions, information, or documents at trial").

The preclusion applies with equal force at the summary judgment stage. *Edmond* held it proper for the trial court to refuse to consider a party's affidavit supporting summary judgment when that party had invoked privilege to oppose depositions on the same subject. *Galaxy Computer*, 325 B.R. at 554. Thus, without violating the principle of those cases, SHRM cannot submit declarations explaining the basis for the challenged decisions at summary judgment from any deponent who declined to answer those same questions at deposition.

Given the scope of SHRM's counsel's privilege objections, the following testimony—at a minimum—is rendered inadmissible by the sword-and-shield doctrine and must be excluded at trial and at summary judgment if the Court sustains SHRM's privilege claims:

*From Jim Link*: Any testimony about (a) the basis for his determination that Ms. Torres's service dog was not required for her to perform the essential functions of the role; (b) the reasons why the four alternative "accommodations" were selected; (c) what information, other than Ms. Torres's own e-mails, he considered in making the decisions to deny the service dog accommodation and to rescind her offer; (d) any facility, operational, or employee-impact analysis SHRM performed; and (e) why no medical professional was consulted.

*From Nicole Belyna:* Any testimony about (a) the reason(s) Ms. Torres's accommodation was denied; (b) the reason(s) SHRM rescinded the offer; (c) who devised the alternative "accommodations" proposed to Ms. Torres; (d) the meaning of the accommodation denial letter; (e) why Ms. Belyna did not ask follow-up questions after Ms. Torres's July 6 e-mail; and (f) why SHRM did not give Ms. Torres the option to take the job without her dog.

*From Deborah Zoerkler:* Any testimony about the circumstances surrounding or reasons for SHRM's rescission of the offer of employment to Ms. Torres.

It should be noted that this evidentiary preclusion is not punitive. It is merely the logical consequence of SHRM's own litigation choices. "[I]t is unfair to use privileged communications as proof while blocking the other side from examining them." *Pfeffer v. Bank of America*, 2026 WL 1235426 (W.D.N.C. May 5, 2026).

16

### III.    Conclusion

For the foregoing reasons, Ms. Torres respectfully requests the following relief:

1. *In camera review and orders to produce:* An order for *in camera* review of all 42 entries on SHRM's privilege log; an order for immediate production of the nine "family relationship privilege" entries (SHRM_Torres 0000684, 0000685, 0000859–0000864, 0001141) as non-privileged as a matter of law; and an order deeming advice of counsel to have the status of an affirmative defense, with the implied waiver of the attorney-client privilege that this entails, or at a minimum an order for immediate production of any additional privilege-log items the Court finds to be primarily business communications rather than ones seeking or giving legal advice.

2. *Order compelling deposition responses:* An order directing SHRM to make Jim Link, Nicole Belyna, and Deborah Zoerkler available for additional deposition time to answer, without privilege objection, the categories of questions detailed in this memorandum or in the tabular Appendix (Attachment 7 hereto), including: the basis for the non-hire decision; the origin and rationale for the alternative accommodation proposal(s)s; what factual investigation, if any, was conducted independent of counsel; the reason the offer was rescinded; document search and preservation steps; and all questions calling for the witnesses' own independent knowledge, observations, and understanding.[5]

---

[5] Because discovery closes on June 12, and two depositions are scheduled during the week of June 8, a brief extension of discovery for purposes of taking these re-depositions would be necessary.

3. *Order compelling supplemental interrogatory answers:* An order directing SHRM to provide complete answers, unencumbered by privilege objections, to Interrogatory No. 2 (Attachment 4 hereto) (factual basis for defenses) and related interrogatories.

4. *In the alternative, an order in limine:* An order precluding SHRM from offering at trial, or in support of or opposition to summary judgment, any testimony or evidence regarding the basis for its decisions as to Ms. Torres that was withheld on privilege grounds during discovery.

Respectfully submitted,

_____
Stephen B. Pershing
Virginia Bar No. 31012
Mary E. Kuntz
Virginia Bar No. 76947
Hector F. Ruiz, Jr.
Virginia Bar No. 102153
Anna Kathryn B. Barry
D.C. Bar No. 1719493
(Admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
spershing@kcnlaw.com
mkuntz@kcnlaw.com
hruiz@kcnlaw.com
akbarry@kcnlaw.com

*Attorneys for Plaintiff*

Date: May 29, 2026

^    ^    ^

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of May, 2026, by 5 p.m., a copy of the foregoing was filed with the Court's case management / electronic case filing ("CM/ECF") system, through which it was transmitted on counsel of record for defendant Society for Human Resource Management as follows:

Lauren M. Bridenbaugh
Leslie P. Currie
Tanja L. Darrow (admitted *pro hac vice)*
Tiffany din Fagel Tse
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lbridenbaugh@littler.com
lcurrie@littler.com
tdarrow@littler.com
ttse@littler.com

Stephen B. Pershing

19