# ATTACHMENT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

1:25-CV-2360 (PTG/WBP)

FIONA TORRES, )

Plaintiff, )

v. )

SOCIETY FOR HUMAN RESOURCE , )

MANAGEMENT, )

Defendant. )

AUDIO TRANSCRIPTION OF RECORDED DEPOSITION

TESTIMONY OF NICOLE BELYNA

May 5, 2026, 9:55 a.m.

Job No. 630826

Pages: 1 - 342

Transcribed by: Cynthia Bauerle, CSR

Notary Public/Court Reporter: Samuel Pachon

A. Hanton Walters, SHRM's general counsel.

Q. Have you spoken with anyone, other than the individuals you've already told me about regarding this deposition?

A. No.

Q. Did you review any documents to prepare for this deposition?

A. Yes.

Q. What documents?

MS. BRIDENBAUGH: Objection. Attorney-client privilege. I'll direct you not to answer.

BY MS. BARRY:

Q. Are you going to answer?

A. No.

Q. What was the purpose of reviewing those documents?

MS. BRIDENBAUGH: Objection. Attorney-client privilege. Attorney work product. Litigation strategy. Do not answer the question.

BY MS. BARRY:
Q. Did they refresh your recollection regarding any of the facts related to the case?
MS. BRIDENBAUGH: Same objection. Do not answer the question.
BY MS. BARRY:
Q. Did you take any documents with you following your meeting with counsel?
MS. BRIDENBAUGH: Same objection. Do not answer the question.
BY MS. BARRY:
Q. Where do you currently work?
A. SHRM.
Q. And what does SHRM stand for?
A. Society for Human Resource Management.
Q. During this deposition, I'm going to refer to it as SHRM. Do you understand that when I refer to SHRM, I'm referring to the Society for Human Resources Management?

external?

BY MS. BARRY:

Q. Who's legal counsel internally at SHRM?

A. Hanton Walters.

Q. Anyone else?

MS. BRIDENBAUGH: Objection. Vague. You can answer.

THE WITNESS: No.

BY MS. BARRY:

Q. Who is legal counsel externally at SHRM?

MS. BRIDENBAUGH: Objection. Calls for speculation. Vague. Compound. You can answer, if you can.

THE WITNESS: We work with Holland Knight.

BY MS. BARRY:

Q. In what capacity?

MS. BRIDENBAUGH: Objection. Attorney-client privilege. Don't answer the question.

BY MS. BARRY:
Q. Have you personally worked with Holland Knight?
A. Yes.
Q. When?
MS. BRIDENBAUGH: You can answer, but without any details as to who or what you discussed with them.
THE WITNESS: Meaning, I would work with them on policy creation or updates. Perhaps during employee relations matters.
BY MS. BARRY:
Q. Who at Holland Knight have you worked with in the past?
MS. BRIDENBAUGH: Objection. Attorney-client privilege. Do not answer the question.
BY MS. BARRY:
Q. Are you going to answer the question?
A. No.
Q. The identities of who you may

BY MS. BARRY:
Q. How did you know what documentation to request?
MS. BRIDENBAUGH: Objection to the extent the answer would relate to attorney-client privileged communications. So if an attorney told you what to request, I would direct you not to answer.
THE WITNESS: Okay. Then I won't answer.
BY MS. BARRY:
Q. We talked about a lot of training that you have completed during your time at SHRM. Even prior to working at SHRM, in any of that training, did you receive training regarding what is required for a reasonable accommodation?
MS. BRIDENBAUGH: Objection. Vague. Compound. Asked and answered. Calls for a legal conclusion. You can answer.
THE WITNESS: I know that documentation is required.

BY MS. BARRY:
Q. Have you received any training beyond this document relating to the procedure for requesting an accommodation at SHRM?
A. No. No.
Q. Have you received any instruction from any supervisors at SHRM regarding the procedure for requesting an accommodation at SHRM?
MS. BRIDENBAUGH: Objection. Vague. And to the extent the answer would involve attorney-client privileged communications, I would direct you not to answer.
THE WITNESS: I won't answer.
BY MS. BARRY:
Q. Have you ever received any instruction from your supervisor, Mr. Jim Link regarding the procedure for requesting an accommodation at SHRM?
MS. BRIDENBAUGH: Objection. Vague. And to the extent any conversations

with Mr. Link also involved attorney-client privileged communications, I would direct you not to answer.

THE WITNESS: I won't answer.

BY MS. BARRY:

Q. Are you not answering because the -- your attorney instructed you not to answer on the basis of attorney-client privilege?

A. Yes.

Q. Have you ever reviewed any medical documentation provided in support of an accommodation request?

MS. BRIDENBAUGH: Objection. Calls for speculation. Vague.

THE WITNESS: I have received documentation.

BY MS. BARRY:

Q. Did you look at it?

MS. BRIDENBAUGH: Same objection.

THE WITNESS: I -- yes.

You can answer, if you know.

THE WITNESS: I don't know. I'm not part of the evaluation.

BY MS. BARRY:

Q. Have you ever provided any -- any information to someone who was evaluating an accommodation request?

MS. BRIDENBAUGH: Objection. Vague. Asked and answered.

THE WITNESS: Yes.

BY MS. BARRY:

Q. What information?

MS. BRIDENBAUGH: Objection. Vague. You can answer to the extent it does not involve attorney-client privileged communications. I would otherwise direct you not to answer.

THE WITNESS: Okay. I won't answer.

BY MS. BARRY:

Q. Are you not answering because your attorney directed you not to on the basis

has requested an accommodation do you know?
MS. BRIDENBAUGH: Objection. Calls for speculation.
THE WITNESS: I don't.
BY MS. BARRY:
Q. Have you ever seen a written explanation of a denial of an accommodation request as mentioned in this policy?
MS. BRIDENBAUGH: Objection. Vague. Calls for speculation.
THE WITNESS: Just the one in this -- in this instance with Ms. Torres.
BY MS. BARRY:
Q. Who wrote that?
MS. BRIDENBAUGH: Objection. To the extent the answer would get into attorney-client privileged communications, I direct you not to answer.
THE WITNESS: Okay. I won't answer.
BY MS. BARRY:
Q. Is the answer of who -- to my

question privileged? Is that why you're not answering?
A. That's correct.
Q. Did you write any written explanation to Ms. Torres regarding the denial of her accommodation request?
A. Yes. Under the advisement of counsel.
Q. Did you talk to anyone other than counsel regarding the denial of Ms. Torres's accommodation request?
MS. BRIDENBAUGH: Objection. Vague.
THE WITNESS: Yes.
BY MS. BARRY:
Q. Who else?
A. Jim Link.
Q. And what did you and Mr. Link discuss regarding the denial of Ms. Torres's accommodation request?
A. Well --
MS. BRIDENBAUGH: Objection. If

to the extent the conversations with Mr. Link involved counsel or attorney-client privileged communications, I would direct you not to answer.

THE WITNESS: Okay.

BY MS. BARRY:

Q. Are you going to answer?

A. He just notified me that we were rescinding the offer.

Q. How did he notify you?

MS. BRIDENBAUGH: Same -- same objection and instruction. And if you're not sure, we can confide.

THE WITNESS: I'm not.

MS. BARRY: It's not appropriate to coach the witness.

MS. BRIDENBAUGH: I said if she doesn't know if -- whether her answer would get into privileged communications, we can consult, which is a valid basis to consult before she answers.

THE WITNESS: I believe it was

over the phone.
BY MS. BARRY:
Q. But you're not sure?
A. I don't recall. I -- I -- I -- over the phone.
Q. You don't recall, or over the phone?
A. I don't recall.
Q. But you believe it was most likely over the phone?
A. I do.
Q. Did you have any email conversations with Mr. Link regarding the denial of Ms. Torres's accommodation?
MS. BRIDENBAUGH: Objection. Calls for speculation. Vague. You can answer, if you can.
THE WITNESS: Not that I recall.
BY MS. BARRY:
Q. Did Mr. Link tell you why Ms. Torres's offer was being rescinded?
MS. BRIDENBAUGH: Objection to

the extent that conversation involved attorney-client privileged communications, I would direct you not to answer.

THE WITNESS: Then I won't answer.

BY MS. BARRY:

Q. Is the answer to my question privileged?

A. Yes.

MS. BRIDENBAUGH: Objection. Calls for a legal conclusion.

BY MS. BARRY:

Q. Are you declining to answer based on your attorney's advice that the answer to the question is privileged?

A. Yes.

Q. Was anyone on the phone call with you and Mr. Link when he informed you that Ms. Torres's offer was being rescinded, or was it just the two of you?

MS. BRIDENBAUGH: Objection. Calls for speculation, and to the extent -- go

phone call with Mr. Walters?

MS. BRIDENBAUGH: Objection. Attorney-client privileged communication. I would direct you not to answer.

THE WITNESS: I won't answer.

BY MS. BARRY:

Q. Is it your understanding that you were seeking legal advice?

A. Yes.

Q. After that phone call with Mr. Link and Mr. Walters, did you take any further action regarding Ms. Torres's accommodation request?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: Yes. I had asked Debbie to contact Ms. Torres to schedule a time for us to talk.

BY MS. BARRY:

Q. Why did you do that?

A. To ask her for additional information regarding her request.

THE WITNESS: I spoke with Jim and our legal counsel.

BY MS. BARRY:

Q. By phone?

A. Yes.

Q. Did you speak with them separately or together?

A. Together.

Q. Did you have any conversations with either of them separately?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: Not about this topic.

BY MS. BARRY:

Q. What was the purpose of your call with Mr. Link and counsel following your meeting with Ms. Torres?

MS. BRIDENBAUGH: Objection. Attorney-client privilege. Direct the witness not to answer the question.

THE WITNESS: I won't answer.

BY MS. BARRY:
Q. Are you not answering based on your attorney's advice regarding the basis of privilege?
A. Yes.
Q. After you spoke with Mr. Link and counsel, were there any other steps that you took relating to Ms. Torres's accommodation request?
MS. BRIDENBAUGH: Objection. Vague.
THE WITNESS: If I recall the timeline correctly, she -- after our conversation, she did share some additional documentation for the service dog. And so I did -- she shared that with Debbie, and Debbie forwarded it on to me. And so I did save that information.
BY MS. BARRY:
Q. Did you share it with anyone else?
A. I shared it with Jim Link.

BY MS. BARRY:
Q. Did you talk to Mr. Link regarding Ms. Torres's medical documentation?
MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney-client privileged communications, I would direct you not to answer.
THE WITNESS: Okay. I provided the documentation.
BY MS. BARRY:
Q. Did Mr. Link ask you to get any further documentation?
MS. BRIDENBAUGH: Same objection. Same direction.
THE WITNESS: I don't recall.
BY MS. BARRY:
Q. Did you request any additional documentation from Ms. Torres, other than what she provided you?
A. I don't recall. I mean, whatever she provided to us, she either provided it unsolicited or I believe at one

point, I had requested an updated doctor's note.

Q. Why did you do that?

MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney-client privileged communications, I would direct you not to answer. Otherwise, you can answer.

THE WITNESS: I won't answer.

BY MS. BARRY:

Q. Are you declining to answer based on your attorney's advice regarding attorney-client privileged communications.

A. Yes.

Q. Did you request any medical documentation from Ms. Torres that she refused to provide you?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: Not that I can recall.

BY MS. BARRY:

rescinded from an applicant to SHRM?
MS. BRIDENBAUGH: Objection. Asked and answered.
THE WITNESS: I don't recall.
MS. BRIDENBAUGH: Is this a good time for a break?
MS. BARRY: Just one moment. I'm almost done with this section.
BY MS. BARRY:
Q. Are you aware of what information or facts Mr. Link considered when making the determination regarding Ms. Torres's accommodation request --
MS. BRIDENBAUGH: Objection. Calls for speculation, and to the extent your knowledge is from attorney-client privileged communications, I would direct you not to answer.
THE WITNESS: I'm not aware.
BY MS. BARRY:
Q. You're not aware of what information he considered?

A. No.
Q. Did Mr. Link tell you the basis for his decision in denying Ms. Torres's accommodation request?
MS. BRIDENBAUGH: Objection to the extent it would get into attorney-client privileged communications, I would direct you not to answer.
THE WITNESS: No, not directly.
BY MS. BARRY:
Q. Has he ever indirectly communicated to you the basis of his decision regarding the denial of Ms. Torres's accommodation request?
MS. BRIDENBAUGH: Same objection. Same direction.
THE WITNESS: No.
BY MS. BARRY:
Q. Has Mr. Link ever separately discussed with you, outside of the presence of counsel, his decision to deny Ms. Torres's accommodation request?

Ms. Torres?
A. Yes. There were some alternative accommodations presented to her.
Q. What were those alternative accommodations?
A. I don't recall the specifics, but I know it's in one of -- one of the emails.
Q. Do you recall any of the alternative accommodations?
MS. BRIDENBAUGH: Objection. Asked and answered.
THE WITNESS: It -- not without looking at the email.
BY MS. BARRY:
Q. Did you come up with those alternative accommodations?
A. No, I did not.
Q. Who did, if you know?
A. I -- I don't know. It was through counsel.
Q. Did someone tell you to provide

those alternative accommodations to Ms. Torres?

A. Yes.

Q. And who told you to?

MS. BRIDENBAUGH: Objection to the extent the answer would go into attorney-client privileged communications, I would direct you not to answer the question. Otherwise, you can answer.

THE WITNESS: I provided the -- the alternate accommodations with the assistance -- with the assistance of counsel.

MS. BARRY: I'm marking as Plaintiff's Exhibit Number 4, SHRM Torres 693 through 696.

(Exhibit 4, Email Chain Nicole Belyna Fiona Torres Offer Status, marked for identification.)

BY MS. BARRY:

Q. Ms. Belyna, please take a look at Plaintiff's Exhibit 4. Do you recognize this document?

695, based on the existing documentation, it does not appear that your service dog is necessary for your performance of the essential duties of your position because you are still able to perform the essential duties of the job without the presence of the service dog. What did you mean by that?

MS. BRIDENBAUGH: Objection. Calls for speculation. And to the extent she has testified that communications were written with the assistance of counsel, I would direct her not to answer to the extent her answer would implicate attorney-client privileged communications. Otherwise, you can answer.

THE WITNESS: Yes. As I -- as I mentioned, the communication was drafted with the advice of counsel.

BY MS. BARRY:

Q. The communication on bates SHRM Torres 695 was drafted with the assistance of counsel?

A. That's correct.

capture fast-moving trends that can lead to these types of episodes. Do you see that?

A. Yeah.

Q. Did you have any follow-up questions for Ms. Torres regarding this information she provided to you on June 17th, 2024?

A. It looks like, yes, I did respond to her on the 18th.

Q. What --

A. With additional --

Q. You can finish.

A. With some additional questions.

Q. What were those additional questions?

A. Can you confirm whether you rely on your service dog in both your personal and professional daily activities?

Q. Let's just start with that one first. Why did you have this question?

MS. BRIDENBAUGH: Objection. To the extent the answer would get into

attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: Yes. The email here was -- I crafted the email under the advisement of counsel.

BY MS. BARRY:

Q. Are you referring to Mr. Walters when you say counsel?

MS. BRIDENBAUGH: Objection. Attorney-client privileged communication.

THE WITNESS: Yeah. I won't answer.

BY MS. BARRY:

Q. Did anyone, other than counsel, assist you with drafting the email on June 18th, 2024?

A. No.

Q. I direct your attention to page 695 of Exhibit 4. We talked earlier about the sentence, based on the exec- -- existing documentation, it does not appear that your

service dog is necessary for your performance of the essential duties of your position because you are still able to perform the essential duties of the job without the presence of the service dog. Did you understand the reason you provided to Ms. Torres as to why her service dog was not necessary?

MS. BRIDENBAUGH: Objection. To the extent the answer would get into attorney-client privileged communications with counsel, I would direct you not to answer, but you can otherwise answer as to your understanding.

THE WITNESS: I didn't have the full information, you know, but as I mentioned, you know, I was advised to -- to inquire further.

BY MS. BARRY:

Q. You reviewed documentation from Ms. Torres relating to her service dog, correct?

Q. You wrote, okay. Thank you for providing the attached note from your doctor. I have forwarded this along to include with your request. Who did you forward this along to?

MS. BRIDENBAUGH: Objection to the extent if it gets into attorney-client privileged communications, I would direct you not to answer. Otherwise, you can answer.

THE WITNESS: Likely shared it with -- with Jim.

BY MS. BARRY:

Q. Jim Link?

A. Yes.

Q. Anywhere else?

MS. BRIDENBAUGH: Objection. Attorney-client privileged communications. I would direct you not to answer. Otherwise, you can answer.

THE WITNESS: Okay.

BY MS. BARRY:

Q. Are you declining to answer

based on your attorney's advice regarding attorney-client communication?

A. Yes.

Q. I will direct you back to Exhibit 3. Oh, I'm sorry. Never mind. Thank you. Strike that.

Did you believe at the time you received Ms. Torres's doctor's letter, that her service dog was unnecessary for the performance of her -- of the job at SHRM?

MS. BRIDENBAUGH: Objection. Calls for speculation. Calls for a legal conclusion. Form.

THE WITNESS: I -- I didn't make a determination either way.

BY MS. BARRY:

Q. Did you have any belief either way?

MS. BRIDENBAUGH: Objection. Calls for a legal conclusion. Calls for speculation.

THE WITNESS: I didn't, no.

of the proposed alternatives is facilitating the use of your continuous glucose monitoring system while on site. Did you have any understanding as to what that meant as an alternative accommodation?

MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: No. No, I won't answer.

BY MS. BARRY:

Q. Are you declining to answer based on your attorney's advice regarding attorney-client communications?

A. Yes, I am.

Q. Aside from any conversations you had with counsel, did you have any independent understanding of what any of these proposed alternative accommodations meant?

MS. BRIDENBAUGH: Objection.

Q. Is there any, like, formal submission process or system that employees have to submit leave requests in?

MS. BRIDENBAUGH: Same objection. Vague.

THE WITNESS: They would request time off through Dayforce.

BY MS. BARRY:

Q. Is it your understanding that SHRM generally provides a flexible leave program for all SHRM employees?

MS. BRIDENBAUGH: Objection. Vague. Calls for speculation.

THE WITNESS: I would say, yes.

BY MS. BARRY:

Q. Did you participate in any discussions with anyone at SHRM regarding these alternative accommodations?

MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney-client privileged communications, I would direct you not to answer. Otherwise,

you can answer.

THE WITNESS: I didn't, no.

BY MS. BARRY:

Q. By what method were you informed that these were the proposed accommodations to provide -- proposed alternative accommodations to provide to Ms. Torres?

MS. BRIDENBAUGH: Objection to the extent it gets into attorney-client privileged communications, I would direct you not to answer. Otherwise, you can answer.

THE WITNESS: I believe by phone.

BY MS. BARRY:

Q. Do you recall who that phone call was with?

MS. BRIDENBAUGH: Same objection and instruction.

THE WITNESS: Yeah. I don't -- I'm -- I'm not going to answer the question.

BY MS. BARRY:

Q. Are you declining to answer

because the phone call was with counsel?

MS. BRIDENBAUGH: Objection. Attorney-client privileged communication.

BY MS. BARRY:

Q. Did you have any --

MS. BRIDENBAUGH: You are not to answer the question.

Q. Did you have any phone calls with anyone, other than counsel, regarding the proposed alternative accommodations to offer to Ms. Torres?

A. I didn't.

Q. How many conversations did you have regarding the proposed alternative accommodations to offer to Ms. Torres?

MS. BRIDENBAUGH: Objection. Attorney-client privileged communication. To the extent the answer would get into that, I would direct you not to answer. You can otherwise answer.

THE WITNESS: I believe just one.

BY MS. BARRY:
Q. I'm going to direct you to page 557 -- 567 and 568. Do you recall what these communications with Mr. Walters and Mr. Link were regarding --
MS. BRIDENBAUGH: Objection. Attorney-client privileged communication. I'm directing the witness not to answer the question.
BY MS. BARRY:
Q. There are a number of emails in the record that have these redactions for privilege between you and Mr. Walters and Mr. Link. Are you going to decline to answer any questions regarding those redacted emails on the basis of attorney-client privilege?
MS. BRIDENBAUGH: Same objection. Same instruction.
THE WITNESS: Yes.
BY MS. BARRY:
Q. I'm not going to ask you what the content of these emails with counsel are.

understanding of what that meant?

MS. BRIDENBAUGH: Objection. Calls for speculation. And to the extent the answer would get into attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: I guess I won't answer it then.

BY MS. BARRY:

Q. Are you declining to answer because the answer is privileged based on your attorney's advice?

A. Yes.

Q. You then go on to state, we are unable to grant your request to have a service dog in the workplace. Did you know at this time why SHRM was denying Ms. Torres's request to have a service dog in the workplace?

MS. BRIDENBAUGH: Objection. Calls for speculation. To the extent the answer would get into attorney-client

privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: I didn't know.

BY MS. BARRY:

Q. No one told you why?

MS. BRIDENBAUGH: Objection. Asked and answered. Same answer on -- direction on attorney-client privilege.

THE WITNESS: I didn't know.

BY MS. BARRY:

Q. In the same email you go on to say, at this stage, and based on the foregoing, we will need to rescind the offer. Did you know at the time you sent this email why SHRM decided to rescind Ms. Torres's offer?

MS. BRIDENBAUGH: Objection that the predicate mischaracterizes the document and saying it goes on to say when skipping an entire sentence, and that calls for speculation. And to the extent the answer

would get into attorney-client privileged communications, I would direct the witness not to answer, but otherwise, you can answer.

THE WITNESS: At that time, I only knew what is in the body of the email.

BY MS. BARRY:

Q. Did you ever know why SHRM decided to rescind Ms. Torres's offer?

MS. BRIDENBAUGH: Objection. Form.

THE WITNESS: Eventually, yes.

BY MS. BARRY:

Q. And what was that reason?

MS. BRIDENBAUGH: Objection. To the extent the answer gets into attorney-client privileged communications, I will direct the witness not to answer.

THE WITNESS: Then I won't answer.

BY MS. BARRY:

Q. Are you declining to answer because the answer -- you believe the answer

to be privileged based on your attorney's advice?
A. Yes.
Q. At what point did you learn the reason why SHRM rescinded Ms. Torres's offer?
MS. BRIDENBAUGH: Objection. Attorney-client privileged communication. I direct the witness not to answer to the extent it is privileged.
THE WITNESS: I decline to respond.
BY MS. BARRY:
Q. Are you declining to respond because you believe the answer is privileged based on your counsel's advice?
A. Yes.
Q. Why didn't SHRM give Ms. Torres the opportunity to come to work at SHRM without her dog?
MS. BRIDENBAUGH: Objection. Mischaracterizes the testimony. Mischaracterizes the evidence. Calls for

speculation. And to the extent -- the extent the answer would get into attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: I don't know the answer.

BY MS. BARRY:

Q. Did you have any discussions with anyone at SHRM regarding whether to allow Ms. Torres to make the decision of whether to move forward with the job, despite the denial of her accommodation request?

MS. BRIDENBAUGH: Objection. Mischaracterizes the evidence and mischaracterizes the testimony. Calls for speculation, and I would direct the witness not to answer to the extent the answer would involve attorney-client privileged communications. Otherwise, you can answer.

THE WITNESS: I decline to answer.

BY MS. BARRY:
Q. Are you declining to answer because you believe the answer is privileged based on your counsel's advice?
A. Yes.
MS. BARRY: I'm going to mark as Plaintiff's Exhibit 11 Bates number SHRM Torres 1938 to 1941.
(Exhibit 11, Email Chain Rakhi Handa SHRM_Torres_1938 Role Discussion, marked for identification.)
BY MS. BARRY:
Q. Ms. Belyna, please take a look at Plaintiff's Exhibit 11. Do you recognize this document?
A. Yes.
Q. On Bates number SHRM Torres 1938 and the top of 1939, are these emails between you and Rakhi Handa?
A. Yes.
Q. Can you spell Miss -- Miss or Mr. Handa's name for the record?

BY MS. BARRY:

Q. At this time, Ms. Torres had already been offered the position, correct?

MS. BRIDENBAUGH: Objection to form.

THE WITNESS: Yes, verbally.

BY MS. BARRY:

Q. If Ms. Torres had already been offered the position, why would Mr. Link need facts on why this candidate was selected?

MS. BRIDENBAUGH: Objection. Calls for speculation.

THE WITNESS: I'm not sure.

BY MS. BARRY:

Q. Did you have any conversations with Mr. Link regarding this fact file?

MS. BRIDENBAUGH: Objection. To the extent the answer would get into attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: Just my emailed

response and any -- as you can see, I included the doctor's note and service dog information. There may have been other information in there. I don't recall.

BY MS. BARRY:

Q. Do you recall preparing notes on why this candidate was selected?

MS. BRIDENBAUGH: Objection. Form.

THE WITNESS: I don't, no.

BY MS. BARRY:

Q. Do you recall providing any documents to Mr. Link in response to his request for a fact file that explained why this candidate was selected?

MS. BRIDENBAUGH: Objection to form.

THE WITNESS: I don't recall.

BY MS. BARRY:

Q. In your response to Mr. Link, there is a document referenced attached to your email called Senior Specialist Product

underscore Torres with several zeros 128. Do you see that?

A. I do.

Q. Under file name, it says, senior specialist product management position overview, privileged document. Do you see that?

A. I do.

Q. Do you know if this is the same document that you've attached to this email to Mr. Link?

MS. BRIDENBAUGH: Objection. Calls for speculation. Attorney-client privileged communications. Direct the witness not to answer to the extent the answer would get into attorney-client communications.

THE WITNESS: I don't know.

BY MS. BARRY:

Q. Have you ever seen this -- this document before, Exhibit 13?

MS. BRIDENBAUGH: Objection. Attorney-client privilege. I'll direct the

witness not to answer.

THE WITNESS: I haven't. No.

BY MS. BARRY:

Q. Okay. Looking back at Exhibit-- Plaintiff's Exhibit 12, do you know if SHRM was re-evaluating Ms. Torres's offer because of her request to bring her service dog to the office?

MS. BRIDENBAUGH: Objection. Calls for speculation. Attorney-client privileged communications. I would instruct the witness not to answer to the extent the answer would get into privileged communications.

THE WITNESS: Okay. I don't know.

BY MS. BARRY:

Q. Can you think of any times, other than the one you testified about regarding the individual with the background check issue and Ms. Torres, where an offer was rescinded after it had been approved?

MS. BRIDENBAUGH: Objection. Asked and answered. Calls for speculation. Mischaracterizes prior testimony. You can answer.

THE WITNESS: I don't know. I don't remember.

BY MS. BARRY:

Q. You can't think of any others?

MS. BRIDENBAUGH: Objection. Asked and answered. Mischaracterizes prior testimony. Calls for speculation.

THE WITNESS: I don't.

BY MS. BARRY:

Q. At the bottom of Mr. Link's email, he says, I'm asking for this in anticipation of being asked these questions when I get to JT. Do you know what JT refers to?

MS. BRIDENBAUGH: Objection. Calls for speculation.

THE WITNESS: I assume he's referring to our CEO.

BY MS. BARRY:
Q. What is your CEO's name?
A. John C. Taylor.
Q. Are you aware if Mr. Link had any conversations with your CEO regarding Ms. Torres?
MS. BRIDENBAUGH: Objection. Calls for speculation. And to the extent the answer would get into attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.
THE WITNESS: I'm not aware.
BY MS. BARRY:
Q. Did you have any conversations with SHRM CEO regarding Ms. Torres?
A. I did not.
Q. Can you spell the CEO's name for the record, please?
A. J-O-H-N-N-Y C. T-A-Y-L-O-R, J-R.
MS. BRIDENBAUGH: Just have time for a break?

Calls for speculation. Form.

THE WITNESS: I don't recall.

BY MS. BARRY:

Q. Did you take any notes in any other meetings with anyone at SHRM where you were discussing Ms. Torres?

MS. BRIDENBAUGH: Objection. Calls for speculation. To the extent those would involve attorney-client privileged communications, I would direct you not to answer. Otherwise, you can answer.

THE WITNESS: I didn't -- I didn't have any other conversations.

BY MS. BARRY:

Q. You didn't have any con- -- any other conversations, other than with Ms. Zoerkler with anyone at SHRM regarding Ms. Torres?

MS. BRIDENBAUGH: Objection. Asked and answered. Calls for speculation. To the extent the answer would involve attorney-client privileged communications, I

would direct the witness not to answer. Otherwise, she can answer.

THE WITNESS: Just Ms. Zoerkler and then privileged communication. I didn't take notes during those meetings.

BY MS. BARRY:

Q. You testified earlier that you had at least one phone conversation with Mr. Link outside of the presence of legal counsel. Did you take any notes during that conversation?

A. Not that I recall.

Q. Did you take any notes after the conversation regarding what you talked about on the call?

MS. BRIDENBAUGH: Objection. Asked and answered. Calls for speculation.

THE WITNESS: Not that I recall.

BY MS. BARRY:

Q. Did you look for any documents that might relate to this lawsuit at any time?

MS. BRIDENBAUGH: Objection.

Calls for speculation. And to the extent the answer would involve attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: I'm declining to answer.

BY MS. BARRY:

Q. Are you declining to answer because your attorney is instructing you not to on the basis of privilege?

A. Yes.

Q. Do you email -- do you organize your emails in any way?

MS. BRIDENBAUGH: Objection. Vague. Form. Relevance. You can answer.

THE WITNESS: Generally, no.

BY MS. BARRY:

Q. Do you have any folders in your email inbox?

MS. BRIDENBAUGH: Objection. Form. Relevance. You can answer.

relating to Ms. Torres?
MS. BRIDENBAUGH: Objection to form.
THE WITNESS: Not that I recall.
BY MS. BARRY:
Q. Have you made any efforts to ensure the preservation of emails relating to Ms. Torres?
MS. BRIDENBAUGH: Objection. To the extent the question is getting into attorney-client privileged communications, I will direct the witness not to answer. Otherwise, you can answer.
THE WITNESS: I'm declining to answer.
BY MS. BARRY:
Q. Are you declining to answer because your attorney is instructing you not to on the basis of privilege?
A. Yes.
Q. If you were to look in your email for a specific email, how would you

employment with SHRM?

MS. BRIDENBAUGH: Objection. Asked and answered.

THE WITNESS: She did not.

BY MS. BARRY:

Q. Why not?

MS. BRIDENBAUGH: Objection. Calls for speculation. Asked and answered.

THE WITNESS: Based on the email correspondence, we -- as you're aware, the offer was rescinded.

MS. BARRY: I am going to mark as Plaintiff's Exhibit 15, Bates number SHRM Torres 681 through 685.

(Exhibit 15, Privileged Email Chains Hanton Walters 6/7/24 Re: Doctor's Note, marked for identification.)

MS. BRIDENBAUGH: Thank you.

BY MS. BARRY:

Q. Ms. Belyna, please take a look at this document. Do you recognize -- well, do you recognize the top of 681? Does this

appear to be a series of emails between you, Mr. Hanton -- and Mr. Hanton Walters?

A. It does.

Q. And the subject line is Re: Doctor's note; is that right?

A. Yes.

Q. Are there any attachments?

MS. BRIDENBAUGH: Objection. The document speaks for itself.

THE WITNESS: Yes. It looks like there's two documents.

BY MS. BARRY:

Q. The first attachment is senior specialist product management position overview. Do you know who created that document?

MS. BRIDENBAUGH: Objection. Calls for speculation. Asked and answered.

THE WITNESS: I -- I don't recall.

BY MS. BARRY:

Q. Do you know why that document

was created?

MS. BRIDENBAUGH: Objection. Calls for speculation. Asked and answered. To the extent the answer would invade attorney-client privileged communications, I would direct the witness not to answer. Otherwise, you can answer.

THE WITNESS: I decline to answer.

BY MS. BARRY:

Q. Are you declining to answer based on your attorney's instruction that the answer is privileged?

A. Yes.

Q. The second attachment is FW: Service animal ADA information. Where did you get that document?

MS. BRIDENBAUGH: Objection. Calls for speculation. You can answer.

THE WITNESS: I -- I don't recall.

BY MS. BARRY: