# ATTACHMENT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

- - - - - - - - - - - -

FIONA TORRES, :

Plaintiff, :

vs : 1:25-CV-2360 (PTG/WBP)

: March 23, 2026

SOCIETY FOR HUMAN RESOURCE MANAGEMENT, :

Defendant. :

- - - - - - - - - - - -

Deposition of DEBORAH ZOERKLER

Monday, April 27, 2026

9:59 a.m. EST

Job No.: 630825

Pages: 1 - 194

Recorded by: Samuel Pachon

knowing something. She doesn't recall at this time, but she's answered the question.

MS. KISCH: That's not what she said.

MS. BRIDENBAUGH: If you don't like the answer it's not a reason to keep badgering the witness.

BY MS. KISCH:

Q Do you know what this lawsuit is about?

MS. BRIDENBAUGH: Objection, form. You can answer.

THE WITNESS: Yes.

BY MS. KISCH:

Q And tell me what you understand this lawsuit to be about.

MS. BRIDENBAUGH: Same objection.

THE WITNESS: That there's a candidate that may have an accommodation.

BY MS. KISCH:

Q And what do you mean by that, may have an accommodation?

A I don't know --

MS. BRIDENBAUGH: Objection to the

extent the answer gets into attorney/client privileged communications. You can answer without disclosing privileged communications.

THE WITNESS: That's -- I mean, that's all I know, that there may be an accommodation and I don't know the extent. I don't know what transpired, but that's what I'm aware of.

BY MS. KISCH:

Q Well, what do you mean by -- I'm just not understanding what you mean by may be an accommodation.

MS. BRIDENBAUGH: Objection, attorney/client privilege to the degree the answer gets into that, asked and answered. She can only answer what she knows aside of what she's been told by counsel. You can answer as long as it's not anything you've been told by counsel.

THE WITNESS: Just what I said.

BY MS. KISCH:

Q I'm just trying to understand what you mean by there's an accommodation.

MS. BRIDENBAUGH: Same objection. You

THE WITNESS: I just set up interviews. I don't understand like what you're asking me.

BY MS. KISCH:

Q Did you do anything else other than the initial Zoom screen and set up interviews for Ms. Torres?

MS. BRIDENBAUGH: Same objection, asked and answered.

THE WITNESS: No.

BY MS. KISCH:

Q Have you had any conversations with -- well, have you had any other conversations with anybody about Ms. Torres's application for employment with SHRM?

MS. BRIDENBAUGH: Objection, vague, and to the extent it's getting into attorney/client privilege. You can answer.

THE WITNESS: I don't understand. Like what do you mean?

BY MS. KISCH:

Q Other than like these initial Zoom screening that you had with Ms. Torres and setting

up interviews for Ms. Torres have you had any conversations at any point since the time she applied for a position to date with regard to Ms. Torres in any context?

MS. BRIDENBAUGH: Objection to the extent the answer would invade attorney/client privileged communications. You can otherwise answer.

THE WITNESS: I mean, I don't remember the conversations, but it would have been with the hiring manager.

BY MS. KISCH:

Q And what was the nature of those conversations?

MS. BRIDENBAUGH: Objection, calls for speculation. She testified she doesn't remember.

THE WITNESS: I don't remember like exactly, but it would have been scheduling additional interviews for her.

BY MS. KISCH:

Q Other than scheduling interviews did you have any other conversations with Ms. Belyna

about Ms. Torres or anything related to Ms. Torres?

MS. BRIDENBAUGH: Objection, mischaracterizes the testimony in that she didn't say she had conversations with Ms. Belyna, vague, and to the extent the answer gets into attorney/client privileged communications.

THE WITNESS: When I was talking about the hiring manager I was talking about the hiring manager that Ms. Torres would have been working for.

BY MS. KISCH:

Q Okay. And who is that?

A I don't remember her name. I think it may have been Katharine.

Q And what's Katharine's last name?

A Panessidi.

Q Okay. And do you recall -- what was the nature of the conversations you would have had with Ms. Panessidi about Ms. Torres?

MS. BRIDENBAUGH: Objection, calls for speculation. She's already said she doesn't

remember.

THE WITNESS: I don't remember, but if anything it would be scheduling interviews. That's it.

BY MS. KISCH:

Q Other than scheduling interviews, I understand you helped with that, and other than the initial Zoom screen have you had conversations with anybody at SHRM about Ms. Torres in any context?

MS. BRIDENBAUGH: Objection, asked and answered several times. To the extent answer gets into attorney/client privileged communications please do not answer. You can otherwise answer.

THE WITNESS: No.

BY MS. KISCH:

Q Have you had any conversations with anybody at all whether it's at SHRM, outside of SHRM about this lawsuit other than your attorneys?

MS. BRIDENBAUGH: Objection, asked and answered several times.

THE WITNESS: No.

that.

Q Did you ever have any training with regard to document retention in your responsibilities at SHRM?

MS. BRIDENBAUGH: Objection, calls for speculation.

THE WITNESS: I don't remember.

BY MS. KISCH:

Q Have you searched for any documents at all in relation to this lawsuit?

MS. BRIDENBAUGH: Objection, attorney/client privileged communications, litigation strategy. Do not answer the question.

BY MS. KISCH:

Q Are you going to follow your attorney's instruction or are you going to answer the question?

A I'm going to listen to my attorney.

Q Okay. So you're not going to answer whether or not you've searched for any documents related to this lawsuit?

MS. BRIDENBAUGH: Same objection, same

the questions that are not privileged --
MS. BRIDENBAUGH: And I'll put --
MS. KISCH: -- that she refuses to answer.
MS. BRIDENBAUGH: And I'll put on the record that she's not refusing to answer, she's following the instruction of counsel, and that SHRM objects to any attempt to bring the witness back at a later date.
BY MS. KISCH:
Q Have you produced any documents at all -- I'm not asking what those documents were, but have you provided any documents at all to your counsel with regard to this lawsuit?
MS. BRIDENBAUGH: Objection, attorney/client privileged communication, litigation strategy. Please do not answer the question.
BY MS. KISCH:
Q Are you going to answer the question?
A No.
Q What are the various forms of

restroom until 11:28 -- excuse me, until 11:43.

BY MS. KISCH:

Q Ms. Zoerkler, during the break did you speak with counsel?

MS. BRIDENBAUGH: Objection, attorney/client privileged. You can say whether you did or did not, but not about what.

THE WITNESS: Yes.

BY MS. KISCH:

Q And which counsel did you speak with?

A Mr. Walters.

Q And for how long did you speak with Mr. Walters during the break approximately?

MS. BRIDENBAUGH: Objection, attorney/client privilege. You can answer so long as you don't get into what was discussed.

THE WITNESS: I don't know. I wasn't looking at my watch.

BY MS. KISCH:

Q Was it more than a few seconds?

A I mean, yes.

Q Was it more than a few minutes?

MS. BRIDENBAUGH: Objection, vague.
THE WITNESS: Yes.
BY MS. KISCH:
Q Without getting into any specifics of what you discussed did you discuss anything with regard to your testimony?
MS. BRIDENBAUGH: Objection, attorney/client privileged communications, vague. Do not answer the question.
BY MS. KISCH:
Q Are you going to answer the question?
A No.
Q Did you discuss anything with regard to this lawsuit during the break with Mr. Walters?
MS. BRIDENBAUGH: Objection, attorney/client privileged communication, vague. Do not answer the question.
BY MS. KISCH:
Q Are you going to answer the question?
A No.
Q Did you speak with Mr. Walters during the break with regard to anything related to this

deposition?

MS. BRIDENBAUGH: Objection, attorney/client privileged communication, vague. Do not answer the question.

BY MS. KISCH:

Q Are you going to answer the question?

A No.

Q What is the app that you use on your phone in conjunction with your work at SHRM?

A It's a newer app for phone calls.

Q Does it have a name?

A 8x8.

Q I'm sorry. What is it?

A 8x8.

Q Like the number 8?

A Yes.

Q So 8x8?

A Uh-huh.

Q And when did you first start using this app?

A Not that long ago because it wasn't -- I don't use my computer for it.

BY MS. KISCH:
Q Well, what do you know as to why or any of the circumstances that might relate to Ms. SHRM not -- excuse me, Ms. Torres not having gone to work for SHRM?
MS. BRIDENBAUGH: Objection, vague, calls for speculation. You can answer to the extent it does not involve attorney/client privileged communications.
THE WITNESS: I know there was a potential accommodation.
BY MS. KISCH:
Q Do you know any other reasons why she didn't start working at SHRM other than the potential accommodation?
A I don't know.
MS. BRIDENBAUGH: Same objection.
THE WITNESS: Sorry.
BY MS. KISCH:
Q Do you know whether or not there were any voice mails left in the 8x8 app that you received relating to Ms. Torres at all?

any voice mails left on your 8x8 app in your computer system related to Ms. Torres?

MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney/client privileged communications. Otherwise you can answer.

THE WITNESS: No.

BY MS. KISCH:

Q You have not?

A No.

Q Have you within the last year?

MS. BRIDENBAUGH: Same objection.

THE WITNESS: No.

BY MS. KISCH:

Q Do you know whether anyone else has looked -- well, let me ask you this: Does anyone else have access, do you know, to your 8x8 voice mails?

MS. BRIDENBAUGH: Objection, calls for speculation.

THE WITNESS: No.

BY MS. KISCH:

Q You don't know or they don't?
A I don't know.
Q Is your voice mail password protected?
A I don't know.
Q You don't remember?
A No, I don't.
Q Have you looked for any E-mails in the last five months related to Ms. Torres?
MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney/client privileged communications. Otherwise you can answer.
THE WITNESS: No.
BY MS. KISCH:
Q You have not?
A No.
Q Do you ever communicate via -- in any other way? We've talked about Zoom, we've talked about through the phone, through the 8x8 app. We've talked about E-mail. Do you communicate with anyone at SHRM through any other means?
A Zoom we said? No.

last five months whether or not you have any Slack texts or messages in relation to Ms. Torres?

MS. BRIDENBAUGH: Objection to the extent the answer gets into attorney/client privileged communications. Otherwise you can answer.

THE WITNESS: No.

BY MS. KISCH:

Q Did you answer the question or were you not answering because of attorney/client privilege? I'm confused.

A I'm sorry. I was answering no, I have not.

Q Okay. You haven't looked. What about within the past year have you ever looked at the Slack messages to see whether or not you received any -- were sent any Slacks relating to Ms. Torres?

A No.

MS. BRIDENBAUGH: Same objection.

THE WITNESS: Sorry.

MS. BRIDENBAUGH: That's okay.

BY MS. KISCH:
Q Do you recall one way or the other whether or not you have received or sent any Slack messages related to Ms. Torres?
MS. BRIDENBAUGH: Objection, vague and to the extent the answer gets into attorney/client privileged communications. Otherwise you can answer.
THE WITNESS: No.
BY MS. KISCH:
Q You don't know one way or the other; is that correct?
A No.
Q I'm just trying to understand what you mean by no. Is that correct that you don't know one way or another whether or not you received or sent any Slack messages related to Ms. Torres?
A No, I have not.
Q You know definitively you have not --
A Yes.
Q -- received any Slack messages and have not sent any Slack messages relating to Ms.

accommodation?

A I don't know.

Q They might have?

MS. BRIDENBAUGH: Objection, asked and answered.

THE WITNESS: No, I don't know.

BY MS. KISCH:

Q You don't know one way or another whether or not that request was ever granted?

A I mean, no.

Q Okay.

A Yeah.

Q Do you -- did you have any conversations with anyone at all with regard to Ms. Torres's request to bring a service dog to the office as an accommodation?

MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney/client privileged communications. Otherwise you can answer.

THE WITNESS: I'm sorry. Can you repeat the question?

MS. KISCH: Can you repeat the question or play it back?

THE REPORTER: One moment, please.

(Whereupon, the question was played back as requested.)

THE WITNESS: Yes.

BY MS. KISCH:

Q Who did you have those conversations with?

A It wasn't a conversation. It was an E-mail.

Q Who was the E-mail with?

A It was with Nicole because I don't know how to handle those requests. I don't do accommodations.

Q And did you send Nicole an E-mail or did she send you an E-mail?

A I honestly don't remember.

Q What was the purpose of the E-mail exchange?

A Because I don't understand requests and so I don't know how to handle those.

Q You don't use Signal, do you, with regard to your work at SHRM?

MS. BRIDENBAUGH: Objection, asked and answered.

THE WITNESS: No.

BY MS. KISCH:

Q Were you ever asked by anybody at SHRM to collect any information or provide any information with regard to Ms. Torres's application after she requested the accommodation to bring her service dog to SHRM as an accommodation?

MS. BRIDENBAUGH: Objection to the extent the answer would get into attorney/client privileged communications. You can answer otherwise.

THE WITNESS: I don't remember.

BY MS. KISCH:

Q Would there be anything that would refresh your recollection?

A I don't know.

MS. KISCH: Can you mark these?