# ATTACHMENT 7

*Torres v. SHRM*

**Attachment 7 to Memorandum in Support of Motion to Compel or Exclude**
**May 29, 2026**

**Appendix: All Privilege Invocations at Deposition**

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| B-1 | Belyna | 13 | Identity of documents reviewed to prepare for deposition. Documents produced in litigation are not attorney-client communications; the mere fact that counsel selected documents for a witness to review does not make the documents themselves privileged. Witness should identify all non-privileged produced documents reviewed. |
| B-2 | Belyna | 13 | Purpose of reviewing deposition preparation documents. The witness's own reason for reviewing documents is a fact about her state of mind, not a communication from her attorney. The purpose of review bears on the completeness and credibility of her deposition testimony. |
| B-3 | Belyna | 14 | Whether deposition preparation documents refreshed witness's recollection. Whether a witness's memory was refreshed by documents she reviewed is a foundational fact bearing directly on the reliability of her testimony; it is not a privileged communication. |
| B-4 | Belyna | 14 | Whether witness took any documents home following her meeting with counsel. Physical possession or custody of documents is a factual matter; the privilege protects the content of attorney-client communications, not the logistics of document handling. |
| B-5 | Belyna | 60 | The general capacity in which SHRM retains Holland & Knight. The general nature of the firm's engagement is not a privileged communication; it is background factual information about the professional relationship between SHRM and outside counsel. |
| B-6 | Belyna | 61 | The identity of which Holland & Knight attorneys the witness worked with. The identity of counsel is not itself a privileged communication. *Upjohn Co. v. United States*, 449 U.S. 383 (1981) protects the content of attorney-client communications, not the identity of the lawyers involved. |
| B-7 | Belyna | 144 | How the witness knew what documentation to request from Torres in connection with her accommodation request. The decision to request supporting documentation is an HR and business function. Even if counsel advised on that decision, the |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| | | | resulting business action and the witness's understanding of it are not privileged. |
| B-8 | Belyna | 147 | Whether witness received instruction from SHRM supervisors regarding accommodation procedures. Instructions from non-attorney supervisors are not attorney-client communications. The fact that an attorney may have been present on a call does not transform all business direction exchanged on that call into privileged content. |
| B-9 | Belyna | 147–48 | Whether Jim Link gave the witness instructions regarding the accommodation procedure. Link is not an attorney. Communications between two non-attorneys — even those that occur in the presence of counsel — are not protected by the attorney-client privilege. |
| B-10 | Belyna | 152 | What factual information the witness provided to SHRM's accommodation evaluator. Factual information conveyed by a non-attorney to another non-attorney, even when an attorney is copied, does not become privileged. The underlying facts remain discoverable regardless of the channel through which they were transmitted. *Billings v. Stonewall Jackson Hosp.*, 635 F. Supp. 2d 442, 446 (W.D. Va. 2009). |
| B-11 | Belyna | 154–55 | Who wrote the written denial letter to Torres. The authorship of a document sent to a third party outside the privilege relationship is not a privileged communication. Transmitting a letter to Torres severed any confidentiality with respect to the document's existence and authorship. *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998). |
| B-12 | Belyna | 155–56 | What witness and Link discussed regarding the denial decision, to the extent counsel was not present. Communications between two non-lawyers outside the presence of counsel are not protected. The conditional instruction was overbroad because the question was explicitly limited to conversations that did not involve counsel. |
| B-13 | Belyna | 157–58 | Whether Link told the witness why Torres's offer was being rescinded. The reason for the rescission is the central fact of this lawsuit. A fact communicated from one SHRM employee to another does not acquire privilege simply because an attorney may also have been on the call. Facts remain facts regardless of who delivers them. |
| B-14 | Belyna | 158 | The identity of who was on the phone call during which the rescission was communicated to the witness. The identities of persons present on a call is a factual matter bearing on the scope of the privilege assertion itself. Knowing who was on the call is necessary to evaluate whether the privilege claim is even valid as to that communication. |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| B-15 | Belyna | 167 | The stated purpose of a phone call with Link and Walters regarding Torres's file. Potentially proper as to the content of legal advice exchanged on that call, but the fact of the call, its general subject matter, and any business decisions communicated during it are not protected. The invocation was overbroad to the extent it blocked those non-privileged aspects. |
| B-16 | Belyna | 173 | The purpose of a call with Link and counsel following a meeting concerning Torres. Same analysis as B-15. The business outcomes and decisions reached on the call are not shielded by the fact that counsel participated in the call. |
| B-17 | Belyna | 174 | What steps witness took after the call with Link and counsel regarding Torres's accommodation request. Actions taken after receiving legal advice are themselves non-privileged facts. The privilege protects the content of the advice, not the subsequent conduct of the recipient. *Billings*, 635 F. Supp. 2d at 446. |
| B-18 | Belyna | 186–87 | What the witness personally knew about Torres's medical documentation. Facts a witness observed, read, or was told by non-attorneys are not privileged. The witness's own knowledge of the content of Torres's medical records is independent of any attorney communication. |
| B-19 | Belyna | 187 | Why witness requested an updated doctor's note from Torres. The decision to request additional documentation is an HR and business judgment. The privilege protects the attorney's advice about that decision, not the business decision itself or the witness's understanding of why she took that action. |
| B-20 | Belyna | 193–94 | What factual information Jim Link considered when making the accommodation determination. Facts considered by a decision-maker in reaching a business decision do not become privileged merely because those facts were also shared with counsel. *Billings*, 635 F. Supp. 2d at 446; the decision-maker's factual predicate is always discoverable. |
| B-21 | Belyna | 194 | Whether Link communicated the basis for his denial decision to the witness. The substantive content of a business communication between two non-lawyers — even one that occurred on a call also attended by counsel — is not protected. The privilege does not transform all statements made in the presence of an attorney into attorney-client communications. |
| B-22 | Belyna | 207–08 | Who devised the alternative accommodations offered to Torres. The origin of a business proposal is a factual question. Counsel may have advised on legal adequacy, but whose idea the accommodations were — and whether they reflected any independent HR analysis — is directly relevant to good faith under *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562 (4th Cir. 2015). |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| B-23 | Belyna | 208 | Who specifically directed the witness to provide those accommodations to Torres. The identity of the person who directed the witness's business actions is a fact, not a communication. Even if the direction came from counsel, the identity of the speaker is not protected. |
| B-24 | Belyna | 213 | What the witness meant by the statement in the July 3 letter that Torres's service dog "does not appear" to be necessary. The witness authored this letter and sent it to Torres, breaking confidentiality as to its contents and meaning. Her own understanding of language she communicated to a third party is not protected. |
| B-25 | Belyna | 216–17 | Why witness asked Torres whether she relied on her service dog in both personal and professional activities. The witness's own purpose and intent in formulating a question to Torres is a fact about her mental state, not a communication from counsel to the witness. |
| B-26 | Belyna | 217 | Whether the word "counsel" the witness used referred specifically to Hanton Walters. The identity of which attorney is meant by a general reference is a factual clarification, not itself a privileged communication. Walters was already disclosed as SHRM's general counsel. |
| B-27 | Belyna | 218 | Whether the witness personally understood why Torres's service dog was determined not to be necessary. The witness communicated that conclusion directly to Torres. Her own understanding of what she conveyed to a third party is not protected by the attorney-client privilege. |
| B-28 | Belyna | 227–28 | To whom else the witness forwarded Torres's doctor's note within SHRM, beyond Link. The internal routing of a third party's medical document is an HR function. The identity of recipients to whom a non-privileged document was forwarded does not acquire privilege through that act of transmission. |
| B-29 | Belyna | 233 | The witness's understanding of what "facilitating CGM use on site" meant as a proposed accommodation. The witness communicated this offer to Torres without attaching a privilege designation. Her understanding of a business offer she extended to an applicant is not a privileged communication. |
| B-30 | Belyna | 242–43 | Whether the witness participated in any discussions about the alternative accommodations. The conditional instruction improperly absorbed the entire answer. The witness ultimately confirmed she had no non-attorney discussions about the accommodations — an admission that itself establishes there was no independent HR deliberation. |
| B-31 | Belyna | 243 | By what method the witness was informed of the proposed accommodations to offer Torres. The mode of communication is |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| | | | a fact; the identity of the person who directed her actions is a fact. Partially answered but blocked before the identity of the caller was disclosed. |
| B-32 | Belyna | 244 | How many conversations the witness had regarding the proposed alternative accommodations. The number of conversations is not itself a privileged communication. It is a factual predicate for evaluating the scope and adequacy of SHRM's interactive process. |
| B-33 | Belyna | 245 | The subject matter of the redacted email chains between Belyna, Walters, and Link at pages 567–568 of SHRM's production. While specific legal advice within those emails may be privileged, a blanket instruction declining all questions about the general subject matter of an entire email chain is overbroad. The court should require identification of what business subjects — as distinct from legal advice — those emails addressed. |
| B-34 | Belyna | 263 | Whether anyone at SHRM took Torres's July 6, 2024 detailed medical explanation into consideration before the rescission. Whether decision-makers considered information provided by the applicant is a factual question about SHRM's good-faith engagement in the interactive process. It does not call for the content of any attorney communication. |
| B-35 | Belyna | 265 | What the witness understood the July 15 sentence — "it does not appear there are any reasonable accommodations" — to mean. The witness sent this letter to Torres. Her understanding of the language she used in a communication to a third party is not protected, and SHRM cannot use this sentence as a defense while refusing to explain what it meant. |
| B-36 | Belyna | 265–68 | Whether the witness knew why SHRM denied Torres's accommodation request and why it rescinded the offer. The reason for the non-hire is the central fact of the entire lawsuit. A witness may not refuse to state what she knows to be the reason for a business decision merely because she learned that reason from or through counsel. Facts communicated by an attorney to a client do not themselves become privileged — only the communication does. |
| B-37 | Belyna | 267–68 | What reason the witness eventually learned for SHRM's rescission of Torres's offer. The witness confirmed she eventually learned the reason. The reason itself is a fact; only the privileged channel through which it was communicated is protected. SHRM must disclose the reason even if it declines to identify who told her. |
| B-38 | Belyna | 268 | When the witness learned the reason for the rescission. The timing of a witness's acquisition of factual knowledge is itself a |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| | | | fact unrelated to any communication. It bears on when SHRM internally confirmed its rationale. |
| B-39 | Belyna | 269–70 | Whether SHRM considered giving Torres the option to decide whether to proceed with employment without her service dog. This question goes directly to the adequacy of the interactive process under *Wilson v. Dollar General Corp.*, 717 F.3d 337 (4th Cir. 2013). Whether SHRM weighed this option is a business judgment; only the attorney's advice about it is privileged. |
| B-40 | Belyna | 282–83 | Whether the witness had conversations with Link about the "fact file" document assembled about Torres. Communications between two non-attorneys are not privileged. Whether such a document exists and was discussed between SHRM HR personnel is a non-privileged factual question. |
| B-41 | Belyna | 286 | The identity of the author of the document designated on SHRM's privilege log as "Sr. Specialist Product Management Position Overview — Privileged Document." A business document's authorship is a fact; a document created by a non-attorney for business purposes does not become privileged by being forwarded to counsel or labeled "privileged." |
| B-42 | Belyna | 287 | Whether the witness had previously seen the position overview exhibit. A witness's prior exposure to or awareness of a document is a factual matter. It does not call for the content of any attorney communication. |
| B-43 | Belyna | 287 | Whether Torres's conditional offer was re-evaluated because of her service dog accommodation request. This is the core causation question of the ADA discrimination claim. Whether the dog triggered reconsideration of her candidacy is a business fact that must be answerable on this record. |
| B-44 | Belyna | 289 | Whether Link had conversations with SHRM's CEO about Torres. The existence of conversations between non-attorney SHRM executives is not privileged. Who at SHRM's leadership level was involved in the decision bears on the depth and nature of the deliberation. |
| B-45 | Belyna | 313–14 | Whether the witness had other conversations with SHRM personnel about Torres generally. The existence and general subject of business conversations among non-attorney colleagues is not privileged. The conditional instruction improperly blocked the entire answer. |
| B-46 | Belyna | 314–15 | Whether the witness looked for any documents relating to this lawsuit. A witness's document search and collection activities in response to a litigation hold are non-privileged facts going to preservation obligations and the completeness of production. |
| B-47 | Belyna | 317 | Whether the witness made any efforts to ensure preservation of emails relating to Torres. Preservation conduct is not a privileged |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| | | | communication. Whether or to what extent a witness preserved relevant materials is a discoverable fact directly bearing on the integrity of SHRM's production. |
| B-48 | Belyna | 336–37 | Who created the document designated as "Sr. Specialist Position Overview — Privileged Document" and for what purpose it was created. The creation of a business document — including who made it and why — is a factual matter. A document created for HR or business purposes does not acquire privilege by being attached to a subsequent email to counsel. |
| Z-1 | Zoerkler | 51–52 | What the witness understood the lawsuit to be about and what she meant by the word "accommodation." A witness's own factual understanding of basic case facts is not a privileged communication. The conditional instruction then blocked a non-privileged explanation the witness was prepared to give. |
| Z-2 | Zoerkler | 68–69 | Whether the witness had other conversations about Torres's job application, beyond those already covered. The existence and general subject matter of business conversations with hiring personnel are facts, not communications with counsel. |
| Z-3 | Zoerkler | 70–71 | Whether the witness had conversations with Belyna about Torres. Communications between two non-attorney SHRM employees — Zoerkler and Belyna — are not attorney-client communications regardless of subject matter. |
| Z-4 | Zoerkler | 71 | Whether the witness had conversations with anyone at SHRM about Torres's file or accommodation request. The identity of SHRM colleagues with whom Zoerkler discussed Torres's situation is a discoverable fact bearing on who was aware of the accommodation request and its outcome. |
| Z-5 | Zoerkler | 85 | Whether the witness searched for any documents in connection with this lawsuit. Document search and preservation activities are not attorney-client communications. This is a foundational question about the adequacy and completeness of SHRM's document production from Zoerkler's files. |
| Z-6 | Zoerkler | 87 | Whether the witness provided any documents to her counsel in connection with this lawsuit. The fact that documents were transferred — not their content — is non-privileged. It bears on whether responsive documents in Zoerkler's possession were identified and produced. |
| Z-7 | Zoerkler | 94–95 | Whether the witness discussed her testimony with Hanton Walters during a break called by defense counsel in the middle of questioning. The fact of what was discussed — not its content — during a mid-deposition conference is discoverable. Mid-examination attorney contact raises distinct fairness concerns about coaching, and whether the witness's post-break answers changed is directly relevant. |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| Z-8 | Zoerkler | 95 | Whether the witness discussed the lawsuit with Walters during the deposition break. Whether the subject of the lawsuit was raised during the break is a factual question about the scope of the mid-deposition communication, not about its content. |
| Z-9 | Zoerkler | 96 | Whether the witness discussed anything related to the deposition with Walters during the break. Whether a topic related to the deposition was raised is the threshold fact for evaluating coaching; the privilege does not shield the fact that a subject was discussed, only the content of the legal advice given. |
| Z-10 | Zoerkler | 107 | What the witness knows about why Torres did not go to work at SHRM. This is the central factual question of the case. The witness's own factual knowledge — whatever she actually knows about the non-hire — is not protected merely because she may have received some information through a privileged channel. |
| Z-11 | Zoerkler | 110 | Whether the witness checked her 8x8 voicemail system for messages related to Torres. The witness's own document-search and preservation steps are non-privileged facts. Whether she checked a specific communication system she used in her role is a factual predicate for evaluating the completeness of production. |
| Z-12 | Zoerkler | 111 | Whether the witness looked for emails related to Torres. Whether the witness searched her email is a factual preservation question, not a communication with counsel. |
| Z-13 | Zoerkler | 118–19 | Whether the witness checked Slack messages related to Torres. Slack is a separate business communication system, and whether it was searched is a distinct factual question about the completeness of SHRM's production from that platform. |
| Z-14 | Zoerkler | 126–27 | Whether the witness had any conversations about Torres's service dog accommodation request. The existence of conversations about an accommodation request between non-attorney SHRM employees is a non-privileged fact. The witness partially answered but was blocked from elaborating on the substance of any such discussions. |
| Z-15 | Zoerkler | 131 | Whether the witness was asked to collect information about Torres after the accommodation request was made. Whether the witness received a business directive to gather information is a non-privileged fact. The instruction to collect information — as distinct from any legal advice given about it — is an HR action, not a communication from counsel. |
| L-1 | Link | 15–16 | The identity of documents the witness reviewed to prepare for his deposition. Documents produced in litigation are not attorney-client communications; their identification as the materials Link reviewed is a factual matter. Counsel's selection of documents for review may be work product, but Link's awareness of which produced documents he personally reviewed is not. |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| L-2 | Link | 17 | Whether the witness reviewed deposition preparation documents independently or in the company of someone else. Who was present when documents were reviewed is a factual question about the circumstances of review, not a communication from attorney to client. |
| L-3 | Link | 49 | Whether Link expressed any opinion on the service dog accommodation to anyone other than counsel. The question was explicitly limited to communications with non-attorneys. The conditional instruction improperly blocked the entire answer, including any views Link expressed to HR colleagues or other SHRM executives outside the presence of counsel. |
| L-4 | Link | 73 | Whether the alternative accommodations offered to Torres were Link's own ideas. The origin of a business proposal is a factual matter, not a privileged communication. Whose idea the offered accommodations were is directly probative of whether SHRM engaged in a good-faith interactive process independent of litigation counsel. |
| L-5 | Link | 100 | Whether SHRM made any effort to contact personnel responsible for the facilities that would be affected by granting Torres's accommodation request. Whether any factual investigation was conducted — including contact with non-attorney facility staff — is a question about actions taken, not about communications with counsel. Its absence is highly relevant. |
| L-6 | Link | 100–01 | Whether there was any effort to contact SHRM facility personnel regarding the accommodation. The existence or non-existence of a factual investigation into operational feasibility is a non-privileged fact directly bearing on the reasonableness of SHRM's interactive process. |
| L-7 | Link | 102 | Whether Link inquired with any SHRM employee about whether they would be impacted by granting Torres's accommodation. A conversation between Link and a non-attorney SHRM employee is not an attorney-client communication regardless of subject matter. Whether any such inquiry occurred is foundational to the good-faith analysis under *Wilson v. Dollar General Corp.*, 717 F.3d 337 (4th Cir. 2013). |
| L-8 | Link | 138–39 | Whether Link independently decided whether SHRM could accommodate Torres, apart from his work with counsel. The question explicitly called for independent, non-attorney deliberation. Link's answer — that he did no independent work — is itself the most consequential testimony in this record. The invocation improperly blocked the follow-up clarification needed to establish the full scope of that admission. |
| L-9 | Link | 175 | What additional information Link reviewed, beyond Torres's own submissions, in evaluating her accommodation request. The |

| No. | Witness | Tr. Page | Subject of Question and Basis for Overruling Invocation |
|---|---|---|---|
| | | | identity of information a decision-maker reviewed is a factual question. While the attorney's advice about that information is protected, Link's own knowledge of what he read or was given is not. |
| L-10 | Link | 182–83 | Whether there were any concerns within SHRM about the adequacy of Torres's medical documentation. A decision-maker's own assessment of documentation presented to him is a factual matter. The privilege shields the attorney's legal opinion about that documentation, not Link's pre-existing or independent views about it. |
| L-11 | Link | 183–86 | Whether Link personally believed Dr. Joshi's June 19, 2024 letter was sufficient to support Torres's accommodation request. Link's own independent view — on a question the question explicitly posed without reference to counsel — is not a communication from his attorney. The conditional instruction improperly blocked any non-attorney opinion Link may have held. |
| L-12 | Link | 188–90 | Whether any medical professionals were contacted about Torres's accommodation request. Whether SHRM sought any medical consultation is a factual question about actions taken. Even after off-record consultation, Link disclosed only that he was "unaware" of such contact — suggesting no such contact was made, which is itself probative and the full answer should be confirmed on the record. |
| L-13 | Link | 199 | Whether anyone other than counsel provided input in identifying the accommodations to offer Torres. Link answered that every person he consulted was either counsel or present with counsel. That answer confirms there was no independent HR deliberation and should be preserved through a compelled, unqualified response. |
| L-14 | Link | 216 | Whether Link approved the language of the July 15 rescission email before it was sent to Torres. Whether Link reviewed and approved the final text of a communication sent to a third party is a factual question about his role as decision-maker. A letter to Torres is not a confidential attorney-client communication. |