# Exhibit 18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division
1:25-CV-2360 (PTG/WBP)

FIONA TORRES, )
Plaintiff, )
v. )
SOCIETY FOR HUMAN RESOURCE , )
MANAGEMENT, )
Defendant. )

AUDIO TRANSCRIPTION OF RECORDED DEPOSITION
TESTIMONY OF NICOLE BELYNA

May 5, 2026, 9:55 a.m.
Job No. 630826
Pages: 1 - 342
Transcribed by: Cynthia Bauerle, CSR
Notary Public/Court Reporter: Samuel Pachon

Deposition testimony of NICOLE BELYNA,
held at:
Littler Mendelson, P.C.
1800 Tysons Blvd
Suite 500
McLean, VA 22102
(703) 442-8425

Pursuant to agreement, before Samuel Pachon, Notary Public in and for Commonwealth of Virginia.

APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

ANNA KATHRYN BARRY, ESQUIRE
HECTOR F. RUIZ, JR., ESQUIRE
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Avenue N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
Akbarry@kcnlaw.com
Hruiz@kcnlaw.com

ON BEHALF OF THE DEFENDANT, SOCIETY FOR HUMAN RESOURCE MANAGEMENT:

LAUREN M. BRIDENBAUGH, ESQUIRE
LESLIE P. CURRIE, ESQUIRE
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
(703) 286-3142
Email: Lbridenbaugh@littler.com
Email: Lcurrie@littler.com

ON BEHALF OF THE DEFENDANT, SOCIETY FOR HUMAN RESOURCE MANAGEMENT:

HANTON WALTERS, ESQUIRE
Society for Human Resource Management (SHRM)
1800 Duke Street
Alexandria, VA 22314
(703) 535-6047
Hanton.walters@shrm.org

ON BEHALF OF THE DEFENDANT, SOCIETY FOR HUMAN RESOURCE MANAGEMENT:

TANIA L. DARROW, ESQUIRE (pro hac vice)
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
(213) 443-4300
Tdarrow@littler.com

Calls for speculation. Compound. You can answer.

THE WITNESS: Deborah does and Raiyana recruits interns.

BY MS. BARRY:

Q. Based on your knowledge as Ms. Zoerkler's supervisor, does she perform any work relating to the reasonable accommodation process at SHRM?

MS. BRIDENBAUGH: Objection. Calls for speculation. You can answer.

THE WITNESS: No, she does not.

BY MS. BARRY:

Q. Does anyone in HR perform duties related to the reasonable accommodation process at SHRM?

MS. BRIDENBAUGH: Objection. Calls for speculation. Compound. You can answer.

THE WITNESS: Yes.

BY MS. BARRY:

Q. Who?

A. Sheri Martel.
Q. Can you spell her name for the record, please?
A. Yes. S-H-E-R-I M-A-R-T-E-L.
Q. Do you port -- perform any duties related to the reasonable accommodation process at SHRM?
A. No, I don't.
Q. Does anyone else in HR perform duties related to the reasonable accommodation process at SHRM?
MS. BRIDENBAUGH: Same objection. Calls for speculation. Asked and answered. You can answer.
THE WITNESS: No.
BY MS. BARRY:
Q. Anyone outside of HR?
MS. BRIDENBAUGH: Objection. Vague. Calls for speculation. You can answer, if you can.
THE WITNESS: Do you mean another employee?

specific position, do you have to get any approval to send that written offer?

MS. BRIDENBAUGH: Objection. Vague. Calls for speculation. You can answer, if you can.

THE WITNESS: No. Once the offer has been approved, as long as the candidate accepts the offer that was approved, we don't require additional approval.

BY MS. BARRY:

Q. Is there anything else the candidate has to do after they've accepted the offer before they can start their first day?

MS. BRIDENBAUGH: Objection. Vague. Calls for speculation. Hypothetical. You can answer.

THE WITNESS: They are required to complete a background check.

BY MS. BARRY:

Q. When does that occur?

MS. BRIDENBAUGH: Objection. Vague. You can answer.

MS. BRIDENBAUGH: Same objection.
THE WITNESS: Discrepancies. As I mentioned, discrepancies. Significant discrepancies in employment history, or if we determine that someone has not been factual.
BY MS. BARRY:
Q. And who has the authority to make the determination to rescind an offer based on a background check report?
MS. BRIDENBAUGH: Objection. Hypothetical. Calls for speculation. You can answer.
THE WITNESS: Jim Link our CHRO.
BY MS. BARRY:
Q. Anyone else?
MS. BRIDENBAUGH: Same objection.
THE WITNESS: No.
BY MS. BARRY:
Q. If you received a background check report and there was not any information

of concern to you, how would you proceed next?
MS. BRIDENBAUGH: Objection. Calls for speculation. Hypothetical. Vague. You can answer.
THE WITNESS: We would move the employee to onboarding or what we call pre-onboarding.
BY MS. BARRY:
Q. What is pre-onboarding?
A. During that time, the employee might complete new hire documents. We would get information for, you know, their technology needs. Things like that.
Q. If an applicant is hired, they -- who determines their start date?
MS. BRIDENBAUGH: Objection. Vague. Calls for speculation. Hypothetical. You can answer.
THE WITNESS: It would be in partnership with the candidate and the recruiter.
BY MS. BARRY:

Q. Is the hiring manager involved in determining a start date?

MS. BRIDENBAUGH: Same objection.

THE WITNESS: Sometimes.

BY MS. BARRY:

Q. When would the hiring manager be involved in determining a start date?

MS. BRIDENBAUGH: Same objection.

THE WITNESS: In certain instances. Perhaps when the hiring -- if the hiring manager were on vacation. Something like that.

BY MS. BARRY:

Q. If the hiring manager were on vacation, they would be involved in determining a start date?

A. They -- they may ask if we can start the candidate on a different day.

Q. Are they asking to start the candidate on a different day to ensure they're

Hypothetical. Calls for speculation. Vague.
THE WITNESS: Yes, they could.
BY MS. BARRY:
Q. Have you ever provided the ADA request form to an applicant?
MS. BRIDENBAUGH: Objection. Hypothetical. Calls for speculation. Vague.
THE WITNESS: No, I have not.
BY MS. BARRY:
Q. Why not?
MS. BRIDENBAUGH: Objection. Hypothetical. Calls for speculation. Vague.
THE WITNESS: Because I didn't receive the request. The request -- I haven't received a request for an accommodation other than Ms. Torres.
BY MS. BARRY:
Q. Did you provide Ms. Torres with the ADA request form?
A. No, I did not.
Q. Are you aware if anyone at SHRM did?

phone call with Mr. Walters?

MS. BRIDENBAUGH: Objection. Attorney-client privileged communication. I would direct you not to answer.

THE WITNESS: I won't answer.

BY MS. BARRY:

Q. Is it your understanding that you were seeking legal advice?

A. Yes.

Q. After that phone call with Mr. Link and Mr. Walters, did you take any further action regarding Ms. Torres's accommodation request?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: Yes. I had asked Debbie to contact Ms. Torres to schedule a time for us to talk.

BY MS. BARRY:

Q. Why did you do that?

A. To ask her for additional information regarding her request.

Q. What additional information?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: I had asked her, you know, I had shared that there was, you know, some travel required for the role. Would she be able to fulfill the travel requirement.

BY MS. BARRY:

Q. Do you recall her response?

A. Yes. She said that she could. She shared that she doesn't always bring the dog with her when she travels.

Q. Did you and Ms. Torres discuss anything else on that follow-up call?

A. I believe at that time she said she had some additional documentation that she would send to us.

Q. Did you request any additional documentation of Ms. Torres during this call?

A. Not that I recall.

Q. And on this call, did you have

any other questions for Ms. Torres regarding her request, other than whether she could fulfill the travel requirements of the job?
A. Not -- not that I can recall.
Q. Are you aware what job Ms. Torres applied for at SHRM?
A. Yes.
Q. What was the job?
A. It was product management senior specialist.
Q. Do you have any knowledge of the responsibilities of that position?
A. Yes.
Q. What are the responsibilities of that position?
A. The role was supporting, I guess, coordinating the learning and development programs for -- for some of our -- our members and clients.
Q. Do you have any understanding of whether that job was performed in person or remotely?

A. The per- -- the position was hybrid.
Q. How often would the position have been in person?
A. Three days a week, Tuesday, Wednesday, Thursday, and then remote on Mondays and Fridays.
Q. You mentioned that there were some travel requirements associated with this job. What were those travel requirements?
A. The role would have been required to attend some of our conferences.
Q. How often would the role be required to attend some conferences?
A. I think a couple of times a year.
Q. Did Ms. Torres express any hesitation in her ability to travel to attend those conferences when you spoke with her?
MS. BRIDENBAUGH: Objection. Vague. Calls for speculation. You can answer.

THE WITNESS: She said she could -- she could travel.

BY MS. BARRY:

Q. Did you have any concerns following this conversation with Ms. Torres about her ability to perform the responsibilities of the project -- product management specialist role?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: I didn't necessarily have enough information to make that determination from that call.

BY MS. BARRY:

Q. What additional information did you need?

MS. BRIDENBAUGH: Objection. Calls for speculation. Calls for a legal conclusion. Vague.

THE WITNESS: Well, given that she was asking for an accommodation, I, you know, wasn't aware if she would be able to

fulfill the duties of the role with a reasonable accommodation, but that wasn't the purpose of the call.

BY MS. BARRY:

Q. And what was the purpose of the call?

A. Just to understand the travel requirement.

Q. Other than travel, were there any other concerns you raised to Ms. Torres regarding her accommodation request on this call?

MS. BRIDENBAUGH: Objection. Asked and answered. Vague.

THE WITNESS: Not that I recall.

BY MS. BARRY:

Q. After the phone call with Ms. Torres where you discussed the travel requirements, did you speak with anyone else regarding that conversation with Ms. Torres?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: I spoke with Jim and our legal counsel.

BY MS. BARRY:

Q. By phone?

A. Yes.

Q. Did you speak with them separately or together?

A. Together.

Q. Did you have any conversations with either of them separately?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: Not about this topic.

BY MS. BARRY:

Q. What was the purpose of your call with Mr. Link and counsel following your meeting with Ms. Torres?

MS. BRIDENBAUGH: Objection. Attorney-client privilege. Direct the witness not to answer the question.

THE WITNESS: I won't answer.

BY MS. BARRY:
Q. Are you not answering based on your attorney's advice regarding the basis of privilege?
A. Yes.
Q. After you spoke with Mr. Link and counsel, were there any other steps that you took relating to Ms. Torres's accommodation request?
MS. BRIDENBAUGH: Objection. Vague.
THE WITNESS: If I recall the timeline correctly, she -- after our conversation, she did share some additional documentation for the service dog. And so I did -- she shared that with Debbie, and Debbie forwarded it on to me. And so I did save that information.
BY MS. BARRY:
Q. Did you share it with anyone else?
A. I shared it with Jim Link.

in an -- an applicant's request for an accommodation?

A. This is the only request I've received.

Q. And what was the scope of your role regarding Ms. Torres's request?

MS. BRIDENBAUGH: Objection. Vague.

THE WITNESS: I would describe it as a facilitator.

BY MS. BARRY:

Q. Are you aware of who was the decision maker regarding Ms. Torres's accommodation request?

A. Yes, I was.

Q. Who was that?

A. Jim Link.

Q. Are you aware of who was the decision maker regarding Ms. Torres's -- the rescission of Ms. Torres's job offer.

A. Yes.

Q. Who was that decision maker?

A. Jim Link.
Q. Are you aware of Mr. Link making the decision to rescind any other applicant's offer in your time at SHRM?
MS. BRIDENBAUGH: Objection. Vague. Calls for speculation.
THE WITNESS: Yes, I can think of one.
BY MS. BARRY:
Q. And what were the circumstances of that one?
MS. BRIDENBAUGH: Same objection.
THE WITNESS: The candidate misrepresented their education.
BY MS. BARRY:
Q. Is that something that you discovered upon receiving the background check report?
A. Yes, it is.
Q. Can you think of any other times that you're aware of that Mr. Link rescinded a

Q. Okay. I will direct your attention to Bates 48 through 53. At the bottom half of page 48, there's an email from Fiona Torres to Deborah Zoerkler. Do you see that?

A. I do.

Q. And this email Ms. Torres says, happy to chat with the talent director today at 4 p.m. You are the talent director referred to here, correct?

MS. BRIDENBAUGH: Objection. Calls for speculation.

THE WITNESS: Yes.

BY MS. BARRY:

Q. Did you, in fact, have a conversation with Ms. Torres on June 4th, 2024 at 4 p.m?

MS. BRIDENBAUGH: Objection. Calls for speculation.

THE WITNESS: Yes, I did.

BY MS. BARRY:

Q. What did you discuss in that

phone call?
A. We talked about the travel required for the role.
Q. Is this the phone call that you testified about earlier where you raised the travel requirements of the role with Ms. Torres?
A. Yes.
Q. And at the top of page 48, Ms. Zoerkler emails you with several attachments. Do you see that?
A. I do.
Q. And this email documentation from Ms. Torres relating to her service dog was sent to you, correct?
A. Uh-huh.
Q. What documentation? And, again, you can just focus through 53.
A. It's like a photo of the dog and from the United States Service Dog Registry and a certificate.
Q. Do you see a certificate of

training --
A. Yes.
Q. -- on page 51?
A. Yes.
Q. And a lifetime training agreement on 52 and 53?
A. Yes.
Q. Did you review this document at the time that -- these documents at the time Ms. Zoerkler sent them to you?
A. Briefly.
Q. Did you have any questions regarding Ms. Torres's service dog after your review of these documents?
A. Not -- no. Not that I can recall.
Q. Did you share these documents with anyone else?
A. I shared them with Jim.
Q. You mentioned that SHRM did not approve Ms. Torres's preferred accommodation. Did SHRM approve any other accommodations for

agreement. Do you mean SHRM and Ms. Torres?

MS. BRIDENBAUGH: Objection. Calls for speculation.

BY MS. BARRY:

Q. When you say we?

A. SHRM. Yes.

Q. That SHRM could not reach an agreement with Ms. Torres regarding her accommodation?

MS. BRIDENBAUGH: Same objection.

THE WITNESS: Yes.

BY MS. BARRY:

Q. And that -- that is the reason why her offer was being rescinded?

MS. BRIDENBAUGH: Same objection.

THE WITNESS: Yes.

BY MS. BARRY:

Q. In your response -- on Exhibit 4 in your response to Ms. Torres, you stated that based on the existing -- sorry. At page

695, based on the existing documentation, it does not appear that your service dog is necessary for your performance of the essential duties of your position because you are still able to perform the essential duties of the job without the presence of the service dog. What did you mean by that?

MS. BRIDENBAUGH: Objection. Calls for speculation. And to the extent she has testified that communications were written with the assistance of counsel, I would direct her not to answer to the extent her answer would implicate attorney-client privileged communications. Otherwise, you can answer.

THE WITNESS: Yes. As I -- as I mentioned, the communication was drafted with the advice of counsel.

BY MS. BARRY:

Q. The communication on bates SHRM Torres 695 was drafted with the assistance of counsel?

A. That's correct.

MS. BRIDENBAUGH: Objection.
Vague. You can answer.
THE WITNESS: I did.
BY MS. BARRY:
Q. Who did you share this information with?
A. I shared it with Jim Link and counsel.
Q. Mr. Walters's counsel that you're referring to?
A. Yes.
Q. Turning back to page 732 of exhi- -- Plaintiff's Exhibit 10. In the middle of the page you emailed Ms. Torres on July 15th, 2024 at 10:16 a.m. Do you see that?
A. Yes.
Q. You stated, we received your communication. Unfortunately, it does not appear there are any reasonable accommodations that would allow you to perform the essential functions of the role. Did you have any

CERTIFICATE OF TRANSCRIBER

I, Cynthia Bauerle, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding; that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; and that I am neither counsel for, related to, nor employed by any of the parties to the case and have no interest, financial or otherwise, in its outcome.

Cynthia Bauerle

CYNTHIA BAUERLE, CSR

5/7/26