IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_________________________________

FIONA TORRES,
Plaintiff,
v. Case No.
SOCIETY FOR HUMAN RESOURCE 1:25-CV-02360-PTG-WBP
MANAGEMENT,
Defendant.

_________________________________

VIDEOTAPED DEPOSITION OF FIONA GABRIELA TORRES

DATE: Wednesday, April 29, 2026
TIME: 10:00 a.m.
LOCATION: Littler Mendelson, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
REPORTED BY: Alexzandar Nicholi Fullerton

Job No. CS7998968

A P P E A R A N C E S

ON BEHALF OF PLAINTIFF FIONA TORRES:

LORI B. KISCH, ESQUIRE
ANNA KATHRYN BARNES BARRY, ESQUIRE
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Avenue Northwest, Suite 1000
Washington, DC 20006
lkisch@kcnlaw.com
akbarry@kcnlaw.com
(202) 331-9260

ON BEHALF OF DEFENDANT SOCIETY FOR HUMAN RESOURCE MANAGEMENT:

LAUREN BRIDENBAUGH, ESQUIRE (by videoconference)
LESLIE P. CURRIE, ESQUIRE
Littler Mendelson, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lbridenbaugh@littler.com
lcurrie@littler.com
(703) 286-3142
(703) 442-8425

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT SOCIETY FOR HUMAN RESOURCE MANAGEMENT:

TANJA L. DARROW, ESQUIRE
Littler Mendelson, P.C.
633 West 5th Street, 63rd Floor
Los Angeles, CA 90071
tdarrow@littler.com
(213) 443-4300

ALSO PRESENT:

Hanton Walters, Vice President Legal Affairs & Administration, Society for Human Resource Management, Defendant

James Lunsford, Videographer

P R O C E E D I N G S

THE VIDEOGRAPHER: This is Media Unit 1 in a video recorded deposition of Fiona Torres, taken by counsel for -- defense?

MS. DARROW: Yes, sir.

THE VIDEOGRAPHER: Okay -- in the matter of Fiona Torres vs. Society for Human Resource Management, filed in the United States District Court for the Eastern District of Virginia, Alexandria Division. The Case number is 1, semicolon -- I mean colon 25-CV-02360-PTG-WBP. The location of the deposition is Littler Mendelson, P.C., 1800 Tysons Boulevard, Suite 900 [sic], Tysons Corner, Virginia.

My name is James Lunsford, representing Veritext, and I am the videographer. The court reporter is Alex Fullerton, from the firm Veritext. I am not related to any party in this action, nor am I financially interested in the outcome.

If there are any objections to proceeding, please state them at the time of your appearance. Counsel and all present including remotely will now state their appearances and

affiliations for the record, beginning with the noticing attorney.

MS. DARROW: Good morning. My name is Tanja Darrow, and I represent the Defendant, SHRM.

MS. CURRIE: I'm Leslie Currie, and I represent the Defendant, SHRM, as well.

MS. KISCH: Lori Kisch, and I represent the Plaintiff, Fiona Torres.

MS. BARRY: Anna Kathryn Barry, and I represent the Plaintiff, Fiona Torres.

THE VIDEOGRAPHER: Do we have some remotely?

MS. BRIDENBAUGH: Lauren Bridenbaugh.

THE VIDEOGRAPHER: Okay. Thank you.

Will the court reporter now swear in the witness?

THE REPORTER: Yes. My name is Alex Fullerton. I am a notary authorized to take acknowledgments and administer oaths in the State of Virginia and the District of Columbia.

Additionally, absent an objection on the record before the witness is sworn, all parties

and the witness understand and agree that any certified transcript produced from the recording of this proceeding:

- is intended for all uses permitted under applicable procedural and evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and
- shall constitute written stipulation of such.

Hearing no objection, I will now swear in the witness.

So, Ms. Torres, can you please raise your right hand?

WHEREUPON,

FIONA GABRIELA TORRES,

called as a witness and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE REPORTER: Thank you.

Counsel, you may proceed.

MS. KISCH: Can I say one thing?

again, I ensured that -- coming into this deposition that I had a solid blood sugar. I also haven't eaten. So it -- it should remain steady for a good chunk of time.

Q You "have not eaten"? Is that what you said?

A Correct. Which helps stabilize things.

Q When you don't eat?

A Correct. At least especially in the morning.

Q How often do you have to check your glucose level?

A It varies day to day, or it varies depending on what's going on with my blood sugar.

Q So I'm entitled to your best testimony, and sometimes that can be a range or an estimate. Don't want you to guess under any circumstances. But -- so I -- you might hear me try to engage you to get a best estimate if that's what you're able to provide.

So when I ask you questions like, "How often do you check your glucose level," and you say, "It varies" -- and I appreciate that -- quantify for me as

best you possibly can and give me your best estimate as to how often you check your glucose level on a daily basis?

MS. KISCH: Objection. Asked and answered.

THE WITNESS: Sorry?

MS. KISCH: I was just objecting for the record, "Asked and answered," but you can go ahead.

THE WITNESS: Okay.

I -- depending on the circumstance, for example, if I'm asleep, I'm not going to check while I'm asleep. But while awake and not in an environment that imposes me -- my ability to check, if I'm freely in an environment that allow -- would allow me to check my blood sugar, I would say at least once an hour, on average. It's approximate.

BY MS. DARROW:

Q That's your best estimate?

A Yes.

Q Thank you. You provided a caveat that if you're in an environment that -- I'm paraphrasing

here, and under no circumstances am I trying to mischaracterize your testimony. So if you feel that I am not accurately rephrasing your testimony, please do let me know; okay?

What I heard you say was that if you're in an environment that is conducive to you checking your glucose level, you will do so. Does that --

A Yes.

Q -- sound right to you?

A Yes.

Q Okay. Would you consider this environment that we are in today one that is conducive for you to being able to check your glucose level?

A Yes.

Q Okay. And so if there is an occasion -- any occasion -- during this deposition for which you believe that your glucose level is low, or there is any reason that you cannot provide truthful testimony, can you let me know that?

A Yes.

MS. KISCH: Objection. Compound.

//

A No.
Q In the last five years?
A Possibly.
Q In the last two years?
A I don't think so.
Q Do you use your finger sticks if your CGM has fallen off?
A If -- only if I feel a need to.
Q You had responded to a written question that was asked of you, as lawyers call those "Interrogatories," wherein you said there are many occasions when your CGM readings are "inaccurate or delayed." How do you know when your readings are inaccurate on the CGM?
MS. KISCH: Objection to the form.
THE WITNESS: I would get a sense if they're inaccurate if my Diabetic Alert Dog alerts, and it may -- and he's alerting, and my Dexcom says something different that wouldn't -- I wouldn't qualify as out of range.
BY MS. DARROW:
Q You said when you "get a sense." What do

you mean by when you "get a sense"?
A I can't remember how I used "in a sense."
Q You said, "when I get a sense that the readings are inaccurate." I'm trying to understand what you meant by that?
A If my dog is alerting and my Dexcom states that I'm in range, I would then question and check my blood sugar if possible.
Q I was wondering if you have, like, some sixth sense to know that your blood levels are low?
MS. KISCH: Objection to form. Argumentative.
THE WITNESS: Was there a question?
BY MS. DARROW:
Q Yes.
A You're asking --
Q Do you have some sense of when your blood levels are low --
MS. KISCH: Objection --
BY MS. DARROW:
Q -- without reading -- without relying on any type of device or your dog?

A I can sometimes feel symptoms.
Q What are those symptoms?
A They vary each time, but they can include weakness, loss of consciousness, loss of muscle control, dizziness, feeling faint, like, absurdly hungry, very -- absurdly tired, like, yawning a lot are some examples.
Q And how do you know if a reading is delayed?
A I would get prompted if I feel a -- if I know a reading is delayed when my dog alerts. And, as I stated, if my dog alerts and my Dexcom states that I might be in range, then that would be a delay in the Dexcom's reading.
Q So can you tell if your CGM was having an error before your dog alerts you?
A No.
MS. KISCH: Objection to form.
THE WITNESS: Not always.
BY MS. DARROW:
Q But sometimes?
A It's hard to tell.
Q My question is can you determine whether

your CGM has an error without your dog alerting you?
MS. KISCH: Objection to form and to the extent it's been asked and answered.
THE WITNESS: It's difficult to, without my dog.
BY MS. DARROW:
Q I'm not asking about the difficulty. I'm asking you whether or not you can tell?
MS. KISCH: Objection to form. Asked and answered.
THE WITNESS: It -- there are sometimes where I might be able to, but it's rare.
BY MS. DARROW:
Q And when you're able to tell that your CGM is having an error even before your dog alerts you, what do you do in those circumstances?
A I would do a manual blood sugar check.
Q If you were having so many issues with your CGM, it can fall off, it's inaccurate, it's got the long warm-up period, why do you use it at all?
A It was far more dangerous without it.
Q How so?

A I used to have a lot more blackouts prior to my service dog and my Dexcom being in the picture.
Q How often would you have blackouts before?
A At minimum ten times a year.
Q And when did that decrease?
A When my dog came into the picture.
Q And you got the dog before you got the CGM. Is that right?
A That's correct.
Q Now, you said you use an insulin pump. What does the insulin pump do?
A Administers insulin.
Q Does it use artificial intelligence?
A I'm not sure.
Q Where did you get your dog from?
A Diabetic Alert Dogs of America.
Q And what exactly is your dog trained to do?
A He's trained to alert for when he can sense for a dangerous blood sugar.
Q Has he received any additional training since you obtained him?
A Yes.

CERTIFICATE OF DEPOSITION OFFICER

I, ALEXZANDAR NICHOLI FULLERTON, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

ALEXZANDAR NICHOLI FULLERTON
Notary Public in and for the
Commonwealth of Virginia

CERTIFICATE OF TRANSCRIBER

I, PENNIE HAHN, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.



PENNIE HAHN