**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| FIONA TORRES,<br><br>Plaintiff,<br><br>v.<br><br>SOCIETY FOR HUMAN RESOURCE MANAGEMENT,<br><br>Defendant. | Civil Action No. 1:25-cv-2360-PTG-WBP<br><br>Hon. Patricia Tolliver Giles, J.<br>Hon. William B. Porter, M.J. |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION TO EXCLUDE AFTER-ACQUIRED EVIDENCE**

## I. Introduction

In response to Ms. Torres's request for a reasonable accommodation, Defendant, the Society for Human Resource Management (SHRM), rescinded her job offer, prompting Ms. Torres to file the present suit seeking redress for the disability discrimination, failure to accommodate, and humiliation that she suffered. SHRM now seeks to use highly emotional private text and audio messages between Ms. Torres and her friends wherein she expressed her feelings about the discrimination itself, which it did not know about at the time of its rescission decision and only obtained during discovery, as "after-acquired evidence of wrongdoing" in an effort to deprive Ms. Torres of relief for its discrimination.

Supreme Court and Fourth Circuit precedent does not favor an employer's use of "after-acquired evidence of wrongdoing" in employment discrimination cases such as this one, and generally bars employers from using it to counter *liability* in the manner SHRM is attempting to

do in this case. SHRM has also not met its burden of proving that it is legally entitled to use after-acquired evidence in this case, even for the limited purpose of damages, and has shown no other admissible purpose for it, especially considering the highly prejudicial and irrelevant nature of the messages at issue. Plaintiff thus asks this Court to preclude SHRM from using the after-acquired text and audio messages for any purpose in this case. Alternatively, if the Court allows the messages to be introduced at trial, controlling precedent requires that they be limited to damages deliberations, and this is best accomplished by bifurcating the trial into liability and damages phases. If bifurcation is not ordered, one or more limiting instructions should be issued.

## II. Argument

### *A. SHRM plainly intends to use after-acquired evidence at trial unless the Court excludes it.*

SHRM seeks to use Ms. Torres's messages as "[a]fter-acquired evidence of wrongdoing which would have resulted in [rescission]" of Ms. Torres's job offer, regardless of her disability, had the employer known about the supposed wrongdoing at the time of its occurrence. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995) (defining and setting the legal standard for after-acquired evidence). SHRM has shown its intent to do so several times:

First, before receiving copies of Plaintiff's private communications, Defendant SHRM stated in its "Answer to Complaint and Affirmative and Other Defenses," that "[t]o the extent applicable any relief to which Plaintiff may be entitled is barred by and/or limited by the after-acquired evidence doctrine." ECF No. 8 at 20, "Eleventh Defense."

Second, during discovery, in response to a broad request for the production of documents to which Ms. Torres objected, she produced approximately 6,000 text and audio messages from her phone, which SHRM did not previously have. Ex. 1, 2026.06.12 Plaintiff's Third Supp'l Resps. to Def's First Set of Requests for Production of Documents at Resp. to Request No. 2.

Within this material, SHRM identified four exchanges between Ms. Torres and her friends that it placed in the "general exhibit" portion of its "Pretrial Exhibit List," not the portion for damages, stating that it "intends to present some or all of the following exhibits at the trial of this matter." Defendant SHRM's Exhibit List (Def's Ex. List) ECF No. 61. All the listed messages were written after SHRM put a hold on Ms. Torres's start date because she requested to bring a service dog to work as an accommodation. Those four exchanges were:

(1) SHRM's Proposed Ex. 25 – 2024.06.17, 2024.06.18, and 2024.07.03 Torres/Cabrera Messages, Ms. Torres stating, *inter alia:*

> "I genuinely hope her child or grandchild gets type 1…So she can see what the fuck it is like.";
>
> "Like please just kill yourself. This is genuinely ridiculous.";
>
> "You fucking IDIOT";
>
> "Shrm stood by their original statement…Not gonna work there";
>
> "I know I was not meant to work there…But fuck them". Ex. 2.

(2) SHRM's Proposed Ex. 28 – 2024.06.18 Torres/Perna Audio Message, Ms. Torres stating *inter alia:* "fuck them".

(3) SHRM's Proposed Ex. 29 – 2024.06.19 Torres/Anderson Message, Ms. Torres stating, *inter alia:*

> "And look at what my sexy ass doctor wrote me when I reached out to her explaining the situation/asking if she could write me a damn letter";
>
> "I wrote to the stupid SHRM bitch with a long ass thing first thing this morning so hopefully I can shut her the fuck up once I send this 'updated' letter". Ex. 3.

(4) SHRM's Proposed Ex. 34 – 2024.07.04 Torres/Kostyu Messages, Ms. Torres stating, *inter alia:*

"BYEEEEEE";

"Not working for these ignorant and self-serving idiots";

"I just want to be fully done with all of this back and forth bull shit so I do not want to hear from them ever again so I know I fucking have to lean toward giving the simplest response.";

"Want to respond quickly to be done asap";

"I need them out of my life completely and don't wanna deal with further back & forth if I escalated…Cause it's not like I want the job so even if ADA got me the job, I don't want it.";

"Wish I knew where she lived though hahahah…Would love to key her car…Like a handful of months later so it's a lil less obvious". Ex. 4.

SHRM also included the following two message exchanges as exhibits in its Memorandum in Support of Motion for Summary Judgment (Def's MSJ), ECF 76:

ECF No. 76, Ex. 24 – Message with C. Perna, Ms. Torres stating, *inter alia*: "my job offer from SHRM. [T]hey're basically just being twats about [my dog]";

ECF No. 76, Ex. 28 – Message with E. Broetzmann, Ms. Torres referred to SHRM as the: "anti service dog twats…"

Third, SHRM cited these pieces of after-acquired evidence in Def's MSJ. It cited the private messages first in its "Statement of Undisputed Facts" (Def's SUMF).[1] *See* Def's MSJ, ECF No. 76 at ¶¶ 27, 31, 34, 37, and ¶ 43. SHRM then cited them in every section of its

[1] Plaintiff objected to this use of after-acquired evidence by Defendant in Plaintiff's Amended Memorandum in Opposition to Defendant SHRM's Motion for Summary Judgment, ECF No. 92 pp. 14-18, ¶¶ 27, 31, 34, 37, and 43.

argument for summary judgment and sometimes engaged in substantive argument using the after-acquired evidence defense. *See* Def's MSJ, Argument Section (A)(1) at 19 (citing Def's SUMF at ¶ 37; Def's MSJ, Argument Section A(2) at 22-23 (citing Def's SUMF at ¶ 37); Def's MSJ, Argument Section B(1) at 25-26 (citing Def's SUMF ¶¶ 37, 43), and arguing that "after-acquired evidence shows that Ms. Torres was not a 'qualified individual' for employment at SHRM" and is not entitled to relief for disability discrimination; Def's MSJ, argument section (B)(2) at 27, citing its SUMF ¶ ¶ 27, 31, 34, and 37, Def's MSJ, argument section (B)(3), citing to its SUMF ¶¶ 27, 31, 34, and 37.

These uses portend that SHRM will introduce these irrelevant and highly prejudicial messages for several purposes: to contest Ms. Torres's claims on the merits of liability both at summary judgment and at trial, to deprive Ms. Torres of "qualified individual" status under the ADA and thereby disprove its liability for discrimination against her, and to limit Ms. Torres's remedies if liability is proven at trial. *See Grunley Walsh U.S., LLC v. RAAP*, 386 Fed.Appx. 455, 459 (4th Cir. 2010) (finding that pleading affirmative defenses via summary judgment sufficiently notifies opposition of potential issues to be litigated at trial to enable rebuttal on those issues). However, the law does not support these efforts to use the after-acquired messages or the after-acquired evidence defense in this case, as argued below.

### ***B. SHRM's only possible uses of the after-acquired evidence at issue are inadmissible to contest liability, and it has not met its burden to invoke the after-acquired evidence defense for damages.***

SHRM has not shown, and cannot show, any permissible use of the after-acquired evidence cited above in this case. SHRM's intended use of after-acquired private messages to

contest liability is contrary to Supreme Court and Fourth Circuit precedent and SHRM has not met its burden to show it may use them for the purpose of establishing damages.

In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), the Supreme Court held that employers generally cannot use evidence of alleged employee misconduct that they discovered after discriminatorily terminating someone (known as after-acquired evidence) as a "supervening cause" under the "unclean hands defense" to retroactively defeat liability for the discriminatory termination, though in some circumstances they can use such evidence to determine remedies. *Id.* at 357-63. The Court's rationale was twofold: first, that "[i]t would not accord with this scheme" of workplace anti-discrimination statutes to allow employers to use the "unclean hands defense" to retroactively defeat discrimination claims; and second, that at the same time it was not "equitable" to force employers to re-hire employees after learning of misconduct for which they would have fired them. *Id.* at 358, 361-62. Balancing the public policy interest of the anti-discrimination statutes with employers' equities in this way, the Court broadly opined, without issuing a blanket rule, that after-acquired evidence in discrimination cases is more appropriate for determining remedial relief such as reinstatement and backpay than for defeating liability. *See McKennon generally*, 513 U.S. 352. In striking this balance, the Court also held that in discrimination cases "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was *of such severity* that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 363 (emphasis added).[2]

[2] Since *McKennon*, courts have consistently implemented this "severity burden" for applying the after-acquired evidence defense in the various types of workplace discrimination cases, including cases under the Americans with Disabilities Act (ADA) and cases involving discriminatory job offer rescissions. The remainder of this brief refers to *McKennon*'s holdings as generally applying to the full spectrum of employment discrimination cases without distinguishing between the types, *e.g.*, Title VII or ADA, unless there is a specific need to do so. It also does not distinguish between termination and job offer rescission and refusal-to-hire cases unless there is a specific need to do so. The Circuit Courts of Appeals have consistently held that *McKennon*'s after-acquired evidence holdings

The Fourth Circuit and this Court have consistently held employers to *McKennon*'s "severity burden" to show they can invoke the after-acquired evidence doctrine, and have interpreted *McKennon* to mean that generally, even where an employer can prove its burden to use after-acquired evidence of wrongdoing, that evidence goes only to remedies, not liability. *Russell v. Microdyne Corp.*, 65 F.3d 1229 (4th Cir. 1995); *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887 (E.D. Va. 2000); *Harmon v. CB Squared Servs., Inc.*, 624 F. Supp. 2d 459 (E.D. Va. 2009); *Rinaldi v. CCX*, 388 Fed.Appx. 290 (4th Cir. 2010). In *Russell*, 65 F.3d 1229 (4th Cir. 1995), the court of appeals held that after-acquired evidence "affects the remedies stage and not the ultimate question of liability," and reversed the district court's grant of summary judgment in part because it had relied on such evidence. *Russell*, 65 F.3d at 1240-41 n.9. This Court has likewise recognized that, pursuant to *Russell*, it is "'unambiguously' clear that 'the impact of after-acquired evidence is limited to remedial matters alone,' not an employer's underlying liability for an employee's unlawful termination." *Harmon*, 624 F. Supp. 2d 459, 269. Indeed, in *Garrett*, the trial court's solution was to bifurcate the trial into liability and damages phases and limit the use of after-acquired evidence to the damages phase only. 121 F. Supp. 2d 887, 905-06.

---

apply to the various statutes regulating employment matters such as discrimination and reprisal, including the ADA, as a result of *McKennon*'s focus on the "wider statutory scheme to protect employees in the workplace nationwide" *Id.* at 357. *See e.g.*, *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) (noting that "We see no distinction for this purpose [after-acquired evidence analysis] between an age discrimination claim like the one in *McKennon* and an ADA claim."). *See also e.g. Russell v. Microdyne Corp*., 65 F.3d 1229, 1238 (4th Cir. 1995) (applying after-acquired evidence doctrine to a sex discrimination case under Title VII); *Rinaldi v. CCX*, 388 Fed.Appx. 290 (4th Cir. 2010) (applying it to an Employee Retirement Income Security Act (ERISA) case under 29 U.S.C. sections 1001-1461); *Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184 (4th Cir. 1998) (applying it to reprisal claim under Title VII); *Harmon v. CB Squared Servs. Inc.*, 624 F. Supp. 2d 459, 468–69 (E.D. Va. 2009) (applying it to an Employee Polygraph Protection Act case). Courts have also regularly applied the rationale of *McKennon*'s after-acquired evidence holdings to refusal-to-hire and job offer rescission cases in largely the same manner as to termination cases, adjusting the reasoning to the facts as necessary. *Kapche v. Holder*, 677 F.3d 454, 465-66 (DC Cir. 2012) (in a case involving rescission of a conditional offer, the question was whether the conditional offer would have been rescinded); *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012) (applying it to case involving "pattern-or-practice" sex discrimination against prospective workers); *EEOC v. Dial Corp.*, 469 F.3d 735 (8th Cir. 2006) (applying it to discriminatory actions against job applicants).

Applying these paradigms here, SHRM is impermissibly using and seeking to use after-acquired evidence to defeat liability and has not met its burden to show that it may use after-acquired evidence for damages, as addressed in more detail below.

***i. SHRM may not use the after-acquired evidence defense to defeat its* liability*, as it has attempted to do.***

SHRM first sought impermissibly to use after-acquired evidence to disprove its liability by attempting to have this case dismissed at summary judgment, as Plaintiff argued in its opposition to Def's MSJ, ECF No. 92 at 28, and SHRM has also indicated that it may use after-acquired evidence to try to defeat liability at trial, as follows.

SHRM's Exhibit List specifically lists the after-acquired evidence cited above in the section for evidence it says it may use at trial on liability, as opposed to damages. Def's Ex. List ECF No. 61. Further, as detailed above in argument section (II)(A), p. 5, SHRM, in its Def MSJ, cites after-acquired evidence in support of several arguments intended to defeat liability for its discriminatory conduct, including arguments that Ms. Torres disrupted the interactive reasonable accommodation process, that she was not a qualified individual under the ADA, and that it had legitimate reasons for rescinding her job offer. SHRM's use of after-acquired evidence to advance these same theories at trial to disprove its liability for discrimination will constitute reversible error under *McKennon* and Fourth Circuit precedent if introduced on "the ultimate question of liability." *Russell*, 65 F.3d at 1240-41, n.9. For example, if SHRM uses the after-acquired messages to show that Ms. Torres "caused a breakdown in the interactive [reasonable accommodation] process," and was thus not entitled to a reasonable accommodation, as it does in Def's MSJ, ECF No. 76 at 21-22 (citing Def's SUMF at ¶ 37), it will be using them to defeat liability.

Of particular concern among SHRM's possible uses of after-acquired evidence for liability purposes is the inapposite theory, advanced in Def's MSJ, that the after-acquired evidence it cites retroactively disqualifies Ms. Torres as a "qualified individual" for ADA purposes. Def's MSJ, ECF No. 76 at 26. The argument SHRM advances is that Ms. Torres's "unprofessional and threatening contemporaneous communications disqualified her from employment at SHRM" because, as they argue (*but see* argument section B(ii) below, p. 13), they are contrary to the SHRM Code of Conduct. Def's MSJ, ECF No. 76, p. 26. SHRM cites an outlying Ninth Circuit case as precedent that after-acquired evidence can be used for such purposes. *Id.* (citing *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1131 (9th Cir. 2020) (holding that because *McKennon* was an ADEA case, not an ADA case, and was limited to holding "that after-acquired evidence cannot establish a superseding, non-discriminatory justification for an employer's challenged actions," after-acquired evidence *could* be used to undermine someone's "qualified individual" status under the ADA)).

However, there are several problems with SHRM's theory and reliance on *Trax*. First, *Trax* applies *McKennon* illogically, because an employer using after-acquired evidence to retroactively declare someone not to be a "qualified individual" *is equivalent to* the employer's "establish[ing] a superseding, non-discriminatory justification" for terminating them, which *Trax* recognizes that courts may not do per *McKennon*. *Trax Int'l Corp.*, 955 F.3d at 1131. The employer's contention that the person was not a "qualified individual" because of the after-acquired evidence *is* the employer's "superseding, non-discriminatory justification." There is effectively no difference. Therefore, even using the Ninth Circuit's own rationale, *Trax*'s application of *McKennon* was faulty.

Further, the Ninth Circuit's interpretation of *McKennon* in *Trax* that SHRM advances directly contradicts this Court's and the Fourth Circuit's interpretation of *McKennon* that it is "'unambiguously' clear that 'the impact of after-acquired evidence is limited to remedial matters alone[,]' not an employer's underlying liability for an employee's unlawful termination." *Harmon v. CB Squared Services, Inc.*, 624 F.Supp.2d 459, 469 (quoting *Russell v. Microdyne Corp.*, 65 F.3d 1229 at n.8). SHRM cites no Fourth Circuit or E.D. Va. opinion that treats after-acquired evidence in ADA cases in the same manner as the Ninth Circuit did in *Trax*. If this Court were to allow SHRM to present after-acquired evidence at trial to prove that Ms. Torres was not a qualified individual, it would amount to allowing SHRM to use after-acquired evidence to disprove its liability and thus would be reversible error under *McKennon* and *Russell*.

Moreover, even using the case and theory that SHRM cites, Ms. Torres's private communications with her friends are not relevant to her status as a qualified individual for ADA purposes. *Trax* required that the Court "determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc…[,]" and then "determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation"). 955 F.3d 1123, 1128. It then held that the employee in that case was not a qualified individual because she lacked the bachelor's degree that was a required qualification for the job. In the present case, SHRM human resources director Jim Link himself admitted that Ms. Torres was qualified in background and skills. Ex. 5, Link 5.11.2026 30(b)(1) Dep. Excerpts 152: 1-22, 153: 1-15. *Trax* is thus inapposite because its holding was based on the employee's lack of a required educational qualification. Further, Ms. Torres's private communications

clearly have no bearing on whether she could perform the essential functions of the position with SHRM.

In sum, SHRM's attempts to use after-acquired evidence to defeat liability in this case are not supported by, and in fact are directly contrary to, holdings from the Supreme Court, Fourth Circuit, and E.D. Va. that after-acquired evidence must be limited to the question of damages, and it should thus be precluded from using it for any liability-related purposes.

***ii. SHRM has also not met its burden to show that it may use the after-acquired evidence defense for damages.***

As addressed above, pursuant to *McKennon* and its Fourth Circuit progeny, after-acquired evidence is generally not admissible for liability but can, in some circumstances, be admissible for damages if the employer meets its "severity burden" under *McKennon*. The Fourth Circuit in *Rinaldi*, 388 Fed. Appx. at 294-95, has addressed this burden in detail, upholding the use of a three-part test to prove that an employee's misconduct was of such severity that it would have warranted termination and thus could be admissible with regard to damages: "(1) that the employee was "guilty of some misconduct" of which employer was unaware; (2) that the misconduct "constitute[d] 'acts of dishonesty' in connection with [employer's] business, 'gross neglect' of [employee's] obligations, or 'illegal acts;'" and (3) that the employer "would have discharged [employee] for cause had it known of the misconduct."

Here, SHRM recognized early in this proceeding that it might claim the after-acquired defense, *See* SHRM's Answer, ECF No. 8, "Eleventh Defense," and has apparently attempted to build the record to meet its burden accordingly. However, it has still not met, and cannot meet, its threshold burden to show that Ms. Torres committed misconduct for which SHRM would

have in fact rescinded her offer under the standard that *McKennon* devised and the way courts have implemented it.

Thus far in pretrial proceedings, SHRM's evidence for an after-acquired evidence defense has been illogical and insufficient. The Def MSJ contends that, had SHRM known of Ms. Torres' personal messages at the time of its employment decision, it "would have immediately rescinded its offer of employment to Ms. Torres as violations of SHRM's Code of Conduct." Def's MSJ, ECF No. 76 at 15 (citing Link Tr. 243:18-244:6.) However, Mr. Link admitted in his deposition that Ms. Torres was not subject to the SHRM Code of Conduct as a prospective hire, and conceded that he was unaware of any situations in which a SHRM employee was disciplined under the Code of Conduct for pre-employment behavior. Ex. 5, Jim Link 5.11.2026 30(b)(1) Dep. 244: 9-17, 245: 2-10. Further, the Code of Conduct itself explicitly states that it "applies to every SHRM staff member…" and nowhere states that it applies to prospective applicants. Def's MSJ, ECF No. 76-2 at p. 3 ("To Whom Does This Code Apply"). Thus, SHRM's efforts to show that Ms. Torres committed misconduct for which it would have rescinded her job offer are contradicted by SHRM's own testimony and the cited policy itself.

Additionally on this point, case law from this and other Circuits shows that an employer's citation to its policy alone is insufficient to meet the employer's burden of proof: courts have interpreted *McKennon*'s requirement that the employer show that the employee "in fact would have been terminated on those grounds" to mean proof that termination in such cases was the employer's standard practice. *Deltek, Inc. v. Department of Labor, Administrative Review Bd.*, 649 Fed.Appx. 320, 333 (4th Cir. 2016) (finding that "in the absence of record evidence that [employer] had terminated other employees for sending instant messages or that no other employee had sent comparable messages, we defer to the ALJ's finding that [employee's] instant

messages were 'trivial in nature' and so 'petty' that [employer] could not show that an employee would have been terminated on that ground alone."); *Frazier Indus. Co., Inc. v. N.L.R.B.*, 213 F.3d 750, 760-61 (D.C. Cir. 2000) (noting that *McKennon* warned that employers may try to devise *post-hoc* reasons for discriminatory terminations, and accordingly requiring proof that the employer had previously "routinely dismissed employees for similar omissions."); *Kapche*, 677 F.3d 454, 467 (quoting *Frazier*, 213 F.3d 750, in holding that [the employer] must establish "that [the employer's] practice has been to dismiss employees for similar [conduct]"). SHRM has placed no evidence before this Court that its actual *practice* before Ms. Torres's offer rescission was to rescind job offers based upon text messages between friends sent outside the workplace. And to the extent that Mr. Link testified that he would have rescinded Ms. Torres's offer had he known about her text messages, this Court should find his *post-hoc* testimony to be self-serving and thus not credible, as in *Rinaldi* above. 388 Fed. Appx. at 296 (finding management official's statements that he would have terminated the employee to be "self-serving").

Further, case law does not support the position that personal communications to friends *outside the employment context* such as those here justify termination or rescission under the *McKennon* standard. After-acquired evidence cases involving termination or rescission normally hinge on alleged misconduct *in the workplace* or falsehoods in materials submitted *to the employer* during the application process. *See e.g.*, *Rinaldi*, 388 Fed.Appx. 290 (analyzing questionable travel reimbursements at work as after-acquired evidence); *Garrett*, 121 F.Supp.2d at 905-06 (analyzing potential resume fraud and multiple workplace misconduct allegations); *Harmon*, 624 F. Supp. 2d at 469 (analyzing allegedly false statement employee made to prospective employer that he had no criminal record, which was a prerequisite for the job); *Kapche v. Holder*, 677 F.3d 454, 465-66 (D.C. Cir. 2012) (analyzing whether applicant for FBI

Special Agent program had demonstrated lack of candor in his application materials and interview); *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012) (analyzing dishonest representations made to employer in employment application); *EEOC v. Dial Corp.*, 469 F.3d 735 (8th Cir. 2006) (analyzing a criminal record that the applicant did not list in her employment application).

Here, unlike the cases above, the messages in question were never sent to SHRM as part of Ms. Torres's application and did not constitute misconduct in the workplace by a current employee. SHRM never would or should have received them except for the present litigation, so they cannot now be used to effectively rescind Ms. Torres's employment offer. Interpreting *McKennon* to allow rescission based on purely personal conduct would perversely incentivize employers to search for employees' otherwise irrelevant personal affairs in an attempt to defeat discrimination claims after the fact – something *McKennon* explicitly warned against. *McKennon*, 513 U.S. 352, 363 ("The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one").

Lastly, at least one federal court of appeals has found that an employer did not meet its burden to show it was entitled to use after-acquired evidence where the "alleged misconduct to which [employer] points occurred" as a result of the employer's discriminatory conduct. *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 555 (10th Cir. 1999) (holding that the district court did not err in refusing, under *McKennon,* to instruct the jury that it could consider after-acquired evidence where the alleged misconduct occurred at a hearing "occasioned by plaintiff's termination."). Here, SHRM should not be permitted to meet its *McKennon* burden by using messages Ms. Torres sent about SHRM's discrimination against her, since if SHRM had not

delayed and then rescinded her offer, she never would have sent the messages at all. *See also Townsend v. Deere & Co.,* No. 4:22-cv-422, 2024 WL 6996093 (S.D. Iowa Jan. 19, 2024) (applying *Medlock* to bar after-acquired evidence of prior conduct that resulted from the disability at issue) ("the facts . . . mirror the scenario the Tenth Circuit contemplated in *Medlock"*); *EEOC v. Bok Financial Corp.,* No. CIV 11-1132, 2014 WL 11829319 at *2 (D.N.M. 2014) (granting motion in limine "where the alleged misconduct was a direct result of the allegedly discriminatory [act], it would be inequitable to allow Defendants to present evidence of her alleged misconduct"); *see also Kapche,* 677 F.3d at 467-68, n.14 (D.C. Cir. 2012) (recognizing *Medlock*).

Accordingly, SHRM has not met its burden under the *McKennon* "severity standard" to prove that it is entitled to use the after-acquired evidence defense. Its proof is illogical and inconsistent, and its theory that personal messages constitute "misconduct" for employment purposes sufficient to retroactively justify a job offer rescission and thereby defeat a discrimination suit is novel, unsupported by the law, and contrary to *McKennon*'s admonitions to maintain the statutory protections of the ADA in the face of *post hoc* employer "unclean hands" justifications. Because SHRM is not permitted to use the after-acquired evidence defense to combat its liability, and because it has not met its "severity burden" to show that it may use the defense for damages, there is no purpose in any phase of trial proceedings for which SHRM may legally use the after-acquired evidence cited above in support of the after-acquired evidence defense. This is especially true considering how prejudicial the messages and texts are compared to their lack of relevance, as described below.

***iii. Fed. R. Evid. 403 prohibits SHRM from using the cited after-acquired evidence for any other purpose.***

When deciding whether to admit after-acquired evidence, courts consider *McKennon* in conjunction with the Fed. R. Evid. 403 balancing test, including analyzing the purpose the evidence's proponent has given for admitting it and whether the evidence would confuse the issues and cause unfair prejudice to the opposing party. *Smith v. Bankers Life and Cas Co.*, No. 3:05-cv-00130, 2008 WL 2845081 at *5 (S.D. Iowa 2008). "[U]nfair prejudice" under Fed. R. Evid. 403 is "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Mullen v. Princess Anne Volunteer Fire. Co.*, 853 F.2d 1130, 1134 (4th Cir. 1988); *see also Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir. 1988) (describing it as the "genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence").

In *Smith*, the Court bifurcated the proceedings because, "[g]iven the limited purpose for which the after-acquired evidence is admissible, the Court believes that, even with a carefully crafted limiting instruction, the risk of prejudice and confusion of the issues is substantial." *Smith*, 2008 WL 2845081 at *5. Similarly, in *Mardell v. Harleysville Life Ins. Co.*, 65 F.3d 1072 (3d Cir. 1995), the court of appeals explicitly ruled that "[the employer] could not introduce the [after-acquired] evidence 'substantively for the purpose of defending against liability." 65 F.3d at 1072, n.1. And in *Harris v. Chand*, 506 F.3d 1135 (8th Cir. 2007), the appeals court ruled that an employer could not introduce after-acquired evidence of a criminal conviction under Fed. R. Evid., finding that "the prejudicial effect of that testimony substantially outweighs any probative value it may have.") *Id.* at 1138-39.

Here, given the very nature of after-acquired evidence, in that the employer did not know about it at the time of making its discriminatory decision, it is axiomatically irrelevant to that

decision, which is of course the basis for the cause of action. *See McKennon,* 513 U.S at 360 (noting that "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."). All the text and audio messages Plaintiff seeks to exclude were between Ms. Torres and her friends. No SHRM employee received any of these messages or was even aware of them at the time of SHRM's rescission of Ms. Torres' job offer, which makes them irrelevant to the central question in this case, namely whether SHRM discriminated against Ms. Torres when it denied her needed accommodation and withdrew its job offer.

Moreover, the messages' highly prejudicial nature requires their exclusion even if SHRM can prove some minimal relevance for their admission. Ms. Torres's messages with her friends reflect her feelings of extreme duress as a direct result of SHRM denying her service dog accommodation and rescinding her job offer. Accordingly, they were emotional and vulgar at times, and therefore may elicit a strong reaction from jurors. This in turn may distract them from the facts and claims at issue whether SHRM discriminated against Ms. Torres and impermissibly denied her a reasonable accommodation. The private messages could reasonably be expected to induce jury members to perceive Ms. Torres negatively, and on that basis make an emotionally charged decision to deny her discrimination claims regardless of the strength of those claims.

SHRM offers no legitimate basis to show the jury messages wherein, for example, Ms. Torres says she wishes SHRM employees' family members could experience diabetes, or that she thinks SHRM employees are "twats." The most likely reason SHRM seeks to introduce these messages is simply to make Ms. Torres look bad, and to distract from its own discriminatory decisions at issue in the case—exactly what Fed. R. Evid. 403 prohibits.

Moreover, introduction of these text messages for a limited purpose will inevitably confuse the factfinder, as their admission would require, at minimum, a limiting instruction that they may be considered only for some limited purpose. This would require a highly technical legal parsing exercise that a lay juror cannot fairly be expected to accomplish effectively.

SHRM has not shown, and cannot show, that these emotionally-charged communications between friends, exchanged privately and outside the hiring process between SHRM and Ms. Torres, and which SHRM did not know about at the time of its rescission decision, are so relevant and necessary to liability proceedings about whether SHRM discriminated against Ms. Torres that they overcome the prejudice that will inure to Ms. Torres from their admission.

In sum, SHRM cannot use the after-acquired evidence defense or the cited after-acquired evidence itself to defeat liability, it has not met its burden to use them for damages, and it has not shown that they can be used for any other purpose in this case that would be sufficient to overcome their irrelevance to the causes of action in the face of their extreme prejudice. SHRM thus has no valid purpose for using the after-acquired evidence doctrine or after-acquired evidence in this case.

### *C. The Court should take appropriate action,* **in limine**, *to exclude or limit SHRM's use of after-acquired evidence and the after-acquired evidence doctrine.*

#### *i. The Court should exclude the after-acquired evidence entirely.*

Because the cited after-acquired evidence is not admissible to disprove liability, and because SHRM cannot meet its burden to show it may use it for damages, and further given that it not of significant enough relevance to overcome its highly prejudicial nature, the Court should

issue an order, *in limine*, barring SHRM from using the after-acquired evidence defense and the cited after-acquired evidence for any purpose.

ii. ***Bifurcation would be necessary if the evidence were to be introduced for damages only.***

Under Fed. R. Civ. P. 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims[.]" This Court and others have found that in some cases where outright exclusion of after-acquired evidence was not merited, bifurcation into a liability phase and a remedy phase, and limiting after-acquired evidence to the remedy phase, was a fitting solution to eliminate prejudice to the liability issue. *See, e.g.*, *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 905-06 (E.D. Va. 2000) (bifurcating the trial into a liability and a remedy phase, and largely limiting the use of after-acquired evidence to the remedy phase). This case presents a compelling need to avoid prejudicing the liability determination with inflammatory material that at best is relevant only to damages, meaning that if the Court does not preclude the use of after-acquired evidence altogether, it should bifurcate trial into liability and damages phases and limit after-acquired evidence to damages.

***iii. Alternatively, if the Court does not bifurcate proceedings, it should issue limiting instructions regarding the use of the after-acquired evidence.***

This is the approach the Second Circuit took in *Vichare v. AMBAC, Inc.*, 106 F.3d 457 (2d Cir. 1996), where the after-acquired evidence was about "kick-backs" the plaintiff received that were relevant to the defendant's counterclaim of a breach of fiduciary duty. *Vichare*, 106 F.3d at 466-67. The Circuit Court ruled that the judge appropriately denied the employee's

motion for bifurcation for after-acquired evidence and instead issued limiting instructions because "[t]he issues of liability and damages [were] intertwined," in part because the same witnesses needed to be called for the discrimination complaint and the counter-claim and "[w]e cannot say that the [after-acquired evidence] allegation of breach of fiduciary duty in this case was so emotionally charged that it necessarily would have prejudiced [one party] Vichare in the eyes of the jury." *Id.* at 466-67.

Here, the rationale of *Vichare* supports bifurcation, not limiting instructions, because the after-acquired personal messages of Ms. Torres with her friends are not "intertwined" with SHRM's decisions to rescind her job offer and withhold a reasonable accommodation from her but rather are wholly irrelevant to those decisions. Further, unlike the evidence in *Vichare,* the messages in question here *are* "so emotionally charged" that they would be highly prejudicial to Ms. Torres during the liability phase. *Id.* However, if SHRM meets its burden to show that it may use after-acquired evidence and the Court declines to exclude it or bifurcate proceedings, the Court should at a minimum issue limiting instructions both during trial and prior to deliberations stating that the after-acquired evidence may only be used for the purposes of impeaching Ms. Torres's descriptions of the interactive process with SHRM and determining the appropriate remedy in this case, namely whether Ms. Torres is entitled to reinstatement and backpay.

## IV. Conclusion

For the foregoing reasons, the Court should grant Ms. Torres' Motion to Exclude After-Acquired Evidence and issue an order ruling that SHRM may not use after-acquired evidence to contest liability and has not met its burden to prove it may use after-acquired evidence for damages, and that SHRM is therefore precluded from using after-acquired evidence for any

reason in any proceedings in this case, to include pretrial and trial proceedings. Alternatively, if the Court declines to preclude SHRM from using after-acquired evidence, Plaintiff asks that the Court bifurcate trial proceedings into a liability phase and a damages phase and exclude after-acquired evidence from being admitted during the liability phase. As a second alternative, if the Court does not exclude after-acquired evidence altogether or bifurcate the trial proceedings, Plaintiff asks that the Court issue limiting instructions stating that the after-acquired evidence may only be used for the limited purposes of impeaching Ms. Torres's credibility in her description of the interactive process and determining the remedy. If the Court does not act to prevent or restrict SHRM's use of after-acquired evidence, SHRM will be able to circumvent the purpose of the ADA and undermine two decades of Supreme Court and Fourth Circuit precedent by impermissibly using evidence that it did not have at the time of making its discriminatory rescission decision to avoid liability for that decision.

Respectfully submitted,

Fiona Torres
By Counsel

/s/ Mary E. Kuntz

Mary E. Kuntz
Virginia Bar No. 76947
Stephen B. Pershing
Virginia Bar No. 31012
Anna Kathryn B. Barry
D.C. Bar No. 1719493
(Admitted *pro hac vice*)
Thomas O. Walker II
AL Bar No. 4064E32W
(Admitted *pro hac vice*)

Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
akbarry@kcnlaw.com
twalker@kcnlaw.com

*Attorneys for plaintiff Fiona Torres*

Dated: September 14, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed with the Court's case management / electronic case filing ("CM/ECF") system, through which it was transmitted to counsel of record for defendant Society for Human Resource Management as follows:

Lauren M. Bridenbaugh
Leslie P. Currie
Tanja L. Darrow (admitted *pro hac vice)*
Tiffany din Fagel Tse
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lbridenbaugh@littler.com
lcurrie@littler.com
tdarrow@littler.com
ttse@littler.com

_*/s/ Mary E. Kuntz*___________________
Mary E. Kuntz