**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **FIONA TORRES,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOCIETY FOR HUMAN RESOURCE MANAGEMENT,**<br><br>**Defendant.** | **Civil Action No. 1:25-CV-02360** |

**SHRM'S PROPOSED JURY INSTRUCTIONS**

Defendant Society For Human Resource Management ("Defendant" or "SHRM"), by and through its undersigned counsel, files its Proposed Jury Instructions in accordance with Federal Rules of Civil Procedure 51, Local Civil Rule 51, and the Court's Order dated June 17, 2026 (ECF No. 64). SHRM's Proposed Jury Instructions encompass those instructions not agreed to in the Parties' Joint Proposed Jury Instructions filed contemporaneously with this filing. By submitting these Proposed Jury Instructions, SHRM does not waive its right to modify the proposed instructions, questions, and objections contained in these Proposed Jury Instructions to conform with the law and the evidence submitted in this case.

**INSTRUCTION NO. 1**
**(PRELIMINARY INSTRUCTIONS BEFORE COMMENCEMENT OF TRIAL)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 2**
**(DESCRIPTION OF THE CASE)**

In this case, Plaintiff Fiona Torres was offered a job to work at SHRM in 2024, and claims that when SHRM declined her request to have her dog present at SHRM's office as her preferred accommodation for her Type 1 diabetes and rescinded the job offer, it discriminated against her on the basis of her alleged disability in violation of the Americans with Disabilities Act ("ADA") and the Virginia Human Rights Act ("VHRA"). SHRM denies these claims and asserts that it offered her alternative accommodations that would allow her to perform the essential functions of the job she was offered, that she admitted voluntarily being without her dog in various professional and personal settings, and that it rescinded the job offer only after Ms. Torres refused to engage with it further on alternative accommodations.

You may notice Ms. Torres' dog is present in the courtroom for this trial. The presence of Ms. Torres' dog should not be considered an indication that she does or does not need her dog to be with her, or that I, by permitting the dog to be present in the courtroom, think Ms. Torres needs her dog to be with her.

**Authority**: Third Circuit Model Civil Jury Instructions 1.2, 9.0 (modified); Eleventh Circuit Pattern Civil Jury Instruction 1.1 (modified).

**INSTRUCTION NO. 3**
**(GENERAL INSTRUCTIONS FOR JURY AFTER PRESENTATION OF EVIDENCE)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 4**
**(NONPERSON PARTY)**

In your deliberations, you must not be influenced by the fact that Ms. Torres is an individual while SHRM is a professional association. The mere fact that SHRM is a professional association does not mean it is entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

**Authority**: Final Instruction No. 7 from *Grant v. CSL Behring LLC*, No. 21-CV-02044-CJN (D.D.C. Feb. 2, 2024) (modified); Fifth Circuit Pattern Jury Instruction Civil 2.16 (modified); Seventh Circuit Pattern Civil Jury Instruction 1.03 (modified); Ninth Circuit Model Civil Jury Instruction 4.1 (modified); Eleventh Circuit Pattern Civil Jury Instructions, Basic Instruction 3.2.2 (modified).

**INSTRUCTION NO. 5**
**(EVIDENCE IN THE CASE)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 6**
**(USE OF DEPOSITIONS)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 7**
**(WHAT IS NOT EVIDENCE)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 8**
**(DIRECT AND CIRCUMSTANTIAL EVIDENCE)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 9**
**(INFERENCE)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 10**
**(CREDIBILITY OF THE WITNESSES)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 11**
**(OPINION TESTIMONY)**

Among the many witnesses who testified in this case, you have heard testimony about the opinions of Dr. Cooperman. This opinion testimony is allowed because of the knowledge, skill, experience, training, or education of this witness. In weighing this opinion testimony, you may consider the witness' qualifications, the reasons for his opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness.

The opinions of Dr. Cooperman should receive whatever weight and credit you think appropriate, if any, given all the other evidence in the case

Authority: Fed. R. Evid. 702; Third Circuit Model Civil Jury Instructions 2.11 (modified); Fifth Circuit Pattern Jury Instruction Civil 3.5 (modified); Seventh Circuit Pattern Civil Jury Instructions 1.21 (modified); Eighth Circuit Pattern Civil Jury Instructions 3.05 (modified); Ninth Circuit Model Jury Instruction 2.14 (modified).

**INSTRUCTION NO. 12**
**(DISCREPANCIES IN TESTIMONY)**

You may have heard evidence of discrepancies in the testimony of certain witnesses. You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

When examining discrepancies in a witness's testimony, you should consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

Authority: 4-76 Modern Federal Jury Instructions–Civil P 76-4 (Matthew Bender 4th ed. 2010) (modified); Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions, West, § 105:01 (6th ed. 2017).

**INSTRUCTION NO. 13**
**(SYMPATHY)**

Under your oath as jurors, you are not to be swayed by sympathy. You are to be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

Authority: 4-72 Modern Federal Jury Instructions–Civil P 72-1 (Matthew Bender 4th ed. 2010) (modified); *In re Murchison*, 349 U.S. 133 (1955); *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013); *Edwards v. City of Philadelphia*, 860 F.2d 568 (3d Cir. 1988); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 (5th Cir. 2005); *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir. 1985); *Lovett v. Union Pacific R.R.*, 201 F.3d 1074 (8th Cir. 2000).

**INSTRUCTION NO. 14**
**(NO INFERENCE FROM FILING SUIT)**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

Authority: Fifth Circuit Pattern Jury Instruction Civil 3.6.

**INSTRUCTION NO. 15**
**(BURDEN OF PROOF)**

The Plaintiff, Fiona Torres, has the burden in a civil action, such as this, to prove every essential element of her claim by a preponderance of the evidence.

"Establish by a preponderance of the evidence" means that Ms. Torres has to prove to you, in light of all the evidence, that what she claims is more likely so than not so. In other words, a preponderance of the evidence means the evidence in question has more convincing force than any evidence opposed to it and produces in your minds belief that what is sought to be proved is more likely true than not true.

Put another way, I ask you to visualize when you go into the jury room that you have on the jury room table the scales of justice on which two trays are hanging evenly in balance. If you were to put the evidence that favors Ms. Torres on one side and the evidence that favors SHRM on opposite sides of those scales, Ms. Torres has to make the scales tip to her side. If she does, you must find for her. If the evidence weighs the same for both sides, or favors SHRM, Ms. Torres has not sustained her burden of proof by a preponderance of the evidence, and you must find for SHRM.

In deciding whether Ms. Torres has met her burden of proof, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

<u>Authority</u>: Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions, West, § 104:01 (6th ed. 2017) (modified); Third Circuit Model Civil Jury Instruction 1.10 (modified); Fifth Circuit Pattern Jury Instruction Civil 3.2 (modified); Ninth Circuit Model Civil Jury Instruction 1.6 (modified); Eleventh Circuit Pattern Jury Instruction 3.7.1 (modified); 1 Virginia Model Jury Instructions - Civil Instruction 3.100; Devitt, Blackmar and Wolff § 72.01 (modified); 5-88 Modern Federal Jury Instructions–Civil P 88-27 (Matthew Bender 4th ed. 2010) (modified); *Jacobs v. Jacobs*, 218 Va. 264, 267, 237 S.E. 2d 124 (1977); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248 (4th Cir. 2005); *MSSI Acquisition, LLC v. Azmat Consulting,*

*Inc.*, No. 11-cv-01312, 2012 U.S. Dist. LEXIS 117745 (E.D. Va. July 19, 2012); *Grant v. CSL Behring LLC*, No. 21-CV-02044-CJN (D.D.C. Feb. 2, 2024).

**INSTRUCTION NO. 16**
**(PROOF SCHEME – ADA DISABILITY ACCOMMODATION CLAIM)**

In this case, Ms. Torres claims that SHRM failed to reasonably accommodate Ms. Torres' alleged disability. SHRM denies Ms. Torres' claims and contends that it offered Ms. Torres reasonable, alternative accommodations. Ms. Torres is bringing her disability accommodation claim under both the Americans with Disabilities Act, which I will call the ADA, and the Virginia Human Rights Act, which I will call the VHRA. The elements for proving such a claim is the same under both the ADA and the VHRA, so my instructions on the elements of proving Ms. Torres' disability failure to accommodate claims apply to both statutes.

To succeed in this case, Ms. Torres must prove each of the following by a preponderance of the evidence:

1. Ms. Torres has a disability as defined by the ADA;
2. SHRM had notice of this alleged disability;
3. Ms. Torres could perform the essential functions of the position to which she applied with a reasonable accommodation; and
4. SHRM refused to offer an accommodation that was reasonable.

A "disability" under the ADA requires Ms. Torres to prove by a preponderance of the evidence that she has a physical or mental impairment that substantially limits one or more major life activities. A "physical impairment" is a condition that prevents the body from functioning normally. A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions. Major life activities include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

An impairment "substantially limits" a major life activity if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general population.

Ms. Torres was able to perform the essential functions of the position to which she applied means that Ms. Torres had the skill, experience, education, and other job-related requirements for the Senior Specialist, Product Management position, and could do the essential functions of that position, with or without a reasonable accommodation.

The "essential functions" of the position are job duties or functions that bear more than a marginal relationship to the job at issue.

Ms. Torres must also prove by a preponderance of the evidence that a reasonable accommodation existed that would have allowed her to perform the essential functions of the position and, further, she must prove by a preponderance of the evidence that SHRM failed to provide a reasonable accommodation. An applicant is not entitled to their preferred accommodation, or the accommodation they requested so long as an alternative accommodation is offered by the employer that would allow them to perform the essential functions of the position

A "reasonable accommodation" is a modification or adjustment of the employer's ordinary work rules, facilities, or terms and conditions of employment.

Once an employer is aware that an applicant is requesting a reasonable accommodation, the employer and employee are required to engage in a good faith, interactive process to identify a reasonable accommodation. When a party obstructs or delays the interactive process, the party is not acting in good faith. If you find that Ms. Torres did not engage in or caused a breakdown in the interactive process with SHRM, then you cannot find for Ms. Torres.

In this case, Ms. Torres claims that she would have been able to perform the essential functions of the Senior Specialist, Product Management position with a reasonable accommodation in the form of the presence of her dog at SHRM's office when she worked there. SHRM claims that it offered Ms. Torres reasonable accommodations including the use of her Continuous Glucose Monitor ("CGM") and insulin pump at work, breaks as needed to monitor her glucose levels and administer insulin, highlighted its unlimited paid time off program, and that she could have food and drink at her work station, and that it was open to other accommodations Ms. Torres proposed, but that Ms. Torres refused these reasonable, alternative accommodations. If you agree with SHRM, Ms. Torres' claims fail.

To decide whether SHRM denied Ms. Torres a reasonable accommodation, you must keep in mind that while an employer is required to provide a reasonable accommodation that would allow Ms. Torres to perform the essential job functions, the employer is not required to provide the particular accommodation that Ms. Torres prefers or requests. There may be more than one reasonable accommodation available under the circumstances, and if Ms. Torres refused to accept an accommodation offered by SHRM that would have allowed her to perform the essential job functions, Ms. Torres has not proven that SHRM failed to provide a reasonable accommodation.

If you find that Ms. Torres has proven each element she must prove, you must decide whether SHRM has established its affirmative defense. SHRM claims that after Ms. Torres informed it of her request for an accommodation, SHRM made good faith efforts to consult with Ms. Torres in order to identify and make a reasonable accommodation. SHRM must prove by a preponderance of the evidence that it made good faith efforts to identify and make a reasonable accommodation for Ms. Torres. If you find by a preponderance of the evidence that SHRM made

good faith efforts to identify and make a reasonable accommodation for Ms. Torres, then you have found that SHRM established its affirmative defense.

Authority: *Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, RDB-23-0727, 2024 WL 1604493, at *4 (D. Md. Apr. 11, 2024), *aff'd*, 141 F. 4th 568 (4th Cir. 2025), *cert. denied sub nom.*, *Tarquinio*, 146 S. Ct. 367; *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. App'x 314, 323 (4th Cir. 2011); *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 Fed. Appx. 399, 400 (4th Cir. 2005); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001); Eleventh Circuit Pattern Civil Jury Instruction 4.12 (modified).

**INSTRUCTION NO. 17**
**(PROOF SCHEME – ADA DISABILITY CLAIM)**

In this case, Ms. Torres also claims that SHRM discriminated against her by rescinding its job offer to her because she had a disability within the meaning of the ADA.

SHRM denies Ms. Torres' claims and asserts that it rescinded the job offer because Ms. Torres refused to engage with SHRM further in the interactive process, refused to take the position with the alternative accommodations offered by SHRM, and because the business needed to fill the role.

To succeed on her claim, Ms. Torres must prove each of the following by a preponderance of the evidence:

1. Ms. Torres has a disability as defined by the ADA;
2. Ms. Torres was a qualified individual;
3. SHRM rescinded the job offer to Ms. Torres; and
4. SHRM rescinded the job offer because of Ms. Torres' alleged disability.

A disability is the same as I previously instructed you.

A "qualified individual" requires Ms. Torres to prove by a preponderance of the evidence that she was "qualified" for the job at the time that SHRM rescinded the offer. This means that Ms. Torres must show that she had the skill, experience, education, and other job-related requirements for the Senior Specialist, Product Management position and could do the essential functions of the job, with or without reasonable accommodation. Implicit in the definition of a "qualified individual" is an obligation to engage in a good faith, collaborative search for a reasonable accommodation. If you find that Ms. Torres did not do so, and/or rejected a reasonable accommodation, she cannot be considered a "qualified individual."

Finally, if you find that Ms. Torres had a disability, was a qualified individual, and that SHRM rescinded the job offer to Ms. Torres, you must decide whether SHRM took that action "because of" Ms. Torres' disability. To determine if SHRM rescinded the job offer because of Ms. Torres' alleged disability, you must decide that SHRM would not have rescinded the job offer if Ms. Torres had not had a disability.

SHRM denies that it rescinded the job offer because of Ms. Torres' alleged disability and claims that it made the decision because Ms. Torres refused to engage with SHRM further in the interactive process, refused to take the position with the alternative accommodations offered by SHRM, and because the business needed to fill the role.

An employer may not discriminate against an applicant because of the applicant's alleged disability, but an employer may rescind a job offer for any other reason, good or bad, fair or unfair. If you believe SHRM's reasons for the decision to rescind the job offer to Ms. Torres, and if you find that the decision was not made because of Ms. Torres' alleged disability, you must not second guess that decision, and you must not substitute your own judgment for SHRM's judgment – even if you do not agree with it.

Authority:; *Hall Haggins v. Wilson Air Ctr., LLC*, 163 F. 4th 872, 877, 880 (4th Cir. 2026); *Tartaro-McGowan v. Inova Home Health, LLC*, 1:21-cv-298 (RDA/TCB), 2022 WL 2232190, at *7 (E.D. Va. June 21, 2022), *aff'd* 91 F.4th 158 (4th Cir. 2024); *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 181 (4th Cir. 2024); *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562 (4th Cir. 2015) *Andrews v. Commonwealth of Virginia*, 232 F.3d 886 (4th Cir. 2000); 29 C.F.R. § 1630.9(d); Eleventh Circuit Pattern Civil Jury Instruction 4.11 (modified).

**INSTRUCTION NO. 18**
**(PROOF SCHEME – VHRA DISABILITY CLAIM)**

Under the VHRA, Ms. Torres' must prove that her alleged disability was a motivating factor in SHRM's decision to rescind the job offer.

As I previously stated, SHRM denies Ms. Torres' claims and asserts that it rescinded the job offer because Ms. Torres refused to engage with SHRM further in the interactive process, refused to take the position with the alternative accommodations offered by SHRM, and because the business needed to fill the role.

A disability is the same as I previously instructed you.

A "qualified individual" is the same as I previously instructed you.

Similar to Ms. Torres' ADA disability discrimination claim, if you find that Ms. Torres had a disability, was a qualified individual, and that SHRM rescinded the job offer to Ms. Torres, you must then decide whether Ms. Torres' disability was a motivating factor in its decision to rescind the job offer.

SHRM denies that it rescinded the job offer because of Ms. Torres' alleged disability and claims that it made the decision because Ms. Torres refused to engage with SHRM further in the interactive process, refused to take the position with the alternative accommodations offered by SHRM, and because the business needed to fill the role.

An employer may not discriminate against an applicant because of the applicant's alleged disability, but an employer may rescind a job offer for any other reason, good or bad, fair or unfair. If you believe SHRM's reasons for the decision to rescind the job offer to Ms. Torres, and if you find that the decision was not made because of Ms. Torres' alleged disability, you must not second guess that decision, and you must not substitute your own judgment for SHRM's judgment – even if you do not agree with it.

Authority: *Hall Haggins v. Wilson Air Ctr., LLC*, 163 F. 4th 872, 877, 880 (4th Cir. 2026); *Tartaro-McGowan v. Inova Home Health, LLC*, 1:21-cv-298 (RDA/TCB), 2022 WL 2232190, at *7 (E.D. Va. June 21, 2022), *aff'd* 91 F.4th 158 (4th Cir. 2024); *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 181 (4th Cir. 2024); *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020); *Andrews v. Commonwealth of Virginia*, 232 F.3d 886 (4th Cir. 2000); *Moore v. Copper River Shared Servs., LLC*, 113 Va. Cir. 47 (Fairfax Cnty. Jan. 30, 2024); Eleventh Circuit Pattern Civil Jury Instruction 4.11 (modified).

**INSTRUCTION NO. 19**
**(BUSINESS JUDGMENT)**

In your deliberations, you should be mindful that SHRM's business judgment is not on trial in this case. Federal anti-discrimination laws are not intended to be vehicles for second-guessing an employer's business decisions. Although employment decisions must not be based on unlawful factors, an employer is entitled to base its decisions on any other factors, regardless of whether they are good or bad, fair or unfair.

You should not permit sympathy for Ms. Torres to lead you to substitute your own judgment for SHRM's judgment. Even if you believe SHRM exercised poor or questionable business judgment in its actions, or if you feel you would not have made the same decisions under similar circumstances, you cannot find in favor of Ms. Torres unless you are convinced that she has proven by a preponderance of the evidence that SHRM's decisions violated the law.

<u>Authority</u>: *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (Courts do not sit as "super-personnel department[s] weighing the prudence of employment decisions made by firms charged with employment discrimination"); *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014); *Deines v. Texas Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) ("[D]iscrimination laws [are not] vehicles for judicial second-guessing of business decisions. . . . Therefore, apart from searching for discriminatory intent, it is not the function of the jury to scrutinize the employer's judgment. . . . Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The single issue for the trier of fact is whether the employer's [decision] was motivated by discrimination.") (citations and internal quotations omitted); *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)) (the Court does not "sit as a super-personnel department that reexamines an entity's business decisions"); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012, n.6 (1st Cir. 1979) ("While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve. . . The jury must understand that its focus is to be on the employer's motivation, however, and not on its business judgment.")

**INSTRUCTION NO. 20**
**(UNDUE HARDSHIP)**

SHRM must prove by a preponderance of the evidence that the accommodation Ms. Torres requested would be an undue hardship. To decide the issue you should consider the following factors: the nature and cost of the accommodation; SHRM's overall financial resources, including the number of employees at the facility, and the impact on the operation of the facility; the financial resources of the facility where the accommodation would be made, including the number of employees at that facility and the accommodation's impact on the facility's operations and costs; the number of employees employed by SHRM and the effect of the accommodation; and the way that SHRM conducts the business's operations, including SHRM's workforce structure.

Authority:, Eighth Circuit Pattern Civil Jury Instructions 9.60 (modified); Ninth Circuit Model Civil Jury Instruction 12.10 (modified); Eleventh Circuit Pattern Civil Jury Instructions 4.12 (modified).

**INSTRUCTION NO. 21**
**(CONSIDERATION OF DAMAGES)**

[The Parties have jointly agreed to this proposed instruction.]

**INSTRUCTION NO. 22**
**(DAMAGES – SPECULATION)**

You must decide based on the evidence presented and the rules of law whether Ms. Torres is entitled to damages. If so, then you must decide the amount of damages. If not, you must enter judgment in SHRM's favor.

Damages are not presumed, and may not be based on speculation or guesswork; they must be proven. You must also understand that the burden is on Ms. Torres to prove each element of her claimed damages by the appropriate burden of proof. Unless such element is proven by the applicable burden of proof, Ms. Torres cannot recover damages.

Authority: Devitt, Blackmar and Wolff, § 104.06 (modified); Richey, C., Manual on Employment Discrimination and Civil Rights Actions in the Federal Courts (modified).

**INSTRUCTION NO. 23**
**(COMPENSATORY DAMAGES)**

If you find by a preponderance of the evidence that SHRM unlawfully discriminated against Ms. Torres based on a disability, or failed to offer reasonable accommodations, including reasonable alternative accommodations for her a disability, then you may determine the amount of damages that she sustained, if any. You may award compensatory damages only for actual injuries that Ms. Torres proves, by a preponderance of the evidence, were caused by SHRM's allegedly wrongful conduct. Compensatory damages are distinct from lost wages and you should not consider any wages that Ms. Torres would have earned had she begun employment with SHRM. Compensatory damages are also not allowed as a punishment and must not be imposed or increased to penalize SHRM. Compensatory damages must not be based on speculation or guesswork.

In determining whether Ms. Torres has sustained any actual injury that may support an award of compensatory damages, her testimony, standing alone, cannot support such an award. In other words, conclusory statements that she suffered emotional distress cannot support an award of compensatory damages, nor can the mere fact that you conclude she was wronged. Ms. Torres has the burden of providing evidence to establish that she suffered demonstrable emotional distress or an actual injury, which must be sufficiently explained and articulated. You must examine the substance and content of Ms. Torres' testimony attentively and with care as the law recognizes that mere mental pain and anxiety are too vague for legal remedies, and emotional distress is plagued by vagueness and speculation and easily susceptible to fictitious and trivial claims.

Moreover, Ms. Torres has the burden to show a causal connection between her purported emotional distress and/or injury and SHRM's allegedly wrongful conduct to justify an award of compensatory damages. Stated differently, Ms. Torres must prove that SHRM's allegedly wrongful conduct actually caused the alleged emotional distress and/or injury.

The damages that you award, if any, must be fair compensation – no more and no less. If proven by Ms. Torres, damages for any mental anguish, humiliation, inconvenience, or loss of enjoyment of life that she experienced as a consequence of SHRM's alleged wrongful conduct may be part of an award for compensatory damages. Although there is no exact standard for fixing the compensation to be awarded for these elements of damages, any award you make should be fair in light of the evidence presented at trial.

In determining the amount of damages that you decide to award, if any, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. The law does not require that Ms. Torres prove the amount of her claimed loss with mathematical precision, but with as much definiteness and accuracy as circumstances permit.

Authority: 5-88 Modern Federal Jury Instructions–Civil P 88-38 (Matthew Bender 4th ed. 2010) (modified); S1-8 Modern Federal Jury Instructions–Civil P 8.4.2 (Matthew Bender 2018) (modified); *EEOC v. Consol Energy*, 860 F.3d 131, 140 (4th Cir. 2017); *Bryant v. Aiken Regional Medical Centers Inc.*, 333 F.3d 536, 546-47 (4th Cir. 2003); *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 653 (4th Cir. 2002); *Price v. City of Charlotte*, 93 F.3d 1241, 1250-51 (4th Cir. 1996); Eleventh Circuit Pattern Civil Jury Instructions 4.11, 4.12 (modified).

**INSTRUCTION NO. 24**
**(PUNITIVE DAMAGES)**

Ms. Torres claims SHRM acted with malice or reckless indifference to her federal and state protected rights and that as a result there should be an award of what are called "punitive" damages. An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that SHRM acted, through its managers or leaders, with malice or reckless indifference to Ms. Torres' federal and state protected rights. An action is considered to have been taken with malice if a person knows that it violates the federal or state law prohibiting discrimination and does it anyway. An action is considered to have been taken with reckless indifference if taken with knowledge that it may violate the law.

Even if you make a finding that there has been an act of discrimination with malice or reckless disregard for Ms. Torres' legally protected rights, you cannot award punitive damages if SHRM proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law by adopting policies and procedures designed to prevent unlawful discrimination.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied and that SHRM has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements of permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant and others like a defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish SHRM. You should also consider whether actual damages standing alone are sufficient to deter or prevent

SHRM from again performing any wrongful acts it is alleged to have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those SHRM is alleged to have committed.

Authority: Third Circuit Civil Pattern Jury Instructions 9.4.2 (modified); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30, 534-41 (1999); *EEOC v. Consol Energy*, 860 F.3d 131, 150-52 (4th Cir. 2017).

**INSTRUCTION NO. 25**
**(DUTY TO DELIBERATE)**

[The Parties have jointly agreed to this proposed instruction.]

Dated: September 29, 2026

Respectfully submitted,

*/s/ Lauren M. Bridenbaugh*
Lauren M. Bridenbaugh, Bar No. 90586
Tiffany din Fagel Tse, Bar No. 92958
Leslie P. Currie, Bar No. 101060
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, Virginia 22102
Telephone: 703.442.8425
Facsimile: 703.662.6178
lbridenbaugh@littler.com
ttse@littler.com
lcurrie@littler.com

Tanja L. Darrow (admitted *pro hac vice)*
LITTLER MENDELSON, P.C.
633 West 5th Street, 63rd Floor
Los Angeles, California 90071
Telephone: 213.443.4300
Facsimile: 800.715.1330
tdarrow@littler.com

*Counsel for Defendant Society for Human Resource Management*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 29th day of September 2026, I caused the foregoing **SHRM'S Proposed Jury Instructions** to be served through the Court's Electronic Case Filing (ECF) system, and separately via email copy pursuant to the Court's June 17, 2026 Order on the following counsel of record:

Stephen B. Pershing (VSB No. 31012)
Mary E. Kuntz (VSB No. 76947)
Anna Kathryn Barnes Barry (admitted *pro hac vice*)
Thomas O. Walker II (admitted *pro hac vice*)
KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.
818 Connecticut Ave. NW, Suite 1000
Washington, DC 20006
Telephone: 202.331.9260
spershing@kcnlaw.com
mkuntz@kcnlaw.com
akbarry@kcnlaw.com
twalker@kcnlaw.com

*Counsel for Plaintiff*

*/s/ Lauren M. Bridenbaugh*
Lauren M. Bridenbaugh