**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

FIONA TORRES,

Plaintiff,

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

Defendant.

Civil Action No. 1:25-cv-2360-PTG-WBP

Hon. Patricia Tolliver Giles, J.
Hon. William B. Porter, M.J.

**PLAINTIFF'S MEMORANDUM**
**ON DISPUTED PROPOSED JURY INSTRUCTIONS**

## I. Introduction

The parties agree on the instructions that govern civil trials generally, but disagree on nearly every instruction that informs the jury about this case specifically. This memorandum sets forth plaintiff Fiona Torres's objections to instructions proposed by defendant Society for Human Resource Management ("SHRM") (ECF No. 144), and her reasons in support of her own instructions (ECF No. 141).

SHRM's disputed instructions have a variety of flaws. SHRM's "disability" instruction applies a definition Congress repealed in 2008; its "reasonable accommodation" instruction tells the jury that an employer need not provide the applicant's "preferred" accommodation, but never tells the jury that the employer's proffered alternative must be effective. On several issues, including undue hardship and the interactive process, SHRM proposes to relieve itself of the burden of proof. Its "interactive process" instruction directs a verdict for SHRM if the jury finds

that Ms. Torres "caused a breakdown in the interactive process," no matter how ineffective SHRM's proposals, and even though Virginia law makes the employer's failure to engage, not the applicant's, the unlawful act. On this issue among others, SHRM posits incorrectly that the Virginia Human Rights Act ("VHRA") has standards of liability no different from the ADA. Three of SHRM's instructions direct the jury not to second-guess SHRM's business judgment, even though that is no defense to Ms. Torres's federal or state law claims. And last but not least, SHRM's damages instructions treat a statutory limit on damages as a defense to liability.

By contrast, Ms. Torres's proposed instructions clearly specify the questions the jury must answer, taking care not to conflate them. Her proposed instructions state the statutory burden allocations correctly, and closely follow the applicable statutory text, implementing regulations, and Fourth Circuit authority, with separate instructions for issues on which federal and Virginia law diverge.

For brevity, this memorandum groups the various problems by topic, with specific references to appendices listing each SHRM instruction that Ms. Torres disputes, and her own proposed instructions that address it, thus allowing the Court to rule instruction by instruction. Appendix 1 lists every SHRM instruction, its status, Ms. Torres's objection to it if any, and her instructions that answer it. Appendix 2 lists every Torres instruction, its principal supporting authority, and the Part of this memorandum that supports it.[1]

[1] A note on instruction numbering: SHRM's filed set of disputed instructions adds an Instruction No. 20 (undue hardship) that was absent from its proposal served before the parties met and conferred. SHRM's joint damages and deliberation instructions are now Nos. 21 and 25. This memorandum cites each party's instructions by that party's numbers as filed.

## II. Discussion

Instructions must inform the jury of the controlling law without misleading or confusing it to the prejudice of either party. "Jury instructions are proper where the jury charge, construed as a whole, adequately states the controlling legal principles without misleading or confusing the jury." *Hicks v. Anne Arundel County*, 110 F.4th 653, 660 (4th Cir. 2024), *quoting Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996). An instruction that misstates the law fails that test; so does one that states a party's theory as though it were the law. The following are instructions SHRM has proposed that violate these principles, as set forth below along with Ms. Torres's proposed alternatives.

### A. *SHRM's framing instructions improperly argue its case* (SHRM Nos. 2, 4, 11-14, 19; Torres Nos. 1, 3-8)

**Description of the case.** SHRM's Instruction No. 2, a case "description" instruction, should not be given. It presents SHRM's defenses as if describing Ms. Torres's claims. It asserts that Ms. Torres sought to bring her dog to work as her "preferred" accommodation; that she "admitted voluntarily being without her dog in various professional and personal settings"; and that SHRM rescinded its job offer to her "only after Ms. Torres refused to engage with it further on alternative accommodations." ECF No. 144 at 3. Each of these improperly injects argument into an instruction.

In particular, the term "preferred" assumes the answer to Counts II and IV (reasonable accommodation under federal and Virginia law). The "admitted" clause draws, at least in part, on evidence that SHRM acquired in this litigation, and which SHRM's decision-maker conceded "did not factor into" the decision. Link Dep. Tr. 194. "Only after" asserts SHRM's causation defense as if it were fact.

Ms. Torres's proposed Instruction No. 8 describes the four claims of her Complaint, the federal and Virginia statutes they invoke, and the logical order in which the jury will need to decide the issues, without argumentative language. Her Nos. 3-7 correct partisan asymmetries in SHRM's general instructions: (i) SHRM gives a corporate-equality instruction, but omits the principles essential to evaluating this case fairly; (ii) lay opinions are not expert opinions (SHRM proposes no instruction on this point); (iii) treating-physician letters and testimony deserve proper consideration, and omitting that instruction unfairly elevates Dr. Cooperman; (iv) neither party must call every possible witness or produce every referenced exhibit; and (v) SHRM has knowledge and motive, and takes action, only through its officers and employees. Ms. Torres's Nos. 3, 5, 6, and 7 fill those gaps. And Plaintiff's No. 4 on Dr. Cooperman's testimony places on the record a citation to the Court's order constraining that testimony, which SHRM's expert witness instruction does not do.

**Service dog in the courtroom.** The second paragraph of SHRM's proposed No. 2, concerning Ms. Torres's service dog, is close to her own proposed No. 1. But Ms. Torres's version adds two important points: the dog's presence is not evidence, and jurors' feelings about dogs—whether positive or negative—should play no part in their verdict. *See Holbrook v. Flynn*, 475 U.S. 560 (1986); *Hill v. Ozmint*, 339 F.3d 187 (4th Cir. 2003); 28 C.F.R. Sec. 35.136(a), (g).

**The corporate party.** SHRM's proposed No. 4 instructs that a corporation is entitled to the same consideration as an individual. Ms. Torres has no quarrel with that premise. However, a corporation has knowledge or motive, or takes action, only through its officers and employees. *United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1159 n.5 (4th Cir. 1986); *Isaac v. N.C. Dep't of Transp.*, 192 F. App'x 197, 199 (4th Cir. 2006). That principle governs SHRM's notice of Ms. Torres's disability and request for accommodation, as well as the

managerial-agent requirement for punitive damages. Ms. Torres's proposed No. 7 accounts for these points, and her language should be used instead of or in combination with SHRM's proposed No. 4.

**Witnesses.** Plaintiff does not object to SHRM's No. 11 in place of her own No. 4, to the extent it observes the limits in the Court's order concerning the testimony of Dr. Cooperman (ECF No. 131). However, the jury will also hear lay opinion, particularly but not only the testimony and letters of Ms. Torres's treating physicians, on which SHRM proposes no instruction at all. Ms. Torres's proposed Nos. 3, 5, and 6 fill that gap. *See* Fed. R. Evid. 701; *Roop v. Desousa*, 660 F. Supp. 3d 377, 496-97, 500-01 (E.D. Va. 2023); *United States v. Fisher*, 484 F.2d 868, 870 (4th Cir. 1973).

**One-way cautions.** Four of SHRM's proposed instructions caution the jury, all in SHRM's favor. No. 12 restates the credibility instruction already agreed upon, *see* Joint Proposed Instruction No. 10 (ECF No. 143), with emphasis on "willful falsehood." No. 13 repeats the bar on sympathy verdicts already agreed to in joint proposed Nos. 3 and 24. SHRM's proposed No. 14, a Fifth Circuit pattern instruction, duplicates the agreed-upon instruction No. 7 on what is not evidence. The most blatant, SHRM's proposed No. 19, names "sympathy for Ms. Torres" as the hazard to be avoided. Together, these proposed instructions caution the jury four times against the plaintiff and not once about the defendant. The Court should therefore reject SHRM's Nos. 12-14 as cumulative, and No. 19 as argumentative (this instruction is further addressed *infra*).

### B. *Burdens must remain where the law places them* (SHRM No. 15; Torres No. 2)

SHRM's proposed No. 15 tells the jury that if the evidence "weighs the same for both sides, or favors SHRM, . . . you must find for SHRM." SHRM Proposed Instructions (ECF No.

144), at 16. In the guise of explaining the preponderance of evidence standard, SHRM unfairly misstates its own burdens of proof.

1. *Undue hardship.* 42 U.S.C. Sec. 12112(b)(5)(A) (employer liable "unless [it] can demonstrate" undue hardship); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002); *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015); Va. Code Sec. 2.2-3905.1(B)(1).

2. *Good-faith efforts* under the Civil Rights Reform Act, 42 U.S.C. § 1981a(a)(3), which exculpate SHRM only "where [SHRM] demonstrates" them.

3. *Good-faith compliance* as a defense to punitive damages. SHRM has the burden to prove its conduct merits this dispensation. *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 545-46 (1999).

4. *Failure to mitigate damages*. This is SHRM's burden to prove as an affirmative defense. *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231 (1982); *Crump v. U.S. Dep't of Navy*, 205 F. Supp. 3d 730, 745 (E.D. Va. 2016).

5. *After-acquired evidence*. If SHRM raises it, depending on the Court's ruling not yet entered on Ms. Torres's motion (ECF No. 110), SHRM "must first establish" the wrongdoing it seeks to use as a defense. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995) (employer).

SHRM's own Nos. 16, 20, and 24 recognize that three of these burdens fall on SHRM under the law. Its proposed No. 15, on overall burden of proof, would tell the jury at the outset that Ms. Torres bears the burden of greater than equal proof. The problem is that, unless instructed otherwise, a jury is likely to assume Ms. Torres bears the burden of proof on every fact question to be decided.

Ms. Torres's No. 2 better states the preponderance standard, under which the parties "share the risk of error in roughly equal fashion." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387-89 (1983). Ms. Torres's later instructions assign the burden on each issue as the law requires for that issue. If the Court prefers SHRM's No. 15, that instruction's last two sentences should be limited to issues on which Ms. Torres bears the burden, with an express statement that SHRM bears the burden on its defenses.

### C. ***SHRM's "disability" instruction applies standards Congress rejected in 2008*** **(SHRM No. 16; Torres No. 10)**

SHRM's No. 16 tells the jury that a major life activity is one "centrally important to everyday life," and that an impairment substantially limits such an activity only if "it prevents or significantly restricts" the person from performing it. SHRM's Proposed Instructions (ECF No. 144), at 18-19. Each phrase comes from a standard that the ADA Amendments Act of 2008 ("ADAAA") explicitly rejected.

The first, with the phrases "centrally important" and "prevents," come from *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197-98 (2002), which recognized ADA protection only for an impairment that "prevents or severely restricts" activities "of central importance to most people's daily lives." Congress rewrote the ADA to repudiate that construction of the statute. Pub. L. No. 110-325, Sec. 2(b)(4), 122 Stat. 3553, 3554 (2008).

The second, "significantly restricts," comes from the EEOC's pre-2008 regulation, which defined "substantially limits" as "significantly restricted." Congress rejected that standard too, and directed the EEOC to revise it. *Id.*, § 2(b)(6). The EEOC did so, with a revised regulation providing as follows: "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. Sec. 1630.2(j)(1)(ii). SHRM's instruction combines both of these rejected standards

into one, even though our Circuit has applied the amended standard for more than a decade. *Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) ("Congress believed that *Toyota* set an 'inappropriately high level of limitation necessary to obtain coverage under the ADA'") (citation to ADAAA omitted); *Jacobs v. N.C. Admin. Off. of the Cts*., 780 F.3d 562, 572 (4th Cir. 2015) (same). Indeed, SHRM cites Jacobs in its own No. 17.

The omissions in SHRM's No. 16 are just as important. The degree of limitation or impairment must be determined "without regard to the ameliorative effects of mitigating measures," including medication and medical equipment. 42 U.S.C. §. 12102(4)(E)(i). SHRM omits that rule, and here it is central: SHRM's theory is that Ms. Torres's continuous glucose monitor ("CGM") and insulin pump adequately manage her diabetes without her service dog. A jury not instructed to measure Ms. Torres's impairments without those devices would have license to find no disability at all if it believes the devices work, the very inference that the ADAAA forbids.

SHRM also omits the endocrine system as a major bodily function, although it is among those listed in 42 U.S.C. § 12102(2)(B); it omits the statute's own directive that its definition of disability be broadly construed, 42 U.S.C. § 12102(4)(A); and its idiosyncratic definition of "physical impairment" appears nowhere in the statute or its enforcing regulations. *See* 29 C.F.R. § 1630.2(h)(1). Indeed, the regulations address diabetes by name: "it should easily be concluded" that diabetes substantially limits endocrine function. 29 C..F.R. § 1630.2(j)(3)(iii).

Unlike SHRM's No. 16, Ms. Torres's proposed No. 10 states the federal standard properly, in accodrdance with those rules, and gives the Virginia definition of disability separately. *See* Va. Code § 51.5-40.1. "An impairment need not prevent, or significantly or

severely restrict, a major life activity in order to substantially limit it." 29 C.F.R. § 1630.**2(j)(1)(ii).**[2]

**D. *Applicants, qualification, and essential functions* (SHRM Nos. 16, 17; Torres Nos. 9, 11)**

*Applicants.* SHRM rescinded its offer before Ms. Torres's first day, and its narrative stresses that she was never an employee. Both statutes protect applicants as well as those already employed. 42 U.S.C. Sec. 12112(b)(5)(B) ("job applicant"); Va. Code Sec. 2.2-3905.1(B)(3) ("applicant"). SHRM proposes no instruction saying this. Ms. Torres's No. 9 does, in two sentences.

*Qualification*. Plaintiff's No. 11 gives the statutory test: whether Ms. Torres met the position's prerequisites and could perform its essential functions with or without reasonable accommodation. 42 U.S.C. Sec. 12111(8); Va. Code Sec. 51.5-41(A); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212-14 (4th Cir. 1994). SHRM's No. 17 adds a gloss that turns the interactive process into a test of the applicant's qualification. The unfairness of that gloss is addressed *infra*.

*Essential functions*. SHRM's No. 16 defines essential functions as duties that "bear more than a marginal relationship to the job at issue." ECF No. 144 at 19. The phrase is Fourth Circuit language, though taken out of context. *See Tyndall*, 31 F.3d at 213. However, the proposed instruction neglects to mention the pertinent ADA regulation, which defines essential functions as the "fundamental job duties" of the position. 29 C.F.R. § 1630.2(n)(1) ("fundamental job duties"), (n)(3) (listing seven non-exhaustive categories), *cited in Elledge v. Lowe's Home Ctrs.*,

---

[2] Ms. Torres suggests that her own No. 10, as given, should replace the clause "that is, it significantly restricts an important activity or the normal working of a body system, compared with most people," with the regulation's words: "compared with most people in the general population."

*LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020). *Elledge* then explains that a written job description is relevant but not dispositive, and that the inquiry "must consult the full range of evidence bearing on the employer's judgment." *Id.* The isolated phrase "more than marginal" alone gives a jury little to apply. Ms. Torres's No. 11 supplies the regulation's definition and its factors. 29 C.F.R. Sec. 1630.2(n)(2)-(3).

**E. *SHRM had a choice only among accommodations that would be effective* (SHRM No. 16; Torres Nos. 12, 17-19, 26-28)**

The parties agree that an employer need not provide the particular accommodation an applicant requests. They disagree about the limit on that rule, which SHRM's instruction omits. The employer has discretion to choose only among accommodations that are effective. The employer "has the ultimate discretion to choose between *effective* accommodations." 29 C.F.R. § 1630.9 (emphasis added). An effective accommodation is one that addresses "the job-related difficulties presented by the employee's disability." *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021); *Reyazuddin*, 789 F.3d at 415-16; *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F. Supp. 720, 736-37 (D. Md. 1996); *Fleetwood v. Harford Sys. Inc*., 380 F. Supp. 2d 688, 701 (D. Md. 2005). It must address the individual's limitation, not the diagnosis. *Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, 141 F.4th 568, 574-75 (4th Cir. 2025). And it is measured against the person who needs it, not against what suffices for most people with the same condition. J.*D. by Doherty v. Colonial Williamsburg Found*., 925 F.3d 663, 673 (4th Cir. 2019).

Ms. Torres's limitation is specific. It is the risk that a sudden, dangerous drop in her blood sugar will go undetected until it is too late for her to respond, including when her CGM is delayed, inaccurate, or not working. The question for the jury is whether SHRM's four alternatives (use of the CGM, breaks, leave, and food and her pump at her desk) met that need without the service dog. None of SHRM's four alternatives is effective when the CGM fails.

SHRM's own expert acknowledged that blood glucose can fall from normal to dangerous levels in less than 15 minutes; that readings from Ms. Torres's CGM can lag that long behind the actual drop; that CGMs cannot be relied on during warm-up periods; and that sensors detach from their users' bodies and lose their function "a fair amount of the time." Cooperman Dep. Tr. 97:6-99:6, 105:22-106:21, 108:5-109:11. SHRM did not ask Ms. Torres about the CGM limitations she described to SHRM during the interactive process. SHRM Rule 30(b)(6) Dep. (Link) Tr. 95:2-13. Asked what SHRM did to determine whether its alternatives would address that concern, its designee described only what he saw as inconsistencies in her account. *Id.* at 97:18-99:4.

SHRM's proposed No. 16 never poses this question. It tells the jury only that an applicant "is not entitled to their preferred accommodation" if the employer offers one "that would allow them to perform the essential functions of the position," and that if Ms. Torres refused such an accommodation, her claim fails. SHRM's Proposed Instructions (ECF No. 144) at 19-20. "Preferred" gives the impression that a medical request, supported by Ms. Torres's treating endocrinologist, is nothing more than a matter of taste. And "perform the essential functions" omits the second purpose of an accommodation: equal access to the benefits and privileges of employment. 29 C.F.R. Sec. 1630.2(o)(1)(iii); *Reyazuddin*, 789 F.3d at 415 (accommodation "should provide a meaningful equal employment opportunity"). An applicant who can perform her duties only at the unaccommodated risk of losing consciousness at her desk has not been given that opportunity.

SHRM's own authorities bear out this important constraint. In *Elledge*, the employee refused even to try a motorized scooter that, as no one disputed, addressed his mobility limitation; the court called it "eminently reasonable" and held that the employer needed to offer nothing more. *Elledge*, 979 F.3d at 1012. *Elledge* states the rule in its limited form, giving the

employer discretion among accommodations "[p]rovided the employer's choice of accommodation is 'reasonable.'" *Id.* Likewise, *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158 (4th Cir. 2024), involved refusal of an accommodation directed to the employee's limitation. And *Tarquinio*, which SHRM cites first in its proposed No. 16, measures an accommodation against the limitation as an essential part of its reasonableness. *Id.*, 41 F.4th at 574-75. Here, effectiveness is precisely the question the jury must decide, and must not be pretermitted by a leading instruction.

SHRM's No. 16 then states SHRM's case. It recites SHRM's version of its offer, including that SHRM "highlighted its unlimited paid time off program" and "was open to other accommodations Ms. Torres proposed," and concludes: "If you agree with SHRM, Ms. Torres' claims fail." ECF No. 144 at 20. At best, that is closing argument; indeed, for SHRM to characterize itself as "open" misstates the evidence. In any event, the proposed language omits the effectiveness element entirely and should be rejected for that reason first of all.

Ms. Torres's proposed Nos. 18 and 19 ask the relevant questions in proper order: first, whether the service dog addressed her limitation, *Barnett*, 535 U.S. at 401-02; *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012), and second, whether SHRM's alternatives met the same need, "including at times when her continuous glucose monitor was delayed, inaccurate, or not working." The legally required test is whether the accommodations "would actually have worked -- not whether SHRM believed in good faith that they were good enough." The court of appeals in *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993), put the matter succinctly: "An employer, to meet its burden under the [Rehabilitation] Act, may not merely speculate that a suggested accommodation is not feasible"). On her counterpart Virginia claims, Ms. Torres's proposed Nos. 27 and 28 properly apply the VHRA's

"necessary to assist" standard, Va. Code Sec. 2.2-3905.1(B)(1), omitted from SHRM's instructions.

**F. *The interactive process: a means to an accommodation under the ADA, and an employer's statutory duty under the VHRA* (SHRM Nos. 16, 17; Torres Nos. 20, 29)**

As the Court has already stated, the interactive process will be a central issue at trial. The instructions on it must state both the federal and Virginia statutory standards accurately, but SHRM's proposed instructions do neither.

*The ADA.* SHRM's No. 16 provides: "If you find that Ms. Torres did not engage in or caused a breakdown in the interactive process with SHRM, then you cannot find for Ms. Torres." SHRM's Proposed Instructions (ECF No. 144), at 19. This sentence would apply whether or not Ms. Torres's request was reasonable, and whether or not SHRM's alternatives would have been effective. That is not the law. Under the ADA, the interactive process is a means of finding an accommodation, not an end in itself. An employer that fails to engage in good faith "violates the ADA so long as a reasonable accommodation was possible." *Tarquinio*, 141 F.4th at 574. This principle must be the case given its established converse, namely that an employer is not liable for a deficient process if no reasonable accommodation existed. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013). Ms. Torres agrees that if multiple effective accommodations exist, the employer has discretion to choose among them—but if none but her requested accommodation is effective, then the employer must provide it unless it meets its burden to prove undue hardship.

Whether either party was responsible for an interactive process breakdown depends on the merits of that party's position. *See Jacobs*, 780 F.3d at 581; *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). SHRM's own authority, *Haneke v. Mid-Atlantic*

*Capital Mgt.*, 131 F. App'x 399 (4th Cir. 2005) (unpublished), reversed summary judgment for the employer because of a genuine dispute "as to whether both parties met their respective burdens of engaging in the interactive process in good faith, and whether that caused a failure to accommodate." Id. at 400. However, under the ADA the interactive process is not an end in itself; it is a means to an end. *See Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019) (approving a jury instruction that "[n]either party can win this case solely because the other did not cooperate in that process in the way that the party believed appropriate, but you may consider whether a party cooperated in that process when deciding whether a reasonable accommodation existed.").

SHRM's No. 17 attempts the same manipulation in its proposed "qualified person" instruction, which would tell the jury that "[i]mplicit in the definition of a 'qualified individual' is an obligation to engage in a good faith, collaborative search for a reasonable accommodation," and that if Ms. Torres "did not do so, and/or rejected a reasonable accommodation, she cannot be considered a 'qualified individual.'" SHRM's Proposed Instructions (ECF No. 144), at 22. Yet The case SHRM cites describes "a reciprocal obligation between the employee and employer." *Hall Haggins v. Wilson Air Ctr., LLC*, 163 F.4th 872, 877-78 (4th Cir. 2026). SHRM's paraphrase drops the reciprocity and assigns the obligation to Ms. Torres alone.

The regulation SHRM cites does not support No. 17's second clause either. Rejection of an accommodation disqualifies someone only if the accommodation was "necessary to enable the individual to perform the essential functions of the position" and only if, "as a result of that rejection," she cannot perform those functions. 29 C.F.R. § 1630.9(d). SHRM's "and/or rejected a reasonable accommodation" phrasing omits both conditions and would decide Count I—without essential parameters—on the separate question posed in Count II.

The record makes this point concrete. SHRM's alternatives came "through counsel," *see* Belyna Dep. Tr. 207-08, 244, and its self-described decision-maker, Mr. Link, did all of the work "in collaboration and cooperation with internal and external counsel." Link Dep. Tr. 74. Ms. Torres's proposed No. 20 gives this determination to the jury, with the correct caution that one party's belief that the other was uncooperative "does not make it so."

*The VHRA.* Virginia law goes further than the ADA on interactive process, in the opposite direction from SHRM's instruction. The VHRA makes it an unlawful discriminatory practice for an employer "to fail to engage in a timely, good faith interactive process with an employee who has requested an accommodation," to determine whether the request is reasonable and, if it is not, to "discuss alternative accommodations that may be provided." Va. Code § 2.2-3905.1(B)(5). Critically for jury instruction purposes, the statutory duty runs to the employer only. The statute imposes no counterpart duty on the person requesting the accommodation, and it makes the employer's failure an independent violation, whether or not the jury also finds a failure to accommodate. Federal law has no such provision.

Yet SHRM's No. 16 declares the ADA and VHRA elements "the same," *see* SHRM's Proposed Instructions (ECF No. 144), at 18, and then applies the interactive process provision only against Ms. Torres. As applied to Count IV, that turns the VHRA on its head. Ms. Torres's proposed No. 29, by contrast, states the Virginia duty in the statute's express terms, and properly asks the jury to determine whether SHRM met it.

### G. *No undue-hardship instruction should be given without evidence of actual hardship* (SHRM No. 20; Torres Nos. 21, 30)

The parties agree that SHRM bears the burden of proving undue hardship (although SHRM's proposed instructions tend to obfuscate this, as described *supra*). The threshold question is whether, given the evidence, the jury should be instructed on the defense at all.

SHRM pleaded undue hardship as its sixth affirmative defense. Answer (ECF No. 8), at 19. As SHRM's Rule 30(b)(6) designee, Mr. Link identified two facts ostensibly supporting this defense: this was SHRM's first service-dog request, and going through the process was itself a hardship. He testified to no other "hardship," let alone on that was "undue." SHRM Rule 30(b)(6) Dep. (Link) Tr. 54:15-55:8. SHRM did no deeper analysis; Mr. Link did not know what the impact of Ms. Torres's request would be; and even the prospect of having to assess the service dog's effect on the workplace did not figure in his decision. *Id.* Asked whether there was any reason SHRM could not accommodate the request, he answered "No," and admitted that had the request been reasonable in his view, SHRM "absolutely" could have accommodated it. *Id.* at 85:12-21. Moreover, Mr. Link testified individually that he was not "at all concerned" that the dog would disrupt operations, impose costs, or affect other employees, Link Dep. Tr. 195-96; he conducted no analysis of the workspace, *id*. at 207; and he was instructed not to answer whether any facility issue had been raised or any employee consulted. *Id.* at 98-102. These considerations, if worthy of that name, are not undue hardship. Even examined in a light most favorable to SHRM, they amount to nothing more than unfamiliarity.

An instruction on a hardship defense unsupported by the evidence invites the jury to find a hardship that SHRM's own designee disclaimed. And a corporation that answers a Rule 30(b)(6) topic through its designee may not offer at trial facts different from those it could have

given at its corporate deposition. *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); Fed. R. Civ. P. 37(c)(1); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003). The Court should decline to instruct on undue hardship unless at trial SHRM produces admissible evidence of actual, individualized hardship—an unlikely event given the preclusive effect of its own prior corporate testimony.

However, if an instruction is given, it should be Ms. Torres's. SHRM's No. 20 never defines undue hardship, which the statute says is "an action requiring significant difficulty or expense." 42 U.S.C. Sec. 12111(10)(A). Moreover, SHRM's No. 20 blurs the ADA's distinction between the resources of the facility and those of the covered entity. *Compare* ECF No. 144 at 27 *with* 42 U.S.C. Sec. 12111(10)(B)(ii)-(iii). It states no consequence, and ties the defense to no claim. Above all, it does not acknowledge the core requirement that the hardship be real. The employer must show "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances," *Barnett*, 535 U.S. at 402; *Reyazuddin*, 789 F.3d at 414; *Buckingham*, 998 F.2d 735, 740 (cautioning against "speculat[ion]"). Ms. Torres's proposed No. 21 states this precept succinctly: the difficulty or expense must be one "that would actually arise."

Furthermore, SHRM's instruction applies only the federal factors, and ignores those of the VHRA. The Virginia statute prescribes its own factors, including the possibility that the accommodation may serve other prospective employees as well as the availability of outside

funding or technical assistance in making any workplace adjustments. Va. Code § 2.2-3905.1(B)(1)(a)-(e). Ms. Torres's proposed No. 30 states the VHRA's parameters explicitly.[3]

**H. *Good-faith efforts limit damages, and are not a defense to liability* (SHRM No. 16; Plaintiff's No. 33)**

SHRM's No. 16 ends with what it calls SHRM's "affirmative defense": if SHRM proves that it "made good faith efforts to identify and make a reasonable accommodation," then "you have found that SHRM established its affirmative defense." SHRM's Proposed Instructions (ECF No. 144), at 20-21. This paragraph occurs within the instruction's liability language, and does not say what the good-faith defense defeats. A jury will likely construe this language to defeat the claim entirely, unless it is clearly instructed otherwise.

SHRM's No. 16 fails to do this. The provision on which the paragraph rests, 42 U.S.C. § 1981a(a)(3), limits only remedies:

> In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to [42 U.S.C. Sec. 12112(b)(5)] . . . , damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

The statutory bar reaches compensatory and punitive damages "under this section." It leaves liability untouched, and with it back pay and other equitable relief under 42 U.S.C. § 2000e-5(g)(1), the source provision for the ADA's damages provisions. And it does not extend to damages under the VHRA, which Virginia law alone governs. Va. Code § 2.2-3908(B).

---

[3] Note that because Ms. Torres's proposed Nos. 14 and 24 refer the jury to her Nos. 21 and 30 for the defense to the need-to-accommodate theory, the first sentence of her No. 21 should refer to Counts I and II, and the first sentence of No. 30 should refer to Counts III and IV.

SHRM's paraphrase also drops the ADA's conditions even on damages. The "good faith efforts" in question must be made "in consultation with" the applicant, and the accommodation sought must provide her "an equally effective opportunity." Those conditions restate, in the remedial context, the effectiveness requirement that SHRM has also omitted from its liability instruction. See discussion *supra*. If the evidence supports submitting the defense to the jury in the first place, such an instruction belongs among the damages instructions, as a separate question on the verdict form, limited to the federal claims and stated in the statute's terms, with the burden on SHRM.

**I. *SHRM's discrimination instructions omit the need-to-accommodate basis for liability, invite use of an incorrect sole-cause standard, and ask the jury to defer to reasons that SHRM withheld***
**(SHRM Nos. 17, 19; Plaintiff's Nos. 13-16)**

*The need-to-accommodate theory.* The ADA defines discrimination to include "denying employment opportunities to a job applicant . . . if such denial is based on the need of such covered entity to make reasonable accommodation." 42 U.S.C. Sec. 12112(b)(5)(B). The VHRA contains the same prohibition. Va. Code § 2.2-3905.1(B)(3). SHRM's instructions mention neither one. *See Tyndall*, 31 F.3d at 214-15; *Fleetwood*, 380 F. Supp. 2d at 703; *Jordan v. Sch. Bd. of Norfolk*, 640 F. Supp. 3d 431, 444-45 (E.D. Va. 2022); *Billesdon v. Wells Fargo Sec.*, No. 25-1495 (4th Cir. Aug. 21, 2026).

SHRM's omission is not a technicality, but is central to the problem. SHRM's No. 17 gives three reasons for the rescission of its job offer to Ms. Torres: that she "refused to engage with SHRM further in the interactive process," that she "refused to take the position with the alternative accommodations offered by SHRM," and that "the business needed to fill the role." SHRM's Proposed Instructions (ECF No. 144), at 22. Proposed No. 17 then tells the jury that SHRM may rescind "for any other reason, good or bad, fair or unfair." *Id.* at 23.

Two of SHRM's three reasons concern the underlying accommodation. Under Section 12112(b)(5)(B), a decision driven by the need to accommodate is not "any other reason," but is itself the statutory violation. Ms. Torres's proposed No. 13 tells the jury that Count I of her Complaint may be proven in either of two ways, and her Nos. 14 and 15 state the elements of each. Her No. 24 gives the Virginia counterpart of these instructions.

*Causation.* The parties agree that Count I requires "but-for" causation. *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235-36 (4th Cir. 2016); *Kelly v. Town of Abingdon*, 90 F.4th 158, 170 (4th Cir. 2024). SHRM's No. 17 omits the rest of the rule: a decision may have more than one but-for cause, and disability need not be the only cause. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020). Paired with the phrase "any other reason," SHRM's version invites the jury to find for SHRM upon finding that any lawful reason at all was even a small contributing factor. Ms. Torres's proposed Nos. 14 and 15, by contrast, state the complete rule.

*Pretext.* SHRM's Nos. 17 and 18 tell the jury that "[i]f you believe SHRM's reasons," it "must not second guess that decision." SHRM'S Proposed Instructions (ECF No. 144), at 23, 24. Neither instruction says what the jury may do if it does not believe SHRM's "reasons." The settled law here is that the jury may infer discrimination from the falseness of the employer's proffered explanation, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993), or from shifting explanations. *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001). *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024), which SHRM cites, applies that framework to the ADA. Ms. Torres's proposed No. 16 states it, with the burden properly announced to rest with Ms. Torres. SHRM proposes no pretext instruction at all.

*Business judgment.* SHRM's No. 19 restates the business-judgment principle. SHRM's own authorities show how the principle is intended to function: to guide the factfinder's inquiry into motive. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998), describes what courts do in this regard at summary judgment. *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999), as SHRM quotes it, says, "The single issue for the trier of fact is whether the employer's [decision] was motivated by discrimination." SHRM's Proposed Instructions (ECF No. 144), at 26. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n.6 (1st Cir. 1979), as SHRM quotes it, says "the relevant question is simply whether the given reason was a pretext for illegal discrimination." *Id.* According to SHRM's own authorities, then, the instruction belongs only together with a pretext instruction, and only on the claims that turn on motive.

From these precedents, two limits on the use of SHRM's proposals follow. First, any business-judgment language, since it address motive, must be confined to Counts I and III of Ms. Torres's Complaint. A failure to accommodate, the subject of Counts II and IV, requires no proof of intent. *Perdue v. Sanofi-Aventis U.S.*, LLC, 999 F.3d 954, 959 (4th Cir. 2021). Whether SHRM's alternatives addressed Ms. Torres's limitation is a question of fact, on which complete or matter-of-law deference to SHRM's judgment is wholly improper. An unlimited instruction that SHRM's business judgment "is not on trial" would tell the jurors to defer to SHRM on the very question that Counts II and IV ask them to determine. Second, any business-judgment language, to make logical sense under the statutory standards, must be paired with Ms. Torres's No. 16, her proposed ADA pretext instruction, and Nos. 23 and 25, her VHTA pretext instruction.

The record gives one additional reason for caution here. SHRM's decision-maker, Mr. Link, testified that he "did no independent work," and that he never developed his own understanding of the reasons for denying the accommodation. Link Indiv. Dep. Tr. 70, 74, 170. SHRM withheld its reasons on grounds of attorney-client privilege, both at deposition and in its answer to the interrogatory seeking the factual basis for its defenses. *See* Pl.'s Mem. In Support of Motion to Compel (ECF No. 45), at 1-3. An instruction to defer to SHRM's "reasons" would require blind deference to a judgment that SHRM has obdurately declined to explain.

J. ***The VHRA is a separate statute with separate standards* (SHRM Nos. 16, 18; Plaintiff's Nos. 22-30)**

SHRM's proposed No. 16 tells the jury that "[t]he elements for proving a claim [are] the same under both the ADA and the VHRA." SHRM's Proposed Instructions (ECF No. 144), at 18. For the accommodation claims, that is incorrect in four respects, each addressed above: the VHRA's "necessary to assist" standard, Va. Code § 2.2-3905.1(B)(1): its separate statutory duty on the employer to engage in the interactive process, id. Sec. 2.2-3905.1(B)(5); its own undue-hardship factors, Va. Code § 2.2-3905.1(B)(1)(a)-(e); and its own definition of disability, Va. Code § 51.5-40.1. Ms. Torres's proposed Nos. 26-30 state each one of these elements.

For Ms. Torres's discrimination claims, the difference between ADA and VHRA standards is causation. SHRM's No. 18 concedes the VHRA's governing standard: Ms. Torres "must prove that her alleged disability was a motivating factor in SHRM's decision." SHRM's Proposed Instructions (ECF No. 144), at 24; *see* Va. Code Sec. 2.2-3905(B)(6); *Mirshahi v. Patient First Richmond Med. Grp., LLC*, No. 3:23CV00495, 2025 WL 1551504, at *13 (E.D. Va. May 30, 2025). But SHRM's No. 18 never defines "motivating factor." And its final paragraph, imported verbatim from SHRM's ADA instruction, tells the jury that if it finds "the decision was not made because of Ms. Torres' alleged disability," it must not second-guess

SHRM. ECF No. 144 at 24. That is the but-for standard, restored via the back door. A jury that is given both standards in one instruction is likely to apply the more demanding one. Failure to give the more permissive motivating-factor instruction where the evidence warrants it is reversible error. *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 192-93 & n.3 (4th Cir. 2003) (Title VII). Under that test, a plaintiff need only show that the employer "was motivated to take the adverse employment action by both permissible and forbidden reasons." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*).

Ms. Torres's proposed No. 22 explains the difference in plain terms: disability need be only one of the reasons, "even if other reasons were equally or more important." Her Nos. 23-25 put that question to the jury, state the VHRA's need-to-accommodate provision that SHRM unfairly omits, Va. Code Sec. 2.2-3905.1(B)(3), and correctly apply the pretext instruction to Count III.

Finally, SHRM's instructions apply federal remedial rules to Ms. Torres's Virginia claims. As stated *supra,* the good-faith limitation of Section 1981a(a)(3) does not govern VHRA damages, and SHRM cites no authority for applying the *Kolstad* defense to them.

**K. *SHRM's damages instructions misstate the law on emotional distress, nominal damages, and punitive damages***
**(SHRM Nos. 22-24; Plaintiff's Nos. 31-39)**

*Speculation*. SHRM's No. 22 tells the jury that if Ms. Torres is not entitled to damages, "you must enter judgment in SHRM's favor." ECF No. 144 at 29. That conflates damages with liability. A plaintiff who proves a violation but no actual damages recovers nominal damages. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001). SHRM's own cited authority, *Price v. City of Charlotte,* 93 F.3d 1241, 1250-51 (4th Cir.

1996), did exactly that when it found the plaintiff's evidence of emotional distress insufficient. *Id.* Ms. Torres's No. 36 so instructs. The balance of SHRM's No. 22 is of no consequence, because ot repeats the agreed damages instruction and SHRM's No. 23.

*Emotional distress* (SHRM No. 23; Plaintiff's No. 31). SHRM's No. 23 tells the jury that Ms. Torres's "testimony, standing alone, cannot support such an award." ECF No. 144 at 30. SHRM's own authority holds the opposite: "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress," provided it shows demonstrable distress and is sufficiently articulated. *Price*, 93 F.3d at 1254 ("we do not hold that a plaintiff's testimony standing alone is insufficient as a matter of law to support an award of compensatory damages."). SHRM's instruction keeps *Price*'s qualification but reverses its rule.

SHRM's No. 23 then tells the jury that "mere mental pain and anxiety are too vague for legal remedies" and that emotional distress is "plagued by vagueness and speculation and easily susceptible to fictitious and trivial claims." ECF No. 144 at 30. That language is *Price*'s account of the common law's historical reluctance, 93 F.3d at 1250-51, on appellate review of a verdict, but is not an absolute rule and must not be stated as such in an instruction. *See also Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 546-47 (4th Cir. 2003); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653 (4th Cir. 2002). Read to a jury before deliberation, it tells jurors to approach Ms. Torres's testimony with suspicion—the opposite of the open minds this Court should admonish them to maintain. Ms. Torres's proposed No. 31 states the measure of damages, causation, future harm, and the bar on speculation and sympathy, without disparaging the claim.

*Wages*. SHRM tells the jury it "should not consider any wages" and proposes nothing on back pay, front pay, or mitigation. ECF No. 144 at 30. Plaintiff's Nos. 32-35 address those

remedies, with the burden properly placed on SHRM to show failure to mitigate. 42 U.S.C. §12117(a); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846-52 (2001); *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 460 (4th Cir. 2011).

*Punitive damages (*SHRM No. 24; Plaintiff's Nos. 37, 38). SHRM's No. 24 lets SHRM avoid punitive damages if it proves a good-faith attempt to comply "by adopting policies and procedures designed to prevent unlawful discrimination." ECF No. 144 at 32. *Kolstad,* which SHRM cites, requires good-faith efforts to comply with the law, not the adoption of a policy. 527 U.S. at 545-46. Our Circuit has upheld punitive damages where an employer failed to make good-faith efforts to *implement* its ADA policy. *EEOC v. Fed. Express Corp*., 513 F.3d 360, 372-74 (4th Cir. 2008) (emphasis added). SHRM's instruction also improperly applies the federal defense to the Virginia claims, which are goverened not by the ADA but by Va. Code Sec. 2.2-3908(B) and Sec. 8.01-38.1. The same proposed instruction refers to "managers or leaders" rather than managerial agents acting within the scope of employment, as in *Kolstad*, 527 U.S. at 545; and it gives the jury no guidance on amount. Ms. Torres's Nos. 37 and 38 treat the federal and Virginia claims separately, state the factors that bear on amount, and include the Virginia rule that compensatory damages are a predicate for punitive damages. *Gasque v. Mooers Motor Car Co*., 227 Va. 154, 159, 313 S.E.2d 384, 388 (1984).

*After-acquired evidence* (Plaintiff's No. 39). If SHRM is ultimately permitted to introduce after-acquired evidence, the jury must be told that such evidence bears only on remedy, not on liability. *McKennon*, 513 U.S. at 356-63; *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1240-41 (4th Cir. 1995); *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 904 (E.D. Va. 2000). SHRM proposes no such limiting instruction.

## III. Conclusion

The jury must decide whether Ms. Torres has a disability under each statute; whether her requested accommodation addressed her limitation; whether SHRM's alternatives did so; whether SHRM fulfilled its statutory duty to engage in an interactive process under Virginia law; which party bears responsibility for any breakdown in the process; whether SHRM can prove actual hardship; and why SHRM rescinded its offer. SHRM's instructions would answer several of those questions before the jury ever reached them. Ms. Torres's instructions put each question to the jury, with the governing standard and the burden attached.

Accordingly, Ms. Torres respectfully requests that the Court handle the parties' proposed instructions as follows:

1. Decline SHRM's Instructions Nos. 2, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, and 24, and give in their place Ms. Torres's Instructions Nos. 1-2 and 8-39, as set out in Table 1;

2. Give SHRM's No. 4 only if combined with Ms. Torres's No. 7, and give SHRM's No. 11 in place of Ms. Torres's No. 4 if given together with her Nos. 3, 5, and 6;

3. Decline SHRM's No. 20 unless SHRM produces evidence of actual, individualized hardship at trial, and in that event give Ms. Torres's Nos. 21 and 30 instead;

4. Submit any defense under 42 U.S.C. § 1981a(a)(3) only with the damages instructions, as a separate verdict-form question limited to the federal claims; and

5. Accept the conforming changes to Plaintiff's Nos. 10, 11, 21, and 30 described in the footnotes to this memorandum.

Respectfully submitted,

Stephen B. Pershing
Virginia Bar No. 31012
Mary E. Kuntz
Virginia Bar No. 76947
Anna Kathryn B. Barry
D.C. Bar No. 1719493
(Admitted *pro hac vice*)
Thomas O. Walker II
Alabama Bar No. 4064E32W
(Admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
akbarry@kcnlaw.com
twalker@kcnlaw.com

*Attorneys for Plaintiff*

Dated: October 1, 2026

^ ^ ^

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October, 2026, a copy of the foregoing was filed with the Court's case management / electronic case filing ("CM/ECF") system, through which it was transmitted on counsel of record for defendant Society for Human Resource Management as follows:

Lauren M. Bridenbaugh
Leslie P. Currie
Tanja L. Darrow (admitted *pro hac vice)*
Tiffany din Fagel Tse
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lbridenbaugh@littler.com
lcurrie@littler.com
tdarrow@littler.com
ttse@littler.com

Stephen B. Pershing