**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| FIONA TORRES,<br><br>Plaintiff,<br><br>v.<br><br>SOCIETY FOR HUMAN RESOURCE MANAGEMENT,<br><br>Defendant. | Civil Action No. 1:25-cv-2360-PTG-WBP<br><br>Hon. Patricia Tolliver Giles, J.<br>Hon. William B. Porter, M.J. |

# PLAINTIFF'S SECOND REVISED PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's oral order of October 6, 2026, plaintiff Fiona Torres hereby submits her second revised proposed jury instructions. These contain changes and consolidations from the set of revised proposed instructions she submitted on October 6, 2026 (ECF No. 165), which in turn were reshaped at the Court's direction from those originally submitted on October 2, 2026 (ECF No. 141).

In this second revised set, instruction numbers are changed from Ms. Torres's earlier submission (ECF No. 165) so that they are numbered consecutively in this re-submission. In this set, no instruction text refers to another instruction by number, or to another count's instructions, and each count defines every term used in its elements of proof. The ADA claims (Counts I and II) track the federal statutory text, and the VHRA claims (Counts III and IV) track Va. Code § 51.5-40.1 and § 51.5-41(A). Comparative sentences contrasting one count with another (e.g., "not the same as the but-for standard that governs Count I") have been removed. Former No. 8, which was an overview of all four counts, has been deleted.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 4 — Opinion testimony (consolidated from plaintiff's former proposed instructions Nos. 4 and 5)**

You have heard one or more witnesses give opinions on matters requiring specialized knowledge. You should judge that testimony like any other testimony. You may accept or reject it, in whole or in part, and give it as much weight as you think it deserves.

In deciding what weight to give a witness's opinion, you may consider the reasons given for it; the facts or information on which it is based; the care and accuracy with which the witness evaluated those facts; whether the opinion is consistent with the other evidence; the witness's familiarity with the facts; and the witness's education, training, and experience. An opinion is no more reliable than the facts it assumes. If you find that a fact on which a witness relied was not proven, you may disregard the opinion to the extent it depends on that fact.

Where an opinion conflicts with other testimony about the facts, you decide what weight to give each.

You must apply the law as I instruct you. A witness's view of what the law requires is not evidence.

**Authority:** Fed. R. Evid. 702; Court's Order on Motion to Exclude Expert Testimony, Sept. 24, 2026 (ECF No. 131); *Roop v. Desousa*, 660 F. Supp. 3d 477, 496-97, 500-01 (E.D. Va. 2023) (treating physician may testify as lay witness); *Ngo v. Standard Tools & Equipment, Co. Inc.*, 197 F.R.D. 263, 265-66 (D. Md. 2000).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 7 — A Corporation as a Party; Acting Through Its Agents**

SHRM is a professional association. That fact does not mean it is entitled to any greater or lesser consideration by you. All litigants are equal before the law.

It is also true that an association or other entity can act only through its officers and employees. Any act or omission of an officer or employee of SHRM, within the scope of that person's employment or authority, is by law the act or omission of SHRM. Knowledge possessed by an officer or employee acting within the scope of employment is likewise attributed to SHRM.

**Authority:** Eleventh Circuit Pattern Civil Instruction 2.2 (2020) (corporate entities; litigants equal before the law); Restatement (Third) of Agency § 5.03; 42 U.S.C. § 12111(5)(A) (ADA regarding agents); § 2.2-3905.1(A) (VHRA regarding agents) ("any person, or agent of such person"); *United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1159 n.5 (4th Cir. 1986); *Isaac v. N.C. Dep't of Transp.*, 192 F. App'x 197, 199 (4th Cir. 2006).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 8 — Applicants Treated the Same as Employees**

Ms. Torres was an applicant for a job at SHRM, not an employee. The ADA and the VHRA protect job applicants as well as employees.

**Authority:** 42 U.S.C. § 12111(8) (a "qualified individual" is one who "holds or desires" the position); 42 U.S.C. § 12112(a) ("job application procedures" and "hiring"); 42 U.S.C. § 12112(b)(5)(A)–(B) ("job applicant"); Va. Code § 2.2-3905(B)(1)(a) ("fail or refuse to hire"); Va. Code § 2.2-3905.1(B)(1) ("otherwise qualified person with a disability"), (B)(3) ("otherwise qualified applicant"); Va. Code § 2.2-3905.1(A) (adopting definitions of § 51.5-40.1); Va. Code § 51.5-40.1 ("person with a disability"; "physical impairment"); *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 396 (W.D. Va. 2023) (VHRA "disability" analyzed under ADA standards).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 9 — Count I: Elements**

Count I is Ms. Torres's claim that SHRM discriminated against her in violation of the ADA when it rescinded its job offer.

Ms. Torres may prove Count I in either of two ways (she need not prove both):

(a) *Disability.* That SHRM rescinded the offer because of her disability — her type 1 diabetes itself; or

(b) *Need to accommodate.* That SHRM rescinded the offer because it would have to accommodate her disability by allowing her service dog at work.

Under either way of proving Count I, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability, as these instructions define that term:

(2) she was qualified for the position SHRM offered her, as these instructions define that term;

(3) SHRM rescinded its job offer; and

(4) her disability, or SHRM's need to accommodate her disability, was a "but-for" cause of SHRM's decision to rescind the offer, as these instructions define that term.

Count I is about why SHRM rescinded its offer. It does not ask whether SHRM provided a reasonable accommodation; that is the question in Count II.

**Authority:** 42 U.S.C. § 12112(a), (b)(5)(B); *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (discrimination elements); *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021) (a discrimination claim turns on the employer's motive, unlike failure to accommodate); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 214–15 (4th Cir.

1994) (claim that employer acted to avoid accommodating falls under § 12112(b)(5)(B)); *Billesdon v. Wells Fargo Sec., LLC*, No. 25-1495, slip op. at 11–12 & n.5 (4th Cir. Aug. 21, 2026) (holding that § 12112(b)(5)(B) is a distinct theory, with a motive element; a jury verdict cannot rest on it unless the jury was asked to make a finding on it).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 10 — Count I: Causation (But-For)**

On Count I, Ms. Torres must prove that her disability, or SHRM's need to accommodate her disability, was a "but-for" cause of SHRM's decision to rescind its job offer.

a. *Disability.* Ms. Torres's disability was a but-for cause of the decision if SHRM would not have rescinded the offer had she not had type 1 diabetes.

b. *Need to accommodate.* SHRM's need to accommodate Ms. Torres was a but-for cause of the decision if SHRM would not have rescinded the offer had Ms. Torres not needed her service dog at work.

A but-for cause need not be SHRM's only reason, or even its main reason. A decision can have more than one but-for cause. If other reasons also contributed to SHRM's decision, Ms. Torres may still prevail, as long as SHRM would not have rescinded the offer without her disability, or without her need for accommodation. But if SHRM would have rescinded the offer anyway, for a reason unrelated to her disability and her need for accommodation, Ms. Torres has not proven this element.

**Authority:** 42 U.S.C. § 12112(a), (b)(5)(B); *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016) (ADA discrimination claims require but-for causation); *Kelly v. Town of Abingdon*, 90 F.4th 158, 170 (4th Cir. 2024) (same); *Perdue*, 999 F.3d at 962 n.5 (same); *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020) (a decision may have more than one but-for cause); *Billesdon*, slip op. at 11–12, 24; *Tyndall*, 31 F.3d at 214–15 (denial "based on the need" to accommodate turns on whether the employer acted to avoid accommodating); *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 703 (D. Md. 2005); *Jordan v. Sch. Bd. of Norfolk*, 640 F. Supp. 3d 431, 444–45 (E.D. Va. 2022); *Davis v. W.*

*Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017) (unpublished); *cf. EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015) (Title VII refusal to hire to avoid accommodating) (holding that motive and knowledge are separate concepts).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 11 — Count I: Pretext and Circumstantial Evidence**

In deciding why SHRM rescinded its job offer to Ms. Torres, you may consider whether the reasons SHRM has given for rescinding were the real reasons or are a pretext — an excuse to cover up discrimination. If you do not believe one or more of SHRM's stated reasons for rescinding the offer, you may — but are not required to — consider that disbelief, together with all the other evidence, in deciding whether Ms. Torres's disability, or her need to have her service dog at work, was a but-for cause of SHRM's decision.

Among the things you may consider are: (1) the manner in which SHRM acted before and after rescinding the offer; (2) how close in time the rescission was to her request to bring her service dog to work; (3) whether SHRM gave shifting or inconsistent explanations for its inquiries or decision; (4) whether SHRM departed from its usual policies or practices when it made the decision; and (5) whether any reason SHRM gave for its decision is false, contradictory, or hard to believe.

You may determine SHRM's real reasons from all the evidence, both direct and circumstantial. Direct proof, such as an admission, is not required. The burden to prove why SHRM acted stays with Ms. Torres. On Count I, she must prove that her disability, or her need for accommodation, was a but-for cause of SHRM's decision.

**Authority:** *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (ultimate burden of persuasion remains with plaintiff); *Billesdon*, slip op. at 8 n.4 (once a case is tried on the merits, the burden-shifting framework drops out and the inquiry turns on the ultimate question); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147–48 (2000)

(factfinder may infer discrimination from falsity of employer's explanation); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (same); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001) (shifting, inconsistent explanations may raise inference of pretext); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383 (4th Cir. 2022) (departure from usual procedure may raise inference of pretext); *Jacobs*, 780 F.3d at 575 (temporal proximity may raise inference of pretext); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003) (pretext may be inferred from circumstantial evidence).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 12 — Count I: Definition of Disability**

Count I requires that Ms. Torres have a disability within the meaning of the ADA. The parties have stipulated that Ms. Torres has type 1 diabetes. Whether that condition is a disability is for you to decide under the following standards.

A person has a disability if she has a physical impairment that substantially limits one or more major life activities. A "physical impairment" includes any physiological disorder or condition affecting one or more body systems, such as the endocrine system. Major life activities include the operation of major bodily functions, such as the functions of the endocrine system.

An impairment "substantially limits" a major life activity if it limits a person's ability to perform that activity, or the operation of that bodily function, as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the activity to be substantially limiting. This is not a demanding standard, and it is to be applied broadly in favor of coverage. An impairment that is not constant, but intermittent, is still a disability if it would substantially limit a major life activity when active.

Whether an impairment substantially limits a major life activity is decided without regard to the measures a person uses to manage it, such as medication, an insulin pump, a continuous glucose monitor, or a service animal. In deciding this, you may consider whether Ms. Torres's type 1 diabetes — without her insulin pump, her glucose monitor, and her service dog — substantially limits the functioning of her endocrine system or another major life activity.

**Authority:** 42 U.S.C. § 12102(1)(A) (actual disability); 42 U.S.C. § 12102(2)(B) (major bodily functions, including endocrine functions); 42 U.S.C. § 12102(4)(A) (broad coverage); 42 U.S.C. § 12102(4)(D) (episodic impairments); 42 U.S.C. § 12102(4)(E)(i) (mitigating measures

disregarded); 29 C.F.R. § 1630.2(h)(1) ("physical impairment"); 29 C.F.R. § 1630.2(j)(1)(i)–(ii) ("not meant to be a demanding standard"; impairment "need not prevent, or significantly or severely restrict" the activity); 29 C.F.R. § 1630.2(j)(1)(vi) (mitigating measures); 29 C.F.R. § 1630.2(j)(3)(iii) (diabetes substantially limits endocrine function).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 13 — Count I: Definition of "Qualified" and "Essential Functions"**

Count I requires that Ms. Torres be qualified for the position that SHRM offered her. A qualified person is one who satisfies the threshold prerequisites of the position — the requisite skill, experience, education, and other job-related requirements — and is able to perform the essential functions of the position with or without reasonable accommodation.

"Essential functions" are the fundamental job duties of the position; they do not include the marginal, or non-essential, functions of the position. A job function may be essential because the position exists to perform that function, because there are a limited number of employees available to perform it, or because it is so highly specialized that the person was hired for expertise or ability to perform it.

In deciding whether a particular function is essential, you may consider evidence that includes: SHRM's judgment as to which functions are essential; any written description SHRM prepared before advertising for or interviewing applicants for the position; the amount of time spent performing the function; the consequences of not requiring the person to perform it; and the work experience of people who have held the same or similar positions.

**Authority:** 42 U.S.C. § 12111(8) ("qualified individual"); 29 C.F.R. § 1630.2(m) ("qualified": "requisite skill, experience, education and other job-related requirements"); 29 C.F.R. § 1630.2(n) ("essential functions" definition and factors); *Tyndall*, 31 F.3d at 212–214; *Haggins v. Wilson Air Ctr., LLC*, 163 F.4th 872, 877–878 (4th Cir. 2026).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 14 — Count II (ADA Failure to Accommodate): Elements**

Count II is Ms. Torres's claim that SHRM failed to provide her a reasonable accommodation, in violation of the ADA. To prevail on Count II, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability, as defined in these Instructions;

(2) SHRM had notice of her disability;

(3) with a reasonable accommodation, she could perform the essential functions of the position, as those terms are defined in these Instructions; and

(4) SHRM did not provide a reasonable accommodation — neither her service dog nor an effective alternative, as explained in these Instructions.

If Ms. Torres proves each of these elements, you must then decide whether SHRM has proven its defense of undue hardship, as that term is defined in these Instructions.

I will now explain what Ms. Torres must and need not prove about SHRM's reasons. I will then define "disability," "qualified," "essential functions," "reasonable accommodation," and "effective alternative" as they apply to Count II, explain the interactive process, and explain SHRM's defense of undue hardship.

**Authority:** 42 U.S.C. § 12112(b)(5)(A) (failure to make reasonable accommodations to "known physical or mental limitations"); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (elements); *Jacobs,* 780 F.3d at 579; *Lanir v. Yorktown Sys. Grp., Inc.*, 527 F. Supp. 3d 817, 821 (E.D. Va. 2021).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 15 — Count II: Causation — No Proof of Motive Required**

To prevail on Count II, Ms. Torres does not have to prove that SHRM had a discriminatory motive, or that her disability was a but-for cause of any decision on accommodation. The question on Count II is whether SHRM provided a reasonable accommodation for her known limitation, not why it did or did not do so. SHRM's reasons, and its good or bad faith, are not a defense to liability on Count II. SHRM's only defense to liability on this count is undue hardship, as that term is defined in these Instructions. (SHRM's good-faith efforts may bear on damages, as I will explain in a later Instruction.)

**Authority:** 42 U.S.C. § 12112(b)(5)(A); *Perdue*, 999 F.3d at 959 (no proof of intent required); *Billesdon*, slip op. at 11 (Section 12112(b)(5)(A) "contains no motive element"; an employer that fails to accommodate violates (A) regardless of its reasons, subject only to the undue-hardship defense).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 16 — Count II: Definition of Disability**

Count II requires that Ms. Torres have a disability within the meaning of the ADA. The parties have stipulated that Ms. Torres has type 1 diabetes. Whether that condition is a disability is for you to decide under the following standards.

A person has a disability if she has a physical impairment that substantially limits one or more major life activities. A "physical impairment" includes any physiological disorder or condition affecting one or more body systems, such as the endocrine system. Major life activities include the operation of major bodily functions, such as the functions of the endocrine system.

An impairment "substantially limits" a major life activity if it limits a person's ability to perform that activity, or the operation of that bodily function, as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the activity to be substantially limiting. This is not a demanding standard, and it is to be applied broadly in favor of coverage. An impairment that is not constant, but intermittent, is still a disability if it would substantially limit a major life activity when active.

Whether an impairment substantially limits a major life activity is decided without regard to the measures a person uses to manage it, such as medication, an insulin pump, a continuous glucose monitor, or a service animal. In deciding this, you may consider whether Ms. Torres's type 1 diabetes — without her insulin pump, her glucose monitor, and her service dog — substantially limits the functioning of her endocrine system or another major life activity.

**Authority:** 42 U.S.C. § 12102(1)(A) (actual disability); 42 U.S.C. § 12102(2)(B) (major bodily functions, including endocrine functions); 42 U.S.C. § 12102(4)(A) (broad coverage); 42 U.S.C. § 12102(4)(D) (episodic impairments); 42 U.S.C. § 12102(4)(E)(i) (mitigating measures

disregarded); 29 C.F.R. § 1630.2(h)(1) (“physical impairment”); 29 C.F.R. § 1630.2(j)(1)(i)–(ii) (“not meant to be a demanding standard”; impairment “need not prevent, or significantly or severely restrict” the activity); 29 C.F.R. § 1630.2(j)(1)(vi) (mitigating measures); 29 C.F.R. § 1630.2(j)(3)(iii) (diabetes substantially limits endocrine function).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 17 — Count II: Definition of "Qualified" and "Essential Functions"**

Count II requires that Ms. Torres be qualified for the position that SHRM offered her. A qualified person is one who satisfies the threshold prerequisites of the position — the requisite skill, experience, education, and other job-related requirements — and is able to perform the essential functions of the position with or without reasonable accommodation.

"Essential functions" are the fundamental job duties of the position; they do not include the marginal, or non-essential, functions of the position. A job function may be essential because the position exists to perform that function, because there are a limited number of employees available to perform it, or because it is so highly specialized that the person was hired for expertise or ability to perform it.

In deciding whether a particular function is essential, you may consider evidence that includes: SHRM's judgment as to which functions are essential; any written description SHRM prepared before advertising for or interviewing applicants for the position; the amount of time spent performing the function; the consequences of not requiring the person to perform it; and the work experience of people who have held the same or similar positions.

**Authority:** 42 U.S.C. § 12111(8) ("qualified individual"); 29 C.F.R. § 1630.2(m) ("qualified": "requisite skill, experience, education and other job-related requirements"); 29 C.F.R. § 1630.2(n) ("essential functions" definition and factors); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212–14 (4th Cir. 1994); *Haggins v. Wilson Air Ctr., LLC*, 163 F.4th 872, 877–78 (4th Cir. 2026).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 18 — Count II: Reasonable Accommodation**

An accommodation addresses the limitation that a person's disability causes. Ms. Torres claims that, because of her diabetes, she is at risk of a low-blood-sugar episode that she may not perceive in time — and that her continuous glucose monitor may not detect in time — to prevent a loss of consciousness. She claims that her service dog addresses that limitation. SHRM claims that the other measures she uses address that limitation without the service dog. Which of these contentions is more likely is for you to decide.

Under the ADA, a reasonable accommodation is a modification or adjustment to the job, the work environment, or the way things are customarily done that enables a qualified person with a disability to perform the essential functions of the position, or to enjoy the same benefits and privileges of employment as similarly situated employees without disabilities. Ms. Torres must prove that the accommodation she requested — her service dog at work, in addition to her continuous glucose monitor — was reasonable. An accommodation is reasonable if it is reasonable in the general sense, meaning ordinarily or in the run of cases. Ms. Torres does not have to prove that the accommodation would impose no hardship on SHRM's particular operations. I will address undue hardship in a later Instruction.

**Authority:** *On accommodations addressing limitations*: *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015) (accommodation "should provide a meaningful equal employment opportunity") (quoting H.R. Rep. No. 101-485, pt. 2, at 66 (1990)); *Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, 141 F.4th 568, 574–75 (4th Cir. 2025) (accommodations address limitations, not diagnoses); 29 C.F.R. § 1630.2(o)(3) (interactive

process identifies "the precise limitations resulting from the disability"); *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 78 (D.D.C. 2006).

*On the ADA reasonable accommodation standard:* 42 U.S.C. §§ 12111(9), 12112(b)(5)(A); 29 C.F.R. § 1630.2(o)(1)(ii)–(iii); EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA, No. 915.002 (Oct. 17, 2002); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002) (recognizing burden on plaintiff to prove the accommodation is reasonable "ordinarily or in the run of cases," and on employer then to show undue hardship in the particular circumstances); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012); *Billesdon*, slip op. at 14–16 (an accommodation must be effective; reasonableness asks about the run of cases); *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059–60 (5th Cir. 1997) (service dog under ADA Title III) (plaintiff is to prove the modification reasonable in the run of cases); *Maubach v. City of Fairfax*, No. 1:17-cv-921, 2018 WL 2018552 (E.D. Va. Apr. 30, 2018) (service animal as potential reasonable accommodation).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 19 — Count II: Alternative Accommodations**

Even if the accommodation Ms. Torres requested was reasonable, SHRM was not required to provide that accommodation if it offered a different accommodation that was effective — one that met Ms. Torres's need by addressing her limitation.

An employer may choose among effective accommodations if more than one exists. However, an accommodation that does not address the limitation is not effective, and offering it does not satisfy the employer's duty.

In place of the service dog, SHRM offered Ms. Torres: (1) permission to use her continuous glucose monitor while on site; (2) breaks as needed to check her blood sugar; (3) a flexible leave program to take time off when needed to manage her condition; and (4) permission to place her insulin pump, and any food or drink she might need, near her workstation.

On Count II, the question you must answer is whether those measures, without the service dog, would have been effective — not whether SHRM believed in good faith that they were. Ms. Torres bears the burden to prove, by a preponderance of the evidence, that the alternatives SHRM offered did not effectively address her limitation.

**Authority:** 29 C.F.R. pt. 1630, app. § 1630.9 (employer may choose among effective accommodations); *Billesdon*, slip op. at 14–15 & n.8 (the inquiry "turns on effectiveness"; employer need not provide the requested accommodation if the one provided is effective); T*artaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 167 (4th Cir. 2024) (ADA plaintiff has burden to prove alternatives not effective); *Reyazuddin*, 789 F.3d at 415–16; *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (employer's choice is limited to accommodations that

"address the job-related difficulties presented by the employee's disability"); *Tarquinio*, 141 F.4th at 574–75; *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F. Supp. 720, 736–37 (D. Md. 1996); *Fleetwood*, 380 F. Supp. 2d at 701.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 20 — Count II: The Interactive Process**

When a person requests an accommodation, the employer and the person are expected to work together in good faith — through a back-and-forth called the interactive process — to identify the limitation the disability causes and an accommodation that addresses it. Either party's belief that the other was uncooperative or disrupted the interactive process does not make it so. Efforts by one party to convince the other that a requested accommodation is reasonable or unreasonable, or that an offered alternative is effective or ineffective, are not, by themselves, disruptions of the interactive process.

On Count II, neither party can win solely because the other did not cooperate in that process in the way that the party believed appropriate. However, you may consider whether a party cooperated in that process when deciding whether a reasonable accommodation existed. Under the ADA, a failure in the interactive process is not a separate wrong independent of a failure to accommodate. Count IV, a claim for failure to accommodate under the VHRA, is different, as I will explain in a later Instruction.

**Authority:** 29 C.F.R. § 1630.2(o)(3); 29 C.F.R. pt. 1630, app. § 1630.9; *Tarquinio*, 141 F.4th at 574 (employer that does not engage in good faith in the interactive process violates the ADA if a reasonable accommodation was possible; neither party may rest on a breakdown without connecting it to an element of liability); *Wilson*, 717 F.3d at 346–47 (process failures matter insofar as they result in failure to provide a reasonable accommodation); *Dieng v. Orkin, LLC*, No. 25-1221, ___ F.4th ___, 2026 U.S. App. LEXIS 23480 (4th Cir. Aug. 5, 2026) (interactive process aims at effective accommodations for known limitations); *Jacobs*, 780 F.3d at 581; *Haggins*, 163 F.4th at 877–78 (reciprocal obligation to engage in a good-faith search for a

reasonable accommodation); *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019) (approving the "neither can win" instruction above).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 20 — Count II: Undue Hardship**

If Ms. Torres proves that her requested accommodation was reasonable and that the alternatives SHRM offered were not effective, SHRM may still avoid liability on Count II if it proves by a preponderance of the evidence that allowing her service dog at work, in addition to her continuous glucose monitor, would have imposed an actual undue hardship on SHRM. SHRM has the burden of proving this defense based on actual hardship to its operations. It may not rely on speculation that an accommodation is not feasible.

Under the ADA, an "undue hardship" is a significant difficulty or expense, considering: the nature and cost of the accommodation; the overall financial resources of the facility involved, the number of persons employed there, and the effect of the accommodation on the facility's expenses, resources, and operations; the overall financial resources of SHRM, its overall size, and the number, type, and location of its facilities; and the type of SHRM's operation, including the composition, structure, and functions of its workforce.

**Authority:** 42 U.S.C. § 12111(10); 42 U.S.C. § 12112(b)(5)(A) (failure to accommodate is unlawful "unless such covered entity can demonstrate that the accommodation would impose an undue hardship"); 29 C.F.R. § 1630.2(p); *Barnett*, 535 U.S. at 401–02 (employer shows undue hardship in the particular circumstances); *Reyazuddin,* 789 F.3d at 414; *Bryant,* 923 F. Supp. at 735–36; *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993) ("An employer, to meet its burden under the [Rehabilitation] Act, may not merely speculate that a suggested accommodation is not feasible."); *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 822 (10th Cir. 2020) (*en banc*).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 22 — Count III: Elements**

Count III is Ms. Torres's claim that SHRM discriminated against her in violation of the Virginia Human Rights Act when it rescinded its job offer.

As with Count I, Ms. Torres may prove Count III in either of two ways (she need not prove both):

(a) *Disability.* That her disability — her type 1 diabetes itself — was a motivating factor in SHRM's decision to rescind the offer; or

(b) *Need to accommodate.* That SHRM's desire to avoid accommodating her disability by allowing her service dog at work was a motivating factor in its decision to rescind the offer.

Under either way of proving Count III, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability, as that term is defined in these Instructions;

(2) she was qualified for the position SHRM offered her, as that term is defined in these Instructions;

(3) SHRM rescinded its job offer; and

(4) her disability, or SHRM's need to accommodate her disability, was a "motivating factor" in SHRM's decision to rescind the offer, as that term is explained in these Instructions.

The first three elements are the same as for Count I. The fourth element is different: the VHRA requires proof that her disability or her need for accommodation was a motivating factor. The VHRA's motivating-factor standard is not the same as the "but-for" standard that governs Count I. Under the VHRA, Ms. Torres does not have to prove that her disability, or her need for accommodation, made the difference in SHRM's decision. It is enough that it was one of

SHRM's reasons, even if other factors were equally or more important in motivating the decision.

You must apply the motivating-factor standard to Count III, and the but-for standard to Count I.

**Authority:** Va. Code § 2.2-3905(B)(1)(a), (B)(6); Va. Code § 2.2-3905.1(B)(3); *Washington*, 677 F. Supp. 3d at 396 (VHRA tracks ADA except as to causation); *Jacobs*, 780 F.3d at 572 (listing ADA discrimination elements); Va. Code § 2.2-3905(B)(1)(a); Va. Code § 2.2-3905(B)(6) (unlawful to use disability "as a motivating factor for any employment practice, even though other factors also motivate the practice"); Va. Code § 2.2-3905.1(B)(3) (unlawful to "[d]eny employment . . . opportunities to an otherwise qualified applicant . . . because such employer will be required to make reasonable accommodation"); *Mirshahi v. Patient First Richmond Med. Grp., LLC*, No. 3:23cv00495, 2025 WL 1551504, at *13 (E.D. Va. May 30, 2025), aff'd, No. 25-1720 (4th Cir. May 27, 2026) (unpublished); *Washington*, 677 F. Supp. 3d at 396 (VHRA tracks ADA except as to causation); *Desert Palace*, 539 U.S. at 101 (motivating-factor instruction; circumstantial evidence suffices); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (*en banc*) ("it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons"), *abrogated in part on other grounds, Staub v. Proctor Hosp.*, 562 U.S. 411 (2011); *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 192–93 & n.3 (4th Cir. 2003); *Abercrombie,* 575 U.S. at 773.

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 23 — Count III: Causation (Motivating Factor)**

To prevail on Count III, Ms. Torres must prove that her disability, or SHRM's need to accommodate her disability, was a "motivating factor" in SHRM's decision to rescind its job offer.

Under the VHRA, Ms. Torres does not have to prove that her disability, or her need for accommodation, made the difference in SHRM's decision. It is enough that it was one of SHRM's reasons, even if other factors were equally or more important in motivating the decision.

a. *Disability.* Ms. Torres proves this element if her disability was a motivating factor in SHRM's decision.

b. *Need to accommodate.* The VHRA forbids an employer to deny employment to a qualified applicant because the employer will be required to make a reasonable accommodation for her disability. Ms. Torres proves this element if SHRM's desire to avoid allowing her service dog at work was a motivating factor in its decision to rescind its job offer to her.

**Authority:** Va. Code § 2.2-3905(B)(1)(a); Va. Code § 2.2-3905(B)(6) (unlawful to use disability "as a motivating factor for any employment practice, even though other factors also motivate the practice"); Va. Code § 2.2-3905.1(B)(3) (unlawful to "[d]eny employment . . . opportunities to an otherwise qualified applicant . . . because such employer will be required to make reasonable accommodation"); *Mirshahi v. Patient First Richmond Med. Grp., LLC*, No. 3:23cv00495, 2025 WL 1551504, at *13 (E.D. Va. May 30, 2025), aff'd, No. 25-1720 (4th Cir. May 27, 2026) (unpublished); *Washington*, 677 F. Supp. 3d at 396 (VHRA tracks ADA except

as to causation); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (motivating-factor instruction; circumstantial evidence suffices); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (*en banc*) ("it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons"), *abrogated in part on other grounds, Staub v. Proctor Hosp.*, 562 U.S. 411 (2011); *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 192–93 & n.3 (4th Cir. 2003); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 24 — Count III: Pretext and Circumstantial Evidence**

In deciding why SHRM rescinded its job offer to Ms. Torres, you may consider whether the reasons SHRM has given for rescinding were the real reasons or are a pretext — an excuse to cover up discrimination. If you do not believe one or more of SHRM's stated reasons for rescinding the offer, you may — but are not required to — find that Ms. Torres's disability, or her need to have her service dog at work, was a reason for SHRM's decision. Among the things you may consider are: (1) the manner in which SHRM acted before and after rescinding the offer; (2) how close in time the rescission was to her request to bring her service dog to work; (3) whether SHRM gave shifting or inconsistent explanations for its inquiries or decision; (4) whether SHRM departed from its usual policies or practices when it made the decision; and (5) whether any reason SHRM gave for its decision is false, contradictory, or hard to believe.

You may determine SHRM's real reasons from all the evidence, both direct and circumstantial. Direct proof, such as an admission, is not required. The burden to prove why SHRM acted stays with Ms. Torres. On Count III, she must prove that her disability, or her need for accommodation, was a motivating factor in SHRM's decision.

**Authority:** *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *Billesdon v. Wells Fargo Sec., LLC*, No. 25-1495, slip op. at 8 n.4 (4th Cir. Aug. 21, 2026); *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143, 147–48 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *EEOC v. Sears Roebuck & Co*., 243 F.3d 846, 852–53 (4th Cir. 2001); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383 (4th Cir. 2022); *Jacobs*, 780 F.3d at

575; *Desert Palace*, 539 U.S. at 99–100; *Washington*, 677 F. Supp. 3d at 396 (VHRA tracks ADA definitions).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 25 — Count III: Definition of Disability**

Count III requires that Ms. Torres have a disability within the meaning of the Virginia Human Rights Act. The parties have stipulated that Ms. Torres has type 1 diabetes. Whether that condition is a disability is for you to decide under the following standards.

A person has a disability if she has a physical impairment that substantially limits one or more major life activities. A "physical impairment" includes any physical condition caused by bodily injury, birth defect, or illness. Major life activities include the operation of major bodily functions, such as the functions of the endocrine system.

Under the VHRA, an impairment "substantially limits" a major life activity if it limits a person's ability to perform that activity, or the operation of that bodily function, as compared to most people in the general population.

Whether an impairment substantially limits a major life activity is decided without regard to the measures a person uses to manage it, such as medication, an insulin pump, a continuous glucose monitor, or a service animal. In deciding this, you may consider whether Ms. Torres's type 1 diabetes — without her insulin pump, her glucose monitor, and her service dog — substantially limits the functioning of her endocrine system or another major life activity.

**Authority:** Va. Code § 2.2-3905.1(A) (adopting definitions of § 51.5-40.1); Va. Code § 51.5-40.1 ("person with a disability"; "physical impairment"); *Hice v. Mazzella Lifting Technologies, Inc.*, 589 F. Supp. 3d 539, 547 (E.D. Va. 2022) (analyzing ADA and VHRA claims jointly; explicitly invoking the ADAAA's directive that the definition of disability "shall be construed in favor of broad coverage . . . to the maximum extent permitted by its terms"), *citing Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) (ADAAA abrogated

earlier ADA caselaw); *Washington*, 677 F. Supp. 3d at 396 (VHRA "disability" analyzed under ADA standards); 42 U.S.C. § 12102(2)(B), (4)(A), (4)(D), (4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(i)–(ii), (vi), (j)(3)(iii).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 26 — Count III: Definition of Qualified; Essential Functions**

Count III requires that Ms. Torres be qualified for the position that SHRM offered her. Under the Virginia Human Rights Act, a qualified person is one who is qualified to perform the essential functions of the job, with or without reasonable accommodation. This includes satisfying the threshold prerequisites of the position — the requisite skill, experience, education, and other job-related requirements.

"Essential functions" are the fundamental job duties of the position; they do not include the marginal, or non-essential, functions of the position. A job function may be essential because the position exists to perform that function, because there are a limited number of employees available to perform it, or because it is so highly specialized that the person was hired for expertise or ability to perform it.

In deciding whether a particular function is essential, you may consider evidence that includes: SHRM's judgment as to which functions are essential; any written description SHRM prepared before advertising for or interviewing applicants for the position; the amount of time spent performing the function; the consequences of not requiring the person to perform it; and the work experience of people who have held the same or similar positions.

**Authority:** Va. Code § 2.2-3905.1(A) (adopting definition of § 51.5-41(A)); Va. Code § 51.5-41(A) ("otherwise qualified person with a disability" means "a person qualified to perform the essential functions of a job with or without reasonable accommodations"); Washington, 677 F. Supp. 3d at 396 (VHRA "qualified person" analyzed under ADA standards); 29 C.F.R. § 1630.2(m), (n).

## PART FOUR — COUNT IV: FAILURE TO ACCOMMODATE UNDER THE VHRA

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 27 — Count IV: Ways of Proving and Elements**

Count IV is Ms. Torres's claim that SHRM failed to accommodate her disability, in violation of the Virginia Human Rights Act. Ms. Torres may prove Count IV in either of two ways. She need prove only one.

a. *Failure to provide a reasonable accommodation.* Ms. Torres proves Count IV if she proves by a preponderance of the evidence that:

(1) she has a disability;

(2) she was qualified for the position;

(3) SHRM knew of her disability;

(4) her service dog was a reasonable accommodation necessary to assist her in performing the job; and

(5) SHRM did not provide a reasonable accommodation — neither her service dog nor an effective alternative.

If Ms. Torres proves these elements, you must then decide whether SHRM has proven its defense of undue hardship.

b. *Failure to engage in the interactive process.* Ms. Torres also proves Count IV if she proves by a preponderance of the evidence that:

(1) she has a disability;

(2) she requested an accommodation from SHRM; and

(3) SHRM failed to engage in a timely, good faith interactive process with her to determine if her requested accommodation was reasonable and, if it was

determined not to be reasonable, to discuss alternative accommodations that may be provided.

SHRM's defense of undue hardship does not apply to this second way of proving Count IV.

I will now explain what Ms. Torres must and need not prove about SHRM's reasons. I will then define "disability," "qualified," "essential functions," "reasonable accommodation," and "effective alternative" as they apply to Count IV, explain the interactive process, and explain SHRM's defense of undue hardship.

**Authority:** Va. Code § 2.2-3905.1(B)(1) (accommodation to "known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular job"); Va. Code § 2.2-3905.1(B)(5); Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013); Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 579 (4th Cir. 2015); Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc., 677 F. Supp. 3d 383, 396 (W.D. Va. 2023).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 28 — Count IV: Causation — No Proof of Motive Required**

Count IV does not require Ms. Torres to prove why SHRM acted. She does not have to prove that SHRM had a discriminatory motive. The questions on Count IV are whether SHRM provided a reasonable accommodation for her known disability, and whether SHRM engaged in a timely, good faith interactive process with her — not why SHRM did or did not do so. SHRM's only defense to liability on Count IV is undue hardship, and that defense applies only to Ms. Torres's claim that SHRM failed to provide a reasonable accommodation.

**Authority:** Va. Code § 2.2-3905.1(B)(1), (B)(5) (neither provision contains a motive element); cf. Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 959 (4th Cir. 2021); Billesdon v. Wells Fargo Sec., LLC, No. 25-1495, slip op. at 11 (4th Cir. Aug. 21, 2026).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 29 — Count IV: Definition of Disability**

Count IV requires that Ms. Torres have a disability within the meaning of the Virginia Human Rights Act. The parties have stipulated that Ms. Torres has type 1 diabetes. Whether that condition is a disability is for you to decide under the following standards.

A person has a disability if she has a physical impairment that substantially limits one or more major life activities. A "physical impairment" includes any physical condition caused by bodily injury, birth defect, or illness. Major life activities include the operation of major bodily functions, such as the functions of the endocrine system.

An impairment "substantially limits" a major life activity if it limits a person's ability to perform that activity, or the operation of that bodily function, as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the activity to be substantially limiting. This is not a demanding standard, and it is to be applied broadly in favor of coverage. An impairment that is not constant, but intermittent, is still a disability if it would substantially limit a major life activity when active.

Whether an impairment substantially limits a major life activity is decided without regard to the measures a person uses to manage it, such as medication, an insulin pump, a continuous glucose monitor, or a service animal. In deciding this, you may consider whether Ms. Torres's type 1 diabetes — without her insulin pump, her glucose monitor, and her service dog — substantially limits the functioning of her endocrine system or another major life activity.

**Authority:** Va. Code § 2.2-3905.1(A) (adopting definitions of § 51.5-40.1); Va. Code § 51.5-40.1 ("person with a disability"; "physical impairment"); *Hice v. Mazzella Lifting Technologies, Inc.*, 589 F. Supp. 3d 539, 547 (E.D. Va. 2022) (analyzing ADA and VHRA

claims jointly; explicitly invoking the ADAAA's directive that the definition of disability "shall be construed in favor of broad coverage . . . to the maximum extent permitted by its terms"), *citing Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) (ADAAA abrogated earlier ADA caselaw); *Washington*, 677 F. Supp. 3d at 396 (VHRA "disability" analyzed under ADA standards); 42 U.S.C. § 12102(2)(B), (4)(A), (4)(D), (4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(i)–(ii), (vi), (j)(3)(iii).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 30 — Count IV: Definition of Qualified; Essential Functions**

Count IV requires that Ms. Torres be qualified for the position that SHRM offered her. Under the Virginia Human Rights Act, a qualified person is one who is qualified to perform the essential functions of the job, with or without reasonable accommodation. This includes satisfying the threshold prerequisites of the position — the requisite skill, experience, education, and other job-related requirements.

"Essential functions" are the fundamental job duties of the position; they do not include the marginal, or non-essential, functions of the position. A job function may be essential because the position exists to perform that function, because there are a limited number of employees available to perform it, or because it is so highly specialized that the person was hired for expertise or ability to perform it.

In deciding whether a particular function is essential, you may consider evidence that includes: SHRM's judgment as to which functions are essential; any written description SHRM prepared before advertising for or interviewing applicants for the position; the amount of time spent performing the function; the consequences of not requiring the person to perform it; and the work experience of people who have held the same or similar positions.

**Authority:** Va. Code § 2.2-3905.1(A) (adopting definition of § 51.5-41(A)); Va. Code § 51.5-41(A) ("otherwise qualified person with a disability" means "a person qualified to perform the essential functions of a job with or without reasonable accommodations"); *Washington*, 677 F. Supp. 3d at 396 (VHRA "qualified person" analyzed under ADA standards); 29 C.F.R. § 1630.2(m), (n).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 31 — Count IV: Reasonable Accommodation**

An accommodation addresses the limitation that a person's disability causes. Ms. Torres claims that, because of her diabetes, she is at risk of a low-blood-sugar episode that she may not perceive in time — and that her continuous glucose monitor may not detect in time — to prevent a loss of consciousness. She claims that her service dog addresses that limitation. SHRM claims that the other measures she uses address that limitation without the service dog. Which of these contentions is more likely is for you to decide.

Under the VHRA, Ms. Torres must prove that her service dog was a reasonable accommodation necessary to assist her in performing her particular job. A reasonable accommodation is a modification or adjustment to the job, the work environment, or the way things are customarily done that enables a qualified person with a disability to perform the essential functions of the position.

**Authority:** Va. Code § 2.2-3905.1(B)(1) (accommodation to be accorded "if necessary to assist such person in performing a particular job"); cf. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(1)(ii)..]

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 32 — Count IV: Alternative Accommodations**

Even if Ms. Torres's service dog was a reasonable accommodation, SHRM was not required to provide it if SHRM offered a different accommodation that was effective — one that met Ms. Torres's need by addressing her limitation.

An accommodation addresses the limitation that a person's disability causes. Ms. Torres claims that, because of her diabetes, she is at risk of a low-blood-sugar episode that she may not perceive in time — and that her continuous glucose monitor may not detect in time — to prevent a loss of consciousness. She claims that her service dog addresses that limitation. SHRM claims that the other measures she uses address that limitation without the service dog. Which of these contentions is more likely is for you to decide.

An employer may choose among effective accommodations if more than one exists that is effective. However, an accommodation that does not address the limitation is not effective, and offering it does not satisfy the employer's duty.

In place of the service dog, SHRM offered Ms. Torres: (1) permission to use her continuous glucose monitor while on site; (2) breaks as needed to check her blood sugar; (3) a flexible leave program to take time off when needed to manage her condition; and (4) permission to place her insulin pump, and any food or drink she might need, near her workstation.

On Count IV, the question you must answer is whether those measures, without the service dog, would have been effective — not whether SHRM believed in good faith that they were. Ms. Torres bears the burden to prove, by a preponderance of the evidence, that the alternatives SHRM offered did not effectively address her limitation.

**Authority:** Va. Code § 2.2-3905.1(B)(1); *cf.* Va. Code § 51.5-41(C)(2) (employer has the right to choose among equally effective accommodations); 29 C.F.R. pt. 1630, app. § 1630.9; *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 167 (4th Cir. 2024); *Billesdon*, slip op. at 14–15 & n.8; *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021); *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415–16 (4th Cir. 2015).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 33 — Count IV: The Interactive Process**

The VHRA places a duty on the employer to engage in a timely, good-faith interactive process with a person who has requested an accommodation, to determine whether the requested accommodation is reasonable and, if it is determined not to be reasonable, to discuss alternative accommodations that may be provided. The interactive process is a back-and-forth between the employer and the person requesting the accommodation. Its purpose is to identify the limitation the disability causes and an accommodation that addresses it.

A failure to meet that duty is itself a violation of the VHRA, whether or not you also find that SHRM failed to provide a reasonable accommodation.

**Authority:** Va. Code § 2.2-3905.1(B)(5) (unlawful to "[f]ail to engage in a timely, good faith interactive process with an employee who has requested an accommodation pursuant to this section to determine if the requested accommodation is reasonable and, if such accommodation is determined not to be reasonable, discuss alternative accommodations that may be provided"); *cf.* 29 C.F.R. § 1630.2(o)(3).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 34 — Count IV: Undue Hardship**

If Ms. Torres proves that her service dog was a reasonable accommodation necessary to assist her in performing her job, and that the alternatives SHRM offered were not effective, SHRM may still avoid liability on her claim that it failed to provide a reasonable accommodation if it proves by a preponderance of the evidence that allowing her service dog at work, in addition to her continuous glucose monitor, would have imposed an undue hardship on SHRM. SHRM has the burden of proving this defense. It may not rely on speculation. This defense does not apply to Ms. Torres's claim that SHRM failed to engage in a timely, good faith interactive process.

In deciding whether SHRM has proven undue hardship under the VHRA, you must consider: (1) the hardship on the conduct of SHRM's business, considering the nature of its operation, including the composition and structure of its workforce; (2) the size of the facility where employment occurs; (3) the nature and cost of the accommodations needed, taking into account alternative sources of funding or technical assistance; (4) the possibility that the same accommodations may be used by other prospective employees; and (5) safety and health considerations of the person with a disability, other employees, and the public.

**Authority:** Va. Code § 2.2-3905.1(B)(1) (accommodation required "unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer"); Va. Code § 2.2-3905.1(B)(1)(a)–(e) (factors); Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993) (employer may not merely speculate).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 35 — Compensatory Damages (Emotional and Mental Harm)**

You are to reach the question of damages only if you have found for Ms. Torres on one or more of Counts I through IV. If you did that, you are to decide what amount, if any, will fairly compensate her for the harm she has proven, by a preponderance of the evidence, that SHRM's conduct caused her. You may award damages only for harm that Ms. Torres proved was more likely than not caused by the violation or violations you found. Damages may not be based on speculation or on sympathy unconnected to the evidence.

There is one potential exception. Damages cannot be awarded on Ms. Torres's ADA failure-to-accommodate claim (Count II) if SHRM proves, by a preponderance of the evidence, its good faith efforts, in consultation with Ms. Torres, to identify and make a reasonable accommodation that would provide her with an equally effective opportunity to enjoy the same benefits and privileges of employment as similarly situated employees without disabilities, and would not cause an undue hardship on the operation of SHRM's business. This good faith provision does not apply to Ms. Torres's failure-to-accommodate claim under the Virginia Human Rights Act (Count IV).

Ms. Torres seeks compensation for emotional and mental harm — such as fear, humiliation, and mental anguish — that she suffered because of SHRM's conduct, and any such harm she is reasonably certain to suffer in the future. There is no exact standard for measuring this kind of harm, and no evidence of a specific dollar value of this kind of harm need be introduced; you must use sound judgment based on the evidence.

**Authority:** 42 U.S.C. § 1981a(a)(2), (a)(3); Va. Code § 2.2-3908(B) (court or jury may award compensatory damages; no cap on compensatory damages; no good faith exception).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 36 — You May Not Award for the Same Loss Twice**

If Ms. Torres prevails on one or more of her claims in this case, she is entitled to be made whole, but only once. If you find for her on more than one claim, and those claims seek recovery for the same harm, do not award damages for that harm more than once. If different claims involve different harms, and she proved them, compensate her for all of her harms — but never twice for the same loss.

**Authority:** *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 460 (4th Cir. 2011).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 37 — Lost Wages and Benefits (Back Pay)**

If Ms. Torres prevails on liability — that is, if you find by a preponderance of the evidence that her ADA or VHRA rights were violated — the Court has the power under the ADA, and you as the jury should under the VHRA, award the wages and benefits Ms. Torres would have earned from the date her employment with SHRM would have begun to the date of your verdict, at the salary she was offered ($90,000 per year), less any amounts she earned, or with reasonable effort could have earned, during that period.

**Authority:** 42 U.S.C. § 12117(a) (incorporating the "powers, remedies, and procedures" of 42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9); 42 U.S.C. § 2000e-5(g)(1) (court may order "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate"); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848–50 (2001) (back pay is equitable relief); *Billesdon v. Wells Fargo Sec., LLC*, No. 25-1495, slip op. at 27 (4th Cir. Aug. 21, 2026) (back pay and front pay are equitable remedies under the ADA); *Holmes v. Wal-Mart Stores E., L.P.*, No. 1:10cv75, 2011 WL 1842868 (E.D. Va. Apr. 27, 2011); Va. Code § 2.2-3908(B) ("court or jury" award compensatory damages).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 38 — Future Lost Earnings (Front Pay)**

If you find that Ms. Torres has proved one or more of her claims by a preponderance of the evidence, you may award the wages and benefits Ms. Torres is reasonably certain to lose in the future because of SHRM's conduct, reduced to their present value.

**Authority:** 42 U.S.C. § 12117(a); Pollard, 532 U.S. at 846–52 (front pay in lieu of reinstatement); *Billesdon*, slip op. at 28 n.19, 31 (front pay is equitable; a front-pay determination left to the jury without objection is reviewed as a jury verdict); *but see Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378 (4th Cir. 2008).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 39 — Reduction for Amounts Earned (Mitigation)**

A person who has been the victim of discrimination must make reasonable efforts to reduce her lost wages by looking for other suitable work. SHRM has the burden of proving that Ms. Torres failed to make those reasonable efforts and also that comparable work was available. Ms. Torres was required only to make reasonable efforts to find suitable work; and she did not have to take work that was not comparable to the work she would have done at SHRM. If you find that SHRM has proven that Ms. Torres failed to make those reasonable efforts, you are to subtract, from any lost-wages award, the amounts she earned, or with reasonable effort could have earned, doing work comparable to what she would have done at SHRM.

You are also to subtract from any lost-wages award the amounts Ms. Torres actually earned from any other employment, whether or not it was comparable to the work she would have done at SHRM.

**Authority:** 42 U.S.C. § 2000e-5(g)(1) ("interim earnings" to be subtracted whether or not for comparable work) (applicable to ADA remedies through 42 U.S.C. § 12117(a)); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32 (1982) (Title VII claimant's statutory duty to minimize damages); *Edwards v. Sch. Bd. of City of Norton*, 658 F.2d 951, 956 (4th Cir. 1981) (employee must make "a reasonable effort to find other suitable employment"); *Crump v. U.S. Dep't of Navy*, 205 F. Supp. 3d 730, 745 (E.D. Va. 2016) (failure to mitigate is an affirmative defense on which the defendant bears the burden).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 40 — Nominal Damages**

If you find that SHRM violated Ms. Torres's rights but that she did not prove any actual damages, you may award her nominal damages in a small sum, such as one dollar.

**Authority:** *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978); *Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001) (nominal damages appropriate where a plaintiff's civil rights are found to have been violated).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 41 — Punitive Damages**

If you awarded Ms. Torres damages on one or more of her claims, you may also award punitive damages on that claim if you choose, with one exception. Punitive damages are not meant to compensate Ms. Torres; they are meant to punish serious misconduct and to deter it. You are never required to award them.

You may award punitive damages only if Ms. Torres proves that a management-level employee of SHRM, acting within the scope of employment, acted with malice or with reckless indifference to her legally protected right to be free from disability discrimination — that is, that SHRM acted in the face of a perceived risk that its actions would violate the law.

The exception is that punitive damages cannot be awarded on Ms. Torres's ADA failure-to-accommodate claim (Count II) if SHRM proves, by a preponderance of the evidence, its good faith efforts, in consultation with Ms. Torres, to identify and make a reasonable accommodation that would provide her with an equally effective opportunity to enjoy the same benefits and privileges of employment as similarly situated employees without disabilities, and would not cause an undue hardship on the operation of SHRM's business. This good faith provision does not apply to Ms. Torres's failure-to-accommodate claim under the Virginia Human Rights Act (Count IV).

You may award punitive damages on Ms. Torres's claim of discrimination under the ADA (Count I) or her claims under the VHRA (Counts III and IV) only if you awarded her compensatory damages, even nominal damages, on that claim.

**Authority:** *On the ADA claims:* 42 U.S.C. § 1981a(a)(2), (b)(1); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534–36 (1999) (malice or reckless indifference refers to the employer's

knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination); id. at 545–46 (good-faith-compliance defense); *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 372–74 (4th Cir. 2008); *Corti v. Storage Technology Corp.*, 304 F.3d 336 (4th Cir. 2002) (allowing Title VII punitive damages award to stand despite zero compensatory damages award*); EEOC v. E.I. Du Pont de Nemours & Co*., 480 F.3d 724 (5th Cir. 2007) (ADA) (upholding $1 million *punitive damage award on no compensatory damages);* cf. People Helpers Found., Inc. v. City of Richmond, 12 F.3d 1321 (4th Cir. 1993) (holding punitive damages unavailable under the Fair Housing Act without compensatory damages) (distinguished in *Corti* on ground that FHA had no back-pay remedy).

*On the VHRA claims:* Va. Code § 2.2-3908(B) (court or jury may award compensatory and punitive damages); Va. Code § 8.01-38.1; *Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 337 S.E.2d 291 (1985) (denying punitives on ground that neither compensatory nor nominal damages had been awarded).

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 42 — After-Acquired Evidence**

If SHRM proves that information it learned about Ms. Torres after the fact, by itself, would have led it to rescind its offer to Ms. Torres in any event — regardless of her disability or her request for accommodation — that information does not bear on whether SHRM violated the ADA or the VHRA. You may consider such information only in considering the period for which Ms. Torres may recover lost wages, and only if you determine that the events or facts SHRM later learned about would have occurred even if the wrongs alleged by Ms. Torres did not occur.

**Authority:** Regarding relevance on remedy, not liability: *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 356–63 (1995) (after-acquired evidence limits remedies, not liability; employer must show it would have taken the action on that ground alone); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1240–41 (4th Cir. 1995); *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 904 (E.D. Va. 2000).

*On counterfactuality issue: Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 555 (10th Cir. 1999) (when the alleged misconduct arises as a direct result of the alleged wrong, the necessary balancing of the equities hardly mandates limiting the plaintiff's relief) ("it is not difficult to envision a defendant goading a former employee into losing her temper, only to claim later that certain forms of relief should be unavailable because of the plaintiff's inability to control her temper"); *Seymour v. Tonganoxie Unified Sch. Dist. No. 464*, No. 20-CV-2282-JWL, 2021 WL 4589024 (D. Kan. Oct. 6, 2021) (applying Medlock where plaintiff's alleged misconduct occurred after the employer's adverse decision and was a direct result of it).

Respectfully submitted,

Stephen B. Pershing
Virginia Bar No. 31012
Mary E. Kuntz
Virginia Bar No. 76947
Anna Kathryn B. Barry
D.C. Bar No. 1719493
(Admitted *pro hac vice*)
Thomas O. Walker II
Alabama Bar No. 4064E32W
(Admitted *pro hac vice*)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
akbarry@kcnlaw.com
twalker@kcnlaw.com

*Attorneys for Plaintiff*

Dated: October 7, 2026

^ ^ ^

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 7th day of October, 2026, a copy of the foregoing was filed with the Court's case management / electronic case filing ("CM/ECF") system, through which it was transmitted on counsel of record for defendant Society for Human Resource Management as follows:

Lauren M. Bridenbaugh
Leslie P. Currie
Tanja L. Darrow (admitted *pro hac vice)*
Tiffany din Fagel Tse
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
lbridenbaugh@littler.com
lcurrie@littler.com
tdarrow@littler.com
ttse@littler.com

______________________________