Instruction No. 1

Members of the Jury:

Now that you have heard all of the evidence that is to be received in this trial and each of the arguments of counsel it becomes my duty to give you the final instructions of the Court as to the law that is applicable to this case. You should use these instructions to guide you in your decisions.

All of the instructions of law given to you by the Court—those given to you at the beginning of the trial, those given to you during the trial, and these final instructions—must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all of the instructions of the Court and to apply these rules of law to the facts as you find them to be from the evidence received during the trial.

Counsel have quite properly referred to some of the applicable rules of law in their closing arguments to you. If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole in reaching your decisions.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or opinion of the law than that given in these instructions of the Court just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

You were chosen as a juror for this trial in order to evaluate all of the evidence received and to decide each of the factual questions presented by the allegations in the Plaintiff's complaint and the Defendant's denials of those allegations in its answer.

In resolving the issues presented to you for decision in this trial you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

Justice—through trial by jury—depends upon the willingness of each individual juror to seek the truth from the same evidence presented to all the jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as now being given to each of you in these instructions of the Court.

Instruction No. 2

During this trial, I permitted you to take notes. Many courts do not permit note-taking by jurors, and a word of caution is in order. There is always a tendency to place undue importance on matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid in your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

Moreover, you are coequal judges of the facts and each juror's memory of and opinion about the evidence is worthy of consideration by all the other jurors. That a juror may have taken extensive notes does not mean that his or her memory or opinion is worthy of more consideration than the memory or opinion of a juror who took few or no notes.

Instruction No. 3

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A professional association is entitled to the same fair trial as a private individual. All persons, including professional associations, and other organizations stand equal before the law, and are to be treated as equals.

Instruction No. 4

Ms. Torres was an applicant for a job at SHRM, not an employee. The Americans with Disabilities Act (ADA) and the Virginia Human Rights Act (VHRA) protect job applicants as well as employees.

Instruction No. 5

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, the stipulations, and any admissions.

By contrast, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose — such as for the purpose of assessing a witness' credibility — you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which were marked for identification may not be considered by you as evidence unless they were received in evidence by the Court. Materials brought forth only to refresh a witness' recollection, but not admitted, are not evidence.

Instruction No. 6

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses — something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its presence or existence, substance or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact indirectly, based on other proven facts that support an inference that the disputed fact exists.

As a simple example of circumstantial evidence: Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume the courtroom has no windows. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later, another person entered the courtroom with a wet umbrella. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So, you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Instruction No. 7

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience, reason, and common sense.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is not a suspicion or a guess. An inference is a reasoned, logical deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence based on your common sense. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Ms. Torres asks you to draw one set of inferences, while SHRM asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

Instruction No. 8

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part. You must avoid bias in your determination based on the

witness's race, color, religion, national origin, sexual orientation, or sex in your determination of credibility.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Instruction No. 9

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." Dr. Cooperman testified as an expert. An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses state their opinions as to matters in which they profess to be an expert, and may also state their reasons for their opinions.

You should consider an expert opinion received in evidence and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

Instruction No. 10

Plaintiff Fiona Torres has the burden in a civil action, such as this, to prove every essential element of Plaintiff's claim by a preponderance of the evidence. If Plaintiff should fail to establish any essential element of Plaintiff's claim by a preponderance of the evidence, you should find for Defendant SHRM as to that claim.

"To prove by a preponderance of the evidence" means to prove something is more likely than not so. In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

Instruction No. 11

Count I alleges that SHRM discriminated against Ms. Torres in violation of the ADA when it rescinded its job offer.

In order to prevail on this claim, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability;

(2) she was qualified for the position SHRM offered her;

(3) SHRM rescinded its job offer; and

(4) her disability, or SHRM's need to accommodate her disability, was a "but-for" cause of SHRM's decision to rescind the offer.

Instruction No. 12

For purposes of these instructions, a "disability" is a physical or mental impairment that substantially limits one or more major life activities. A "physical impairment" is a condition that prevents the body from functioning normally.

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions. Major life activities include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

An impairment "substantially limits" a major life activity if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general population.

Instruction No. 13

For purposes of these instructions, a qualified individual is one who, with or without reasonable accommodations, can perform the essential functions of the job.

The term "qualified" means that the individual satisfies the requisite skill, experience, education, and other job-related requirements of the employment position.

Instruction No. 14

For purposes of these instructions, essential functions of a job means the fundamental job duties of the position. A job function may be considered essential if: the specific reason the position exists is to perform that function; there are a limited number of other employees available to perform that job function; or the job function is highly specialized and requires the employee to have particular expertise or ability to perform the particular function. In considering whether a specific job function is essential, you may consider the following:

i. The employer's judgment as to which functions are essential;

ii. Written job descriptions for the position;

iii. The amount of time spent on the job performing the function;

iv. The consequences of not requiring the incumbent to perform the function;

v. The work experience of past incumbents in the job; and/or

vi. The current work experience of incumbents in similar jobs.

In addition to specific job requirements, an employer may have general requirements for all employees that qualify as essential functions. For example, an employer may require a regular and predictable level of attendance, or require employees to arrive at work on time. These may be considered essential functions of any job.

Instruction No. 15

For purposes of Count I, Ms. Torres must prove that her disability, or SHRM's need to accommodate her disability, was a "but-for" cause of SHRM's decision to rescind the job offer, meaning it was a determinative factor in the decision. It need not have been the sole factor, but Plaintiff must prove that but for the consideration of Plaintiff's disability, or the need to accommodate her disability, SHRM would not have made the same employment decision.

Instruction No. 16

For Count I, if SHRM produced evidence of a legitimate, non-discriminatory reason for rescinding the job offer, you, the jury, must find for SHRM unless you find that the Plaintiff has proved that the reason given by SHRM was not the true reason for rescinding the job offer, and that it is more likely than not that, except for the Plaintiff's disability, the offer would not have been rescinded. In other words, Ms. Torres must prove that the reason articulated by SHRM was a mere pretext for its unlawful discrimination.

Among the things you may consider are: (1) the manner in which SHRM acted before and after rescinding the offer; (2) how close in time the rescission was to her request to bring her service dog to work; (3) whether SHRM gave shifting or inconsistent explanations for its inquiries or decision; (4) whether SHRM departed from its usual policies or practices when it made the decision; and (5) whether any reason SHRM gave for its decision is false, contradictory, or hard to believe.

In making your determination, you may consider all the evidence, direct and circumstantial. The burden of proving why SHRM acted remains with Ms. Torres. On Count I, she must prove that her disability, or her need for accommodation, was a but-for cause of SHRM's decision.

Instruction No. 17

Count II alleges that SHRM failed to provide Ms. Torres a reasonable accommodation in violation of the ADA.

In order to prevail on this claim, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability;

(2) SHRM had notice of her disability;

(3) with a reasonable accommodation, she could perform the essential functions of the position; and

(4) SHRM did not provide a reasonable accommodation.

Instruction No. 18

For Count II, a "reasonable accommodation" is defined by the Americans with Disabilities Act as "a modification or adjustment to the work environment, or to the manner of circumstances under which the position held is customarily preferred, that enable an individual with a disability who is qualified to perform the essential functions of that position." A reasonable accommodation means making modifications or adjustments to the work environment, or to the manner or circumstances under which the position is customarily performed, that enable an individual with a disability to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities. A reasonable accommodation does not include changing or eliminating any essential functions of the job, or shifting any essential functions of the job to others.

Instruction No. 19

The fourth element of a failure to accommodate claim under the ADA requires Ms. Torres to prove by a preponderance of the evidence that SHRM refused to provide her with any reasonable accommodation.

An employer has the ultimate discretion to choose between reasonable accommodations that are effective, and thus satisfies its obligation under the ADA by offering any reasonable accommodation that allows the individual to perform the essential functions of the position or to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities. The employer is not required to provide the best accommodation, or the exact accommodation the individual requested, so long as it is effective and sufficient to meet the job-related needs of the individual being accommodated.

Instruction No. 20

For Count II, once an employer is aware that an applicant is requesting a reasonable accommodation, the law requires the parties to engage in an "interactive process" to determine whether there is a reasonable accommodation that would allow the applicant to perform the essential functions of the position, or to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities.

Once this process has begun, both the employer and the applicant must participate in good faith. A party who delays this process or fails to communicate with the other party is not acting in good faith. Employers can show their good faith in a number of ways, such as: meeting with the applicant who requests an accommodation; requesting information about the applicant's condition and what limitations the applicant has; asking what the applicant specifically wants; and offering and discussing available alternative accommodations.

When deciding whether a reasonable accommodation existed, you may consider whether either party participated, or failed to participate, in the interactive process in good faith.

Instruction No. 21

To prevail on Count II, Ms. Torres does not have to prove that SHRM had a discriminatory motive, or that her disability was a but-for cause of any decision on accommodation. The question on Count II is whether SHRM provided a reasonable accommodation for her known limitation, not why it did or did not do so.

Instruction No. 22

Count III alleges that SHRM discriminated against Ms. Torres in violation of the Virginia Human Rights Act ("VHRA") when it rescinded its job offer.

In order to prevail on this claim, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability;

(2) she was qualified for the position SHRM offered her;

(3) SHRM rescinded its job offer; and

(4) her disability, or SHRM's need to accommodate her disability, was a "motivating factor" in SHRM's decision to rescind the offer.

Instruction No. 23

The fourth element of a disability discrimination claim under the VHRA requires Plaintiff to prove that her disability, or SHRM's need to accommodate her disability, was a motivating factor in SHRM's decision to rescind the job offer to her. A motivating factor means Plaintiff's disability motivated the decision to rescind the job offer, even if SHRM had more than one motivating factor.

Instruction No. 24

For Count III, if SHRM produced evidence of a legitimate, non-discriminatory reason for rescinding the job offer, you, the jury, must find for SHRM unless you find that the Plaintiff has proved that the reason given by SHRM was not the true reason for rescinding the job offer, and that it is more likely than not that, except for the Plaintiff's disability, the offer would not have been rescinded. In other words, Ms. Torres must prove that the reason articulated by SHRM was a mere pretext for its unlawful discrimination.

Among the things you may consider are: (1) the manner in which SHRM acted before and after rescinding the offer; (2) how close in time the rescission was to her request to bring her service dog to work; (3) whether SHRM gave shifting or inconsistent explanations for its inquiries or decision; (4) whether SHRM departed from its usual policies or practices when it made the decision; and (5) whether any reason SHRM gave for its decision is false, contradictory, or hard to believe.

In making your determination, you may consider all the evidence, direct and circumstantial. The burden of proving why SHRM acted remains with Ms. Torres. On Count III, she must prove that her disability, or her need for accommodation, was a motivating factor in SHRM's decision.

Instruction No. 25

Count IV alleges that SHRM failed to accommodate Ms. Torres' disability, in violation of the Virginia Human Rights Act. Ms. Torres may prove Count IV in two ways: either SHRM failed to provide a reasonable accommodation or SHRM failed to engage in the interactive process. Ms. Torres need prove only one.

a. Failure to provide a reasonable accommodation

To prevail under this theory, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability;

(2) she was qualified for the position;

(3) SHRM knew of her disability;

(4) her service dog was a reasonable accommodation necessary to assist her in performing the job; and

(5) SHRM did not provide a reasonable accommodation.

b. Failure to engage in the interactive process

To prevail under this theory, Ms. Torres must prove by a preponderance of the evidence that:

(1) she has a disability;

(2) she requested an accommodation from SHRM; and

(3) SHRM failed to engage in a timely, good faith interactive process with her to determine if her requested accommodation was

reasonable and, if it was determined not to be reasonable, to discuss alternative accommodations that may be provided.

Instruction No. 26

Under the VHRA, Ms. Torres must prove that her service dog was a reasonable accommodation necessary to assist her in performing her particular job. A reasonable accommodation is a modification or adjustment to the job, the work environment, or the way things are customarily done that enables a qualified person with a disability to perform the essential functions of the position.

Instruction No. 27

Even if Ms. Torres's service dog was a reasonable accommodation, SHRM was not required to provide it if SHRM offered a different reasonable accommodation that was effective.

A reasonable accommodation addresses the known physical and mental impairments that substantially limits one or more of the major life activities of a person with a disability. An employer may choose among equally effective reasonable accommodations. Ms. Torres bears the burden to prove, by a preponderance of the evidence, that the alternatives SHRM offered did not effectively address her known impairments.

Instruction No. 28

The VHRA places a duty on the employer to engage in a timely, good-faith interactive process with a person who has requested an accommodation, to determine whether the requested accommodation is reasonable and, if it is determined not to be reasonable, to discuss alternative accommodations that may be provided. The interactive process is a back-and-forth between the employer and the person requesting the accommodation. Its purpose is to identify the limitation the disability causes and an accommodation that addresses it.

A failure of an employer to meet that duty is itself a violation of the VHRA, whether or not you also find that SHRM failed to provide a reasonable accommodation.

Instruction No. 29

Count IV does not require Ms. Torres to prove why SHRM acted. She does not have to prove that SHRM had a discriminatory motive. The questions on Count IV are whether SHRM provided a reasonable accommodation for her known disability, and whether SHRM engaged in a timely, good faith interactive process with her — not why SHRM did or did not do so.

Instruction No. 30

I am about to instruct you as to the proper measure of damages. The fact that I am giving you this instruction should not be considered as an indication of any view of mine as to whether Ms. Torres is entitled to a verdict against SHRM with respect to her claims. Instructions as to the measure of damages are given only for your guidance, in the event that you should find in favor of the Plaintiff on the question of liability as to her claims, by a preponderance of evidence and in accordance with the other instructions I have given you. If you decide that Ms. Torres is not entitled to prevail on her claim, you need not go further.

Instruction No. 31

If you find SHRM discriminated against Ms. Torres or failed to accommodate Ms. Torres' disability, then you must determine an amount, if any, that is fair compensation for Plaintiff's damages. You may award compensatory damages only for injuries Plaintiff proves were caused by Defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any pain, suffering or mental anguish that Plaintiff experienced as a consequence of Defendant's adverse action against her. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Instruction No. 32

If Ms. Torres prevails on one or more of her claims in this case, she is entitled to be made whole, but only once. If you find for her on more than one claim, and those claims seek recovery for the same harm, do not award damages for that harm more than once. If different claims involve different harms, and she proved them, compensate her for all of her harms — but never twice for the same loss.

Instruction No. 33

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate her damages, that is, to avoid or minimize those damages.

If you find the Defendant is liable and the Plaintiff has suffered damages, the Plaintiff may not recover for any item of damage which she could have avoided through reasonable effort. If you find that the Defendant proved by a preponderance of the evidence the Plaintiff unreasonably failed to take advantage of an opportunity to lessen her damages, you should deny her damages that she would have avoided had she taken advantage of the opportunity.

Instruction No. 34

Plaintiff seeks punitive damages in this matter for her ADA claims. You may award punitive damages if plaintiff proves by a preponderance of the evidence that SHRM acted with malice or reckless indifference to plaintiff's rights and that as a result there should be an award of punitive damages to punish SHRM, or to deter SHRM and others like SHRM from committing the same conduct in the future. An award of punitive damages under the ADA is permissible in this case only if you find by a preponderance of the evidence that a management official of SHRM personally acted with malice or reckless indifference to plaintiff's federal protected rights. An action is with malice if a person knows that it violates the law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of plaintiff's rights, you cannot award punitive damages if SHRM proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied and that SHRM has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both.

Instruction No. 35

Plaintiff seeks punitive damages in this matter for her VHRA claims. You may award punitive damages if plaintiff proves by a preponderance of the evidence that SHRM acted with malice or reckless indifference to plaintiff's rights and that as a result there should be an award of punitive damages to punish SHRM, or to deter SHRM and others like SHRM from committing the same conduct in the future.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied and that SHRM has not proved that it made a good-faith attempt to comply with the law, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Finally, for plaintiff's claims under the VHRA, Ms. Torres is not entitled to punitive damages unless you have also awarded compensatory damages.

Instruction No. 36

Upon retiring to your jury room to begin your deliberation, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict, is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return. What the verdict shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts.

A verdict form has been prepared for your convenience.

You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson write your verdict on the form, date and sign the form, and then return with your verdict to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the Court Security Officer. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

The Court Security Officers, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, on the question of whether or not the plaintiff has sustained her burden of proof until after you have reached unanimous verdicts.