**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| FIONA TORRES,<br><br>Plaintiff,<br><br>v.<br><br>SOCIETY FOR HUMAN RESOURCE MANAGEMENT,<br><br>Defendant. | Civil Action No. 1:25-cv-2360-PTG-WBP<br><br>Hon. Patricia Tolliver Giles, J.<br>Hon. William B. Porter, M.J. |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND LITIGATION EXPENSES**

## INTRODUCTION

After a four-day trial, a unanimous jury found for Plaintiff Fiona Torres on all four of her claims against the Society for Human Resource Management ("SHRM"): disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), and disability discrimination and failure to accommodate under the Virginia Human Rights Act ("VHRA"). ECF No. 175. The jury awarded $400,000 in compensatory damages, and the Court entered judgment on October 13, 2026. ECF No. 177. Plaintiff's claims for back pay, front pay, prejudgment interest, and any other appropriate relief will be put before the Court pursuant to Federal Rule of Civil Procedure 59(e).[1]

Both statutes authorize the Court to award a prevailing plaintiff her reasonable attorney's fees and costs. 42 U.S.C. § 12205; Va. Code § 2.2-3908(B). As set forth below, Plaintiff seeks a

[1] Plaintiff reserves the right to supplement this motion after filing a Fed. R. Civ. Proc. Rule 59(e) motion.

total of $3,020,242.30 in attorney's fees. Ex. 1, Fee Itemization; Ex. 2, Kuntz Decl. ¶ 17. That figure uses rates consistent with the prevailing market in the Alexandria Division and reflects the write-off of 488.60 hours in the exercise of billing judgment. Ex. 3, Fitch Decl. ¶ 14. Plaintiff also seeks $35,341.60 in litigation expenses and costs. Ex. 4, Expense Report; Ex. 5, Chapman Decl. passim.

## **BACKGROUND**

Ms. Torres accepted SHRM's conditional offer for the position of Senior Specialist, Product Management, on or about June 3, 2024. Ms. Torres has Type 1 diabetes, and, after accepting SHRM's offer of employment, she requested as an accommodation to bring her trained diabetic alert dog to work to alert her to sudden changes in her blood sugar. SHRM denied the reasonable accommodation request on July 3, 2024, and rescinded its job offer on July 15, 2024.

After exhausting her administrative remedies before the Virginia Office of Civil Rights and the EEOC, which issued a Notice of Right to Sue on September 19, 2025, Ms. Torres filed suit on December 16, 2025. ECF No. 1. The case then proceeded on this Court's schedule. Discovery opened with the Court's Rule 16(b) Scheduling Order on February 20, 2026, and closed on June 12, 2026. ECF No. 15. The Court denied SHRM's Motion for Summary Judgment on September 10, 2026. ECF No. 109. Trial began on October 6, 2026, and concluded with a unanimous jury verdict for Plaintiff four days later. ECF No. 175. Under the ADA, the jury found that SHRM rescinded Ms. Torres's job offer because of its need to accommodate her disability and that it failed to provide her a reasonable accommodation. Under the VHRA, it found that SHRM discriminated against Ms. Torres on the basis of her disability and failed to

provide her a reasonable accommodation. ECF No. 175 at 1–2. The jury awarded $400,000 in compensatory damages, and the Court entered judgment on October 13, 2026. ECF No. 177.

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND LITIGATION EXPENSES UNDER BOTH THE ADA AND VHRA.

Plaintiff seeks an award of attorney's fees and litigation expenses under Fed. R. Civ. P. 54(d)(2), 42 U.S.C. §§ 12205, and 12117(a), and Va. Code § 2.2-3908(B). Plaintiff won on all four counts. ECF No. 175. On her ADA discrimination claim (Count I), the jury found that SHRM rescinded her job offer because of its need to accommodate her disability, though not because of the disability itself. *Id.* at 1 (Questions 1(a)–(b)). On her VHRA accommodation claim (Count IV), the jury found that SHRM failed to provide a reasonable accommodation, though not that it failed to engage in a timely, good-faith interactive process. *Id.* at 2 (Questions 4(a)–(b)). The jury also found for Plaintiff on her ADA accommodation claim (Count II) and her VHRA discrimination claim (Count III), and it awarded $400,000 in compensatory damages. *Id.* at 1–2. Each question Plaintiff did not win was an alternative route to a count she did win, and she won every count.

Under *Hensley v. Eckerhart*, the result drives the fee award: "The most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). By that measure, Plaintiff's success was complete. Where claims "involve a common core of facts" or rest on "related legal theories," the Court looks to "the significance of the overall relief obtained." *Id.* at 435. A plaintiff who obtains excellent results "should recover a fully compensatory fee," which "[n]ormally . . . will encompass all hours reasonably expended on the litigation." *Id.*

Here the result was complete vindication for Plaintiff's rights. Every question on the verdict form arose from the same events: SHRM's refusal to allow Ms. Torres to bring her diabetic alert dog to work and its rescission of her offer twelve days later. The same witnesses, documents, and medical evidence supported every theory. Ms. Torres sought a judgment that SHRM violated the ADA and the VHRA by refusing to accommodate her and rescinding her offer, and compensation for that loss. She obtained a verdict on every count and a $400,000 judgment. ECF No. 177. The alternative theories Plaintiff advanced along the way do not change that analysis. "The result is what matters." *Hensley*, 461 U.S. at 436 (footnote omitted).

**A. The ADA Authorizes Attorney Fees and Litigation Expenses.**

The ADA expressly authorizes an award of reasonable attorney's fees and litigation expenses to the prevailing party:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . .

42 U.S.C. § 12205. In employment discrimination actions under Title I, the ADA also incorporates the powers, remedies, and procedures of Title VII, including its fee-shifting provision. *Id.* § 12117(a) (adopting 42 U.S.C § 2000e-5"); *id.* § 2000e-5(k) (authorizing "a reasonable attorney's fee (including expert fees) as part of the costs"). Courts therefore look to Title VII precedent in ADA fee disputes, 45C Am. Jur. 2d *Job Discrimination* § 2506, and apply § 12205 under the same framework that governs 42 U.S.C. § 1988. *Brinn v. Tidewater Transp. Dist. Comm'n*, 113 F. Supp. 2d 935, 937-38 (E.D. Va. 2000). Section 12205's express reference to "litigation expenses" reaches expert witness fees and travel costs. H.R. Rep. No. 101-485, pt. 3, at 73 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 496.

**B. The VHRA Authorizes Fees and Costs.**

Plaintiff's state-law claims arise under Va. Code § 2.2-3905(B), which prohibits disability discrimination in employment, and § 2.2-3905.1(B)(1), which prohibits an employer from refusing to reasonably accommodate a qualified person with a disability. Like the ADA, the VHRA expressly authorizes an award of reasonable attorney's fees and litigation expenses to the prevailing party:

> If the court or jury finds that unlawful discrimination has occurred, the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs.

Va. Code § 2.2-3908(B). The jury's finding of unlawful discrimination satisfies that trigger. And because the statute commits damages to "the court or jury" but fees to "the court" alone, fees are properly resolved on this post-judgment motion. *See* Fed. R. Civ. P. 54(d)(2)(A).

**C. Plaintiff Is the Prevailing Party.**

A civil rights plaintiff prevails "when actual relief on the merits of her claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Cities4Life, Inc. v. City of Charlotte*, 52 F.4th 576, 580 (4th Cir. 2022) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)). The Fourth Circuit asks whether the plaintiff obtained (1) a judgment, consent decree, or similar order (2) that grants some relief on the merits, (3) materially alters the legal relationship between the parties, and (4) is enforceable by the court. *Cities4life*, 52 F.4th 576 at 585 (citing *Ge v. U.S. Citizenship & Immigr. Servs.*, 20 F.4th 147, 153 (4th Cir. 2021)). A monetary judgment satisfies every element. The judgment here is an enforceable merits judgment requiring SHRM to pay Plaintiff $400,000. ECF No. 177. The Fourth Circuit has found prevailing-party status on far less: a failure-to-accommodate plaintiff who won a jury verdict but no damages at all. *Reyazuddin v. Montgomery*

*County*, 988 F.3d 794, 798 (4th Cir. 2021). Thus, Plaintiff is unquestionably the prevailing party on every claim under both statutes.

Having prevailed on her ADA and VHRA claims, Plaintiff is entitled to a reasonable award of attorney's fees. As the Supreme Court has recognized, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee which "[n]ormally . . . will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. Fee awards are essential to the enforcement of federal civil rights laws because they ensure that individuals whose rights have been violated can secure competent counsel to vindicate those rights. *See id.* at 429–30. These principles apply with equal force under the ADA. *Feldman v. Pro Football, Inc.*, 806 F. Supp. 2d 845, 847 (D. Md. 2011) (citing *Mammano v. Pittston Co.*, 792 F.2d 1242, 1244 (4th Cir. 1986)). Plaintiff's successful vindication of her statutory rights warrants a fully compensatory fee award.

## II. THE REQUESTED FEES ARE REASONABLE

### A. The Lodestar Is Presumptively Reasonable.

The starting point in calculating a fee award is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. That standard governs every federal statute that awards fees to a "prevailing party," *id.* at 433 n.7, and rates are measured by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The resulting lodestar carries a "strong presumption" that it represents a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552–54 (2010); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The Fourth Circuit applies that presumption in three steps. The court (1) determines "the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate"; (2) subtracts fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) awards some percentage of the remaining amount depending on the degree of success. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). At step one, the court is guided by the twelve factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), as adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978). *McAfee*, 738 F.3d at 88 & n.5.[2] The court need not revisit factors already captured in the lodestar, *E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 570 (4th Cir. 2013), or address factors that do not fit the case.

The VHRA provides an independent basis for the same award. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975). Virginia's reasonableness inquiry asks substantially the same questions as the lodestar: whether the fees were reasonable and necessary, and whether they are tailored to the claims that trigger recovery. *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 46 (2022) (citing *West Square, L.L.C. v. Commc'n Techs., Inc.*, 274 Va. 425, 433 (2007)). Fourth Circuit and this District's precedent supports using the federal lodestar framework to analyze the comparable "reasonableness factors" for granting attorneys fees under Virginia law. *Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846

---

[2] The Johnson factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226 n.28.

F.Supp.2d 533, 536-39 (E.D. Va. 2012), citing *GE Supply, a Div. of General Elec. Co. v.* Thomas, 62 F.3d 1414, *7 (4th Cir. 1995) and *Chawla v. BurgerBusters, Inc.*, 255 Va 616, 623 (1998).[3] Because Plaintiff's VHRA claims rest on the same facts and theories as her ADA claims, the same hours support the award under either statute.

**B. The Hours Were Reasonably Expended.**

The relevant *Johnson* factors and the reasonableness of counsel's rates are addressed in what follows.

**1. Time and labor expended.**

Counsel recorded their time contemporaneously, and the detailed records are attached. Ex. 1, Fee Itemization; *see* Ex. 3, Fitch Decl. ¶ 14. *see Webb v. Bd. of Educ.*, 471 U.S. 234, 238 n.6 (1985). Those hours reflect the demands of taking this case from the administrative filing through trial: the complaint; written discovery; eleven depositions, including the individual and Rule 30(b)(6) depositions of SHRM's Chief Human Resources Officer; motions to compel; summary judgment; motions in limine; trial preparation; and a four-day jury trial.

Counsel made the "good faith effort" *Hensley* requires "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," mindful that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*)) (emphasis omitted). Applying that standard, counsel exercised billing discretion and wrote off 488.60 hours. Ex. 3, Kuntz Decl. ¶ 16; Fitch Decl. ¶ 14. Those reductions include all time associated with SHRM's Motion to Strike Plaintiff's summary judgment opposition and

[3] *Chawla* stated that "a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate."

with the revised opposition that followed; a substantial portion of the time spent on the *Daubert* motion and other motions *in limine*, even where those motions succeeded; clerical and administrative tasks; time recorded by timekeepers with limited involvement in the case, and press-related inquiries. Ex. 2, Kuntz Decl. ¶ 16; Ex. 1.

The decision to have an attorney, Sacred B. Huff, moderate the focus groups was deliberate and warranted by the nature of the litigation. Effective moderation required more than simply facilitating discussion; it required an understanding of the legal claims, the evidence, and the issues likely to resonate with jurors. An attorney was better positioned to formulate appropriate follow-up questions, probe participants' reactions to particular evidence and arguments, and identify potential weaknesses in the presentation of Plaintiff's case. Although the use of an attorney for this work was reasonable, Plaintiff has exercised billing judgment by seeking compensation for the attorney's time at a paralegal rate rather than her customary attorney rate, thereby substantially reducing the fees requested for this work.

Importantly, a substantial share of the remaining hours was driven by SHRM's litigation choices. A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion). Plaintiff's necessitated response to each episode below is documented in the record.

**a. Privilege instructions and the corporate-designee deposition**

Plaintiff first noticed SHRM's Rule 30(b)(6) deposition on March 4, 2026. Ex. 9, March 3, 2026, 30(b)(6) Deposition Notice. Over the next eight weeks, the parties conferred specifically on the 30(b)(6) notice of topics three times and exchanged extensive written positions on the topics before Plaintiff served an amended notice on April 30, 2026. Ex. 9, March 3, 3036,

30(b)(6) Deposition Notice; Ex. 10, April 14, 2026, Torres v. SHRM Rule 30(b)(6) Letter; Ex. 11, April 30, 2026, Amended 30(b)(6) Deposition Notice. SHRM then insisted that Jimmy Ray Link's individual and corporate-designee depositions share a single seven-hour day and refused to produce him for a second. Ex. 12, Jim Link 30(b)(6) Dep. 6:9-7:13, 43:6-15. Separately, at the depositions of SHRM's witnesses, defense counsel repeatedly asserted attorney-client privilege to block testimony about who made the decisions at issue in this case and the basis for those decisions. *Se*e ECF No. 46 at 7-12 and exhibits thereto.

Plaintiff moved to compel, objecting to SHRM's unjustified invocation of attorney client privilege blocking Plaintiff's access to non-privileged materials and information. ECF Nos. 44–47. At the hearing, the Court stated that it did not understand the basis for some of SHRM's privilege objections and asked how a plaintiff could know "what the decision was, who made the decision, what the basis for the decision was . . . if they get shut down on privilege grounds." Ex. 13, June 5, 2026, Hearing Tr. 21:10–17, 25:13–16. The Court ordered the corporate-designee deposition completed by June 12, 2026, and barred Mr. Link, Ms. Belyna, and Ms. Zoerkler from offering evidence on matters they had refused to answer on privilege grounds. ECF No. 54. The testimony received that second day of Mr. Link's corporate-designee deposition was central to Plaintiff's ability to oppose SHRM's summary judgment motion and her case at trial. ECF No. 92, *passim*; *see also, e.g.*, Ex. 14, Trial Tr. (Day 3, P.M. Session) 51:17–52:13.

**b. SHRM's deficient expert disclosure**

SHRM's Rule 26(a)(2) disclosure for Dr. Michael Cooperman offered conclusions about Plaintiff's need for her diabetic alert dog without identifying any methodology or sources. Plaintiff notified SHRM of those deficiencies on May 15, 2026, and moved to strike SHRM's expert designation on May 18, 2026. ECF Nos. 37, 38. Despite Plaintiff's motion to strike,

SHRM's only amendment to its Rule 26(a)(2) disclosure merely added Dr. Cooperman's compensation as of the date of the amended disclosure. ECF No. ECF 100-8.[4] Plaintiff learned of the medical literature underlying Dr. Cooperman's opinions for the first time at his deposition. ECF No. 100 at 4 n.3. Because the motion to strike could not be heard before that deposition, Plaintiff withdrew it so that all disclosure and Rule 702 issues could be presented in a single motion on a complete record. ECF No. 100 at 3 n.2. Plaintiff then moved to exclude the testimony of Dr. Cooperman. ECF Nos. 99, 100.

The Court granted Plaintiff's motion to exclude Dr. Cooperman's testimony in substantial part. ECF No. 131; Ex. 16, Sept. 22, 2026, Hearing Tr. 38:22–39:10, 40:4–18. The Court found SHRM's failure to properly disclose its expert harmful and unjustified and gave particular weight to SHRM's failure to cure after Plaintiff put it on notice. *Id.* at 40:19–41:4. That motion practice was work SHRM could have avoided by curing its disclosure before the deposition, or by serving an expert disclosure and report compliant with the Federal Rules of Civil Procedure.

**c. SHRM's refusal to admit matters it could not dispute**

SHRM declined to stipulate to nearly any fact underpinning the elements of Plaintiff's claims, including that her diabetes is a disability. ECF No. 58. After the ADA Amendments Act, the governing regulation provides that "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: diabetes substantially limits endocrine function." 29 C.F.R. § 1630.2(j)(3)(iii). SHRM also objected to requests for admission 5, 9, 21, 22, 23, 24, 25, 31, 34, and 40 (among many others), and the Court overruled those objections at trial. Ex. 17, Trial Tr. (Day 3, A.M. Session) 40–42 (ruling

[4] Simply establishing Dr. Cooperman's rate for one hour of deposition and negotiating to ensure that rate was reasonable required more than three weeks. Ex. 15, May 18-June 24, Emails re: Deposition of Dr. Cooperman.

on objections to Pl.'s Ex. 72); *id.* at 44–46 (admissions read into the record). When a party fails to admit a matter that is later proved true, Rule 37(c)(2) permits the requesting party to recover "the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2).

**d. SHRM's attempt to use Plaintiff's private messages**

SHRM invoked the after-acquired evidence doctrine and sought to use Plaintiff's private text and audio messages with her acquaintances to defeat liability, not to limit remedies. It pleaded after-acquired evidence as an affirmative defense, relied on the messages in its summary judgment motion, and listed them among its liability exhibits rather than with its damages evidence. *See* ECF No. 111 at 2-5. But after-acquired evidence of wrongdoing is not a defense to liability; at most, it limits certain remedies. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360–62 (1995). Plaintiff moved to exclude the messages, ECF No. 110, and the Court, ruling from the bench, excluded all but portions of a single message. Ex. 18, Trial Tr. (Day 1, A.M. Session) 7:23–12:9 (granting in part Pl.'s Mot. in Limine to Exclude After-Acquired Evidence, ECF No. 110); *see also* Minute Entry, ECF No. 168 (Oct. 6, 2026).

The hours Plaintiff spent on that motion were made necessary by SHRM's decision to press a liability theory that *McKennon* forecloses.

**2. Novelty and Difficulty of the Questions Raised.**

This case presented difficult questions of fact and law. On the facts, Plaintiff had to prove that a trained diabetic alert dog was an effective accommodation for her Type 1 diabetes when the continuous glucose monitor and other measures SHRM proposed were not. She made that showing without a retained expert, through her own testimony, her treating physician's testimony as a fact witness, and her medical records, against SHRM's retained endocrinologist. Counsel

also succeeded in excluding that expert's opinions resting on undisclosed medical literature, including his opinion that the dog was not medically necessary for Plaintiff. ECF No. 131.

On the law, Plaintiff litigated while the governing Fourth Circuit standards were developing. In *Tarquinio v. Johns Hopkins University Applied Physics Lab*, 141 F.4th 568 (4th Cir. 2025), decided June 25, 2025, the Fourth Circuit addressed the parties' respective obligations in the interactive process. SHRM relied heavily on *Tarquinio* in advancing its interactive process defense arguing that Plaintiff's medical documentation was insufficient and that Plaintiff, not SHRM, caused the breakdown of the interactive process. ECF No. 76 at 19–22; ECF No. 97 at 13–14, 19. Plaintiff answered both arguments. She demonstrated that Dr. Joshi's letter supplied exactly the medical support *Tarquinio* requires, and unlike the plaintiff in *Tarquinio*, she left SHRM with no uncertainty about her disability or need for accommodation. ECF No. 92 at 24–26. Ultimately, the Court denied summary judgment on this issue. ECF No. 109.

Then, on August 21, 2026, one week before oral argument on SHRM's motion for summary judgment, the Fourth Circuit decided *Billesdon v. Wells Fargo Securities, LLC*, 188 F.4th 731 (4th Cir. 2026). *Billesdon* held, *inter alia*, that a claim for failure to make reasonable accommodation under 42 U.S.C. § 12112(b)(5)(A) and a claim for denial of an employment opportunity "based on the need . . . to make reasonable accommodation" under § 12112(b)(5)(B) are "not interchangeable." *Id.* at 739. The difference lies chiefly in motive: it is not an element of a (b)(5)(A) claim, but it is the heart of a (b)(5)(B) claim. *Id.* Plaintiff integrated *Billesdon* into her summary judgment oral argument and pressed for separate treatment of the two theories through the charge conference and verdict form. The jury found for Plaintiff specifically under § 12112(b)(5)(B). ECF No. 175.

The VHRA claims under the Virginia Human Rights Act added a further layer of complexity. The VHRA's disability and accommodation provisions were recently amended, and, as the Court observed, there is little or no case law applying them. Trial Tr. (Day 3, P.M. Session) 131:16-20. Plaintiff, therefore, had to frame jury instructions on the VHRA's accommodation duties without appellate guidance, including its provision on an employer's duty to engage in a timely, good faith interactive process. Va. Code § 2.2-3905.1 (West, eff. July 1, 2021). That provision departs from federal law, under which a failure to engage in the interactive process is actionable only if a reasonable accommodation was possible. *See Wilson v. Dollar General Corp.*, 717 F.3d 337, 347 (4th Cir. 2013). The jury did not find a separate violation of the interactive process provision, but it found for Plaintiff on the VHRA failure to accommodate claim that theory supported. A fee award is not reduced on that account: "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. VHRA claims also raised distinct questions of exhaustion and remedies, including the availability of uncapped compensatory damages beyond the ADA's statutory caps. *See* 42 U.S.C. § 1981a(b)(3).

Counsel had to integrate each of these developments into the summary judgment briefing, the jury instructions, the verdict form, and the trial presentation.

**3. The Skill Required to Properly Perform the Legal Services Rendered and the Experience, Reputation, and Ability of Counsel.**

Trying an accommodation case against an organization that holds itself out as the leading authority on workplace practices and which was represented by a large, leading defense employment law firm required specialized employment law litigation and trial skill.

Successfully prosecuting this case through verdict required skill in employment discrimination doctrine, motion *in limine* litigation, expert practice, and jury trial advocacy. Counsel successfully completed discovery, including the review and production of thousands of pages of documents and taking and defending 11 depositions, successfully compelled production of discovery (ECF No. 30), successfully litigated Defendant's errant claims of attorney-client privilege during discovery and depositions (ECF No. 54), litigated and negotiated a protective order (ECF No. 57), defeated Defendant's motion for summary judgment (ECF 109), successfully litigated a Rule 702 challenge to Defendant's expert witness (ECF No. 131), successfully excluded after-acquired evidence (ECF No. 110), prepared and examined medical expert witnesses, and tried the case to a jury that returned a verdict for Plaintiff on every count.

The result itself is the best evidence of the skill that was required. Multiple *in limine* victories culminating in a complete verdict against a well-resourced institutional defendant, on claims that turned on contested medical evidence and an evolving legal standard, reflects a level of preparation and advocacy commensurate with the rates requested.

**4. Opportunity costs in pressing the litigation.**

Plaintiff's counsel are part of a small firm comprising a dozen employment attorneys. Between two and four of them at a time carried substantial workloads on this case, displacing other work, from October 2024 through trial and post-trial motions. *See* Ex. 1, Fee Itemization; Ex. 2 Kuntz Decl. ¶ 19. Discovery lasted four months, and trial began less than ten months after the Complaint was filed. ECF Nos. 15, 168. The Court's compressed schedule made a higher staffing level necessary, as did defense counsel's litigation tactics, and this necessarily affected counsels' ability to take new cases. Counsel turned away multiple cases requiring Virginia licenses and reduced as well counsels' regular and usual work on behalf of federal workers.

Counsel also took the case on a contingent basis, an arrangement their practice can accept rarely and in limited ways. Ex. 2, Kuntz Decl. ¶ 19. Every hour devoted to this case was, therefore, an hour unavailable for fee-paying work, with any recovery depending entirely on success. Plaintiff does not seek an enhancement on this basis. Contingency does not warrant an upward adjustment of the lodestar under federal fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992). This factor instead confirms that the hours claimed reflect a substantial commitment of counsels' limited capacity, and it weighs against any reduction.

**5. The Customary Fee For Like Work.**

A reasonable rate is the prevailing market rate "in the relevant community," which "is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). The fee applicant must "produce satisfactory specific evidence of the prevailing market rates in the relevant community." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Robinson*, 560 F.3d at 244. Such evidence includes affidavits of disinterested local counsel, fee awards in similar cases, fee matrices, and other specific evidence of the market. *See Arriaza de Paredes & Lopez v. Zen Nails Studio, et. al.*, 134 F.4th 750, 753-55 (4th Cir. 2025); *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987); *Robinson*, 560 F.3d at 245. An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. 886, 896 at n.11 (1984).

Plaintiff's counsel are experienced employment and civil rights litigators who have been paid at the prevailing market rate for decades. Accordingly, Plaintiff's counsel seek compensation at the 2026 rates published in the Fitzpatrick Matrix created and approved by the

United States Attorney's Office for the District of Columbia. Ex. 19, The Fitzpatrick Matrix (2026).[5] The rates requested, and the experience supporting them, are as follows:

| **Timekeeper** | **2024** | | **2025** | | **2026** | | **Total Hours** | **Lodestar** |
|---|---|---|---|---|---|---|---|---|
| | **Hours** | **Rate** | **Hours** | **Rate** | **Hours** | **Rate** | | |
| Anna Kathryn Barnes Barry | — | — | — | — | 911.5 | $722 | 911.5 | $653,265.60 |
| Mary Kuntz | — | — | — | — | 845.3 | $887 | 845.3 | $747,164.45 |
| Stephen Pershing | 8.6 | $864 | 36.2 | $933 | 409.8 | $998 | 454.6 | $449,836.10 |
| Lori Kisch | — | — | 71.9 | $915 | 363.8 | $979 | 435.7 | $421,948.70 |
| Thomas Walker | — | — | — | — | 363.2 | $807 | 363.2 | $290,479.65 |
| Hector Ruiz | — | — | 5.3 | $897 | 314.5 | $960 | 319.8 | $304,562.10 |
| Samantha Sloane | — | — | 1.1 | $620 | 92.6 | $663 | 93.7 | $62,075.80 |
| Elaine Fitch | — | — | 3.0 | $919 | 33.3 | $983 | 36.3 | $35,490.90 |
| Sacred Huff | — | — | — | — | 7.2 | $273 | 7.2 | $1,965.60 |
| Angela Sharpe | — | — | — | — | 6.5 | $273 | 6.5 | $1,774.50 |
| Adrienne Bauer | — | — | — | — | 190.3 | $273 | 190.3 | $51,678.90 |
| **Total** | **8.6** | | **117.5** | | **3,538.0** | | **3,664.1** | **$3,020,242.30** |

*Travel time is billed at one-half of the hourly rate shown.*

Ex. 1, Fee Itemization; Kuntz Decl. ¶ 11.

Courts in this District "often refer to the *Vienna Metro* matrix" in setting rates. *Morton v. Cisneros*, No. 1:23-cv-1726 (PTG/LRV), 2026 WL 777422 at *2, (E.D. Va. Mar. 18, 2026). In *Vienna Metro*, the following hourly rates were determined to be reasonable for attorneys in Northern Virginia in **2011**:

- 20+ years of experience: $505 – 820

[5] As the Fourth Circuit has acknowledged, fee matrices can be "a useful starting point to determine fees" and make fee petitions "less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases." *Arriaza de Paredes & Lopez v. Zen Nails Studio, et. al.*, 134 F.4th 750, 753-55 (4th Cir. 2025) (internal quotations and citations omitted).

- 11 – 19 years of experience: $520 – 770
- 8 – 10 years of experience: $465 – 640
- 4 – 7 years of experience: $350 – 515

*Vienna Metro, LLC v. Pulte Home Corporation*, No. 1:10-cv-00502, 2011 WL 13369780 at *6 (E.D. Va. Aug. 24, 2011).

However, the Fourth Circuit has cautioned against reliance on a matrix that has not kept pace with the market. *Arriaza de Paredes & Lopez v. Zen Nails Studio, et al.*, 134 F.4th 750 at n.1 (4th Cir. 2025). Although "appellate courts often affirm the use of inflation-updated matrices, most notably in the D.C. Circuit," the court observed that "the longer a matrix goes without an update, the odds that it has much to say about today's prevailing market rates decrease and the chances that its use—even properly weighted—will constitute an abuse of discretion increase." *Id.* at n.1. Because the matrix in that case had "remained unchanged for more than a decade," the court "urge[d] the district court to give this matter its prompt attention." *Id.*

Since 2011, while the Vienna Matrix rates have remained stagnant, the Consumer Price Index for All Urban Consumers rose from 226.545 (August 2011) to 336.940 (September 2026), an increase of 48.7% . Ex. 20, U.S. Bureau of Labor Statistics, Consumer Price Index-U, series CUUR0000SA0, https://data.bls.gov/timeseries/CUUR0000SA0 (last visited Oct. 27, 2026). Those intervening price increases support adjusting historical rates when determining a reasonable fee today. In *Son v. Agape Health Management, Inc.*, the court increased previously approved hourly rates to account for CPI inflation, describing its approach as "a simple and reliable methodology." *Son v. Agape Health Mgmt., Inc.*, No. 1:20-CV-1047 (WEF), 2024 WL 5010410, at *7 (E.D. Va. Dec. 5, 2024), *aff'd sub nom. Lee v. Agape Health Mgmt., Inc.*, No. 25-1001, 2025 WL 3282504 (4th Cir. Nov. 25, 2025)

The *Vienna Metro* rates, adjusted for inflation, are consistent with the Fitzpatrick Matrix, which has been recognized by courts in the District of Colombia and elsewhere. Ex. 21, Hanna Decl. ¶ 12-16-; Ex. 22, Bredehoft Decl. ¶ 22, n. 3. Applying that adjustment to the *Vienna Metro* ranges yields the following:

| Experience | *Vienna Metro* range (2011) | Adjusted for inflation (2026) | Fitzpatrick rates (2026) |
|---|---|---|---|
| 20+ years | $505–$820 | $751–$1,220 | $910–$998 |
| 11–19 years | $520–$770 | $773–$1,145 | $790–$899 |
| 4–7 years | $335–$465 | $498–$692 | $663–$722 |
| Paralegals | $130–$350 | $193–$521 | $273 |

Moreover, recent decisions confirm that the market has moved beyond the unadjusted *Vienna Metro* figures. In April 2026, the Richmond Division awarded $850 per hour to a partner with sixteen years of practice, $550 to an associate with roughly six years of practice, and $250 to a paralegal. *Brandt v. Smith*, 831 F. Supp. 3d 391, 409 (E.D. Va. 2026).

Every rate Plaintiff's counsel requests falls within the corresponding inflation-adjusted range. Ex. 21, Hanna Decl. ¶ 15; Ex. 22, Bredehoft Decl. ¶¶ 12-26. The correspondence is not coincidental. The Fitzpatrick Matrix is derived from a regression analysis of 675 hourly rates drawn from fee applications in 84 complex federal cases in the District of Columbia, and it is updated annually using a legal-services price index. Ex. 19, Fitzpatrick Matrix nn.8, 10–11. It is precisely the kind of "inflation-updated matri[x]" the Fourth Circuit has recognized appellate courts “often affirm.” *Arriaza de Paredes*, 134 F.4th 750 at n.1. Using it here does not displace *Vienna Metro*; it supplies the update that *Vienna Metro* lacks.

Counsel’s rates are at or below the range of rates charged by attorneys who litigate complex employment cases in Northern Virginia. Ex. 21, Hanna Decl. ¶12-16; Ex. 22, Bredehoft

Decl. ¶¶ 12-26. Plaintiffs' counsel have obtained declarations from two private employment attorneys, Mark Hanna and Elaine Bredehoft, who litigate cases in Northern Virginia. The declarations indicate that the attorneys believe Plaintiff's counsel's rates to be appropriate rates given the experience of Plaintiff's counsel, the nature of the case, and the prevailing rates in the Northern Virginia market. Ex. 21, Hanna Decl. ¶ 12-16; Ex. 22, Bredehoft Decl. ¶¶ 12-26. Moreover, the Northern Virginia and Washington, DC form a single market for plaintiff-side attorneys and attorneys frequently represent employees in both jurisdictions. *See* Ex. 21, Hanna Decl. ¶ 16. Accordingly, prevailing rates for attorneys practicing in Washington, D.C., are relevant to determining the reasonable market rates for plaintiff-side counsel litigating employment discrimination cases in the Eastern District of Virginia.

Other evidence supports the reasonableness of Plaintiff's counsel's hourly rates. First, Plaintiff retained KCNF on a contingent basis before suit. The Fee Agreement entitles the firm, if Plaintiff prevails, to its lodestar at the rates published in the Adjusted Laffey Matrix, www.laffeymatrix.com. Ex. 2, Kuntz Decl. ¶ 10. Those rates are significantly higher than the Fitzpatrick Matrix but are approximately the same as the higher rates in the Vienna Matrix adjusted for inflation. Plaintiff thus agreed, at the outset and with full knowledge of the risk, to rates higher than those requested here. Counsel's decision to seek the lower Fitzpatrick rates reflects the reasonableness of the rates now being requested.

KCNF has practiced exclusively employment law since 1975. Ex. 2, Kuntz Decl. ¶ 8 Federal agencies, EEOC administrative judges, and the Merit Systems Protection Board have awarded or paid the firm's fees at Fitzpatrick (previously Laffey) rates for decades. Ex. 2, Kuntz Decl. ¶ 14. Prior fee awards to counsel are probative of the market rate. *Westmoreland Coal Co.*

*v. Lloyd Cox, Director, Office of Workers' Compensation Programs*, 602 F.3d 276 at 290 (4th Cir. 2010).

**6. The Attorney's Expectations at the Outset of the Litigation.**

Plaintiff retained KCNF on October 1, 2024, and was initially charged the firm's discounted rates with the agreement that should she prevail, the firm was authorized to apply for an award of legal fees at the prevailing market rate. Ex. 2, Kuntz Decl. ¶ 10 . She paid a total of $13,884 before she was unable to pay any additional fees. *Id.* . Her case was thereafter converted to a contingency agreement and the Adjusted Laffey Matrix, www.laffeymatrix.com, was designated as the current prevailing hourly rates. *Id.* As a result, counsel undertook this representation on a contingent basis, with no assurance of payment unless Plaintiff prevailed. *Id.* at ¶ 10. Counsel therefore advanced thousands of hours of work and $58,330.55 in expenses over approximately two years at substantial risk. *Id.* at ¶ 11. Plaintiff does not seek an enhancement on this basis, *see City of Burlington v. Dague*, 505 U.S. 557 (1992), but the risk counsel bore confirms that full compensation at market rates is necessary to attract competent counsel to cases of this kind.

**7. The Time Limitations Imposed by the Client or Circumstances.**

This District's docket compressed discovery and trial preparation and proceeded on the fast-paced schedule for which this District is known. Plaintiff filed suit on December 16, 2025, ECF No. 1, and the Court's scheduling order required fact discovery to close by June 12, 2025. ECF No. 15. Rule 702 briefing commenced in May 2026 and lasted until September 2026; summary judgment briefing started in July 2026 and lasted through August, 2026; and trial began on October 6, 2026, 10 months after the Complaint was filed.

The compressed schedule required counsel to conduct fact and expert discovery, oppose summary judgment, litigate the admissibility of Defendant's expert testimony and the legal compliance of Defendant’s expert disclosure and report, and prepare for trial in overlapping windows. That pace necessarily required concurrent work by more than one attorney and explains the staffing reflected in the time records. SHRM similarly staffed the case with three to four attorneys throughout the litigation, assigning multiple attorneys to represent it at depositions and hearings . The demands of this schedule also limited counsel's ability to take on other work during the same period (*see* Factor 4).

**8. The Amount In Controversy and the Results Obtained.**

Plaintiff prevailed on all four counts and recovered $400,000 in compensatory damages. Plaintiff will be filing her request for back pay and front pay. The Court entered judgment on October 13, 2026. ECF No. 177. The results obtained are “the most critical factor” in determining a reasonable fee. *Hensley*, 461 U.S. at 436; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Where a plaintiff “has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.” *Hensley*, 461 U.S. at 435. This is such a case. Plaintiff did not prevail on some claims and lose others; she prevailed on all of them. There is accordingly no basis for any reduction for limited success.

**9. The Experience, Reputation, and Ability of Counsel**

Plaintiff was represented by Kalijarvi, Chuzi, Newman & Fitch, P.C. (“KCNF”), a firm that has handled only employment matters since its founding in 1975. Ex. 2, Kuntz Decl. ¶ 8. KCNF is a well known and highly regarded firm in the employment community. See Ex. 21, Hanna Decl. ¶ 7; Ex. 22, Bredehoft Decl. ¶ 11. The team that litigated this case included three

veterans of the Civil Rights Division of the U.S. Department of Justice with more than four decades of combined service there, together with experienced employee-side litigators.

**Mary E. Kuntz** (18 years; $887) Lead litigation and trial counsel. She has practiced since 2008, specializing in employment law for private- and federal-sector employees and routinely litigates in federal court and before the EEOC and MSPB. Ex. 2, Kuntz Decl. ¶¶ 1, 3. She has also tried a case to a jury verdict for the plaintiffs, as trial counsel in *Radtke v. Caschetta*, No. 1:06-cv-02031-RCL (D.D.C.) (jury verdict in favor of plaintiffs entered Jan. 15, 2014). *Id.* ¶3. She became a partner at KCNF in 2018 and an owner in 2023. *Id.* ¶ 3. She is a co-author of two editions of *Security Clearance Law and Procedure*, has served on and chaired *ad hoc* hearing committees of the D.C. Board on Professional Responsibility since 2018, and co-chairs the Metropolitan Washington Employment Lawyers Association's ("MWELA") Federal Sector/EEOC committee. *Id.* ¶¶ 4–5. She has been recognized by Lawdragon 500 (2025, 2026), Washington, D.C. Super Lawyers (2025, 2026), *The Best Lawyers in America* (since 2023), and *Washingtonian*'s 2025 Top Employment Lawyers. *Id.* ¶ 7. Before entering the practice of law, she was a professor of Classics for twenty years and holds a Ph.D. from Yale University. *Id.* ¶ 2.

**Stephen B. Pershing** (39 years; $998) Counsel, senior strategist, brief writer. Mr. Pershing clerked for Judge Julian A. Cook, Jr., of the Eastern District of Michigan; served as legal director of the ACLU of Virginia; and spent nine years as a senior trial attorney in the Voting Section of the Civil Rights Division, litigating voting rights cases nationwide. Ex. 7, Pershing Decl. ¶ 2. He has represented employees in discrimination cases since 2013 and joined KCNF in 2023. *Id.* ¶¶ 1–2. He has handled numerous federal and state appeals, petitions for certiorari, and amicus briefs. *Id.* ¶ 6. He has been named to the Lawdragon 500 (2024, 2025) and *The Best Lawyers in America* (2025, 2026), and he is president-elect of MWELA. *Id.* ¶¶ 5, 7.

**Anna Kathryn B. Barry** (7 years; $722), admitted *pro hac vice*. Litigation and trial counsel. Before joining KCNF in 2024, Ms. Barry spent nearly four years as Assistant General Counsel at the NAACP, where she litigated civil rights cases, including on behalf of members of Congress in litigation arising from the events of January 6, 2021, and led the organization's redistricting litigation. Ex. 8, Barry Decl. ¶ 1. At KCNF she litigates employment discrimination matters in federal court and before the EEOC and MSPB, and in 2024, she served as second chair in a federal jury trial in Virginia. *Id.* ¶ 4. She was named to *Best Lawyers: Ones to Watch* (2027) and as a Super Lawyers Rising Star (2025-2026), and she is admitted to the Fourth Circuit, the D.C. Circuit, and the U.S. District Court for the District of Columbia. *Id.* ¶¶ 2, 5. In this case she took primary responsibility over conducting written discovery, took and defended depositions, drafted significant portions of Plaintiff's opposition to Defendant's motion for summary judgment, drafted portions of other motions, and examined Plaintiff and SHRM witness Nicole Belyna at trial. *Id.* ¶¶ 8.

**Thomas O. Walker II** (12 years; $807), admitted *pro hac vice*. Trial Counsel. Mr. Walker spent eight years as an active-duty Navy Judge Advocate, trying six criminal jury trials and more than fifty administrative cases to verdict and serving as an assistant prosecutor in international terrorism cases at Guantanamo Bay. Ex. 6, Walker Decl. ¶ 5. At the U.S. Department of Commerce's Employment and Labor Law Division, he advised on more than 75 employment matters, including reasonable accommodation requests and disability discrimination claims, and litigated more than a dozen cases before the EEOC and MSPB, at least four involving disability or failure to accommodate. *Id.* In this case he drafted significant portions of Plaintiff's motions in limine, including the motion to exclude after-acquired evidence; prepared

witnesses, exhibits, jury instructions, and voir dire; examined plaintiff and defense witnesses at trial; and delivered Plaintiff's closing argument. *Id.* ¶ 6.

**Lori B. Kisch** (29 years; $915). Ms. Kisch spent approximately seventeen years in the Employment Litigation Section of the Civil Rights Division, most recently as Special Litigation Counsel, leading pattern-or-practice and systemic Title VII cases. Ex. 2, Kuntz Decl. ¶ 30. Before that, she was a partner at Wiggins, Childs, Pantazis, Fisher & Goldfarb, a national civil rights firm, where she argued *Tum v. Barber Foods, Inc.*, 360 F.3d 274 (1st Cir. 2004), *aff'd in part and rev'd in part sub nom. IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).. *Id.* ¶ 32. She worked on this case from November 2025 until May 2026. *Id.* ¶ 27.

**Hector F. Ruiz, Jr.** (26 years; $897). Mr. Ruiz spent twenty-one years in the Employment Litigation Section, as a Senior Trial Attorney and then as Deputy Chief supervising ten to fifteen attorneys, and received the Assistant Attorney General's Distinguished Service Award in 2018. Ex. 2, Kuntz Decl. ¶¶ 23–25. He worked on this case from July 2025 through July 2026 and was responsible for taking most of the depositions including those of Dr. Cooperman and CHRO Jimmy Ray Link. *Id.* ¶ 20.

**Elaine L. Fitch** (30 years; $983). Ms. Fitch has practiced law since 1996 and has specialized in employment law since 2000, representing thousands of individuals, as well as several federal agencies, in administrative and court proceedings. Ex. 3, Fitch Decl. ¶¶ 2–3, 12. She became a partner at KCNF in 2006, the firm took her name in 2011, and she has served as its Managing Partner since approximately 2013. *Id.* ¶ 2. She is a Fellow of the College of Labor and Employment Lawyers, is AV Preeminent rated, and has been recognized by Washington, D.C. Super Lawyers every year since 2013, by *The Best Lawyers in America* since 2022, and by the Lawdragon 500 since 2024. *Id.* ¶¶ 7, 9. She is a co-author of three editions of *Security Clearance*

*Law and Procedure* and is admitted to the Fourth Circuit. *Id.* ¶¶ 4, 10. Given her years of experience Ms. Fitch served as a high-level strategist, provided guidance on settlement strategy, and assisted with this Motion.

**Sacred B. Huff** (7 years; $722). Ms. Huff joined KCNF in 2019 and has litigated employment matters in federal district court, the D.C. Circuit, the D.C. Superior Court, and before the EEOC and other administrative bodies, taking and defending depositions and serving as first chair at EEOC hearings. Ex. 23, Huff Decl. ¶¶ 2, 4, 9. She co-chairs the National Employment Lawyers Association's ("NELA") New Lawyers Committee, has presented at NELA's national conferences, including on moving affirmatively for summary judgment, and was named to *Best Lawyers: Ones to Watch* (2027) and as a Super Lawyers Rising Star (2024–25). *Id.* ¶¶ 7–8. Ms. Huff worked on this case as a moderator of mock jury focus groups, seeking input from mock jurors on Plaintiff's strategy in advance of trial.

**Samantha Sloane** (4 years; $663). Ms. Sloane joined KCNF in October 2025 after a year as the George R. Murphy Fellow at Murphy Anderson, where she represented employees and unions in discrimination, wage-and-hour, and whistleblower matters, and after clerking for Judge Alfred S. Irving, Jr., of the D.C. Superior Court. Ex. 24, Sloane Decl. ¶ 2. She graduated *cum laude* from American University, where she served on the *American University Law Review*. *Id.* ¶¶ 3–4. She provided much-needed research and cite-checking support.

**Adrienne Bauer** (paralegal; $273). Ms. Bauer assisted on this case in every way possible. She performed both paralegal and clerical duties and where the duties were exclusively clerical, her time was not billed, as indicated on the Fee Itemization.

**Angela Sharpe** (paralegal; $273). Ms. Sharpe provided essential paralegal support by researching prospective jurors to assist counsel in preparing for voir dire and making informed jury-selection decisions..

**10. The Undesirability of the Case Within the Legal Community In Which the Suit Arose.**

Single-plaintiff disability discrimination cases against well-resourced institutional employers are financially risky for counsel. There is a limited pool of firms willing to accept such a case, especially on contingency. See Ex. 21, Hanna Decl. ¶¶ 7-9. They often turn on contested medical questions that defendants litigate through retained experts;, they draw vigorous dispositive-motion practice;, and their recoveries are frequently limited by statutory damages caps. *See* 42 U.S.C. § 1981a(b)(3). This case had each of those features. KCNF rarely accepts contingency matters, but it took on that risk by converting Ms. Torres's engagement to a contingent fee, after an initial hourly period, because it believed in her and her case. Ex. 2, Kuntz Decl. ¶¶ 10, 19.

**11. The Nature and Length of the Professional Relationship Between Attorney and Client.**

Counsel has represented Ms. Torres since October 1, 2024, beginning with the administrative charge before the EEOC/Virginia Office of Civil Rights, and the relationship has been limited to this matter. Ex. 2,  Decl. ¶ 17.

**12. Attorney's Fees Awards in Similar Cases.**

Courts have approved comparable levels of attorney's fees in disability discrimination and failure to accommodate cases. Some examples include:

- In *Snookal v. Chevron USA, Inc.*, Case No. 2:23-cv-06302-HDV-AJR, 2025 WL 3699383 at 1 (C.D. Cal. December 15, 2025) the court awarded $1,672.745.57 in

attorney's fees and costs for a California law disability discrimination case resulting from a rescinded job offer where the case included "two *ex parte* applications pertaining to defense discovery delay, four informal discovery conferences, depositions, a mediation, two motions for summary judgment, and a four-day jury trial."

- In *Goodlaxson v. Mayor and City Council of Baltimore*, 776 F.Supp. 3d 311 (D. Md. March 31, 2025), the court approved attorney's fees in the amount of $1,168,830.75 for violations of the ADA and Rehabilitation Act.
- On the high end of the spectrum, in *Nevarez v. Forty Niners Football Co.*, LLC, 474 F. Supp. 3d 1041 (N.D. Cal. 2020), the court awarded $12,258,003.53 for a class-action ADA case.
- In *Miller v. Board of Regents of University of Minnesota*, the court approved attorney's fees of $2,327,772.63 and $99,445.55 in expenses for a single plaintiff for sex discrimination and retaliation and found that the 6,300 hours of work was reasonable for establishing attorney's fees. 402 F. Supp. 3d 568 (D. Minn. 2019).

This range shows that the requested amount of fees and costs in the present case is reasonable. Although this is not a class-action suit like *Nevarez*, it did nonetheless also require a significant amount of complex litigation, largely as a result of the tactics Defendant chose, as addressed in detail in *Johnson* factor no. 1 above. Further, similar to a class-action suit, it serves a comparable function for dissuading employers from discriminating against people with disabilities given that SHRM promulgates guidance on disability policy to other employers, as established during trial. Additionally, although *Snookal* was based on a California statute and *Miller* was a sex discrimination case, both support a finding for attorney's fees in the millions of dollars in single-plaintiff discrimination cases involving intensive pretrial and trial litigation.

## III. NO REDUCTION FOR UNSUCCESSFUL CLAIMS OR LIMITED SUCCESS IS WARRANTED

Steps two and three of the *McAfee* analysis call for no reduction: Plaintiff prevailed on every claim, so there are no unsuccessful claims to subtract. Moreover, all four counts arose from a common core of facts: SHRM's response to Ms. Torres's accommodation request and its rescission of her job offer. Where claims "involve a common core of facts or [are] based on related legal theories," the court should "focus on the significance of the overall relief obtained." *Hensley*, 461 U.S. at 435. The degree of success is "the most critical factor" in determining a reasonable fee. *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). Ms. Torres achieved complete success.

## IV. PLAINTIFF IS ENTITLED TO HER LITIGATION EXPENSES

Section 12205 expressly authorizes recovery of "litigation expenses," which includes reasonable expert fees and other out-of-pocket expenses not taxable as costs under 28 U.S.C. § 1920. These reasonable expenses also include "supplemental secretarial costs, copying, telephone costs and necessary travel." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623-24 (4th Cir. 1978). "Litigation expenses pursuant to fee-shifting statutes, distinct from costs recoverable under 28 U.S.C. § 1920, cover out-of-pocket expenses incurred by attorneys in the course of providing legal services, such as copying costs and travel expenses." ***Rhoads v. F.D.I.C.***, 286 F. Supp. 2d 532, 543 (D. Md. 2003), aff'd, 94 F. App'x 187 (4th Cir. 2004). Reasonable litigation expenses include "expert service fees, filing fees, courier services, printing costs, travel, and research costs." *Goodlaxson v. Mayor and City Council of Baltimore*, 776 F.Supp.3d 311 (D. Md. 2025). This court has also found that in a case under the Equal Access to Justice Act, the prevailing plaintiff was entitled to travel expenses for its corporate counsel and

its expert, depositions costs, and "telephone, postage, photocopy, and computerized research expenses" as being "reasonably…necessary for the preparation" of plaintiff's case. *Olympic Marine Services, Inc. v. U.S.*, 792 F.Supp. 461, 471 (E.D. Va. 1992). Plaintiff seeks $35,341.60in such expenses, itemized in Exhibit 4, including [expert witness fees; deposition transcripts not taxed as costs; travel; mediation; trial technology]. Taxable costs are sought separately by bill of costs under Local Civil Rule 54(D)(1). To the extent any expense sought in Plaintiff's Bill of Costs is not recoverable as a taxable cost, Plaintiff alternatively requests reimbursement of that expense as a litigation expense under 42 U.S.C. § 12205.

Expenses here include the costs of focus groups ($7,709), the cost of deposing Defendant's expert fee ($4,500, including $2,000 of prep time), the video of Ms. Torres' deposition ($825), and transportation costs directly associated with the trial. Each was necessary and he kind of expense normally billed to a client.

## V. PLAINTIFF IS ENTITLED TO FEES FOR PREPARING THIS MOTION

Time reasonably spent preparing a fee petition is compensable. *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995). Plaintiff will submit the time spent on this motion and any reply with her reply brief and will further supplement following any oral argument on this motion.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court award her $3,020,242.30 in attorney's fees and $35,341.60 in litigation expenses, plus reasonable fees incurred in connection with this motion, against SHRM.

Dated: October 27, 2026

Respectfully submitted,

FIONA TORRES
By Counsel

/s/ Mary E. Kuntz
Virginia Bar No. 76947
Stephen B. Pershing
Virginia Bar No. 31012
Anna Kathryn B. Barry
D.C. Bar No. 1719493
(Admitted *pro hac vice*)
Thomas Walker
AL Bar No. 4064E32W
(Admitted *pro hac vice*)

Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. N.W., Suite 1000
Washington, DC 20006
(202) 331-9260
mkuntz@kcnlaw.com
spershing@kcnlaw.com
akbarry@kcnlaw.com
twalker@kcnlaw.com

*Attorneys for plaintiff Fiona Torres*